**UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

**In Re:** Highland Capital Management, L.P.

§
§ Case No 19-34054-sgj11

**The Dugaboy Investment Trust**

**- Appellant**

§
vs. §

3:26-CV-02315-X

**Highland Capital Management, L.P., et al**-Appellee
§
§

**[4679] Order denying motion to reconsider (related document # 4513) Entered on 6/15/2026.**

**APPELLANT RECORD**

**VOLUME 37**

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@kslaw.com
KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

Michael J. Edney
D.C. Bar No. 492024
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
T. (202) 739-3000
F. (202) 739-3001
michael.edney@morganlewis.com

Martha B. Stolley (*pro hac vice*)
New York Bar No. 2965374
MORGAN, LEWIS & BOCKIUS LLP
101 Park Ave.
New York, NY 10178-0060
T. (212) 309-6000
F. (212) 309-6001
martha.stolley@morganlewis.com

Avery Joseph Welker
Texas Bar No. 24137706
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002
T. (713) 890-5000
F. (713) 890-5001
avery.welker@morganlewis.com

*Counsel for The Dugaboy Investment Trust*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.<br><br>Debtor. | Chapter 11<br><br>Case No. 19-34054 (SGJ) |
| THE DUGABOY INVESTMENT TRUST,<br><br>Appellant,<br><br>v.<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P. *et al.*,<br><br>Appellees. | Case No. 3:26-cv-02315-X<br><br>INDEX |

**APPELLANT THE DUGABOY INVESTMENT TRUST'S AMENDED DESIGNATIONS OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL AND STATEMENT OF THE ISSUES TO BE PRESENTED FROM THE BANKRUPTCY COURT'S ORDER DENYING APPELLANT'S MOTION FOR RELIEF FROM ORDER AND MOTION TO VACATE**

Pursuant to the Clerk of Court's correspondence [Docket No. 4700] and Rule 8009(a)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Appellant The Dugaboy Investment Trust ("Appellant" or "Dugaboy"), having filed a Notice of Appeal [Docket No. 4685] on June 29, 2026, from the Bankruptcy Court's June 15, 2026, *Order Denying Dugaboy's Motion for Relief from Order and Motion to Vacate* [Docket No. 4513] and a *Statement of Issues to be Presented and Designation of Items to be Included in the Record on Appeal* [Docket No. 4699] now files this *Amended Statement of Issues to be Presented and Designation of Items to be Included in the Record on Appeal* and respectfully requests that the Clerk prepare and forward the listed items to the District Court for inclusion in the record in connection with this appeal.

**STATEMENT OF ISSUES TO BE PRESENTED ON APPEAL**

1. Did the Bankruptcy Court err in declining to vacate, modify, or otherwise reconsider the June 2025 judgment approving a settlement between Highland entities and Hunter Mountain Investment Trust among other entities?

2. Did the Bankruptcy Court err in making evidentiary and trial conduct rulings during the course of evidentiary hearings held on Dugaboy's motion to vacate in May 2026?

3. Did the Bankruptcy Court err in making rulings on the availability of discovery, including the production of documents or depositions, in proceedings leading to its denial of the motion to vacate or otherwise reconsider the June 2025 judgment approving a settlement between Highland entities and the Hunter Mountain Investment Trust, among other entities?

4. Did the Bankruptcy Court err in not treating the Hunter Mountain Investment Trust, Mark Patrick, and other entities associated with him as parties in the 9019 settlement approval proceedings or the proceedings considering whether to vacate or reconsider that settlement approval?

5. Did the Bankruptcy Court err by misconceiving and/or misapplying the Federal Rule of Civil Procedure 60(b)(2) in denying Dugaboy's Motion for Relief from Order and Motion to Vacate by determining that the evidence presented of Mark Patrick's misconduct was not newly discovered or otherwise cognizable under Rule 60(b)(2)?

6. Did the Bankruptcy Court err in determining that James Dondero's knowledge could be imputed to Dugaboy, regardless of the capacity in which he was acting at the time he gained that knowledge?

7. Did the Bankruptcy Court err in determining that previously known instances of Mr. Patrick's

compliance lapses in other areas needed to have been acted upon in order to preserve the right to remove him from his position at the Hunter Mountain Investment Trust for later discovered and more significant misconduct related to misappropriating much of the asset value of two charitable structures, including the Charitable DAF?

8. Did the Bankruptcy Court err in misconceiving and/or misapplying the Federal Rule of Civil Procedure 60(b)(3) in denying Dugaboy's Motion for Relief from Order and Motion to Vacate by, among other things, determining that there is no evidence that Highland withheld or otherwise obscured evidence of Mark Patrick's misconduct and resulting lack of authority to negotiate the 9019 settlement agreement from Dugaboy in the proceedings that led to the Bankruptcy Court's entry of the original Federal Rule of Bankruptcy Procedure 9019 Order on June 30, 2025?

9. Did the Bankruptcy Court err in not considering under Federal Rule of Civil Procedure 60(b)(3) or otherwise the evidence Mark Patrick and/or his associates withheld or otherwise obscured from the Court through omissions and misrepresentations during discovery and before the Court at the hearing on the proposed settlement under Federal Rule of Bankruptcy Procedure 9019?

10. Did the Bankruptcy Court err by misconceiving the applicable legal standard and/or in not considering the fraud and misconduct of Mark Patrick and his associates in misappropriating most or all of the assets of two charitable structures and obscuring or making it more difficult to detect that conduct when determining whether to vacate the settlement approval order under Federal Rule of Evidence 60(b)(3)?

11. Under all aspects of Federal Rule of Civil Procedure 60(b) and the Court's inherent powers to vacate or modify judgments that are against the interest of justice and affected by wrongdoing, did the Bankruptcy Court err in suggesting that the fraud and misconduct of Mark Patrick was not directly pertinent to whether a bankruptcy settlement with entities he purported to control should be approved?

12. Did the Bankruptcy Court misapply the Federal Rule of Civil Procedure 60(b)(6) standard in denying Dugaboy's Motion for Relief from Order and Motion to Vacate in determining that Dugaboy "failed to articulate a 'mutually exclusive' reason for vacating the 9019 Order?"

13. Did the Bankruptcy Court err in failing to vacate a judgment directly or indirectly sought by Mark Patrick and/or entities associated with him when he came to the Court having engaged in fraud and/or misconduct, or with unclean hands, using the Court's authority under Federal Rule of Civil Procedure 60(b)(6), Rule 60(b) more broadly, or other authorities of the Court to vacate, reconsider, or modify judgments that are inconsistent with the interests of justice?

14. Did the Bankruptcy Court err in failing to vacate a judgment directly or indirectly sought by Mark Patrick and/or entities associated with him when that judgment may have assisted Mr. Patrick in furthering his misconduct or in deterring others from contesting it, using the Court's authority under Federal Rule of Civil Procedure 60(b)(6), Rule 60(b) more broadly, or other authorities of the Court to vacate, reconsider, or modify judgments that are inconsistent with the interests of justice?

15. Whether the 9019 settlement order, in light of the presented evidence of Patrick's misconduct, was an inappropriate circumvention of the Fifth Circuit's decision to permit suits against certain parties without seeking bankruptcy court permission and constituted a invalid non- consensual release of claims?

16. Did the Bankruptcy Court err in denying relief under Federal Rule of Civil Procedure 60(b) or the Court's other authorities to reconsider, amend, or vacate orders on Dugaboy's independently asserted ground that Chief Judge Stacey G. Jernigan lacked authority to enter the Rule 9019 Settlement Order because she should have recused herself and was disqualified from presiding in this matter earlier in the proceedings?

17. Did the Bankruptcy Court err in denying prior motions to recuse Judge Jernigan based on her manifestations of bias against James Dondero and others associated with him, including through her extrajudicial statements in novels and elsewhere?

18. Did the Bankruptcy Court err in finding that Dugaboy had abandoned its argument regarding whether Judge Jernigan was disqualified or should have been recused for not introducing additional testimonial evidence at the hearing on the matter, despite having fully briefed the issue in its Federal Rule of Civil Procedure 60(b) Motion and Reply thereto and having place the fully published versions of the judge's novels before the Court?

19. Did the Bankruptcy Court err when it excluded Lucy Bannon's testimony regarding evidence of Mark Patrick's personal benefit in the decision to sell the Hunter Mountain Investment Trust?

20. Did the Bankruptcy Court err when it excluded Lucy Bannon's testimony regarding evidence of the attendance of Supporting Organizations at the instant proceedings?

21. Did the Bankruptcy Court err when it determined that the deposition transcript of Mark Patrick (Highland hearing exhibit 55) was admissible and not an exception to hearsay?

22. Did the Bankruptcy Court err when it admitted Highland's hearing exhibits 43-45 as relevant?

23. Did the Bankruptcy Court err when it did not permit James Dondero to testify in Dugaboy's case-in-chief, including while permitting Highland to sponsor his testimony for other purposes by admitting his deposition?

24. Did the Bankruptcy Court err when it excluded Dugaboy's exhibits 292-297 as improper rebuttal evidence?

25. Did the Bankruptcy Court err when it granted Highland's request to admit the deposition testimony of James Dondero, despite Highland's decision not to call him as a witness for live testimony in the case, even though he was available in the courtroom throughout the proceedings?

26. Did the Bankruptcy Court err in protecting Highland, Hunter Mountain, Mark Patrick, and others from having to produce documents created earlier than May 19, 2025?

27. Did the Bankruptcy Court err in granting any part of Highland and other participants' requests for a protective order and/or to quash subpoenas?

28. Did the Bankruptcy Court err when it delayed Highland, Mark Patrick, Hunter Mountain, and other entities' obligations to respond to discovery until a couple of weeks before trial, only to require them to produce documents, sit for depositions, and commence trial—all within a 10-day period?

29. Whether a bankruptcy court may deny relief under Federal Rule of Civil Procedure Rule 60(b) or otherwise because vacatur would not itself unwind antecedent transactions or restore a separate pre-settlement structure?

30. Whether Federal Rule of Civil Procedure 60(b)(3) requires proof that concealed or misrepresented information would have changed the outcome, or instead clear and convincing evidence that adverse-party misconduct prevented a full and fair presentation?

31. Whether the District Court should conduct additional hearings and/or review of some or all findings *de novo* given that the decision below was entered by an Article I judge, who may exercise authority only through plenary supervision by a judge contemplated by Article III of the Constitution?

32. Are rulings by Article I bankruptcy judges on matters ancillary to the bankruptcy process due a similar amount of deference as rulings on core bankruptcy matters, or should the District Court act as an Article III backstop to judges not nominated by the President or confirmed by the Senate?

33. Is any amount of deferential review of a Bankruptcy Court's findings consistent with the Supreme Court's recent decisions that principal and inferior officers of the United States must be subject to plenary supervision by the President or some other office expressly listed in the Constitution, such as an Article III judge?

34. Whether the District Court should conduct additional hearings and/or review of some or all of the Bankruptcy Court's findings *de novo* given the Bankruptcy Court found it lacked jurisdiction to rule on the motion under Federal Rule of Civil Procedure 60(b), and the appealed Order denying relief under Rule 60(b) was only to the extent the Court was permitted to issue a ruling concerning the matter?

35. Whether the Bankruptcy Court erred in finding this matter a core proceeding pursuant to 28 U.S.C. § 157(b)(2)?

36. Such other Bankruptcy Court errors of fact and law that are identified in Dugaboy's opening appellate brief on the merits.

**DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL**

Vol. 1 000001 1. Notice of Appeal for Bankruptcy Case No. 19-34054-sgj11 [Docket No. 4685] filed by Appellant;

000008 2. The Bankruptcy Court's June 15, 2026 *Order Denying Dugaboy's Motion for Relief from Order and Motion to Vacate* [Docket No. 4679];

3. Any opinion, findings of fact, and conclusions of law of the Bankruptcy Court relating to the issues on appeal;

000009 4. Docket entries kept by the bankruptcy clerk in case no. 19-34054-sg11;

5. Each of the documents and items designated below:

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| Vol. 2 02/09/2026 000642 Thru Vol. 3 | 4513 | (1195 pgs; 66 docs) Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Proposed Order # 2 Index of Exhibits # 3 Appendix A # 4 Exhibit 1 # 5 Exhibit 2 # 6 Exhibit 3 # 7 Exhibit 4 # 8 Exhibit 5 # 9 Exhibit 6 # 10 Exhibit 7 # 11 Exhibit 8 # 12 Exhibit 9 # 13 Exhibit 10 # 14 Exhibit 11 # 15 Exhibit 12 # 16 Exhibit 13 # 17 Exhibit 14 # 18 Exhibit 15 # 19 Exhibit 16 # 20 Exhibit 17 # 21 Exhibit 18# 22 Exhibit 19 # 23 Exhibit 20 # 24 Exhibit 21 # 25 Exhibit 22 # 26 Exhibit 23 # 27 Exhibit 24 # 28 Exhibit 25 # 29 Exhibit 26 # 30 Exhibit 27 # 31 Exhibit 28 # 32 Exhibit 29 # 33 Exhibit 30 # 34 Exhibit 31# 35 Exhibit 32 # 36 Exhibit 33 # 37 Exhibit 34 # 38 Exhibit 35 # 39 Exhibit 36 # 40 Exhibit 37 # 41 Exhibit 38 # 42 Exhibit 39 # 43 Exhibit 40 # 44 Exhibit 41 # 45 Exhibit 42 # 46 Exhibit 43 # 47 Exhibit 44# 48 Exhibit 45 # 49 Exhibit 46 # 50 Exhibit 47 # 51 Exhibit 48 # 52 Exhibit 49 # 53 Exhibit 50 # 54 Exhibit 51 # 55 Exhibit 52 # 56 Exhibit 53 # 57 Exhibit 54 # 58 Exhibit A # 59 Exhibit B # 60 Exhibit C #61 Exhibit D # 62 Exhibit E # 63 Exhibit F # 64 Exhibit G # 65 Exhibit H) (Gaddis, John Michael) |
| Vol. 4 02/13/2026 001837 | 4515 | (2 pgs) Order setting hearing on Motion to reconsider (RE: related document(s) 4513 Motion to Reconsider filed by Partner Dugaboy Investment Trust). Hearing to be held on 3/12/2026 at 10:00 Via WebEx for 4513, Entered on 2/13/2026 (Okafor, M.) |
| 02/27/2026 001839 Thru Vol. 6 | 4521 | (1789 pgs; 9 docs) Support/supplemental document/ *Supplemental Exhibits* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to |

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| | | compromise controversy) and *Motion to Vacate*). (Attachments: # 1 Exhibit B # 2 Exhibit C # 3 Exhibit D # 4 Exhibit E # 5 Exhibit F # 6 Exhibit G- Part 1 # 7 Exhibit G - Part 2 # 8 Exhibit H) (Gaddis, John Michael) |
| Vol. 7<br>02/27/2026<br>003628 | 4522 | (13 pgs; 4 docs) Motion to file document under seal. *Pursuant to Section 107 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019 [UNOPPOSED]* Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Exhibit A - Proposed Order # 2 Exhibit I # 3 Exhibit J) (Gaddis, John Michael) |
| 03/02/2026<br>003641 | 4524 | (3 pgs) Order granting motion to seal exhibits (related document # 4522) Entered on 3/2/2026. (Okafor, M.) |
| 03/02/2026<br>003644 & 003645 | 4525 | SEALED document regarding: Sealed Exhibits I & J per court order filed by Partner Dugaboy Investment Trust (RE: related document(s) 4524 Order on motion to seal). (Attachments: # 1 Exhibit J - Sealed) (Gaddis, John Michael) |
| 03/02/2026<br>003646 | 4526 | (11 pgs; 2 docs) Motion to extend time to Briefing and Hearing Date for Dugaboy's Motion for Relief from Order and Motion to Vacate (RE: related document(s) 4513 Motion to Reconsider) Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Proposed Order) (Gaddis, John Michael) |
| 03/03/2026<br>003657 | 4527 | (4 pgs) *Notice of Revised Order* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4526 Motion to extend time to Briefing and Hearing Date for Dugaboy's Motion for Relief from Order and Motion to Vacate (RE: related document(s) 4513 Motion to Reconsider) Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Proposed Order) (Gaddis, John Michael)). (Gaddis, JohnMichael) |
| 03/04/2026<br>003661 | 4528 | (3 pgs) Order granting Agreed Joint Motion to Extend Briefing and Hearing Dates for Dugaboy's Motion for Relief From Stay Order and Motion to Vacate (RE: related document(s) 4513 Motion to Reconsider filed by Partner Dugaboy Investment Trust). Hearing reset to 4/27/2026 at 09:00 AM Dallas Judge Jernigan Ctrm for 4513, Entered on 3/4/2026 (Okafor, M.) |
| 04/01/2026<br>003664 | 4533 | (39 pgs; 2 docs) Motion for protective order *(Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* Filed by Debtor Highland Capital Management, L.P. (Attachments: # 1 Proposed Order) (Annable, Zachery) |
| 04/01/2026<br>003703 | 4534 | (1024 pgs; 20 docs) Declaration re: *(Declaration of John A. Morris in Support of Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* filed by Debtor Highland Capital Management, L.P. (RE: related document(s) 4533 |

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| vol. 7 | | Motion for protective order *(Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)*). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 # 15 Exhibit 15 # 16 Exhibit 16 # 17 Exhibit 17# 18 Exhibit 18 # 19 Exhibit 19) (Annable, Zachery) |
| 04/03/2026 004727 | 4535 | (57 pgs) Objection to (related document(s): 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* filed by Partner Dugaboy Investment Trust) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust. (Annable, Zachery) |
| vol 8 04/03/2026 004784 | 4536 | (417 pgs; 14 docs) Declaration re: *(Declaration of John A. Morris in Support of Highland Capital Management, L.P. and the Highland Claimant Trust's Objection to Dugaboy's Motion for Relief from Order and Motion to Vacate)* filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust (RE: related document(s) 4535 Objection). (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E # 6 Exhibit F # 7 Exhibit G # 8 Exhibit H # 9 Exhibit I# 10 Exhibit J # 11 Exhibit K # 12 Exhibit L # 13 Exhibit M) (Annable, Zachery) |
| vol. 9 04/03/2026 005201 | 4537 | (2 pgs) Objection to (related document(s): 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* filed by Partner Dugaboy Investment Trust)*Joinder to Objection [Dkt. No. 4535]* filed by Creditor Hunter Mountain Investment Trust. (Phillips, Louis) |
| 04/06/2026 005203 | 4538 | (8 pgs; 2 docs) Motion to quash *Requests For Production Of Documents Served Improperly* (related documents 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* filed by Partner Dugaboy Investment Trust) Filed by Shields Legal Group, P.C., CLO Holdco, Ltd., Attorney Kelly Hart & Pitre (Attachments: # 1 Proposed Order) (Phillips, Louis) |
| 04/06/2026 005211 | 4540 | (5 pgs) Joinder by *To Highland Capital Management, L.P.'s Motion For A Protective Order Against The Dugaboy Investment Trust's Discovery Requests* filed by ValueScope, LLC, Beacon Mountain, LLC, Hunter Mountain Investment Trust, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and Motion to Vacate, 4533 Motion for protective order *(Highland Capital Management, L.P.'s Motion for a Protective Order* |

Vol. 9

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| | | *Against The Dugaboy Investment Trust's Discovery Requests)*). (Phillips, Louis) |
| 04/07/2026 | 4544 | (3 pgs) Notice of hearing filed by Debtor Highland Capital Management, L.P. (RE: related document(s) 4533 Motion for protective order *(Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* Filed by Debtor Highland Capital Management, L.P. (Attachments: # 1 Proposed Order)). Hearing to be held on 4/24/2026 at 09:30 AM via WebEx for 4533, (Annable, Zachery)Modified on 4/7/2026 (sdw). |
| 04/07/2026 | 4545 | (2 pgs) Notice of hearing filed by CLO Holdco, Ltd., Shields Legal Group, P.C., Attorney Kelly Hart & Pitre (RE: related document(s) 4538 Motion to quash *Requests For Production Of Documents Served Improperly* (related documents 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and Motion to Vacate filed by Partner Dugaboy Investment Trust) Filed by Shields Legal Group, P.C., CLO Holdco, Ltd., Attorney Kelly Hart & Pitre (Attachments: # 1 Proposed Order)). Hearing to be held on 4/24/2026 at 09:30 AM Lubbock for 4538, (Phillips, Louis) |
| 04/10/2026 | 4546 | (2 pgs) Order rescheduling hearing on motion for relief from order and motion to vacate (RE: related document(s) 4513 Motion to Reconsider filed by Partner Dugaboy Investment Trust). Hearing to be held on 5/11/2026 at 09:00 AM Lubbock Judge Odell Ctrm for 4513, Entered on 4/10/2026 (Okafor, M.) |
| 04/16/2026 | 4549 | (4 pgs) Support/supplemental document *Supplement To Motion To Quash And Joinder To Highland Capital Management, L.P.'s Motion For A Protective Order Against The Dugaboy Investment Trust's Discovery Requests* filed by Attorney Kelly Hart & Pitre, Creditor Shields Legal Group, P.C. (RE: related document(s) 4538 Motion to quash *Requests For Production Of Documents Served Improperly* (related documents 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and Motion to Vacate filed by Partner Dugaboy In). (Phillips, Louis) |
| 04/17/2026 | 4550 | (97 pgs; 4 docs) Response opposed to (related document(s): 4538 Motion to quash *Requests For Production Of Documents Served Improperly* (related documents 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* filed by Partner Dugaboy In filed by Attorney Kelly Hart & Pitre, Creditor CLO Holdco, Ltd., Interested Party CLO Holdco, Ltd., Creditor Shields Legal Group, P.C.) filed by Partner Dugaboy Investment Trust. (Attachments: # 1 Exhibit A - Kelly |

005216

005219

005221

005223

005227

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| | | Hart Proof of Service # 2 Exhibit B - Shields Legal Group Proof of Service # 3 Exhibit C - CLO Holdco Ltd. Proof of Service) (Harper, Geoffrey) |
| Vol 9<br>04/17/2026<br>005324 | 4551 | (260 pgs; 20 docs) Response opposed to (related document(s): 4533 Motion for protective order (*Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* filed by Debtor Highland Capital Management, L.P.) filed by Partner Dugaboy Investment Trust. (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 # 15 Exhibit 15 # 16 Exhibit 16 # 17 Exhibit 17 # 18 Exhibit 18 # 19 Exhibit 19) (Harper, Geoffrey) |
| Vol. 10<br>04/21/2026<br>005584 | 4554 | (4 pgs) Support/supplemental document *To Motion To Quash And Joinder To Highland Capital Management, L.P.s Motion For A Protective Order Against The Dugaboy Investment Trusts Discovery Requests* filed by Interested Party CLO Holdco, Ltd. (RE: related document(s) 4533 Motion for protective order *(Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)*, 4538 Motion to quash Requests For Production Of Documents Served Improperly (related documents 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* filed by Partner Dugaboy In). (Phillips, Louis) |
| 04/22/2026<br>005588 | 4555 | (21 pgs) Reply to (related document(s): 4551 Response filed by Partner Dugaboy Investment Trust) *(Highland Capital Management, L.P.'s Reply in Further Support of Its Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* filed by Debtor Highland Capital Management, L.P.. (Annable, Zachery) |
| 04/22/2026<br>005609 | 4556 | (67 pgs; 5 docs) Declaration re: *(Declaration of John A. Morris in Support of Highland Capital Management, L.P.'s Reply in Further Support of Its Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* filed by Debtor Highland Capital Management, L.P. (RE: related document(s) 4555 Reply). (Attachments: # 1 Exhibit 20 # 2 Exhibit 21 # 3 Exhibit 22 # 4 Exhibit 23) (Annable, Zachery) |
| 04/22/2026<br>005676 | 4558 | (10 pgs) Reply to (related document(s): 4550 Response filed by Partner Dugaboy Investment Trust, 4551 Response filed by Partner Dugaboy Investment Trust) *Reply In Support Of Joinder To Highland Capital Management, L.P.'s Motion For A Protective Order Against The Dugaboy Investment Trust's Discovery Requests And Reply In Support Of Motion To Quash And Joinder To HCMLP Reply* filed by Beacon Mountain, LLC, Hunter Mountain Investment Trust, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC, Shields Legal Group, P.C., |

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| | | ValueScope, LLC, Interested Party CLO Holdco, Ltd., Attorney Kelly Hart & Pitre. (Phillips, Louis) |
| Vol. 10<br>04/22/2026<br>005686 | 4559 | (12 pgs; 3 docs) Declaration re: *(Declaration Of Louis M. Phillips In Support Of Reply In Support Of The Motion To Quash And Joinder To Reply In Support Of Motion For Protective Order)* filed by Beacon Mountain, LLC, Hunter Mountain Investment Trust, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC, Shields Legal Group, P.C., ValueScope, LLC, Interested Party CLO Holdco, Ltd., Attorney Kelly Hart & Pitre (RE: related document(s) 4558 Reply). (Attachments: # 1 Exhibit A - Correspondence on April 6, 2026 between counsel for Dugaboy Investment Trust (Dugaboy) and undersigned counsel # 2 Exhibit B - Correspondence on April 16, 2026 between counsel for Dugaboy and undersigned counsel) (Phillips, Louis) |
| 04/24/2026<br>005698 | 4561 | (22 pgs) Support/supplemental document *(Highland Capital Management, L.P.'s Slide Deck for Oral Argument on Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* filed by Debtor Highland Capital Management, L.P. (RE: related document(s) 4533 Motion for protective order (Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)). (Annable, Zachery) |
| 04/24/2026<br>005720 | 4563 | (1 pg) Notice *of position* filed by Creditor The Dugaboy Investment Trust. (Harper, Geoffrey) |
| 04/25/2026<br>005721 | 4564 | (2 pgs) Response opposed to (related document(s): 4563 Notice (generic) filed by Creditor The Dugaboy Investment Trust) filed by Debtor Highland Capital Management, L.P.. (Annable, Zachery) |
| 04/27/2026<br>005723 | 4567 | (8 pgs; 2 docs) Notice to *Judge Odell regarding Supplemental Intervening Authority* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4533 Motion for protective order *(Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* Filed by Debtor Highland Capital Management, L.P. (Attachments: # 1 Proposed Order)). (Attachments: # 1 Exhibit Attachment 1 - Decision Dated April 22, 2026) (Harper, Geoffrey) |
| 04/28/2026<br>005731 | 4568 | (9 pgs; 2 docs) Response opposed to (related document(s): 4567 Notice (generic) filed by Partner Dugaboy Investment Trust) filed by Debtor Highland Capital Management, L.P.. (Attachments: # 1 Exhibit 1) (Annable, Zachery) |
| ~~04/28/2026~~<br>005740 | ~~4569~~ | ~~(9 pgs; 3 docs) Motion to continue hearing on (related documents 4562~~ Hearing held) *Discovery Deadlines and Hearing on The Dugaboy Investment* |

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| Vol. 10 | | *Trust's Motion for Relief from Order and Motion to Vacate* Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Exhibit A - Meet and Confer Email #2 Proposed Order) (Rose, Sydney) |
| 04/28/2026 005749 | 4570 | (6 pgs; 2 docs) Motion to extend time to Modify Relevant Time Period for Discovery (RE: related document(s) 4566 Order on motion for protective order, Order on motion to quash) Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Proposed Order) (Rose, Sydney) |
| 04/28/2026 005755 | 4571 | (6 pgs; 2 docs) Motion for expedited hearing(related documents 4569 Motion to continue, 4570 Motion to extend/shorten time) Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Proposed Order) (Rose, Sydney) |
| 04/29/2026 005761 | 4572 | (9 pgs; 2 docs) Response opposed to (related document(s): 4569 Motion to continue hearing on (related documents 4562 Hearing held)*Discovery Deadlines and Hearing on The Dugaboy Investment Trust's Motion for Relief from Order and Motion to Vacate* filed by Partner Dugaboy Investment Trust, 4570 Motion to extend time to Modify Relevant Time Period for Discovery (RE: related document(s) 4566 Order on motion for protective order, Order on motion to quash) filed by Partner Dugaboy Investment Trust) filed by Debtor Highland Capital Management, L.P.. (Attachments: # 1 Exhibit 1) (Annable, Zachery) |
| 04/29/2026 005770 | 4575 | (7 pgs) Objection to (related document(s): 4569 Motion to continue hearing on (related documents 4562 Hearing held)*Discovery Deadlines and Hearing on The Dugaboy Investment Trust's Motion for Relief from Order and Motion to Vacate* filed by Partner Dugaboy Investment Trust, 4570 Motion to extend time to Modify Relevant Time Period for Discovery (RE: related document(s) 4566 Order on motion for protective order, Order on motion to quash) filed by Partner Dugaboy Investment Trust)*Opposition To Motion To Modify Relevant Time Period For Discovery And Motion To Continue filed* by Beacon Mountain, LLC, Hunter Mountain Investment Trust, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC, ValueScope, LLC. (Phillips, Louis) |
| 04/29/2026 005777 | 4576 | (2 pgs) Order granting the Dugaboy Investment Trust's motion for expedited hearing (Related Doc #4571) (document set for hearing: 4569 Motion to continue, 4570 Motion to extend/shorten time) Hearing to be held on 4/29/2026 at 04:00 PM WebEx for 4569 and for 4570, Entered on 4/29/2026. (Sherman, J.) |
| 04/29/2026 005779 | 4577 | (2 pgs) Notice to take deposition of Mark Patrick filed by Partner Dugaboy Investment Trust. (Rose, Sydney) |

| **Date Filed** | **Docket No.** | **Description/Docket Text** |
|---|---|---|
| 04/29/2026 | 4579 | (7 pgs) US Trustee's comment(s) regarding *Dugaboy Investment Trust's Motion for Reconsideration of the Courts Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith* (Schlotzhauer, Joseph) |
| 05/01/2026 | 4583 | (2 pgs) Order Denying Motion to Continue Discovery Deadlines and Hearing on The Dugaboy Investment Trust's Motion for Relief from Order and Motion to Vacate Filed by Partner Dugaboy Investment Trust (related document # 4569) Entered on 5/1/2026. (Gotay, Camille) |
| 05/01/2026 | 4584 | (2 pgs) Order denying 4570 Motion to Modify Relevant Time Period for Discovery Entered on 5/1/2026. (Gotay, Camille) |
| 05/04/2026 | 4589 | (3 pgs) Subpoena on Mark Patrick filed by Creditor The Dugaboy Investment Trust. (Rose, Sydney) |
| 05/05/2026 | 4592 | (83 pgs; 5 docs) Motion for protective order *concerning deposition (Emergency)* Filed by Beacon Mountain, LLC, Hunter Mountain Investment Trust, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC (Attachments: # 1 Exhibit A - 05.03.26 Email # 2 Exhibit B - M. Patrick June 23,2025 Deposition Transcript # 3 Exhibit C - 05.04.26 Email # 4 Proposed Order) (Phillips, Louis) |
| 05/05/2026 | 4593 | (18 pgs; 4 docs) Motion for expedited hearing(related documents 4592 Motion for protective order) Filed by Beacon Mountain, LLC, Hunter Mountain Investment Trust, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC (Attachments: # 1 Exhibit A - 05.04.26 Email # 2 Exhibit B - 05.05.26 Email # 3 Proposed Order) (Phillips, Louis) |
| 05/05/2026 | 4594 | (3 pgs) Notice of Appearance and Request for Notice by Michael J Edney filed by Creditor The Dugaboy Investment Trust. (Edney, Michael) |
| 05/05/2026 | 4595 | (2 pgs) Order denying motion for expedited hearing (Related Doc# 4593) Entered on 5/5/2026. (Noble, Nicholas) |
| 05/05/2026 | 4596 | (6 pgs) Response opposed to (related document(s): 4592 Motion for protective order *concerning deposition (Emergency)* filed by Creditor Beacon Mountain, LLC, Creditor Hunter Mountain Investment Trust, Creditor Rand Advisors, LLC, Creditor Rand PE Fund I, LP, Creditor Rand PE Fund Management, LLC) filed by Partner Dugaboy Investment Trust. (Rose, Sydney) |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| Vol. 11 005907 | 05/06/2026 | 4597 | (7 pgs) Notice to take deposition of James Dondero filed by Debtor Highland Capital Management, L.P.. (Annable, Zachery) |
| 005914 | 05/06/2026 | 4598 | (7 pgs) Subpoena on James Dondero filed by Debtor Highland Capital Management, L.P.. (Annable, Zachery) |
| 005921 | 05/06/2026 | 4599 | (2 pgs) Order denying motion for protective order (related document # 4592) Entered on 5/6/2026. (Noble, Nicholas) |
| 005923 | 05/07/2026 | 4600 | (7 pgs) Subpoena on Nancy Dondero, as Trustee of The Dugaboy Investment Trust, filed by Debtor Highland Capital Management, L.P.. (Annable, Zachery) |
| 005930 | 05/08/2026 | 4603 | (3 pgs) Notice of hearing *(Notice of Hearing on Reorganized Debtor's Motion for Entry of an Order Further Extending the Period Within Which It May Remove Actions Pursuant to 28 U.S.C. 1452 and Rule 9027 of the Federal Rules of Bankruptcy Procedure)* filed by Debtor Highland Capital Management, L.P. (RE: related document(s) 4602 Motion to extend time to Remove Actions Pursuant to 28 U.S.C. 1452 and Rule 9027 of the Federal Rules of Bankruptcy Procedure (RE: related document(s) 4471 Order on motion to extend/shorten time) Filed by Debtor Highland Capital Management, L.P.). Hearing to be held on 6/10/2026 at 03:00 PM by WebEx for 4602, (Annable, Zachery)Modified on 5/8/2026 (sdw). |
| 005933 | 05/08/2026 | 4604 | (3 pgs) Witness and Exhibit List filed by Creditor Hunter Mountain Investment Trust (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) *and Motion to Vacate*). (Phillips, Louis) |
| 005936 | 05/08/2026 | 4605 | (3 pgs) Witness List *for May 11, 2026 Hearing* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) *and Motion to Vacate*). (Rose, Sydney) |
| 005939 | 05/08/2026 | 4607 | (155 pgs; 7 docs) Reply to (related document(s): 4535 Objection filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust) filed by Partner Dugaboy Investment Trust. (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6) (Rose, Sydney) |
| Vol 12 006094 thru Vol 21 | 05/08/2026 | 4608 | (4743 pgs; 100 docs) Witness and Exhibit List *(Highland Capital Management, L.P. and the Highland Claimant Trust's Witness and Exhibit List with Respect to Hearing to Be Held on May 11, 2026)* filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust (RE: related document(s) 4513 Motion to Reconsider (related |

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| | | documents 4297 Order on motion to compromise controversy) and Motion to Vacate). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 # 15 Exhibit 15 # 16 Exhibit 16 # 17 Exhibit 17 # 18 Exhibit 18# 19 Exhibit 19 # 20 Exhibit 20 # 21 Exhibit 21 # 22 Exhibit 22 # 23 Exhibit 23 # 24 Exhibit 24 # 25 Exhibit 25 # 26 Exhibit 26 # 27 Exhibit 27 # 28 Exhibit 28 # 29 Exhibit 29 # 30 Exhibit 30 # 31 Exhibit 31# 32 Exhibit 32 # 33 Exhibit 33 # 34 Exhibit 34--Part 1 # 35 Exhibit 34--Part 2 # 36 Exhibit 35--Part 1 #37 Exhibit 35--Part 2 # 38 Exhibit 36--Part 1 # 39 Exhibit 36--Part 2 # 40 Exhibit 37 # 41 Exhibit 38 # 42 Exhibit 39 # 43 Exhibit 40 # 44 Exhibit 41 # 45 Exhibit 42 # 46 Exhibit 43 # 47 Exhibit 44 # 48 Exhibit 45# 49 Exhibit 46 # 50 Exhibit 47 # 51 Exhibit 48 # 52 Exhibit 49 # 53 Exhibit 50 # 54 Exhibit 51 # 55 Exhibit 52 # 56 Exhibit 53 # 57 Exhibit 54 # 58 Exhibit 55 # 59 Exhibit 56 # 60 Exhibit 57 # 61 Exhibit 58# 62 Exhibit 59--Part 1 # 63 Exhibit 59--Part 2 # 64 Exhibit 60 # 65 Exhibit 61 # 66 Exhibit 62 # 67 Exhibit 63 # 68 Exhibit 64 # 69 Exhibit 65 # 70 Exhibit 66 # 71 Exhibit 67 # 72 Exhibit 68 # 73 Exhibit 69--Part 1 # 74 Exhibit 69--Part 2 # 75 Exhibit 69--Part 3 # 76 Exhibit 69--Part 4 # 77 Exhibit 69--Part 5 #78 Exhibit 69 -- Part 6 # 79 Exhibit 69--Part 7 # 80 Exhibit 69--Part 8 # 81 Exhibit 69--Part 9 # 82 Exhibit 70 # 83 Exhibit 71 # 84 Exhibit 72 # 85 Exhibit 73 # 86 Exhibit 74 # 87 Exhibit 75 # 88 Exhibit 76 # 89 Exhibit 77 # 90 Exhibit 78 # 91 Exhibit 79 # 92 Exhibit 80 # 93 Exhibit 81 # 94 Exhibit 82 # 95 Exhibit 83# 96 Exhibit 84 # 97 Exhibit 85 # 98 Exhibit 86 # 99 Exhibit 87) (Annable, Zachery) |
| V01:22 008150 05/08/2026 | 4609 | (16 pgs) Exhibit List *for the May 11, 2026 Hearing* filed by Partner Dugaboy Investment Trust(RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) *and Motion to Vacate*). (Rose, Sydney) |
| 008166 05/08/2026 | 4610 | (16 pgs) Amended Exhibit List *for May 11, 2026 Hearing* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4609 List (witness/exhibit/generic)). (Rose, Sydney) |
| 008182 05/09/2026 | 4611 | (68 pgs; 3 docs) Amended Witness and Exhibit List *(Highland Capital Management, L.P. and the Highland Claimant Trust's Amended Witness and Exhibit List with Respect to Hearing to Be Held on May 11, 2026)* filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust(RE: related document(s) 4608 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 88 # 2 Exhibit 89) (Annable, Zachery) |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| Vol. 22 008250 | 05/10/2026 | 4612 | (37 pgs; 2 docs) Amended Exhibit List *Second Amended Exhibit List* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4605 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 242) (Rose, Sydney) |
| 008287 | 05/11/2026 | 4613 | (136 pgs; 6 docs) Amended Witness and Exhibit List *(Highland Capital Management, L.P. and the Highland Claimant Trust's Second Amended Witness and Exhibit List with Respect to Hearing to Be Held on May 11, 2026)* filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust (RE: related document(s) 4608 List (witness/exhibit/generic), 4611 List (witness/exhibit/generic), 469 List (witness/generic)). (Attachments: # 1 Exhibit 90 # 2 Exhibit 91 # 3 Exhibit 92 # 4 Exhibit 93 # 5 Exhibit 94) (Annable, Zachery) |
| 008423 | 05/11/2026 | 4614 | (36 pgs; 4 docs) Amended Witness and Exhibit List *(Highland Capital Management, L.P. and the Highland Claimant Trust's Third Amended Witness and Exhibit List with Respect to Hearing to Be Held on May 11, 2026)* filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust (RE: related document(s) 4608 List (witness/exhibit/generic), 4611 List (witness/exhibit/generic), 4613 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 95 # 2 Exhibit 96 # 3 Exhibit 97) (Annable, Zachery) |
| 008459 | 05/11/2026 | 4615 | (7 pgs) Stipulation by Highland Capital Management, L.P., Highland Claimant Trust and The Dugaboy Investment Trust. filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) *and Motion to Vacate*). (Annable, Zachery) |
| Vol. 23 008466 | 05/11/2026 | 4617 | (444 pgs; 23 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 001 # 2 Exhibit 002 # 3 Exhibit 003 # 4 Exhibit 004 # 5 Exhibit 005 # 6 Exhibit 006 # 7 Exhibit 007 # 8 Exhibit 008 # 9 Exhibit 009 # 10 Exhibit 010 # 11 Exhibit 011 # 12 Exhibit 012 # 13 Exhibit 013 # 14 Exhibit 014 # 15 Exhibit 015 # 16 Exhibit 016 # 17 Exhibit 017 # 18 Exhibit 018 # 19 Exhibit 019 # 20 Exhibit 020 # 21 Exhibit 021 # 22 Exhibit 022) (Welker, Avery) |
| Vol. 24 008910 | 05/11/2026 | 4618 | (638 pgs; 14 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 023 # 2 Exhibit 024 # 3 Exhibit 025 # 4 Exhibit 026 # 5 Exhibit 027 # 6 Exhibit 028 |

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| | | # 7 Exhibit 029 # 8 Exhibit 030 # 9 Exhibit 031 # 10 Exhibit 032 # 11 Exhibit 033 # 12 Exhibit 034 # 13 Exhibit 035) (Welker, Avery) |
| 05/11/2026 | 4619 | (314 pgs; 17 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 036 # 2 Exhibit 037 # 3 Exhibit 038 # 4 Exhibit 039 # 5 Exhibit 040 # 6 Exhibit 041 # 7 Exhibit 042 # 8 Exhibit 043 # 9 Exhibit 044 # 10 Exhibit 045 # 11 Exhibit 046 # 12 Exhibit 047 # 13 Exhibit 048 # 14 Exhibit 049 # 15 Exhibit 050 # 16 Exhibit 051) (Welker, Avery) |
| 05/11/2026 | 4620 | (361 pgs; 45 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 052 # 2 Exhibit 053 # 3 Exhibit 054 # 4 Exhibit 055 # 5 Exhibit 056 # 6 Exhibit 057 # 7 Exhibit 058 # 8 Exhibit 059 # 9 Exhibit 060 # 10 Exhibit 061 # 11 Exhibit 062 # 12 Exhibit 063 # 13 Exhibit 064 # 14 Exhibit 065 # 15 Exhibit 066 # 16 Exhibit 067 # 17 Exhibit 068 # 18 Exhibit 069 # 19 Exhibit 070 # 20 Exhibit 071 # 21 Exhibit 072 # 22 Exhibit 073 # 23 Exhibit 074 # 24 Exhibit 075 # 25 Exhibit 076 # 26 Exhibit 077 # 27 Exhibit 078 # 28 Exhibit 079 # 29 Exhibit 080 # 30 Exhibit 081 # 31 Exhibit 082 # 32 Exhibit 083 # 33 Exhibit 084 # 34 Exhibit 085 # 35 Exhibit 086 # 36 Exhibit 087 # 37 Exhibit 088 # 38 Exhibit 089 # 39 Exhibit 090 # 40 Exhibit 091 # 41 Exhibit 092 # 42 Exhibit 093 # 43 Exhibit 094 # 44 Exhibit 095) (Welker, Avery) |
| 05/11/2026 | 4621 | (309 pgs; 46 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 096 # 2 Exhibit 097 # 3 Exhibit 098 # 4 Exhibit 099 # 5 Exhibit 100 # 6 Exhibit 101 # 7 List of 20 Largest Creditors 102 # 8 Exhibit 103 # 9 Exhibit 104 # 10 Exhibit 105 # 11 Exhibit 106 # 12 Exhibit 107 # 13 Exhibit 108 # 14 Exhibit 109 # 15 Exhibit 110 # 16 Exhibit 111 # 17 Exhibit 112 # 18 Exhibit 113 # 19 Exhibit 114 # 20 Exhibit 115 # 21 Exhibit 116 # 22 Exhibit 117 # 23 Exhibit 118 # 24 Exhibit 119 # 25 Exhibit 120 # 26 Exhibit 121 # 27 Exhibit 122 # 28 Exhibit 123 # 29 Exhibit 124 # 30 Exhibit 125 # 31 Exhibit 126 # 32 Exhibit 127 # 33 Exhibit 128 # 34 Exhibit 129 # 35 Exhibit 130 # 36 Exhibit 131 # 37 Exhibit 132 # 38 Exhibit 133 # 39 Exhibit 134 # 40 Exhibit 135 # 41 Exhibit 136 # 42 Exhibit 137 # 43 Exhibit 138 # 44 Exhibit 139 # 45 Exhibit 140) (Welker, Avery) |
| 05/11/2026 | 4622 | (126 pgs; 28 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 141 # 2 |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| Vol. 28 | | | Exhibit 142 # 3 Exhibit 143 # 4 Exhibit 144 # 5 Exhibit 145 # 6 Exhibit 146 # 7 Exhibit 147 # 8 Exhibit 148 # 9 Exhibit 149 # 10 Exhibit 150 # 11 Exhibit 151 # 12 Exhibit 152 # 13 Exhibit 153 # 14 Exhibit 154 # 15 Exhibit 155 # 16 Exhibit 156 # 17 Exhibit 157 # 18 Exhibit 158 # 19 Exhibit 159 # 20 Exhibit 160 # 21 Exhibit 161 # 22 Exhibit 162 # 23 Exhibit 163 # 24 Exhibit 164 # 25 Exhibit 165 # 26 Exhibit 166 # 27 Exhibit 167) (Welker, Avery) |
| 010658 | 05/11/2026 | 4623 | (72 pgs; 4 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 168 # 2 Exhibit 169 # 3 Exhibit 170) (Welker, Avery) |
| Vol. 29 010730 | 05/11/2026 | 4624 | (389 pgs; 24 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 171 # 2 Exhibit 172 # 3 Exhibit 173 # 4 Exhibit 174 # 5 Exhibit 175 # 6 Exhibit 176 # 7 Exhibit 177 # 8 Exhibit 178 # 9 Exhibit 179 # 10 Exhibit 180 # 11 Exhibit 181 # 12 Exhibit 182 # 13 Exhibit 183 # 14 Exhibit 184 # 15 Exhibit 185 # 16 Exhibit 186 # 17 Exhibit 187 # 18 Exhibit 188 # 19 Exhibit 189 # 20 Exhibit 190 # 21 Exhibit 191 # 22 Exhibit 192 # 23 Exhibit 193) (Welker, Avery) |
| Vol. 30 011119 | 05/11/2026 | 4625 | (584 pgs; 13 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 194 # 2 Exhibit 195 # 3 Exhibit 196 # 4 Exhibit 197 # 5 Exhibit 198 # 6 Exhibit 199 # 7 Exhibit 200 # 8 Exhibit 201 # 9 Exhibit 202 # 10 Exhibit 203 # 11 Exhibit 204 # 12 Exhibit 205) (Welker, Avery) |
| Vol. 31 011703 | 05/11/2026 | 4626 | (1469 pgs; 3 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 206 - Part 01 # 2 Exhibit 206 - Part 02) (Welker, Avery) |
| Vol. 32 013172 thru Vol 33 | 05/11/2026 | 4627 | (1685 pgs; 7 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 207 # 2 Exhibit 208 # 3 Exhibit 209 # 4 Exhibit 210 # 5 Exhibit 211 - Part 01 # 6 Exhibit 211 Part 02) (Welker, Avery) |
| Vol. 34 014857 | 05/11/2026 | 4628 | (461 pgs; 18 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 212 # 2 Exhibit 213 # 3 Exhibit 214 # 4 Exhibit 215 # 5 Exhibit 216 # 6 Exhibit 217 |

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| | | # 7 Exhibit 218 # 8 Exhibit 219 # 9 Exhibit 220 # 10 Exhibit 221 # 11 Exhibit 222 # 12 Exhibit 223 # 13 Exhibit 224 # 14 Exhibit 225 # 15 Exhibit 226 # 16 Exhibit 227 # 17 Exhibit 228) (Welker, Avery) |
| Vol. 35 05/11/2026 015318 | 4629 | (156 pgs; 16 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 229 # 2 Exhibit 230 # 3 Exhibit 231 # 4 Exhibit 232 # 5 Exhibit 233 # 6 Exhibit 234 # 7 Exhibit 235 # 8 Exhibit 236 # 9 Exhibit 237 # 10 Exhibit 238 # 11 Exhibit 239 # 12 Exhibit 240 # 13 Exhibit 241 # 14 Exhibit 242 # 15 Exhibit 243) (Welker, Avery) |
| 05/11/2026 015474 | 4643 | (1 pg) Court admitted exhibits date of hearing 5/11/2026 (RE: related document(s) 4630 Hearing continued (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and Motion to Vacate Filed by Partner Dugaboy Investment Trust.) Hearing to be held on 5/12/2026 at 09:00 AM Lubbock Judge Odell Ctrm for 4513,) (Noble, Nicholas) (Entered: 05/13/2026) |
| 05/12/2026 015475 | 4634 | (32 pgs; 2 docs) Amended Exhibit List *Fourth Amended Exhibit List* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4629 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit Exhibit 244) (Welker, Avery) |
| 05/12/2026 015507 | 4635 | (27 pgs; 2 docs) Amended Exhibit List *Fifth Amended Exhibit List* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4634 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit Exhibit 245) (Welker, Avery) |
| 05/12/2026 015534 | 4645 | (1 pg) Court admitted exhibits date of hearing 5/12/2026 (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* Filed by Partner Dugaboy Investment Trust) (Gaddis, John Michael)) (Noble, Nicholas). (Entered: 05/13/2026) |
| 05/15/2026 015535 | 4658 | (3 pgs) Amended Witness List filed by Partner Dugaboy Investment Trust (RE: related document(s) 4605 List (witness/exhibit/generic)). (Harper, Geoffrey) |
| Vol. 36 05/18/2026 015538 | 4659 | (427 pgs; 47 docs) Amended Exhibit List filed by Partner Dugaboy Investment Trust (RE: related document(s) 4605 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 246 # 2 Exhibit 248 # 3 Exhibit 249 # 4 Exhibit 250 # 5 Exhibit 251 # 6 Exhibit 252 # 7 Exhibit 253 # 8 Exhibit 254 # 9 Exhibit 255 # 10 Exhibit 260 # 11 Exhibit 261 # 12 Exhibit 262 # 13 Exhibit 263 # 14 Exhibit 264 # 15 Exhibit 265 # 16 |

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| | | Exhibit 266 # 17 Exhibit 267 - Filed Under Seal # 18 Exhibit 268 - Filed Under Seal # 19 Exhibit 269 - File Under Seal # 20 Exhibit 270 - Filed Under Seal # 21 Exhibit 270 # 22 Exhibit 272 # 23 Exhibit 273 # 24 Exhibit 274 # 25 Exhibit 275 # 26 Exhibit 276 # 27 Exhibit 277 # 28 Exhibit 278 # 29 Exhibit 279 # 30 Exhibit 280 # 31 Exhibit 281 # 32 Exhibit 282 # 33 Exhibit 283 # 34 Exhibit 284 # 35 Exhibit 285 # 36 Exhibit 286 # 37 Exhibit 287 # 38 Exhibit 288 # 39 Exhibit 289 # 40 Exhibit 290 # 41 Exhibit 291 # 42 Exhibit 274 - Native Slipsheet # 43 Exhibit 256 - Native Slipsheet # 44 Exhibit 257 - Native Slipsheet # 45 Exhibit 258 - Native Slipsheet # 46 Exhibit 259 - Native Slipsheet) (Rose, Sydney) |
| Vol. 37 015965 05/18/2026 | 4660 | (12 pgs; 2 docs) Motion to file document under seal. Exhibits 267-270 Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Exhibit A - Proposed Order) (Rose, Sydney) (Entered: 05/19/2026) |
| 05/19/2026 015977 | 4661 | (71 pgs; 6 docs) Support/supplemental document Additional Exhibits filed by Partner Dugaboy Investment Trust (RE: related document(s) 4659 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 247 # 2 Exhibit 256 # 3 Exhibit 257 # 4 Exhibit 258 # 5 Exhibit 259) (Rose, Sydney) |
| 05/20/2026 016048 | 4663 | (3 pgs) Order granting motion for entry of an order authorizing filing of confidential information under seal pursuant to section 107 of the bankruptcy code and federal rule of bankruptcy procedure 9018 (related document # 4660) Entered on 5/20/2026. (Hyden, Kara) |
| 05/20/2026 016051 – 016053 | 4664 | SEALED document regarding: Exhibit 267 - Exhibit 270 per court order filed by Partner Dugaboy Investment Trust (RE: related document(s) 4663 Order on motion to seal). (Attachments: # 1 Exhibit 268 # 2 Exhibit 269 # 3 Exhibit 270) (Rose, Sydney) |
| 05/21/2026 016054 | 4665 | (49 pgs; 4 docs) Amended Witness and Exhibit List *(Highland Capital Management, L.P. and the Highland Claimant Trust's Fourth Amended Witness and Exhibit List with Respect to Hearing to Be Held on May 11, 2026)* filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust (RE: related document(s) 4608 List (witness/exhibit/generic), 4611 List (witness/exhibit/generic), 4613 List (witness/exhibit/generic), 4614 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 98 # 2 Exhibit 99 # 3 Exhibit 300) (Annable, Zachery) |
| 05/21/2026 016103 | 4675 | (1 pg) Court admitted exhibits date of hearing May 21, 2026 (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and Motion to Vacate Filed by Partner |

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| | | Dugaboy Investment Trust (Gaddis, John Michael)) (Wimberley, Shelby) (Entered: 05/28/2026) |
| Vol. 37 016104 05/23/2026 | 4669 | (98 pgs; 2 docs) Amended Exhibit List Dugaboy's Seventh Amended Exhibit List filed by Partner Dugaboy Investment Trust (RE: related document(s) 4659 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit Exhibit 292 - Dugaboy Investment Trust's Closing Presentation (May 21, 2026)) (Welker, Avery) |
| Vol. 38 016202 05/28/2026 | 4673 | (257 pgs; 4 docs) Stipulation by Highland Capital Management, L.P. and Highland Claimant Trust and The Dugaboy Investment Trust. filed by Debtor Highland Capital Management, L.P. (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) *and Motion to Vacate*). (Attachments: # 1 Exhibit 55-A # 2 Exhibit 56-A # 3 Exhibit 57-A) (Hayward, Melissa) |
| 016459 06/15/2026 | 4678 | (14 pgs) Memorandum of opinion (RE: related document(s) 4513 Motion to Reconsider filed by Partner Dugaboy Investment Trust). Entered on 6/15/2026 (Noble, Nicholas) |
| 016473 06/15/2026 | 4679 | (1 pg) Order denying motion to reconsider (related document # 4513) Entered on 6/15/2026. (Noble, Nicholas) |
| 016474 07/13/2026 | 4693 | (2 pgs) Notice regarding the record for a bankruptcy appeal to the U.S. District Court. (RE: related document(s) 4685 Notice of appeal. filed by Partner Dugaboy Investment Trust (RE: related document(s) 4679 Order on motion to reconsider). (Attachments: # 1 Exhibit)) (Whitaker, Sheniqua) |

6. Exhibits 53 and 54 to Dugaboy's Motion for Relief from Order and Motion to Vacate under Federal Rule of Civil Procedure 60(b) [Docket Nos. 4513-56 and 4513-57], which are full-text copies of Judge Stacey G. Jernigan's novels He Watches All My Paths and Hedging Death that were lodged with the Bankruptcy Court; and

7. The following sealed documents to be sent by paper copy to the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 8009(f): Docket Nos. 4664 ("Exhibit 267"), 4664-1 ("Exhibit 268"), 4664-2 ("Exhibit 269"), 4664-3 ("Exhibit 270"), 4525 ("Exhibit I"), and 4525-1 ("Exhibit J");

8. Transcripts of all oral hearings and rulings listed below:

a. Transcript of hearing held April 24, 2026, before Judge Brad W. Odell [Docket No. 4562] re: Motion for protective Order;

b. Transcript of hearing held April 29, 2026 before Judge Brad W. Odell [Docket No. 4581] re: Motion to Continue Discovery Deadlines; and

c. Transcript of hearing held May 11, 12, and 21, 2026, before Judge Brad W. Odell [Docket Nos. 4655, 4662, and 4671] re: Motion for Relief from Order and Motion to Vacate.

Dated: July 31, 2026

Respectfully submitted,

/s/ *Michael J. Edney*
Michael J. Edney
D.C. Bar No. 492024
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
T. (202) 739-3000
F. (202) 739-3001
michael.edney@morganlewis.com

Martha B. Stolley (*pro hac vice*)
New York Bar No. 2965374
MORGAN, LEWIS & BOCKIUS LLP
101 Park Ave.
New York, NY 10178-0060
T. (212) 309-6000
F. (212) 309-6001
martha.stolley@morganlewis.com

Avery Joseph Welker
Texas Bar No. 24137706
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002
T. (713) 890-5000
F. (713) 890-5001
avery.welker@morganlewis.com

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@winston.com
KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

*Counsel for The Dugaboy Investment Trust*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 31, 2026, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

/s/ *Michael J. Edney*
Michael J. Edney

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@kslaw.com
Sydney Rose
Texas Bar No. 24150011
srose@kslaw.com
KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

Michael J. Edney*
D.C. Bar No. 492024
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
T. (202) 739-3000
F. (202) 739-3001
michael.edney@morganlewis.com

Martha B. Stolley (*pro hac vice* pending)
New York Bar No. 2965374
MORGAN, LEWIS & BOCKIUS LLP
101 Park Ave.
New York, NY 10178-0060
T. (212) 309-6000
F. (212) 309-6001
martha.stolley@morganlewis.com

Avery Joseph Welker
Texas Bar No. 24137706
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002
T. (713) 890-5000
F. (713) 890-5001
avery.welker@morganlewis.com

**Admitted to the bar of this Court*

*Counsel for The Dugaboy Investment Trust*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.<br><br>Debtor. | Chapter 11<br><br>Case No. 19-34054 (SGJ) |

**DUGABOY'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING FILING OF CONFIDENTIAL INFORMATION UNDER SEAL PURSUANT TO SECTION 107 OF THE BANKRUPTCY CODE AND FEDEDRAL RULE OF BANKRUPTCY PROCEDURE 9018**

Interested Party The Dugaboy Investment Trust ("Dugaboy") respectfully moves to file certain confidential exhibits under seal for use in the continued May 11, 2026 hearing regarding

its Motion for Relief from Order and Motion to Vacate (Dkt. 4513) ("Hearing"), and states as follows in support of the motion to seal ("Motion to Seal"):

## Request for Relief

1. Dugaboy seeks entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, authorizing the filing under seal of certain exhibits for use in the Hearing. Specifically, Dugaboy seeks to file its Exhibits 267-70, 2021-2024 Forms W2 Wage and Tax Statements of Mark Patrick (hereinafter "Patrick's W2s") under seal.

## Jurisdiction and Venue

2. The United States Bankruptcy Court for the Northern District of Texas (this "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 157.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a) and 107(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 9018 of the Federal Rules of Bankruptcy Procedure, and Rule 9077-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas.

## Background

5. On October 6, 2019, Highland Capital Management, L.P. ("Highland" or the "Debtor") commenced the above-captioned bankruptcy case in the District of Delaware, which was subsequently transferred to this Court. On February 22, 2021, this Court entered the Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Relief [Dkt. No. 1943], which confirmed the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) [Dkt. No. 1943-1] (the "Plan"). The Plan became effective on August 11, 2021 [Dkt.t No. 2700] (the "Effective Date").

6. On June 30, 2025, this Court entered its Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith [Dkt. No. 4297] (the "Rule 9019 Settlement Order").

7. On July 14, 2025, Dugaboy filed a Notice of Appeal of the Rule 9019 Settlement Order [Dkt. No. 4311]. That appeal remains pending before the United States District Court for the Northern District of Texas. *See* Case No. 3:25-cv-01876-K).

8. On February 9, 2026, Dugaboy Filed its Motion for Relief from Order and Motion to Vacate [Docket 4513] (the "Motion for Relief") in this Court, seeking reconsideration of the Rule 9019 Settlement Order pursuant to Federal Rule of Civil Procedure 60(b) and Federal Rule of Bankruptcy Procedure 9024.

9. On May 11 and 12, 2026, this Court held a hearing regarding the Motion for Relief, which this Court continued to May 21 (Dkt. 4637).

10. In connection with Reply, Dugaboy seeks to file under seal certain confidential information contained in Patrick's W2s. An unredacted version of the requested documents will be provided to this Court and the other parties entitled hereto.

**Basis for Relief**

11. Patrick's W2s contain Mark Patrick's personal confidential tax records that are pertinent to the instant proceedings. Public disclosure of the information in Patrick's W2s is prohibited and, therefore, sealing these Exhibits is therefore appropriate to protect the interests of Mr. Patrick while still allowing this Court and other parties entitled thereto to review the materials in connection with the Hearing.

**Notice**

12. The Dugaboy Investment Trust has served notice of this Motion electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case. Dugaboy submits that, in light of the nature of relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank*]

WHEREFORE, Dugaboy respectfully requests entry of the order substantially in the form attached to this Motion, granting the relief requested herein and such further and other relief as the Court deems appropriate.

Dated: May 18, 2026

*<u>/s/ Syndey Rose</u>*
Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@winston.com
Sydney Rose
Texas Bar No. 24150011
srose@kslaw.com
KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

Michael J. Edney*
D.C. Bar No. 492024
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
T. (202) 739-3000
F. (202) 739-3001
michael.edney@morganlewis.com

Martha B. Stolley (*pro hac vice* pending)
New York Bar No. 2965374
MORGAN, LEWIS & BOCKIUS LLP
101 Park Ave.
New York, NY 10178-0060
T. (212) 309-6000
F. (212) 309-6001
martha.stolley@morganlewis.com

Avery Joseph Welker
Texas Bar No. 24137706
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002

T. (713) 890-5000
F. (713) 890-5001
avery.welker@morganlewis.com

**Admitted to the bar of this Court*

*Counsel for The Dugaboy Investment Trust*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 18, 2026, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

*/s/ Sydney Rose* ___
Syndey Rose

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Bankruptcy Rule 7007-1(b), I certify that on May 18, 2026 counsel for Dugaboy attempted to confer by email with counsel for the Highland Entities and counsel for the HMIT Entities, but did not receive a response by the time of this filing.

*/s/ Sydney Rose*___
Syndey Rose

**<u>Exhibit A</u>**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.<br><br>Debtor. | Chapter 11<br><br>Case No. 19-34054-sjg11 |

**[PROPOSED] ORDER GRANTING MOTION FOR ENTRY OF AN ORDER AUTHORIZING FILING OF CONFIDEDNTIAL INFORMATION UNDER SEAL PURSUANT TO SECTION 107 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 9018**

Upon the Motion of The Dugaboy Investment Trust to File Confidential Information Under Seal Pursuant to Section 107 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9018 (the "Motion") filed by The Dugaboy Investment Trust ("Dugaboy") seeking entry of an order (this "Order") authorizing Dugaboy to file Exhibits 267–270 under seal; and this Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. § 157; and this Court having found venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and this Court having found that Dugaboy's notice of the Motion was appropriate under the circumstances and no other notice need be provided; and after due deliberation and sufficient cause appearing therefor, it is ORDERED THAT:

1. The Motion is granted as set forth herein.

2. Dugaboy is authorized to file Exhibits 267–270 under seal pursuant to sections 105(a) and 107(b) of the Bankruptcy Code, Bankruptcy Rule 9018, and Local Rule 9077-1.

3. The only entities permitted to review Exhibit 267–270 are those entities specified herein: (a) the judge presiding over this case; (b) the judge's law clerk(s); (c) the Courtroom Deputy responsible for this case; (d) the Office of the United States Trustee; (e) counsel for Highland Capital Management, L.P.; (f) counsel for the Highland Claimant Trust and the Highland Litigation Sub-Trust; (g) counsel for The Dugaboy Investment Trust; (h) counsel for the HMIT Entities; and (i) any other party to whom Dugaboy has provided or will provide Exhibits 267–270 pursuant to any applicable confidentiality agreement or protective order.

4. Exhibits 267–270 shall remain sealed until the date that is the earlier of (a) two years from the date of entry of this Order and (b) the closing of the above-captioned case, provided, however,

that any party in interest may seek an extension or modification of the time in which Exhibit 2 are sealed by motion to this Court.

5. This Order does not limit the use of Exhibits 267–270 in connection with any party's obligation to refer criminal or ethical violations or otherwise required by law.

6. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

7. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

# # # END OF ORDER # # #

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@kslaw.com
Sydney Rose
Texas Bar No. 24150011
srose@kslaw.com
KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

Michael J. Edney*
D.C. Bar No. 492024
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
T. (202) 739-3000
F. (202) 739-3001
michael.edney@morganlewis.com

Martha B. Stolley (*pro hac vice* pending)
New York Bar No. 2965374
MORGAN, LEWIS & BOCKIUS LLP
101 Park Ave.
New York, NY 10178-0060
T. (212) 309-6000
F. (212) 309-6001
martha.stolley@morganlewis.com

Avery Joseph Welker
Texas Bar No. 24137706
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002
T. (713) 890-5000
F. (713) 890-5001
avery.welker@morganlewis.com

**Admitted to the bar of this Court*

*Counsel for The Dugaboy Investment Trust*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.<br><br>Debtor. | Chapter 11<br><br>Case No. 19-34054 (SGJ) |

**THE DUGABOY INVESTMENT TRUST'S SIXTH AMENDED**
**<u>EXHIBIT LIST FOR THE MAY 11, 2026 HEARING</u>**

COMES NOW, The Dugaboy Investment Trust ("Dugaboy") and files this Sixth Amended Exhibit List for the May 11, 2026 Hearing in the Bankruptcy Case.

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 1 | 12/17/2015 Beacon Mountain / HMIT Trust Agreement | HCM-D10000002-HCM-D10000013 |
| 2 | Settlement Agreement and General Release | 000813-000836 |
| 3 | 6/4/2024 First Affidavit of Mark Patrick | Dkt. 401-2 (21-03076-sgj) |
| 4 | 7/21/2025 [4-33] Original DAF Org Chart | Dkt. 4-33 (25-11376-BLS) |
| 5 | 7/11/2011 Amended and Restated Exempted Limited Partnership Agreement of Charitable DAF Fund, LP | Dkt. 4-36 (25-11376-BLS) |
| 6 | 2/20/2025 Amended and Restated Memorandum and Articles of Association of Charitable DAF HoldCo, Ltd. | Dkt. 4-06 (25-11376-BLS) |
| 7 | 11/9/2023 Shields Work Plan Memorandum | |
| 8 | 12/9/2024 Certificate of Incorporation of DFW Charitable Foundation | Dkt. 4-50 (25-11376-BLS) |
| 9 | 12/12/2024 Certificate of Formation of CDFMCAD, LLC | Dkt. 4-48 (25-11376-BLS) |
| 10 | 12/18/2024 Charitable DAF HoldCo, Ltd. Unanimous Written Resolutions of all of the Directors of the Company | Dkt. 4-45 (25-11376-BLS) |
| 11 | 9/30/2024 Valuation Analysis of 100 Participation Shares of Charitable DAF HoldCo, Ltd. | Dkt. 4-52 (25-11376-BLS) |
| 12 | 3/25/2025 Valuation Analysis of Certain Participation Shares of Charitable DAF HoldCo, Ltd. | Dkt. 4-51 (25-11376-BLS) |
| 13 | 3/27/2025 CDMCFAD, LLC Redemption and Amendment No. 2 Agreement | Dkt. 4-55 (25-11376-BLS) |
| 14 | 8/12/2022 HMIT Appointment of Successor Administrator | HCM-D100000330 |
| 15 | 2/12/2025 Membership Interest Purchase Agreement | HCM-D10000021-HCM-D10000036 |
| 16 | 2/12/2025 Member Consent of Beacon Mountain | HCM-D10000019-HCM-D10000020 |
| 17 | 11/30/2015 Amended and Restated Limited Partnership Agreement of Atlas IDF, LP | |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 18 | 6/26/2025 Audit of RAND PE Fund I, LP | HMIT_Entities_000022-HMIT_Entities_000039 |
| 19 | 3/6/2024 DAF Structure Chart in 2024 and 2025 | |
| 20 | 12/17/2015 Beacon Mountain / HMIT Trust Agreement | |
| 21 | 12/2015-8/2022 Rand Structure Chart | |
| 22 | 2/12/2025 Feb. and May 2025 Rand Structure Chart | |
| 23 | 10/15/2019 Empower Dallas Foundation, Inc. Partial Surrender Request | |
| 24 | 2/22/2021 Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Related Relief | Dkt. 1943 (19-34054-sgj11) |
| 25 | 4/8/2025 Email regarding Settlement Agreement | HCMLPHMIT00000656-HCMLPHMIT00000661 |
| 26 | 12/16/2015 Crown Global Deferred Variable Annuity Policy for Empower Dallas Foundation, Inc. | |
| 27 | 11/30/2015 Participation Agreement between Crown Global Life Insurance Ltd. and Other Entities | |
| 28 | 9/12/2025 First Affidavit of Mark Eric Patrick | |
| 29 | 10/21/2025 Post-Confirmation Report Reorganized Debtor – Quarter Ending Date 9/30/2025 | Dkt. 4438 (19-34054-sgj11) |
| 30 | 10/21/2025 Post-Confirmation Report for Highland Claimant Trust – Quarter Ending 9/30/2025 | Dkt. 4439 (19-34054-sgj11) |
| 31 | 1/21/2026 Post-Confirmation Report Reorganized Debtor – Quarter Ending Date 12/31/2025 | Dkt. 4503 (19-34054-sgj11) |
| 32 | 1/21/2026 Post-Confirmation Report for Highland Claimant Trust – Quarter Ending 12/31/2025 | Dkt. 4504 (19-34054-sgj11) |
| 33 | 4/20/2026 Post-Confirmation Report Reorganized Debtor – Quarter Ending Date 3/31/2026 | Dkt. 4552 (19-34054-sgj11) |
| 34 | 4/20/2026 Post-Confirmation Report for Highland Claimant Trust – Quarter Ending 3/31/2026 | Dkt. 4553 (19-34054-sgj11) |
| 35 | 6/25/2025 Hearing Transcript for Case No. 19-34054-sgj-11 | |
| 36 | 4/16/2025 Affidavit of James David Dondero | Dkt. 4534-7 (19-34054-sgj11) |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 37 | 6/9/2025 Preliminary Objection of the Dugaboy Investment Trust to the Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 USC § 363 Approving Settlement with the HMIT Entities | Dkt. 4230 (19-34054-sgj11) |
| 38 | HMIT Structure as of 8/12/2022 – 2/12/2025 | |
| 39 | 2/6/2025 Letter to Dolomiti LLC re Notice of Your Withdrawal from Rand PE Fund I, L.P. | |
| 40 | 2024 Tax Form 990 – Highland Dallas Foundation Inc. | Dkt. 4556-2 (19-34054-sgj11) |
| 41 | 3/27/2025 Admission and Amendment to No. 1 Agreement | Dkt. 4-54 (25-11376-BLS) |
| 42 | 12/12/2024 Certificate of Formation of CDMCFAD, LLC | Dkt. 4-48 (25-11376-BLS) |
| 43 | 2/7/2015 Unanimous Written Resolutions of the Board of Directors of the Company for Charitable DAF HoldCo, Ltd. | Dkt. 4-22 (25-11376-BLS) |
| 44 | 12/18/2024 Unanimous Written Resolutions of all of the Directors of the Company passed on 18 December 2024 in accordance with the Articles of Association of the Company for Charitable DAF HoldCo, Ltd. | Dkt. 4-45 (25-11376-BLS) |
| 45 | 4/2/2025 Written Resolutions of the Directors of the Company for Charitable DAF HoldCo, Ltd. | Dkt. 4-47 (25-11376-BLS) |
| 46 | 12/9/2024 Certificate of Incorporation of DFW Charitable Foundation | Dkt. 4-50 (25-11376-BLS) |
| 47 | 7/21/2025 Defendants' Motion to Dismiss and Plea to the Jurisdiction filed in Cause No. 25-BC-01B-0027, The Highland Foundation, Inc. et al. v. Mark Patrick, et al., The Business Court of Texas, First Division | Dkt. 4-91 (25-11376-BLS) |
| 48 | 3/27/2025 Redemption and Amendment No. 2 Agreement | Dkt. 4-55 (25-11376-BLS) |
| 49 | 3/25/2025 Valuation Analysis of Certain Participation Shares of Charitable DAF HoldCo, Ltd. | Dkt. 4-51 (25-11376-BLS) |
| 50 | 9/30/2024 Valuation Analysis of 100 Participation Shars of Charitable DAF HoldCo, Ltd. | Dkt. 4-52 (25-11376-BLS) |
| 51 | 3/7/2024 Written Consent of the Managing Member of Charitable DAF GP, LLC | Dkt. 4-38 (25-11376-BLS) |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 52 | 6/9/2025 Email from David Klos of Highland Capital Management to Jim Seery | HCM-D10000001- HCM-D10000001 |
| 53 | Trust Agreement establishes Hunter Mountain Investment Trust (HMIT) on December 17, 2015 | HCM-D10000002- HCM-D10000013 |
| 54 | Email chain regarding the sale of Class C limited partnership interests from Highland Capital Management, L.P. to Hunter Mountain Investment Trust. Mark Patrick | HCM-D10000014- HCM-D10000015 |
| 55 | Email from Highland Capital Management requests corporate formation documents for Charitable DAF Holdings Corp. from Wolters Kluwer. | HCM-D10000016- HCM-D10000016 |
| 56 | Email chain from Highland Capital Management requests corporate formation documents for Charitable DAF Holdings Corp. from Wolters Kluwer | HCM-D10000017- HCM-D10000018 |
| 57 | CLO Holdco, LLC's purchase of all membership interests in Beacon Mountain, LLC from Rand PE Fund I, L.P. | HCM-D10000019- HCM-D10000020 |
| 58 | Membership Interest Purchase Agreement - | HCM-D10000021- HCM-D10000036 |
| 59 | Organizational structure of HMIT entities before and after February 12, 2025. | HCM-D10000037- HCM-D10000038 |
| 60 | Investment Management Agreement -establishes Rand Advisors, LLC as the investment manager for Atlas IDF, LP. | HCM-D10000039- HCM-D10000045 |
| 61 | Investment Management Agreement - establishes Rand Advisors, LLC as the investment manager for Rand PE Fund I, L.P. | HCM-D10000046- HCM-D10000052 |
| 62 | Register of Members for CLO Holdco, Ltd. | HCM-D10000053- HCM-D10000055 |
| 63 | Unanimous Written Consent - executed by Mark Patrick as sole director of Rand Advisors Holding Corp. | HCM-D10000056- HCM-D10000069 |
| 64 | Charitable DAF Fund, LP transferred DAF Holdings stock to CLO HoldCo, Ltd | HCM-D10000070- HCM-D10000072 |
| 65 | Register of Members for Liberty CLO Holdco, Ltd. CLO Holdco, Ltd. | HCM-D10000073- HCM-D10000073 |
| 66 | Limited Liability Company Agreement - establishing Liberty CLO Holdco, LLC as a Delaware limited liability company. | HCM-D10000074- HCM-D10000090 |
| 67 | Register for CDH GP, Ltd. | HCM-D10000091- HCM-D10000091 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 68 | Register of Members for CDH GP, Ltd. | HCM-D10000092- HCM-D10000092 |
| 69 | Register for CLO HoldCo, Ltd. | HCM-D10000093- HCM-D10000094 |
| 70 | Register of General Partners for Charitable DAF Fund, LP. | HCM-D10000095- HCM-D10000095 |
| 71 | Register of Limited Partners for Charitable DAF Fund, LP | HCM-D10000096- HCM-D10000096 |
| 72 | Limited Liability Company Agreement for CDMCFAD, LLC. | HCM-D10000097- HCM-D10000124 |
| 73 | Collation of various documents including resolutions from CDMCFAD, LLC, and a March 2025 letter from Seyfarth Shaw LLP to the IRS reporting potential tax violations by Highland Dallas Foundation, Inc. (Jim Dondero). | HCM-D10000125- HCM-D10000251 |
| 74 | Letter from three Highland foundations to Paul Murphy | HCM-D10000264- HCM-D10000265 |
| 75 | Email exchange concerning a $500,000 wire transfer payment made pursuant to a settlement agreement. David Klos, representing Highland Capital Management, sent the payment reference to Hunter Mountain. | HCM-D10000266- HCM-D10000267 |
| 76 | Email exchange concerning a $500,000 wire transfer payment made pursuant to a settlement agreement. David Klos, representing Highland Capital Management, sent the payment reference to Hunter Mountain. | HCM-D10000268- HCM-D10000269 |
| 77 | Email chain between K. Hendrix and J. Seery, et al. | HCM-D10000270- HCM-D10000271 |
| 78 | Email chain James Seery to Mark Patrick and Shawn Raver | HCM-D10000272- HCM-D10000272 |
| 79 | Email chain from Shawn Raver to J. Seery, et al. | HCM-D10000273- HCM-D10000273 |
| 80 | Email chain from M. Tax to S. Raver, et al. | HCM-D10000274- HCM-D10000274 |
| 81 | Email chain from K. Hendrix to S. Raver, et al. | HCM-D10000275- HCM-D10000276 |
| 82 | Email chain from S. Raver to K. Hendrix, et al. | HCM-D10000277- HCM-D10000278 |
| 83 | Email chain from S. Raver to M. Tax, et al. | HCM-D10000279- HCM-D10000280 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 84 | Note Elevation and Assignment Agreement | HCM-D10000281-HCM-D10000301 |
| 85 | Email from A. Hurt to T. Cournoyer, et al. | HCM-D10000302-HCM-D10000303 |
| 86 | Letter to Dugaboy Investment Trust | HCM-D10000304-HCM-D10000308 |
| 87 | Claims Assignment Agreement | HCM-D10000309-HCM-D10000315 |
| 88 | Email from David Klos at Highland Capital Management to James Seery | HCM-D10000316-HCM-D10000316 |
| 89 | Trust Agreement establishes the Hunter Mountain Investment Trust on December 17, 2015 | HCM-D10000317-HCM-D10000328 |
| 90 | Email from David Klos of Highland Capital Management to Jim Seery | HCM-D10000329-HCM-D10000329 |
| 91 | 8/12/2022 HMIT Appointment of Successor Administrator | HCM-D10000330-HCM-D10000330 |
| 92 | Email from K. Hendrix to A. Gunther, et al. | HCM-D10000331-HCM-D10000332 |
| 93 | Email from K. Hendrix to D. Klos, et al. | HCM-D10000333-HCM-D10000334 |
| 94 | Letter from Campbells LLP to James Seery (CEO of Highland Capital Management, L.P.) and Marc Kirschner | HCM-D10000335-HCM-D10000338 |
| 95 | Email chain from A. Kapuria to S. Raver, et al. | HMIT_Entities_000001-HMIT_Entities_000006 |
| 96 | Email chain from K. Jackson to S. Raver, et al. | HMIT_Entities_000007-HMIT_Entities_000010 |
| 97 | Email chain from S. Reynolds to S. Raver, et al. | HMIT_Entities_000011-HMIT_Entities_000015 |
| 98 | Email from Chris Rice to K. Jackson, et al. | HMIT_Entities_000016-HMIT_Entities_000020 |
| 99 | Email from Chris Rice to S. Raver, et al. | HMIT Entities 000021-HMIT Entities 000021 |
| 100 | Audited financial statements for Rand PE Fund I, L.P. | HMIT_Entities_000022-HMIT_Entities_000039 |
| 101 | Email chain from K. Jackson to S. Raver | HMIT_Entities_000040-HMIT_Entities_000043 |
| 102 | Email chain between Crown Global Insurance and Rand Advisors. | HMIT_Entities_000044-HMIT_Entities_000047 |

| **Dugaboy Exhibit No.** | **Description** | **Bates or Dkt. No.** |
|---|---|---|
| 103 | Email chain between Crown Global Insurance and Rand Advisors | HMIT Entities_000048-HMIT Entities 000051 |
| 104 | Email chain between Crown Global Insurance and Rand Advisors. | HMIT_Entities_000052-HMIT_Entities_000054 |
| 105 | Email chain between Crown Global Insurance and Rand Advisors. | HMIT Entities 000055-HMIT Entities 000057 |
| 106 | Email chain between Crown Global Insurance and Rand Advisors | HMIT Entities 000058-HMIT Entities 000058 |
| 107 | Email chain between Crown Global Insurance and Rand Advisors. | HMIT Entities 000059-HMIT Entities 000059 |
| 108 | Email chain between Crown Global Insurance and Rand Advisors. | HMIT_Entities_000060-HMIT_Entities_000060 |
| 109 | Email chain between Crown Global Insurance and Rand Advisors | HMIT Entities 000061-HMIT Entities 000061 |
| 110 | Email chain between Crown Global Insurance and Rand Advisors | HMIT Entities 000062-HMIT Entities 000063 |
| 111 | Email chain between Crown Global Insurance and Rand Advisors | HMIT_Entities_000064-HMIT_Entities_000065 |
| 112 | Email from Robert Kipp to M. Patrick, et al. | HMIT Entities 000066-HMIT Entities 000066 |
| 113 | Email chain from A. Gunther to S. Raver, et al. | HMIT Entities 000067-HMIT Entities 000070 |
| 114 | Email chain from S. Raver to A. Gunther, et al. | HMIT_Entities_000071-HMIT_Entities_000074 |
| 115 | Email chain from S. Raver to K. Hendrix, et al. | HMIT_Entities_000075-HMIT_Entities_000076 |
| 116 | Email chain from S. Raver to J. Seery, et al. | HMIT Entities 000077-HMIT Entities 000078 |
| 117 | Email from C. Rice to S. Raver, et al. | HMIT Entities_000079-HMIT Entities_000079 |
| 118 | Bloomberg invoice | HMIT Entities 000080-HMIT Entities 000080 |
| 119 | Email thread with S&P Global | HMIT_Entities_000081-HMIT_Entities_000083 |
| 120 | S&P Global invoice | HMIT Entities_000084-HMIT Entities_000084 |
| 121 | Email exchange between auditors Chris Rice (NexPoint Services) and Patrick Casale (Cohen & Co) | HMIT Entities_000085-HMIT Entities_000086 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 122 | Financial statement audit | HMIT_Entities_000087-HMIT_Entities_000103 |
| 123 | Email chain C. Rice to S. Raver | HMIT_Entities_000104-HMIT_Entities_000114 |
| 124 | Email chain from S. Raver to C. Rice | HMIT_Entities_000115-HMIT_Entities_000124 |
| 125 | Email from K. Longwell to M. Tax, et al. | HMIT Entities_000125-HMIT Entities_000125 |
| 126 | Civil Investigative Demand issued by the Texas Attorney General's Office to Hunter Mountain Investment Trust (HMIT) on July 14, 2025 | HMIT_Entities_000126-HMIT_Entities_000133 |
| 127 | Email from K. Longwell to M. Tax, et al. | HMIT Entities 000134-HMIT Entities 000134 |
| 128 | Dkt. 23, Notice of Hearing dated 8/27/2025 | HMIT_Entities_000135-HMIT_Entities_000254 |
| 129 | Email chain from S. Raver to K. Hendrix, et al. | HMIT_Entities_000260-HMIT_Entities_000261 |
| 130 | Email chain from D. Klos to K. Hendrix, et al. | HMIT_Entities_000262-HMIT_Entities_000263 |
| 131 | Email chain from M. Tax to J. Seery, et al. | HMIT_Entities_000264-HMIT_Entities_000264 |
| 132 | Email chain from K. Hendrix to S. Raver, et al. | HMIT_Entities_000265-HMIT_Entities_000266 |
| 133 | Email chain from K. Hendrix to A. Gunther, et al. | HMIT_Entities_000267-HMIT_Entities_000268 |
| 134 | DAF entity structure | VALUESCOPE 000001-VALUESCOPE 000001 |
| 135 | DAF/Rand entity structure | VALUESCOPE_000002-VALUESCOPE_000002 |
| 136 | Law firm forwards legal filing to Mark Patrick (DAF HoldCo) re Chapter 15 filing | VALUESCOPE_000003-VALUESCOPE_000007 |
| 137 | Chapter 15 Petition filing | VALUESCOPE_000008-VALUESCOPE_000026 |
| 138 | Charitable DAF Org structure | VALUESCOPE_000027-VALUESCOPE_000027 |
| 139 | Letter from Reed Smith LLP | VALUESCOPE_000028-VALUESCOPE_000029 |
| 140 | ValueScope, LLC Response | VALUESCOPE_000030-VALUESCOPE_000030 |
| 141 | Certificate of Incorporation, Charitable DAF HoldCo, Ltd. | TDIT004698 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 142 | Legal Relationship Agreement, Highland Kansas City Foundation | TDIT003396–TDIT003398 |
| 143 | Supporting Organization Operating Agreement - Highland Dallas Foundation, Inc. | TDIT003399–TDIT003406 |
| 144 | Supporting Organization Operating Agreement - Highland Santa Barbara Foundation, Inc. | TDIT003407–TDIT003413 |
| 145 | Letter - Highland Dallas Foundation, Inc. | TDIT003389–TDIT003390 |
| 146 | Letter - Highland Santa Barbara Foundation, Inc. | TDIT003391–TDIT003393 |
| 147 | Letter - Highland Kansas City Foundation, Inc. | TDIT003394–TDIT003395 |
| 148 | Employment Agreement - Mark Patrick | TDIT003971–TDIT003988 |
| 149 | Director Services Agreement - Charitable DAF HoldCo, Ltd. | TDIT011256–TDIT011268 |
| 150 | Memo - Harneys (H&B) | TDIT004274–TDIT004278 |
| 151 | Invoice - G.K. Management Limited | TDIT011038–TDIT011039 |
| 152 | Invoice - G.K. Management Limited | TDIT011040 |
| 153 | Invoice - G.K. Management Limited | TDIT011041 |
| 154 | Director Services Agreement - Charitable DAF HoldCo, Ltd. | TDIT011058–TDIT011062 |
| 155 | Certificate of Incorporation - Highland Kansas City Foundation, Inc. | TDIT003304–TDIT003306 |
| 156 | Certificate of Incorporation - Highland Dallas Foundation, Inc. | TDIT003326–TDIT003328 |
| 157 | Certificate of Incorporation - Highland Santa Barbara Foundation, Inc. | TDIT003344–TDIT003346 |
| 158 | Invoice - G.K. Management Limited | TDIT011042–TDIT011043 |
| 159 | Invoice - G.K. Management Limited | TDIT011044–TDIT011045 |
| 160 | Invoice - G.K. Management Limited | TDIT011046–TDIT011047 |
| 161 | Invoice - G.K. Management Limited | TDIT011048–TDIT011049 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 162 | Invoice - G.K. Management Limited | TDIT011050–TDIT011051 |
| 163 | Invoice - G.K. Management Limited | TDIT011052–TDIT011053 |
| 164 | Invoice - G.K. Management Limited | TDIT011054–TDIT011055 |
| 165 | Expense Reimbursement - G.K. Management Limited | TDIT011056–TDIT011057 |
| 166 | Director Services Agreement - Charitable DAF HoldCo, Ltd. | TDIT011088–TDIT011092 |
| 167 | Memorandum – Work Plan - Shields Legal Group | TDIT004699–TDIT004706 |
| 168 | Articles of Association - Charitable DAF HoldCo, Ltd. | TDIT011093–TDIT011128 |
| 169 | Email - Shields Legal Group | TDIT003704 |
| 170 | Limited Partnership Agreement - Charitable DAF Fund, LP | TDIT003414–TDIT003431 |
| 171 | ValueScope Report - ValueScope, Inc. | TDIT004017–TDIT004075 |
| 172 | Expense Report - CLO HoldCo, Ltd. | TDIT003432–TDIT003435 |
| 173 | Audited Financial Statements - Highland Santa Barbara Foundation, Inc. | TDIT003989–TDIT004016 |
| 174 | Resolution of the Directors - Mark Patrick | TDIT003961–TDIT003962 |
| 175 | Resolution of the Directors - Mark Patrick | TDIT003963–TDIT003970 |
| 176 | Written Resolution - Charitable DAF HoldCo, Ltd. | TDIT011129–TDIT011136 |
| 177 | Director Services Agreement - Charitable DAF HoldCo, Ltd. | TDIT011137–TDIT011150 |
| 178 | Letter - Highland Dallas Foundation, Inc. | TDIT003707–TDIT003708 |
| 179 | Email - Paul Murphy | TDIT003709–TDIT003713 |
| 180 | Email - Walkers | TDIT003714–TDIT003719 |
| 181 | Certificate of Incorporation - DFW Charitable Foundation | TDIT003701–TDIT003703 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 182 | Director Services Agreement - Charitable DAF HoldCo, Ltd. | TDIT011151–TDIT011164 |
| 183 | Written Resolution - Charitable DAF HoldCo, Ltd. | TDIT011165–TDIT011170 |
| 184 | Resolution - Charitable DAF HoldCo, Ltd. | TDIT003720–TDIT003726 |
| 185 | Assignment - Charitable DAF HoldCo, Ltd. | TDIT003727–TDIT003732 |
| 186 | Agreement - CDMCFAD, LLC | TDIT003733–TDIT003760 |
| 187 | Email - David N. Corkern | TDIT003791–TDIT003792 |
| 188 | ValueScope Report - ValueScope, LLC | TDIT004076–TDIT004130 |
| 189 | Draft Legal Advice - Walkers | TDIT003761–TDIT003765 |
| 190 | Share Issuance Resolution - Charitable DAF HoldCo, Ltd. | TDIT003766–TDIT003790 |
| 191 | Email - PricewaterhouseCoopers (PwC) | TDIT004305–TDIT004323 |
| 192 | Memorandum and Articles of Association - Charitable DAF HoldCo, Ltd. | TDIT003267–TDIT003303 |
| 193 | Form ADV - Rand Advisors, LLC | TDIT003646–TDIT003674 |
| 194 | Brochure - Rand Advisors, LLC | TDIT003675–TDIT003700 |
| 195 | Email - Mark Patrick | TDIT004324–TDIT004340 |
| 196 | ValueScope Report - ValueScope, LLC | TDIT004131–TDIT004205 |
| 197 | Email - FTI Consulting | TDIT004341–TDIT004358 |
| 198 | Director Services Agreement - CDMCFAD, LLC | TDIT011171–TDIT011185 |
| 199 | Resolution of the Directors - Charitable DAF HoldCo, Ltd. | TDIT003955–TDIT003957 |
| 200 | Resolution of the Directors - Charitable DAF HoldCo, Ltd. | TDIT003958–TDIT003959 |
| 201 | Prospectus - NexPoint Real Estate Strategies Fund | TDIT003463–TDIT003599 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 202 | Proxy Statement - NexPoint Capital, Inc. | TDIT003440–TDIT003462 |
| 203 | Written Resolution - CLO HoldCo, Ltd. | TDIT011196–TDIT011197 |
| 204 | Texas Petition - Highland Dallas Foundation, Inc. | TDIT004443–TDIT004688 |
| 205 | Rule 11 Agreement - Highland Dallas Foundation, Inc. | TDIT004693–TDIT004695 |
| 206 | Exhibit Index to Affidavit - Margot MacInnis | TDIT003261-TDIT004712 |
| 207 | Affidavit - Jim Dondero Dugaboy Investment Trust | TDIT004713-TDIT004778 |
| 208 | Texas Petition (Amended) - Highland Dallas Foundation, Inc. | TDIT006527–TDIT006580 |
| 209 | Liquidator's Certificate - Margot MacInnis (JOL) | TDIT006492 |
| 210 | Form ADV - Mark Patrick, Rand PE Fund | TDIT006581-TDIT006609 |
| 211 | Affidavit & Exhibit Index - Margot MacInnis | TDIT004967-TDIT006484 |
| 212 | Affidavit & Exhibit Index | TDIT006485-TDIT006580 |
| 213 | Post-Confirmation Quarterly Report - Highland Capital Management L.P. | TDIT011394-TDIT011405 |
| 214 | Post-Confirmation Quarterly Report - Highland Capital Management L.P. | TDIT011382-TDIT011393 |
| 215 | Objection filed by James D. Dondero, Dugaboy Investment Trust | TDIT011425-TDIT011443 |
| 216 | Objection filed by Highland Dallas Foundation, Inc. Grant James Scott III | TDIT011444-TDIT011475 |
| 217 | Objection filed by James D. Dondero, Dugaboy Investment Trust | TDIT011476-TDIT011509 |
| 218 | Supplemental Declaration - DFW Charitable Foundation CDMCFAD LLC | TDIT004869-TDIT004945 |
| 219 | Trust Agreement establishes Hunter Mountain Investment Trust (HMIT) | TDIT006664-TDIT006675 |
| 220 | Affirmation by Mark Patrick | TDIT010529-TDIT010532 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 221 | Operating agreement between Highland Dallas Foundation, Inc. and The Dallas Foundation. | TDIT011406-TDIT011406 |
| 222 | Email exchange between Michael Stockham and Paul Murphy | TDIT010831-TDIT010840 |
| 223 | Form ADV Instructions - None | TDIT006628-TDIT006663 |
| 224 | Declaration by Caroline Maron | TDIT004846-TDIT004868 |
| 225 | Email from Louis M. Phillips requesting execution of two letters with attached documents | TDIT011318-TDIT011323 |
| 226 | Auditor's Report - Highland Capital Management L.P. | TDIT006610-TDIT006627 |
| 227 | Email chain from March 2025 | TDIT011407-TDIT011424 |
| 228 | Amended and Restated Limited Partnership Agreement - Atlas IDF LP | TDIT004779-TDIT004812 |
| 229 | Participation Agreement establishes the framework for Crown Global Life Insurance Ltd to purchase | TDIT004813-TDIT004845 |
| 230 | Investment Management Agreement - Rand PE Fund I | TDIT004946-TDIT004952 |
| 231 | Investment Management Agreement - Rand PE Fund I, L.P. | TDIT004953-TDIT004959 |
| 232 | Limited Partnership Agreement - Rand PE Fund | TDIT004960-TDIT004966 |
| 233 | By-Laws - Highland Kansas City Foundation, Inc. | TDIT003307–TDIT003325 |
| 234 | By-Laws - Highland Dallas Foundation, Inc. | TDIT003329–TDIT003343 |
| 235 | By-Laws - Highland Santa Barbara Foundation, Inc. | TDIT003347–TDIT003361 |
| 236 | Organizational Procedures - Greater Kansas City Community Foundation | TDIT003362–TDIT003388 |
| 237 | Structure Chart - Charitable DAF HoldCo, Ltd. | TDIT003705 |
| 238 | Structure Chart - Charitable DAF HoldCo, Ltd. | TDIT003706 |
| 239 | Expenses Table - Charitable DAF HoldCo, Ltd. | TDIT003960 |
| 240 | Delaware Division of Corporations Search Results - DFW Charitable Foundation | TDIT004696 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 241 | Delaware Division of Corporations Search Results - CDMCFAD, LLC | TDIT004697 |
| 242 | Demonstrative: DAF-Rand Structure Chart | |
| 243 | Certificate of Incorporation of CDH GP, Ltd. | Dkt. 4-95 (25-11376-BLS) |
| 244 | April 27, 2025 Email Exchange Between Mark Patrick and Geoffrey Sykes | |
| 245 | 2024.12.04 - Murphy Presentation re Shareholders Rights | Dkt. 4-87 (25-11376-BLS) |
| 246 | Affirmation of Patrick ISO Motion to Dismiss | NYSCEF DOC. NO. 278 |
| 247 | 12.31.24 Rand PE Fund I Audit Schedules | |
| 248 | 2023 Annual Certification and Conflicts of Interest Disclosure | |
| 249 | 2023 Annual Compliance Training -Skyview Group Excerpt | |
| 250 | 2023.12.12 Skyview In Person | |
| 251 | 2024.10.2 DAF Termination of Skyview Services Agreement | |
| 252 | 2024.10.2 Patrick Resignation Letter | |
| 253 | Empower Dallas Foundation Director Consent 11.25.2025 | |
| 254 | Compliance Manual Excerpt - Insider Trading Policy | |
| 255 | DAF Structure Chart | |
| 256 | DAF Trustee Fees (1) | |
| 257 | DAF Trustee Fees (2) (1) | |
| 258 | DAF Trustee Fees (2) | |
| 259 | DAF Trustee Fees | |
| 260 | Dkt. 4 - MacInnis Dec - Ex. 57 | Dkt. 4-58 (25-11376-BLS) |
| 261 | Dkt. 4 - MacInnis Dec - Ex. 58 | Dkt. 4-59 (25-11376-BLS) |
| 262 | EDF Second Amended and Restated Bylaws 12.31.2024 (executed) | |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 263 | Fwd EXTERNAL-Q3 2024 Charitable DAF Holdco Valuation | |
| 264 | HCM Dkt. 167 | 3:21-cv-00881-X Dkt. 167 |
| 265 | Highland 2547 (select exhibits) | Dkt. 2547 (19-34054-sgj11) |
| 266 | Letter from Atlas IDF GP, LLC - March 31, 2026 | |
| 267 | Mark Patrick 2021 W-2 | |
| 268 | Mark Patrick 2022 W-2 | |
| 269 | Mark Patrick 2023 W-2 Skyview Group | |
| 270 | Mark Patrick 2024 W-2 Skyview Group | |
| 271 | Mark Patrick Manager Evaluation 2022.pdf | |
| 272 | NHT (1) | |
| 273 | NHT Embedded Put Option Letter 06.29.2020 | |
| 274 | NHT on RL as of October 11, 2024 | |
| 275 | NHT | |
| 276 | Q1 2024 - Questionnaire and Transactions Certification | |
| 277 | Q2 2024 - Questionnaire and Transactions Certification | |
| 278 | Q4 2023 - Questionnaire and Transactions Certification | |
| 279 | Email regarding 2024 Foundation information request | |
| 280 | Email regarding DAF Trustee Fee | |
| 281 | Email regarding FW_ DAF Quarterly 3.31.22 | |
| 282 | Email regarding FW_ DAF Quarterly 3.31.22 | |
| 283 | Email regarding Management Agreements | |
| 284 | Email regarding NDA | |
| 285 | Email regarding Q1 2023 Trustee Fees | |
| 286 | Email regarding Q2 Valuation & Trustee Fees | |
| 287 | Email regarding Q2 Valuation & Trustee Fees | |
| 288 | Email regarding Q3 2021 Trustee Fees | |
| 289 | Email regarding Q4 2021 DAF Valuation Report & Trustee Fees | |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 290 | Charitable DAF Fund, L.P. letter to SEC | |
| 291 | The Dallas Foundation and Affiliates Consolidated Financial Report Year Ended December 31, 2023 | |

Dugaboy also reserves the right to introduce any exhibit designated by any other party, to supplement and/or amend its Exhibit List, to introduce any rebuttal exhibits, and to not use any such exhibits during the evidentiary hearing in response to the circumstances of the hearing.

Dated: May 18, 2026

Respectfully submitted,

*/s/ Sydney Rose*

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@winston.com
Sydney Rose
Texas Bar No. 24150011
srose@kslaw.com
KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

Michael J. Edney*
D.C. Bar No. 492024
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
T. (202) 739-3000
F. (202) 739-3001
michael.edney@morganlewis.com

Martha B. Stolley (*pro hac vice* pending)
New York Bar No. 2965374
MORGAN, LEWIS & BOCKIUS LLP

101 Park Ave.
New York, NY 10178-0060
T. (212) 309-6000
F. (212) 309-6001
martha.stolley@morganlewis.com

Avery Joseph Welker
Texas Bar No. 24137706
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002
T. (713) 890-5000
F. (713) 890-5001
avery.welker@morganlewis.com

**Admitted to the bar of this Court*

*Counsel for The Dugaboy Investment Trust*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 18, 2026, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

*/s/ Syndey Rose*
Sydney Rose

# EXHIBIT 247

**Rand PE Fund I, LP**
**Statement of Assets, Liabilities, and Partners' Capital**
**As of December 31, 2024**

12/31/2024

**LINKS**
- **caproll**

| | December 31,2024 | February 24, 2025 (liquidation date) | | |
|---|---|---|---|---|
| **Assets** | | | | |
| Investment, at fair value (cost $15,986,892 and $0, respectively) | $ 1,000,000 | $ - | | 15,986,892.02 Investment Cost |
| Cash and cash equivalents | 19,891 | 1,019,678 | | |
| Total assets | $ 1,019,891 | $ 1,019,678 | | |
| **Liabilities** | | | | |
| Accrued expenses | $ 43,900 | $ 69,965 | - | |
| Distributions payable | - | 949,713 | | |
| Total liabilities | 43,900 | 1,019,678 | | |
| **Partners' capital** | 975,991 | - | | |
| Total liabilities and partners' capital | $ 1,019,891 | $ 1,019,678 | - | |
| | | | | check to PC |
| | | | - | check to CapRoll |

*(U.S. dollars, in thousands)*

| Ownership Percentage | Description | Fair Value | % of Partners' Capital |
|---|---|---|---|
| | **Investment in LLC interests** | | |
| | United States | | |
| | Financial | | |
| 100% | *Beacon Mountain, LLC (cost $15,986,892)* | $ 1,000,000 | 102.46% |
| | **Total Investment (cost $15,986,892)** | $ 1,000,000 | 102.46% |

**Rand PE Fund I, LP**
**Statement of Operations**
**For the year ended December 31, 2023**

| | Year ended December 31, 2024 | Period ended February 24, 2025 (liquidation date) | |
|---|---|---|---|
| **Investment income and expenses** | | | |
| **Income** | | | |
| Investment income | $ - | $ - | |
| **Expenses** | | | |
| Professional fees | 43,900 | 25,000 | |
| Custodian fees | 2,650 | 1,278 | |
| Other expense | - | - | |
| Total expenses | 46,550 | 26,278 | 2327.5 |
| Net investment loss | (46,550) | (26,278) | |
| **Realized gain** | | | |
| Net realized loss from settlement income | (52,242) | - | |
| Net realized loss on investments | - | (14,986,892) | |
| Net change in unrealized depreciation on investments | 1,000,000 | 14,986,892 | |
| | 947,758 | - | |
| **Net increase (decrease) in partners' capital resulting from operations** | $ 901,208 | $ (26,278) | - |
| | | | - |

**Rand PE Fund I, LP**
**Statement of Changes in Partners' Capital**
**For the year ended December 31, 2023**

| | General Partner | Limited Partners | Total | | |
|---|---|---|---|---|---|
| **Partners' capital at December 31, 2023** | $ - | $ 74,783 | $ 74,783 | | |
| **Operating activities** | | | | | |
| Net investment Income | - | (46,550) | (46,550) | | |
| Net realized gain from settlement income | - | (52,242) | (52,242) | | |
| Net decrease in partners' capital resulting from operating activities | - | 901,208 | 901,208 | - | |
| **Capital activities** | | | | | |
| Contributions | - | - | - | | |
| Distributions | - | - | - | | |
| Net decrease in partners' capital resulting from capital activities | - | - | - | | |
| **Partners' capital at December 31, 2024** | **$ -** | **$ 975,991** | **$ 975,991** | (0.11) | - |

*(U.S. dollars, in thousands)*

| | General Partner | Series I Limited Partners | Total | | |
|---|---|---|---|---|---|
| **Partners' capital at December 31, 2023** | $ - | $ 74,783 | $ 74,783 | | |
| **Operating activities** | | | | | |
| Net investment loss | - | (46,550) | (46,550) | - | |
| Net realized loss from settlement income | - | (52,242) | (52,242) | | |
| Net change in unrealized depreciation on investments | - | 1,000,000 | 1,000,000 | - | |
| Net increase in partners' capital resulting from operations | - | 901,208 | 901,208 | - | |
| **Partners' capital at December 31, 2024** | **$ -** | **$ 975,991** | **$ 975,991** | | |
| | | | | - | *check* |

| | General Partner | Series I Limited Partners | Total | | |
|---|---|---|---|---|---|
| **Partners' capital at December 31, 2024** | $ - | $ 975,991 | $ 975,991 | | |
| **Operating activities** | | | | | |
| Net investment loss | - | (26,278) | (26,278) | (26,278) | 1278 |
| Net realized loss on investments | - | (14,986,892) | (14,986,892) | | |
| Net change in unrealized depreciation on investments | - | 14,986,892 | 14,986,892 | 14,986,892 | |
| Net decrease in partners' capital resulting from operations | - | (26,278) | (26,278) | (26,278) | |

| | | | |
|---|---|---|---|
| **Capital activities** | | | |
| Capital distributions* | - | (949,713) | (949,713) |
| Net change in partners' capital resulting from capital activities | - | (949,713) | (949,713) |
| **Partners' capital at February 24, 2025 (liquidation date)** | **$ -** | **$ -** | **$ -** |

**Capital distributions have not been paid as of the date of the audit opinion*

\- *check*

**Rand PE Fund I, LP**
**Statement of Cash Flows**
**For the year ended December 31, 2023**

*(U.S. dollars, in thousands)*

| | December 31,2024 | February 24, 2025 (liquidation date) | | PY | CY | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | 1,019,678.08 | | | |
| | | | | | | | 769,678.08 | | | |
| **Cash flows from operating activities** | | | | | | | | | | |
| Net increase (decrease) in partners' capital resulting from operations | $ 901,208 | $ (26,278) | - | | | | | | | |
| Adjustments to reconcile net increase (decrease) in partners' capital resulting from operations to net cash provided by (used in) operating activities: | | | | | | | | | | |
| Proceeds from the disposition of investments | - | 1,000,000 | | | | | | | | |
| Net realized loss on investment transactions | - | (14,986,892) | | | | | | | | |
| Net change in unrealized depreciation on investments | (1,000,000) | 14,986,892 | - | | | | | | | |
| Net changes in operating assets and liabilities | | | | | | | | | | |
| Increase in other assets | 62,242 | - | | 62,242.00 | - | 62,242.00 | | | | |
| Increase in accrued expenses | (5,100) | 26,065 | | 49,000.00 | 43,900.00 | (5,100.00) | | 53 | 43900 | 43847 |
| Net cash provided by (used in) operating activities | (41,650) | 999,787 | | | | | | | | |
| **Cash flows from financing activities** | | | | | | | | | | |
| Capital distributions, net of payable* | - | - | | | | | | | | |
| Net cash provided by financing activities | - | - | | | | | | | | |
| Net increase (decrease) in cash | (41,650) | 999,787 | | | | | | | | |
| Cash and cash equivalents, beginning of year | 61,541 | 19,891 | | | | | | | | |
| Cash and cash equivalents, end of year | $ 19,891 | $ 1,019,678 | (0.43) imm, rounding | | | | $ (0) | | | |

**Capital distributions have not been paid as of the date of the audit opinion*

**Rand PE Fund I, LP**
**Holdings Report**
**As of December 31, 2024**

| Valuation Date | Position Name | Type | Cost | Quantity | Mark | Market Value | Unrealized G/L | Mark Source |
|---|---|---|---|---|---|---|---|---|
| As of December 31, 2024 | Beacon Mountain | Equity | 15,986,892.02 | 1.00 | - | 1,000,000.00 | (14,986,892.02) | CBIZ |

| | | | Change in Unrealized | |
|---|---|---|---|---|
| Cost | 12/31/2023 | 15,986,892.02 | | |
| MV | 12/31/2023 | - | (15,986,892.02) | Unrealized |
| Cost | 12/31/2024 | 15,986,892.02 | | |
| MV | 12/31/2024 | 1,000,000.00 | (14,986,892.02) | Unrealized |
| | | | 1,000,000 | Change in unrealized |



016003

Account Transactions

Account: Checking / *5430

**Total Cash**

| Date | Description | Debit/Credit | |
|---|---|---|---|
| 1/8/2016 | REF 20160108F2QCZ60C003479 BNF SADIS * GOLDBERG L | (107,220.00) | |
| 1/11/2016 | REF 20160111F2QCZ60C00207701111451FT03 ORG HIGHLA | 107,220.00 | |
| 1/11/2016 | REF 20160111F2QCZ60C002383 BNF RAND ADVISORS LLC | (6,050.80) | |
| 1/15/2016 | DEC ANALYSIS SERVICE CHARGE | (299.35) | |
| 2/2/2016 | REF 20160202F2QCZ60C001542 BNF SADIS * GOLDBERG L | (40,012.13) | Org cost |
| 2/2/2016 | REF 20160202F2QCZ60C002573 BNF RAND ADVISORS LLC | (13,814.32) | D&O |
| 2/16/2016 | REF 20160216F2QCZ60C002503 BNF RAND ADVISORS LLC | (254.83) | Mgmt Fees |
| 2/16/2016 | JAN ANALYSIS SERVICE CHARGE | (81.37) | Custodian |
| 3/8/2016 | REF 20160308F2QCZ60C002065 BNF 1076 CBIZ VALUATIO | (7,020.00) | CBIZ |
| 3/8/2016 | REF 20160308F2QCZ60C002097 BNF RAND ADVISORS, LLC | (13,814.32) | |
| 3/15/2016 | FEB ANALYSIS SERVICE CHARGE | (149.40) | Custodian |
| 6/15/2016 | MAY ANALYSIS SERVICE CHARGE | (115.50) | Custodian |
| 5/16/2016 | APR ANALYSIS SERVICE CHARGE | (44.89) | Custodian |
| 5/13/2016 | OUTGOING WIRE REF 20160513F2QCZ60C003737 BNF CT CORPORATION SYS | (1,253.00) | CT |
| 5/10/2016 | OUTGOING WIRE REF 20160510F2QCZ60C001744 BNF SADIS AND GOLDBERG | (13,050.00) | SG |
| 5/10/2016 | OUTGOING WIRE REF 20160510F2QCZ60C001723 BNF RAND ADVISORS, LLC | (294.79) | Mgmt Fees |
| 5/10/2016 | OUTGOING WIRE REF 20160510F2QCZ60C001702 BNF SADIS AND GOLDBERG | (652.00) | SG |
| 4/15/2016 | MAR ANALYSIS SERVICE CHARGE | (39.55) | Custodian |
| 4/6/2016 | TRANSFER TO 6737441154 CUSTOMER SERVICE TRANSFER | (20,000.00) | other? |
| 7/15/2016 | Jun ANALYSIS SERVICE CHARGE | (35.02) | Custodian |
| 8/15/2016 | Jul ANALYSIS SERVICE CHARGE | (35.01) | Custodian |
| 9/15/2016 | Aug ANALYSIS SERVICE CHARGE | (35.01) | Custodian |
| 10/17/2016 | Sep ANALYSIS SERVICE CHARGE | (35.01) | Custodian |
| 11/15/2016 | Oct ANALYSIS SERVICE CHARGE | (35.00) | Custodian |
| 12/15/2016 | NOV ANALYSIS SERVICE CHARGE | (35.00) | Custodian |
| 1/30/2017 | OUTGOING WIRE REF 20170130F2QCZ60C002010 BNF RAND ADVISORS LLC | (1,339.95) | Mgt Fees Q1'17 |
| 1/24/2017 | OUTGOING WIRE REF 20170124F2QCZ60C001455 BNF CBIZ INC | (6,480.00) | Valuation |
| 1/17/2017 | DEC ANALYSIS SERVICE CHARGE | (35.01) | Custodian |
| 1/11/2017 | OUTGOING WIRE REF 20170111F2QCZ60C002775 BNF CT CORPORATION SYS | (80.25) | CT - Other |
| 1/9/2017 | OUTGOING WIRE REF 20170109F2QCZ60C001290 BNF RAND ADVISORS, LLC | (61,440.00) | Due to Rand Advisors |
| 1/9/2017 | OUTGOING WIRE REF 20170109F2QCZ60C001199 BNF CBIZ INC | (6,480.00) | Valuation |
| 1/9/2017 | OUTGOING WIRE REF 20170109F2QCZ60C001174 BNF CT CORPORATION SYS | (321.00) | CT - Other |
| 1/9/2017 | OUTGOING WIRE REF 20170109F2QCZ60C000981 BNF SADIS AND GOLDBERG | (95.00) | Legal |
| 1/5/2017 | INCOMING WIRE REF 20170105F2QCZ60C00242801051529FT03 ORG HUNTER M | 89,000.00 | Return of Capital |
| 1/4/2017 | INCOMING WIRE REF 20170104F2QCZ60C00090301041106FT03 ORG HUNTER M | 2,000.00 | Return of Capital |
| 2/2/2017 | 2/2 OUTGOING WIRE REF 20170202F2QCZ60C002858 BNF $80.25 | (80.25) | CT - Other |
| 2/2/2017 | 2/2 OUTGOING WIRE REF 20170202F2QCZ60C002961 BNF $100.32 | (100.32) | CT - Other |
| 2/15/2017 | 2/15 JAN ANALYSIS SERVICE CHARGE $242.76 | (242.76) | Custodian |
| 2/23/2017 | 2/23 OUTGOING WIRE REF 20170223F2QCZ60C001228 BNF $795.00 | (795.00) | Legal |
| 3/15/2017 | 3/15 FEB ANALYSIS SERVICE CHARGE $111.33 | (111.33) | Custodian |
| 4/17/2017 | 4/17 MAR ANALYSIS SERVICE CHARGE $36.38 | (36.38) | |
| 5/5/2017 | OUTGOING WIRE REF 20170505F2QCZ60C002946 BNF $724.75 RAND ADVISORS LLC | (724.75) | Mgt Fees Q2 17 |
| 5/15/2017 | APR ANALYSIS SERVICE CHARGE | (36.33) | |

| | | | | |
|---|---|---|---|---|
| 12/31/2015 | $ | 117,152.67 | per BBVA | |
| 1/31/2016 | $ | **110,802.52** | 110,802.52 | |
| 2/29/2016 | $ | **56,639.87** | 56,639.87 | |
| 3/31/2016 | $ | **35,656.15** | 35,656.15 | |
| 6/30/2016 | $ | **206.42** | 206.42 | |
| 8/31/2016 | $ | **136.39** | 136.39 | |
| 9/30/2016 | $ | **101.38** | 101.38 | |
| 10/31/2016 | $ | **66.37** | 66.37 | |
| 11/30/2016 | $ | **31.37** | 31.37 | |
| 12/31/2016 | $ | **(3.63)** | (3.63) | |
| 1/31/2017 | $ | **14,725.16** | 14,725.16 | |
| 2/28/2017 | $ | **13,506.83** | 13,506.83 | |
| 3/31/2017 | $ | **13,395.50** | 13,395.50 | |
| 4/30/2017 | $ | **13,359.12** | 13,359.12 | |
| 5/31/2017 | $ | **12,598.04** | 12,598.04 | |
| 6/30/2017 | $ | **35,143.21** | 35,143.21 | |
| 7/31/2017 | $ | **34,990.67** | 34,990.67 | |
| 8/31/2017 | $ | **34,004.28** | 34,004.28 | |
| 9/30/2017 | $ | **33,940.75** | 33,940.75 | |
| 10/31/2017 | $ | **33,707.36** | 33,707.36 | |
| 11/30/2017 | $ | **32,534.11** | 32,534.11 | |
| 12/31/2017 | $ | **32,470.84** | 32,470.84 | |
| 1/31/2018 | $ | **25,330.54** | 25,330.54 | |
| 2/28/2018 | $ | **1,822.05** | 1,822.05 | |
| 3/31/2018 | $ | **60,231.32** | 60,231.32 | |
| 4/30/2018 | $ | **25,765.36** | 25,765.36 | |
| 5/31/2018 | $ | **24,593.33** | 24,593.33 | |
| 6/30/2018 | $ | **17,852.72** | 17,852.72 | |
| 7/31/2018 | $ | **15,254.69** | 15,254.69 | |
| 8/31/2018 | $ | **14,203.90** | 14,203.90 | |
| 9/30/2018 | $ | **7,657.39** | 7,657.39 | |
| 10/31/2018 | $ | **6,361.02** | 6,361.02 | |
| 11/30/2018 | $ | **6,295.27** | 6,295.27 | |
| 12/31/2018 | $ | **6,259.64** | 6,259.64 | |
| 1/31/2019 | $ | **73,866.49** | 73,866.49 | |
| 2/28/2019 | $ | **50,205.32** | 50,205.32 | |
| 3/31/2019 | $ | **50,035.66** | 50,035.66 | |
| 4/30/2019 | $ | **43,526.23** | 43,526.23 | |
| 5/31/2019 | $ | **1,680.20** | 1,680.20 | |
| 6/30/2019 | $ | **1,553.08** | 1,553.08 | |
| 7/31/2019 | $ | **479.89** | 479.89 | |
| 8/31/2019 | $ | **414.77** | 414.77 | |
| 9/30/2019 | $ | **379.73** | 379.73 | |
| 10/31/2019 | $ | **18,203.32** | 18,203.32 | |
| 11/30/2019 | $ | **17,470.18** | 17,470.18 | |
| 12/31/2019 | $ | **21,536.41** | 21,536.41 | 0.00 |
| 1/31/2020 | $ | **10,108.92** | 10,108.92 | 0.00 |
| 2/29/2020 | $ | **682.53** | 682.53 | 0.00 |
| 3/31/2020 | $ | **51,054.58** | 51,054.58 | - |
| 4/30/2020 | $ | **37,023.50** | 37,023.50 | 0.00 |
| 5/31/2020 | $ | **16,463.28** | 16,463.28 | 0.00 |
| 6/30/2020 | $ | **38,370.98** | 38,370.98 | 0.00 |
| 7/31/2020 | $ | **38,197.62** | 38,197.62 | 0.00 |
| 8/31/2020 | $ | **28,950.96** | 28,950.96 | 0.00 |
| 9/30/2020 | $ | **16,480.55** | 16,480.55 | 0.00 |
| 10/31/2020 | $ | **14,545.29** | 14,545.29 | 0.00 |
| 11/30/2020 | $ | **10,622.10** | 10,622.10 | 0.00 |
| 12/31/2020 | $ | **2,455.59** | 2,455.59 | 0.00 |
| 1/31/2021 | $ | **169.60** | 169.60 | |
| 2/28/2021 | $ | **104.42** | 104.42 | |
| 3/31/2021 | $ | **53,773.43** | 53,773.43 | 0.00 |
| 4/30/2021 | $ | **42,800.17** | 42,800.17 | 0.00 |

| | | | |
|---|---|---|---|
| 6/15/2017 | INCOMING WIRE REF $75,000.00 20170615F2QCZ60C00188206151235FT01 ORG HUNTER MOUNTAIN IN | 75,000.00 | Return of Capital |
| 6/6/2017 | 6/6 OUTGOING WIRE REF 20170606F2QCZ60C000428 BNF $6,480.00 | (6,480.00) | |
| 6/13/2017 | 6/13 OUTGOING WIRE REF 20170613F2QCZ60C000874 BNF $945.00 | (945.00) | |
| 6/15/2017 | 6/15 OUTGOING WIRE REF 20170615F2QCZ60C001653 BNF $28,000.00 | (28,000.00) | |
| 6/15/2017 | 6/15 MAY ANALYSIS SERVICE CHARGE $61.31 | (61.31) | |
| 6/20/2017 | 6/20 OUTGOING WIRE REF 20170620F2QCZ60C002120 BNF $16,968.52 | (16,968.52) | |
| 7/17/2017 | JUN ANALYSIS SERVICE CHARGE | (152.54) | |
| 8/8/2017 | OUTGOING WIRE REF 20170808F2QCZ60C000394 BNF $986.39 RAND ADVISORS, LLC | (986.39) | Mgt Fees |
| 9/15/2017 | AUG ANALYSIS SERVICE CHARGE | (63.53) | |
| 10/16/2017 | OUTGOING WIRE REF 20171016F2QCZ60C002455 BNF SADIS AND GOLDBERG | (195.00) | |
| 10/16/2017 | SEP ANALYSIS SERVICE CHARGE | (38.39) | |
| 11/7/2017 | OUTGOING WIRE REF 20171107F2QCZ60C000486 BNF RAND ADVISORS, LLC | (1,109.76) | Mgt Fees |
| 11/15/2017 | OCT ANALYSIS SERVICE CHARGE | (63.49) | |
| 12/15/2017 | Nov ANALYSIS SERVICE CHARGE | (63.27) | |
| 1/16/2018 | DEC ANALYSIS SERVICE CHARGE | (38.35) | |
| 1/17/2018 | OUTGOING WIRE REF 20180117F2QCZ60C001982 BNF CT CORPORATION SYS | (621.95) | |
| 1/17/2018 | OUTGOING WIRE REF 20180117F2QCZ60C001991 BNF 1076 CBIZ VALUATIO | (6,480.00) | |
| 2/6/2018 | OUTGOING WIRE REF 20180206F2QCZ60C000906 BNF RAND ADVISORS, LLC | (1,401.21) | Mgt Fees |
| 2/6/2018 | OUTGOING WIRE REF 20180206F2QCZ60C001348 BNF WILLIS OF NEW YORK | (18,344.29) | |
| 2/15/2018 | JAN ANALYSIS SERVICE CHARGE | (87.99) | |
| 2/20/2018 | OUTGOING WIRE REF 20180220F2QCZ60C003888 BNF PRICEWATERHOUSECO | (3,675.00) | |
| 3/15/2018 | FEB ANALYSIS SERVICE CHARGE | (110.73) | |
| 3/28/2018 | INCOMING WIRE REF 20180328F2QCZ60C00203503281240FT01 ORG BEACON MOUNTAIN LL | 65,000.00 | Return of Capital |
| 3/28/2018 | OUTGOING WIRE REF 20180328F2QCZ60C002652 BNF 1076 CBIZ VALUATIO | (6,480.00) | |
| 4/4/2018 | OUTGOING WIRE REF 20180404F2QCZ60C001137 BNF PRICEWATERHOUSECO | (1,890.00) | |
| 4/16/2018 | MAR ANALYSIS SERVICE CHARGE | (75.96) | |
| 4/17/2018 | OUTGOING WIRE REF 20180417F2QCZ60C001136 BNF PRICEWATERHOUSECO | (32,500.00) | |
| 5/15/2018 | APR ANALYSIS SERVICE CHARGE | (49.53) | |
| 5/21/2018 | OUTGOING WIRE REF 20180521F2QCZ60C003293 BNF SADIS AND GOLDBERG | (1,122.50) | |
| 6/15/2018 | MAY ANALYSIS SERVICE CHARGE | (67.61) | |
| 6/26/2018 | OUTGOING WIRE REF 20180626F2QCZ60C000735 BNF 1076 CBIZ VALUATIO | (6,480.00) | |
| 6/27/2018 | OUTGOING WIRE REF 20180627F2QCZ60C002621 BNF PRICEWATERHOUSECO | (193.00) | |
| 7/16/2018 | JUN ANALYSIS SERVICE CHARGE | (97.34) | |
| 7/27/2018 | OUTGOING WIRE REF 20180727F2QCZ60C000928 BNF RAND ADVISORS, LLC | (1,256.99) | |
| 7/27/2018 | OUTGOING WIRE REF 20180727F2QCZ60C000935 BNF RAND ADVISORS, LLC | (1,243.70) | |
| 8/15/2018 | JUL ANALYSIS SERVICE CHARGE | (96.79) | |
| 8/15/2018 | OUTGOING WIREREF 20180815F2QCZ60C003481 | (954.00) | |
| 9/13/2018 | OUTGOING WIRE REF 20180913F2QCZ60C001585 BNF 1076 CBIZ VALUATIO | (6,480.00) | |
| 9/17/2018 | AUG ANALYSIS SERVICE CHARGE | (66.51) | |
| 10/15/2018 | SEP ANALYSIS SERVICE CHARGE | (66.02) | |
| 10/24/2018 | OUTGOING WIRE REF 20181024F2QCZ60C001396 BNF RAND ADVISORS, LLC | (1,230.35) | |
| 11/15/2018 | OCT ANALYSIS SERVICE CHARGE | (65.75) | |
| 12/17/2018 | NOV ANALYSIS SERVICE CHARGE | (35.63) | |
| 1/2/2019 | INCOMING WIRE REF 20190102F2QCZ60C00383201021709FT01 ORG HUNTER MOUNTAIN IN | 75,000.00 | Return of Capital |
| 1/8/2019 | OUTGOING WIRE REF 20190108F2QCZ60C000636 BNF 1076 CBIZ VALUATION | (6,480.00) | |
| 1/15/2019 | DEC ANALYSIS SERVICE CHARGE | (35.64) | |
| 1/24/2019 | OUTGOING WIRE REF 20190124F2QCZ60C003260 BNF RAND ADVISORS, LLC | (877.51) | Mgt Fees |
| 2/6/2019 | OUTGOING WIRE REF 20190206F2QCZ60C001311 BNF WILLIS OF NEW YORK | (18,473.25) | |
| 2/15/2019 | JAN ANALYSIS SERVICE CHARGE | (74.17) | |
| 2/15/2019 | OUTGOING WIRE REF 20190215F2QCZ60C004386 BNF CT CORPORATION SYS | (401.25) | |
| 2/28/2019 | OUTGOING WIRE REF 20190228F2QCZ60C000893 BNF PRICEWATERHOUSECO | (4,712.50) | |
| 3/6/2019 | OUTGOING WIRE REF 20190306F2QCZ60C002229 BNF CT CORPORATION SYST | (80.25) | |
| 3/15/2019 | FEB ANALYSIS SERVICE CHARGEFees & Charges - Service Fee | (89.41) | |
| 4/3/2019 | OUTGOING WIRE REF 20190403F2QCZ60C001450 BNF 1076 CBIZ VALUATIO | (6,480.00) | |
| 4/15/2019 | MAR ANALYSIS SERVICE CHARGE | (29.43) | |
| 5/1/2019 | OUTGOING WIRE REF 20190501F2QCZ60C003594 BNF RAND ADVISORS, LLC | (1,185.80) | |
| 5/13/2019 | OUTGOING WIRE REF 20190513F2QCZ60C002970 BNF PRICEWATERHOUSECO | (34,150.71) | |
| 5/15/2019 | APR ANALYSIS SERVICE CHARGE | (29.52) | |
| 5/28/2019 | OUTGOING WIRE REF 20190528F2QCZ60C003540 BNF 1076 CBIZ VALUATIO | (6,480.00) | |
| 6/17/2019 | MAY ANALYSIS SERVICE CHARGE | (127.12) | |

| | | | | |
|---|---|---|---|---|
| 5/31/2021 | $ | **21,989.88** | 21,989.88 | 0.00 |
| 6/30/2021 | $ | **12,973.43** | 12,973.43 | 0.00 |
| 7/31/2021 | $ | **12,786.04** | 12,786.04 | 0.00 |
| 8/31/2021 | $ | **12,749.49** | 12,749.49 | 0.00 |
| 9/30/2021 | $ | **12,712.96** | 12,712.96 | 0.00 |
| 10/31/2021 | $ | **12,676.16** | 12,676.16 | 0.00 |
| 11/30/2021 | $ | **12,676.16** | 12,676.16 | 0.00 |
| 12/31/2021 | $ | **2,979.41** | 2,979.41 | 0.00 |
| 1/31/2022 | $ | **2,933.90** | 2,933.89 | 0.01 |
| 2/28/2022 | $ | **99,778.67** | 99,778.66 | 0.01 |
| 3/31/2022 | $ | **99,543.07** | 99,543.06 | 0.01 |
| 4/30/2022 | $ | **78,492.87** | 78,492.86 | 0.01 |
| 5/31/2022 | $ | **50,117.54** | 50,117.53 | 0.01 |
| 6/30/2022 | $ | **99,843.59** | 99,843.58 | 0.01 |
| 7/31/2022 | $ | **99,632.00** | 99,631.99 | 0.01 |
| 8/31/2022 | $ | **82,861.85** | 82,861.84 | 0.01 |
| 9/30/2022 | $ | **82,798.95** | 82,798.94 | 0.01 |
| 10/31/2022 | $ | **130,171.96** | 130,171.95 | 0.01 |
| 11/30/2022 | $ | **129,864.92** | 129864.91 | 0.01 |
| 12/31/2022 | $ | **129,802.55** | 129802.54 | 0.01 |
| 1/31/2023 | $ | **128,804.45** | 128,804.44 | 0.01 |
| 2/28/2023 | $ | **128,682.41** | 128,682.40 | 0.01 |
| 3/31/2023 | $ | **128,621.93** | 128,621.92 | 0.01 |
| 4/30/2023 | $ | **111,062.27** | 111,062.26 | 0.01 |
| 5/31/2023 | $ | **95,918.55** | 95,918.54 | 0.01 |
| 6/30/2023 | $ | **62,720.99** | 62,720.98 | 0.01 |
| 7/31/2023 | $ | **62,635.37** | 62635.36 | 0.01 |
| 8/31/2023 | $ | **62,416.42** | 62416.41 | 0.01 |
| 9/30/2023 | $ | **62,197.47** | 62197.46 | 0.01 |
| 10/31/2023 | $ | **61,978.67** | 61978.66 | 0.01 |
| 11/30/2023 | $ | **61,759.87** | 61759.86 | 0.01 |
| 12/31/2023 | $ | **61,541.07** | 61541.06 | 0.01 |
| 1/31/2024 | $ | **61,322.27** | 61322.27 | 0.00 |
| 2/29/2024 | $ | **71,103.47** | 71103.46 | 0.01 |
| 3/31/2024 | $ | **70,869.67** | 70869.66 | 0.01 |
| 4/30/2024 | $ | **21,649.59** | 21649.58 | 0.01 |
| 5/31/2024 | $ | **21,381.79** | 21381.78 | 0.01 |
| 6/30/2024 | $ | **21,168.67** | 21168.66 | 0.01 |
| 7/31/2024 | $ | **20,955.69** | 20955.68 | 0.01 |
| 8/31/2024 | $ | **20,742.71** | 20742.7 | 0.01 |
| 9/30/2024 | $ | **20,529.73** | 20529.72 | 0.01 |
| 10/31/2024 | $ | **20,316.75** | 20316.74 | 0.01 |
| 11/30/2024 | $ | **20,103.77** | 20103.76 | 0.01 |
| 12/31/2024 | $ | **19,890.93** | 19890.92 | 0.01 |

| | | | |
|---|---|---|---|
| 7/15/2019 | JUN ANALYSIS SERVICE CHARGE | (35.16) | |
| 7/23/2019 | OUTGOING WIRE REF 20190723F2QCZ60C001027 BNF RAND ADVISORS, LLC | (1,038.03) | |
| 8/15/2019 | JUL ANALYSIS SERVICE CHARGE | (65.12) | |
| 9/16/2019 | AUG ANALYSIS SERVICE CHARGE | (35.04) | |
| 10/1/2019 | INCOMING WIRE REF 20191001F2QCZ60C00193510011110FT03 ORG HUNTER MOUNTAIN IN | 27,107.98 | Return of Capital |
| 10/2/2019 | OUTGOING WIRE REF 20191002F2QCZ60C003129 BNF PRICEWATERHOUSECOO | (2,769.36) | |
| 10/15/2019 | SEP ANALYSIS SERVICE CHARGE | (35.03) | |
| 10/21/2019 | OUTGOING WIRE REF 20191021F2QCZ60C002988 BNF 1076 CBIZ VALUATIO | (6,480.00) | |
| 11/14/2019 | OUTGOING WIRE REF 20191114F2QCZ60C003417 BNF RAND ADVISORS, LLC | (620.82) | |
| 11/15/2019 | OCT ANALYSIS SERVICE CHARGE | (112.32) | |
| 12/16/2019 | NOV ANALYSIS SERVICE CHARGE | (66.77) | |
| 12/24/2019 | OUTGOING WIRE REF 20191224F2QCZ60C001085 BNF SULLIVAN HAZELTINE | (6,890.00) | |
| 12/27/2019 | INCOMING WIRE REF 20191227F2QCZ60C00375012271526FT01 ORG ATLAS IDF | 30,000.00 | |
| 12/30/2019 | OUTGOING WIRE REF 20191230F2QCZ60C002111 BNF ROCHELLE MCCULLOUG | (15,000.00) | |
| 12/30/2019 | OUTGOING WIRE REF 20191230F2QCZ60C002265 BNF SADIS & GOLDBERG L | (3,977.00) | |
| 1/8/2020 | OUTGOING WIRE REF 20200108F2QCZ60C002770 BNF CT CORPORATION SYS | (1,645.00) | |
| 1/15/2020 | OUTGOING WIRE REF 20200115F2QCZ60C000034 BNF HUNTER MOUNTAIN IN | (3,000.00) | |
| 1/15/2020 | OUTGOING WIRE REF 20200115F2QCZ60C000035 BNF 1076 CBIZ VALUATIO | (6,480.00) | |
| 1/15/2020 | DEC ANALYSIS SERVICE CHARGE | (141.99) | |
| 1/17/2020 | OUTGOING WIRE REF 20200117F2QCZ60C001569 BNF CT CORPORATION SYS | (160.50) | |
| 2/11/2020 | OUTGOING WIRE REF 20200211F2QCZ60C001150 BNF RAND ADVISORS | (70.02) | |
| 2/11/2020 | OUTGOING WIRE REF 20200211F2QCZ60C001163 BNF WILLIS TOWERS WATSC | (8,358.57) | |
| 2/12/2020 | OUTGOING WIRE REF 20200212F2QCZ60C003425 BNF PWC | (841.26) | |
| 2/18/2020 | JAN ANALYSIS SERVICE CHARGE | (156.54) | |
| 3/10/2020 | BRANCH DEPOSIT | 497.50 | |
| 3/16/2020 | FEB ANALYSIS SERVICE CHARGE | (125.45) | |
| 3/27/2020 | INCOMING WIRE REF 20200327F2QCZ60C00425003271603FT01 ORG ATLAS IDF | 50,000.00 | Sub from Atlas |
| 4/2/2020 | OUTGOING WIRE REF 20200402F2QCZ60C002300 BNF 6,480.001076 CBIZ VALU | (6,480.00) | |
| 4/2/2020 | OUTGOING WIRE REF 20200402F2QCZ60C002317 BNF ROCHELLE MCCULLOUC | (7,500.00) | |
| 4/15/2020 | MAR ANALYSIS SERVICE CHARGE | (51.08) | |
| 5/5/2020 | Rochelle McCullough | (3,000.00) | |
| 5/5/2020 | Cohen & Co | (17,500.00) | |
| 5/15/2020 | APR ANALYSIS SERVICE CHARGE | (60.22) | |
| 6/2/2020 | CBIZ | (6,480.00) | |
| 6/2/2020 | Sadis & Goldberg (Legal) | (3,255.00) | |
| 6/2/2020 | Sullivan Hazeltine (Legal) | (760.00) | |
| 6/15/2020 | INCOMING WIRE REF 20200615F2QCZ60C00412706151630FT03 ORG ATLAS IDF | 50,000.00 | Due to Atlas |
| 6/15/2020 | May ANALYSIS SERVICE CHARGE | (97.30) | |
| 6/24/2020 | Cohen & Co | (17,500.00) | |
| 7/15/2020 | Jun ANALYSIS SERVICE CHARGE | (173.36) | |
| 8/17/2020 | Jul ANALYSIS SERVICE CHARGE | (0.24) | |
| 8/31/2020 | OUTGOING WIRE REF 20200831F2QCZ60C002378 BNF ROMC | (9,246.42) | |
| 9/15/2020 | AUG ANALYSIS SERVICE CHARGE | (30.23) | |
| 9/17/2020 | OUTGOING WIRE REF 20200917F2QCZ60C003340 BMO HARRIS BANK NA | (1,282.80) | |
| 9/30/2020 | OUTGOING WIRE REF 20200930F2QCZ60C006207 ROCHELLE MCCULLOUG | (4,677.38) | |
| 9/30/2020 | OUTGOING WIRE REF 20200930F2QCZ60C006246 1076 CBIZ VALUATIO | (6,480.00) | |
| 10/15/2020 | SEP ANALYSIS SERVICE CHARGE | (128.26) | |
| 10/15/2020 | OUTGOING WIRE REF 20201015F2QCZ60C005073 SADIS & GOLDBERG L | (1,807.00) | |
| 11/16/2020 | SEP ANALYSIS SERVICE CHARGE | (66.85) | |
| 11/19/2020 | OUTGOING WIRE REF 20201119F2QCZ60C003537 BNF ROCHELLE MCCULLOUG | (3,856.34) | |
| 12/15/2020 | SEP ANALYSIS SERVICE CHARGE | (66.51) | |
| 12/23/2020 | OUTGOING WIRE REF 20201223F2QCZ60C002137 BNF ROCHELLE MCCULLOUC | (8,100.00) | |
| 1/15/2021 | DEC ANALYSIS SERVICE CHARGE | (65.99) | |
| 1/20/2021 | OUTGOING WIRE REF 20210120F2QCZ60C002371 BNF ROCHELLE MCCULLOUG | (2,220.00) | |
| 2/16/2020 | JAN ANALYSIS SERVICE CHARGE | (65.18) | |
| 3/3/2021 | INCOMING WIRE REF 20210303F2QCZ60C00442503031750FT01 ORG ATLAS IDF, LP | 100,000.00 | Sub from Atlas |
| 3/12/2021 | OUTGOING WIRE REF 20210312F2QCZ60C005710 BNF SADIS & GOLDBERG L | (1,932.50) | |
| 3/12/2021 | OUTGOING WIRE REF 20210312F2QCZ60C005722 BNF 1076 CBIZ VALUATIO | (6,480.00) | |
| 3/15/2021 | FEB ANALYSIS SERVICE CHARGE | (35.01) | |
| 3/29/2021 | OUTGOING WIRE REF 20210329F2QCZ60C001857 BNF COHEN & COMPANY, L | (20,750.00) | |
| 3/31/2021 | OUTGOING WIRE REF 20210331F2QCZ60C002890 BNF ROCHELLE MCCULLOUG | (15,478.98) | |
| 3/31/2021 | OUTGOING WIRE REF 20210331F2QCZ60C006098 BNF SADIS & GOLDBERG L | (1,654.50) | |
| 4/15/2021 | MAR ANALYSIS SERVICE CHARGE | (165.51) | |
| 4/21/2021 | OUTGOING WIRE REF 20210421F2QCZ60C004242 BNF 1076 CBIZ VALUATIO | (6,480.00) | |
| 4/21/2021 | OUTGOING WIRE REF 20210421F2QCZ60C004244 BNF ROCHELLE MCCULLOUG | (4,327.75) | |
| 5/14/2021 | OUTGOING WIRE REF 20210514F2QCZ60C002321 BNF $20,750.00 COHEN & COMPANY, L | (20,750.00) | |

| | | |
|---|---|---|
| 5/17/2021 | APR ANALYSIS SERVICE CHARGE | (60.29) |
| 6/2/2021 | OUTGOING WIRE REF 20210602F2QCZ60C003934 BNF$300.00CT CORPORATIO | (300.00) |
| 6/2/2021 | OUTGOING WIRE REF 20210602F2QCZ60C004350 BNF$300.00CT CORPORATIO | (300.00) |
| 6/2/2021 | OUTGOING WIRE REF 20210602F2QCZ60C004352 BNF$300.00CT CORPORATIO | (300.00) |
| 6/2/2021 | OUTGOING WIRE REF 20210602F2QCZ60C004985 BNF$300.00CT CORPORATIO | (300.00) |
| 6/15/2021 | MAY ANALYSIS SERVICE CHARGE | (68.70) |
| 6/30/2021 | OUTGOING WIRE REF 20210630F2QCZ60C005522 BNF$7,747.75ROCHELLE | (7,747.75) |
| 7/15/2021 | JUN ANALYSIS SERVICE CHARGE | (187.39) |
| 8/16/2021 | JUL ANALYSIS SERVICE CHARGE | (36.55) |
| 9/15/2021 | AUG ANALYSIS SERVICE CHARGE | (36.53) |
| 10/29/2021 | Sep ANALYSIS SERVICE CHARGE | (36.80) |
| 12/1/2021 | ROMC invoice | (9,298.25) |
| 12/1/2021 | ROMC invoice | (330.00) |
| 12/15/2021 | Transfer to HMIT | (68.50) |
| 1/5/2022 | Transfer to Beacon Mountain | (45.51) |
| 2/17/2022 | Wire Transfer In 222Hn25127Je82Xp | 120,400.00 |
| 2/23/2022 | Wire Transfer Out 222Nk11528Vl1Gta | (5,864.80) |
| 2/24/2022 | Wire Transfer Out 222Ok5231Qzbamu | (17,500.00) |
| 2/28/2022 | Coporate Account Analysis Charge | (190.43) |
| 3/31/2022 | Corporate Account Analysis Charge | (235.60) |
| 4/28/2022 | Cohen & Co tax prep | (3,500.00) |
| 4/28/2022 | Cohen & Co audit fees | (17,500.00) |
| 4/29/2022 | Corporate Account Analysis Charge | (50.20) |
| 5/13/2022 | Rochelle McCullough | (22,140.25) |
| 5/17/2022 | Transfer to HMIT | (632.33) |
| 5/17/2022 | Transfer to Beacon Mountain | (277.98) |
| 5/25/2022 | CT Corp | (427.25) |
| 5/25/2022 | CT Corp | (427.25) |
| 5/25/2022 | CT Corp | (427.25) |
| 5/25/2022 | CT Corp | (427.25) |
| 5/25/2022 | Sadis & Goldberg (Legal) | (3,515.50) |
| 5/31/2022 | Corporate Account Analysis Charge | (100.27) |
| 6/27/2022 | Wir eTransfer In 226Rk54335Pki6Aqz | 50,000.00 |
| 6/30/2022 | Corporate Account Analysis Charge | (273.95) |
| 7/29/2022 | Corporate Account Analysis Charge | (211.59) |
| 8/1/2022 | Transfer to HMIT | (661.72) |
| 8/1/2022 | Transfer to Beacon Mountain | (304.73) |
| 8/1/2022 | Transfer to HMIT | (0.01) |
| 8/11/2022 | | (15,753.50) |
| 8/31/2022 | | (50.19) |
| 9/30/2022 | | (62.90) |
| 10/11/2022 | | 254,303.57 |
| 10/24/2022 | Transfer to Atlas IDF | (206,880.00) |
| 10/31/2022 | Corporate Account Analysis Charge | (50.56) |
| 11/10/2022 | Wire Transfer Out Mabac25578lt4Zsk | (245.30) |
| 11/30/2022 | Corporate Account Analysis Charge | (61.74) |
| 12/30/2022 | Corporate Account Analysis Charge | (62.37) |
| 1/19/2023 | CT Corp | (427.25) |
| 1/19/2023 | CT Corp | (31.33) |
| 1/19/2023 | CT Corp | (427.25) |
| 1/19/2023 | CT Corp | (31.33) |
| 1/19/2023 | CT Corp | (31.33) |
| 1/31/2023 | Corporate Account Analysis Charge | (49.61) |
| 2/28/2023 | Corporate Account Analysis Charge | (122.04) |
| 3/31/2023 | Corporate Account Analysis Charge | (60.48) |
| 4/19/2023 | 1st half of audit fees | (17,500.00) |
| 4/28/2023 | Corporate Account Analysis Charge | (59.66) |
| 5/18/2023 | Steven J Pully Retainer | (10,000.00) |
| 5/23/2023 | CT Corp | (5,071.18) |
| 5/31/2023 | Corporate Account Analysis Charge | (72.54) |
| 6/13/2023 | Wire Transfer Out 236Dh1617Hi9360G | (17,500.00) |
| 6/13/2023 | Wire Transfer Out 236Dh1617Pd74M1T | (15,500.00) |
| 6/30/2023 | Corporate Account Analysis Charge | (197.56) |
| 7/31/2023 | Corporate Account Analysis Charge | (85.62) |
| 8/31/2023 | Corporate Account Analysis Charge | (218.95) |
| 9/30/2023 | Corporate Account Analysis Charge | (218.95) |
| 10/31/2023 | Corporate Account Analysis Charge | (218.80) |
| 11/30/2023 | Corporate Account Analysis Charge | (218.80) |

| | Checks to Exp | |
|---|---|---|
| December | 195,084.62 | OK - Does not include settlement income |

| | | |
|---|---|---|
| 12/29/2023 | Corporate Account Analysis Charge | (218.80) |
| 1/31/2024 | Corporate Account Analysis Charge | (218.80) |
| 2/8/2024 | Steven J Pully Retainer Reimbursement | 10,000.00 |
| 2/29/2024 | Corporate Account Analysis Charge | (218.80) |
| 3/31/2024 | Corporate Account Analysis Charge | (233.80) |
| 4/30/2024 | Wire Transfer Out W244UF4046E3V29EM | (49,000.00) |
| 4/30/2024 | Corporate Account Analysis Charge | (220.08) |
| 5/31/2024 | Corporate Account Analysis Charge | (267.80) |
| 6/28/2024 | Corporate Account Analysis Charge | (213.12) |
| 7/31/2024 | Corporate Account Analysis Charge | (212.98) |
| 8/31/2024 | Corporate Account Analysis Charge | (212.98) |
| 9/30/2024 | Corporate Account Analysis Charge | (212.98) |
| 10/31/2024 | Corporate Account Analysis Charge | (212.98) |
| 11/29/2024 | Corporate Account Analysis Charge | (212.98) |
| 12/31/2024 | Corporate Account Analysis Charge | (212.84) |

**Rand PE Fund I, LP**
**Management Fee Calculation**

| Dolomiti, LLC | Hakusan, LLC | Total | | Fund NAV |
|---|---|---|---|---|
| | | | $0-$99,999,999 | 0.55% |

*No management fees collected in 2024*

**Management Fee Payable to the Investment Manager**. In consideration for services provided pursuant to this Agreement, the Investment Manager shall receive a quarterly management fee (the "**Management Fee**") equal to a percentage of each Limited Partner's share of the Partnership's Net Asset Value, and based on the Partnership's total Net Asset Value, as follows:

| Partnership's Total Net Asset Value | Management Fee (per annum) |
|---|---|
| $0 - $99,999,999 | 0.5500% |
| $100,000,000 - $199,999,999 | 0.5000% |
| $200,000,000 - $249,999,999 | 0.4500% |
| $250,000,000 - $499,999,999 | 0.3500% |
| > $500,000,000 | 0.3400% |

For the avoidance of doubt, the Management Fee calculated based on the foregoing schedule will be calculated on a "progressive" basis. For example, if the Partnership's Net Asset Value reaches $150,000,000, the initial $99,999,999 will always be charged a Management Fee of 0.55000% annually. The benefit of the declining Management Fee schedule above is intended to benefit all Limited Partners as each Capital Account will be charged a blended Management Fee based on the above schedule.

The Management Fee shall be calculated and payable to the Investment Manager quarterly, in advance, as of the first day of each calendar quarter. A *pro rata* Management Fee shall be charged to Limited Partners on any amounts accepted by the General Partner during a calendar quarter. No part of the Management Fee shall be refunded in the event that a Limited Partner withdraws, whether voluntarily or involuntarily, all or any of the value in such Limited Partner's Capital Account during any calendar quarter. Management Fees shall be payable with respect to the Interests of a Limited Partner in any Side Pocket Account. For purposes of calculating the Management Fee with respect to Side Pocket Accounts, Illiquid Investments will be carried at their fair value (which may be at, above or below cost) as determined by the Investment Manager.

With respect to any Limited Partner who has requested to withdraw all of its Interests from the Partnership, with the exception of any Interests maintained in a Side Pocket Account, the Partnership may reserve an amount from the withdrawing Limited Partner's withdrawal proceeds in order to cover the estimated accrued Management Fees and expenses attributable to the Limited Partner's Interests in the Side Pocket Account based on the Investment Manager's estimate of the time period that the Illiquid Investments held in the Side Pocket Account will remain in such Side Pocket Account (collectively, the "**Management Fee Reserve**"). The Management Fee Reserve will be treated as a liability of the Partnership, and the balance of the Management Fee Reserve, if any, will be paid to the withdrawing Limited Partner, without interest, upon such Limited Partner's complete withdrawal from the Side Pocket Account.

**Rand PE Fund I, LP**
**FYE 2021**
**Expense Accruals**

**Expenses Debited**

| | Audit Fees | Management Fees | BBVA Custody Fees | Prepaid Org Costs (100.85) | Other Expense | Org Cost Payable | | | | | | | Due to Affiliate | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/31/2015 | | | | | | | | | | | | | | - |
| 2/28/2015 | | | | | | | | | | | | | | - |
| 3/31/2015 | | | | | | | | | | | | | | - |
| 4/30/2015 | | | | | | | | | | | | | | - |
| 5/31/2015 | | | | | | | | | | | | | | - |
| 6/30/2015 | | | | | | | | | | | | | | - |
| 7/31/2015 | | | | | | | | | | | | | | - |
| 8/31/2015 | | | | | | | | | | | | | | - |
| 9/30/2015 | | | | | | | | | | | | | | - |
| 10/31/2015 | | | | | | | | | | | | | | - |
| 11/30/2015 | | | | | | | | | | | | | | - |
| 12/31/2015 | 33,500.00 | 30.79 | 334.35 | 767.72 | | | | | | | | | | 34,632.86 |
| | 33,500.00 | 30.79 | 334.35 | 767.72 | - | - | - | - | | - | | - | - | **34,632.86** |

| Expense Paid | Audit Fees | Management Fees | BBVA Custody Fees | Prepaid Org Costs | Other Expense | Org Cost Payable | Legal Fees | | | | | | Due to Affiliate | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/31/2015 | | | | | | | | | | | | | | - |
| 2/28/2015 | | | | | | | | | | | | | | - |
| 3/31/2015 | | | | | | | | | | | | | | - |
| 4/30/2015 | | | | | | | | | | | | | | - |
| 5/31/2015 | | | | | | | | | | | | | | - |
| 6/30/2015 | | | | | | | | | | | | | | - |
| 7/31/2015 | | | | | | | | | | | | | | - |
| 8/31/2015 | | | | | | | | | | | | | | - |
| 9/30/2015 | | | | | | | | | | | | | | - |
| 10/31/2015 | | | | | | | | | | | | | | - |
| 11/30/2015 | | | | | | | | | | | | | | - |
| 12/31/2015 | | | 35.00 | 46,062.93 | | (40,012.13) | | | | | | | (6,050.80) | 35.00 |
| | - | - | 35.00 | 46,062.93 | - | (40,012.13) | - | - | | - | | - | (6,050.80) | 35.00 |
| Plus: Prior Year Payable / (Prepaid) Balances | | | | | | | | | | | | | | - |
| **2015 FYE Liabil** | **33,500.00** | **30.79** | **299.35** | **(45,295.21)** | **-** | **40,012.13** | **-** | **-** | **-** | **-** | | **-** | **6,050.80** | **34,597.86** |

**2017**
**Expenses Debited**

| | Audit Fees | Management Fees | BBVA Custody Fees | Prepaid Org Costs (100.85) | Other Expense | Org Cost Payable | Legal Fees | Prepaid D&O Insurance | Tax Expense | D&O Insurance Payable | Tax Prep | Valuation Expense | Due to Affiliate | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/31/2017 | 2,916.67 | 208.40 | 35.01 | 767.72 | (19,598.75) | | | - | | 1,414.04 | | 2,160.00 | | (12,096.91) |
| 2/28/2017 | 2,916.67 | 208.40 | 242.76 | 767.72 | 180.57 | | 795.00 | | | 1,414.04 | | 2,160.00 | | 8,685.16 |
| 3/31/2017 | 2,916.67 | 208.40 | 111.33 | 767.72 | | | | | | 1,414.04 | | 2,160.00 | | 7,578.16 |
| 4/30/2017 | 2,916.67 | 241.58 | 36.38 | 767.72 | | | | | | 1,414.04 | | 2,160.00 | | 7,536.39 |
| 5/31/2017 | 2,916.67 | 241.58 | 36.33 | 767.72 | | | | | | 1,414.04 | | 2,160.00 | | 7,536.34 |
| 6/30/2017 | 2,916.67 | 241.58 | 61.31 | 767.72 | 945.00 | | | | | 1,414.04 | | 2,160.00 | | 8,506.32 |
| 7/31/2017 | 2,916.67 | 328.80 | 152.54 | | | | | | | | | | | 3,398.00 |
| 8/31/2017 | 2,916.67 | 328.80 | - | 1,535.44 | | | | | | 2,828.09 | | 4,320.00 | | 11,928.99 |
| 9/30/2017 | 2,916.67 | 328.80 | 63.53 | 767.72 | | | | | | 1,414.04 | | 2,160.00 | | 7,650.76 |
| 10/31/2017 | 2,916.67 | 369.92 | 38.39 | 767.72 | | | 195.00 | | | 1,414.04 | | 2,160.00 | | 7,861.74 |
| 11/30/2017 | 2,916.67 | 369.92 | 63.49 | | | | | | | 1,414.04 | | 2,160.00 | | 6,924.12 |
| 12/31/2017 | (6,583.33) | 369.92 | 20.25 | 1,535.44 | | | | | | 1,414.04 | | 2,160.00 | | (1,083.68) |
| | 25,500.00 | 3,446.10 | 861.32 | 9,212.64 | (18,473.18) | - | 990.00 | - | - | 16,968.52 | - | 25,920.00 | - | **64,425.40** |

| Expense Paid | Audit Fees | Management Fees | BBVA Custody Fees | Prepaid Org Costs | Other Expense | Org Cost Payable | Legal Fees | Prepaid D&O Insurance | Tax Expense | D&O Insurance Payable | Tax Prep | Valuation Expense | Due to Affiliate | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/31/2017 | | 1,339.95 | 35.01 | | (19,598.75) | | 95.00 | | | | | 12,960.00 | 61,440.00 | 56,271.21 |
| 2/28/2017 | | | 242.76 | | 180.57 | | 795.00 | | | | | | | 1,218.33 |
| 3/31/2017 | | | 111.33 | | | | | | | | | | | 111.33 |
| 4/30/2017 | | | 36.38 | | | | | | | | | | | 36.38 |
| 5/31/2017 | | 724.75 | 36.33 | | | | | | | | | | | 761.08 |
| 6/30/2017 | 28,000.00 | | 61.31 | | 945.00 | | | | | 16,968.52 | | 6,480.00 | | 52,454.83 |
| 7/31/2017 | | | 152.54 | | | | | | | | | | | 152.54 |
| 8/31/2017 | | 986.39 | | | | | | | | | | | | 986.39 |
| 9/30/2017 | | | 63.53 | | | | | | | | | | | 63.53 |
| 10/31/2017 | | | 38.39 | | | | 195.00 | | | | | | | 233.39 |
| 11/30/2017 | | 1,109.76 | 63.49 | | | | | | | | | | | 1,173.25 |
| 12/31/2017 | | | 63.27 | | | | | | | | | 6,480.00 | (6,480.00) | 63.27 |
| | 28,000.00 | 4,160.85 | 904.34 | - | (18,473.18) | - | 1,085.00 | - | - | 16,968.52 | - | 25,920.00 | 54,960.00 | 113,525.53 |
| Plus: Prior Year | 35,000.00 | 714.74 | 81.37 | (36,082.57) | - | - | 95.00 | (0.00) | - | - | 4,700.00 | 12,960.00 | 61,440.00 | 78,908.54 |



016010

| | Audit Fees | Management Fees | BBVA Custody Fees | Prepaid Org Costs | Other Expense | Org Cost Payable | Legal Fees | Prepaid D&O Insurance | Tax Expense | D&O Insurance Payable | Tax Prep | Valuation Expense | Due to Affiliate | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **2017 FYE Liabil** | **32,500.00** | **(0.01)** | **38.35** | **(26,869.93)** | **-** | **-** | **-** | **(0.00)** | **-** | **-** | **4,700.00** | **12,960.00** | **6,480.00** | **29,808.41** |

Accrued Expenses 50,198.35

| 2017 Insurance Allocation | | | |
|---|---|---|---|
| | | | 38,750.00 |
| Rand PE NAV | 45,687,402.72 | 0.44 | 16,968.52 |
| Atlas NAV | 58,646,220.88 | 0.56 | 21,781.48 |
| | 104,333,623.59 | | |

**2018**

**Expenses Debited**

| | Audit Fees | Management Fees | BBVA Custody Fees | 100.85<br>Prepaid Org Costs | Other Expense | Org Cost Payable | Legal Fees | Prepaid D&O Insurance | Tax Expense | D&O Insurance Payable | Tax Prep | Valuation Expense | Due to Affiliate | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/31/2018 | 2,708.33 | 467.07 | 38.35 | 767.72 | 621.95 | | | | | 1,528.69 | | 2,160.00 | | 8,292.11 |
| 2/28/2018 | 2,708.33 | 467.07 | 87.99 | 767.72 | | | | | | 1,528.69 | | 2,160.00 | | 7,719.80 |
| 3/31/2018 | 2,708.33 | 467.07 | 110.73 | 767.72 | | | | | | 1,528.69 | | 2,160.00 | | 7,742.54 |
| 4/30/2018 | 2,708.33 | 419.00 | 75.96 | 767.72 | | | | | | 1,528.69 | 3,180.56 | 2,160.00 | | 10,840.26 |
| 5/31/2018 | 2,708.33 | 419.00 | 49.53 | 767.72 | | | 1,122.50 | | | 1,528.69 | 420.56 | 2,160.00 | | 9,176.33 |
| 6/30/2018 | 2,708.33 | 419.00 | 67.61 | 767.72 | | | | | | 1,528.69 | | 2,160.00 | | 7,651.35 |
| 7/31/2018 | 2,708.33 | 414.57 | 97.34 | 767.72 | | | | | | 1,528.69 | | 2,160.00 | | 7,676.65 |
| 8/31/2018 | 2,708.33 | 414.57 | 96.79 | 767.72 | 954.00 | | | | | 1,528.69 | 1,261.68 | 2,160.00 | | 9,891.78 |
| 9/30/2018 | 2,708.33 | 414.57 | 66.51 | 767.72 | | | | | | 1,528.69 | | 2,160.00 | | 7,645.82 |
| 10/31/2018 | 2,708.33 | 410.12 | 66.02 | 767.72 | | | | | | 1,528.69 | | 2,160.00 | | 7,640.88 |
| 11/30/2018 | 2,708.33 | 410.12 | 65.75 | 767.72 | | | | | | 1,528.69 | | 2,160.00 | | 7,640.61 |
| 12/31/2018 | 2,708.33 | 410.12 | 35.63 | 767.72 | | | | | | 1,528.69 | (212.80) | 2,160.00 | | 7,397.69 |
| | 32,499.96 | 5,132.28 | 858.21 | 9,212.64 | 1,575.95 | - | 1,122.50 | - | - | 18,344.28 | 4,650.00 | 25,920.00 | - | **99,315.82** |

| Expense Paid | Audit Fees | Management Fees | BBVA Custody Fees | Prepaid Org Costs | Other Expense | Org Cost Payable | Legal Fees | Prepaid D&O Insurance | Tax Expense | D&O Insurance Payable | Tax Prep | Valuation Expense | Due to Affiliate | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/31/2018 | | | 38.35 | | 621.95 | | | | | | | 6,480.00 | | 7,140.30 |
| 2/28/2018 | | 1,401.21 | 87.99 | | | | | | | 18,344.29 | 3,675.00 | | | 23,508.49 |
| 3/31/2018 | | | 110.73 | | | | | | | | | 6,480.00 | | 6,590.73 |
| 4/30/2018 | 32,500.00 | | 75.96 | | | | | | | | 1,890.00 | | | 34,465.96 |
| 5/31/2018 | | | 49.53 | | | | 1,122.50 | | | | | | | 1,172.03 |
| 6/30/2018 | 193.00 | | 67.61 | | | | | | | | | 6,480.00 | | 6,740.61 |
| 7/31/2018 | | 2,500.69 | 97.34 | | | | | | | | | | | 2,598.03 |
| 8/31/2018 | | | 96.79 | | 954.00 | | | | | | | | | 1,050.79 |
| 9/30/2018 | | | 66.51 | | | | | | | | | 6,480.00 | | 6,546.51 |
| 10/31/2018 | | 1,230.35 | 66.02 | | | | | | | | | | | 1,296.37 |
| 11/30/2018 | | | 65.75 | | | | | | | | | | | 65.75 |
| 12/31/2018 | | | 35.63 | | | | | | | | | | | 35.63 |
| | 32,693.00 | 5,132.25 | 858.21 | - | 1,575.95 | - | 1,122.50 | - | - | 18,344.29 | 5,565.00 | 25,920.00 | - | 91,211.20 |
| Plus: Prior Year | 32,500.00 | - | 38.35 | (26,869.93) | - | - | - | - | - | - | 4,700.00 | 12,960.00 | 6,480.00 | 29,808.42 |
| **2018 FYE Liabil** | **32,306.96** | **0.03** | **38.35** | **(17,657.29)** | **-** | **-** | **-** | **-** | **-** | **(0.01)** | **3,785.00** | **12,960.00** | **6,480.00** | **37,913.04** |

Accrued Expenses 49,090.30

| 2018 Insurance Allocation | | | |
|---|---|---|---|
| | | | 38,750.00 |
| Rand PE NAV | 103,213,559.13 | 0.47 | 18,344.29 |
| Atlas NAV | 114,812,093.28 | 0.53 | 20,405.71 |
| | 218,025,652.41 | | |

**2019**

**Expenses Debited**

| | Audit Fees | Management Fees | BBVA Custody Fees | 100.85<br>Prepaid Org Costs | Other Expense | Org Cost Payable | Legal Fees | Prepaid D&O Insurance | Tax Expense | D&O Insurance Payable | Tax Prep | Valuation Expense | Due to Affiliate | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/31/2019 | 2,708.33 | 292.50 | 35.64 | 767.72 | | | | | | 1,399.49 | 315.42 | 2,160.00 | | 7,679.10 |
| 2/28/2019 | 2,708.33 | 292.50 | 74.17 | 767.72 | 401.25 | | | | | 1,399.49 | 315.42 | 2,160.00 | | 8,118.88 |
| 3/31/2019 | 2,708.33 | 292.50 | 89.41 | 767.72 | 80.25 | | | | | 1,399.49 | 315.42 | 2,160.00 | | 7,813.12 |
| 4/30/2019 | 2,708.33 | 395.27 | 29.43 | 767.72 | | | | | | 1,399.49 | 315.42 | 2,160.00 | | 7,775.65 |
| 5/31/2019 | 2,708.33 | 395.27 | 29.52 | 767.72 | | | | | | 1,399.49 | 315.42 | 2,160.00 | | 7,775.74 |
| 6/30/2019 | 2,708.33 | 395.27 | 127.12 | 767.72 | | | | | | 1,399.49 | 315.42 | 2,160.00 | | 7,873.34 |
| 7/31/2019 | 2,708.33 | 346.01 | 127.12 | 767.72 | | | | | | 1,399.49 | 315.42 | 2,160.00 | | 7,824.09 |
| 8/31/2019 | 2,708.33 | 346.01 | 127.12 | 767.72 | | | | | | 1,399.49 | 315.42 | 2,160.00 | | 7,824.09 |
| 9/30/2019 | 2,708.33 | 346.01 | 127.12 | 767.72 | | | | | | 1,399.49 | 315.42 | 2,160.00 | | 7,824.09 |
| 10/31/2019 | 2,708.33 | 345.59 | 127.12 | 767.72 | | | | | | 1,399.49 | 315.42 | 2,160.00 | | 7,823.67 |
| 11/30/2019 | 2,708.33 | 206.94 | 127.12 | 767.72 | | | | | | 1,399.49 | 315.42 | 2,160.00 | | 7,685.02 |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/31/2019 | 2,708.33 | 68.26 | - | 767.72 | | | 25,867.00 | | | 1,399.49 | 315.42 | 2,160.00 | | 33,286.22 |
| | 32,500.00 | 3,722.13 | 1,020.89 | 9,212.64 | 481.50 | - | 25,867.00 | - | - | 16,793.86 | 3,785.00 | 25,920.00 | - | **119,303.02** |

| Expense Paid | Audit Fees | Management Fees | BBVA Custody Fees | Prepaid Org Costs | Other Expense | Org Cost Payable | Legal Fees | Prepaid D&O Insurance | Tax Expense | D&O Insurance Payable | Tax Prep | Valuation Expense | Due to Affiliate | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/31/2019 | | 877.51 | 35.64 | | | | | | | | | 6,480.00 | | 7,393.15 |
| 2/28/2019 | | | 74.17 | | 401.25 | | | | | 18,473.25 | 4,712.50 | | | 23,661.17 |
| 3/31/2019 | | | 89.41 | | 80.25 | | | | | | | | | 169.66 |
| 4/30/2019 | | | 29.43 | | | | | | | | | 6,480.00 | | 6,509.43 |
| 5/31/2019 | 34,150.71 | 1,185.80 | 29.52 | | | | | | | | | 6,480.00 | | 41,846.03 |
| 6/30/2019 | | | 127.12 | | | | | | | | | | | 127.12 |
| 7/31/2019 | | 1,038.03 | 35.16 | | | | | | | | | | | 1,073.19 |
| 8/31/2019 | | | 65.12 | | | | | | | | | | | 65.12 |
| 9/30/2019 | | | 35.04 | | | | | | | | | | | 35.04 |
| 10/31/2019 | | | 35.03 | | | | | | | | 2,769.36 | 6,480.00 | | 9,284.39 |
| 11/30/2019 | | 620.82 | 112.32 | | | | | | | | | | | 733.14 |
| 12/31/2019 | | | 66.77 | | | | 25,867.00 | | | | | | (30,000.00) | (4,066.23) |
| | 34,150.71 | 3,722.16 | 734.73 | - | 481.50 | - | 25,867.00 | - | - | 18,473.25 | 7,481.86 | 25,920.00 | (30,000.00) | 86,831.21 |
| Plus: Prior Year | 32,306.96 | 0.03 | 38.35 | (17,657.29) | - | - | - | - | - | (0.01) | 3,785.00 | 12,960.00 | 6,480.00 | 37,913.04 |
| **2019 FYE Liabil** | **30,656.25** | **0.00** | **324.51** | **(8,444.65)** | **-** | **-** | **-** | **-** | **-** | **(1,679.40)** | **88.13** | **12,960.00** | **36,480.00** | **70,384.85** |

| | |
|---|---|
| Accrued Expenses | 42,349.50 |

| 2019 Insurance Allocation | | | |
|---|---|---|---|
| | | | 38,750.00 |
| Rand PE NAV | 64,822,101.61 | 0.43 | 16,793.86 |
| Atlas NAV | 84,747,814.58 | 0.57 | 21,956.14 |
| | 149,569,916.19 | | |

**2020**
**Expenses Debited**

| | Audit Fees | Management Fees | BBVA Custody Fees | Prepaid Org Costs | Other Expense | Org Cost Payable | Legal Fees | Prepaid D&O Insurance | Tax Expense | D&O Insurance Payable | Tax Prep | Valuation Expense | Due to Affiliate | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | **100.85** | | | | | | | | | | |
| 1/31/2020 | 2,708.33 | 23.34 | 3,141.99 | - | 1,805.50 | | | | | 696.55 | - | 2,160.00 | | 10,535.71 |
| 2/29/2020 | 2,708.33 | 23.34 | 156.54 | - | | | | | | 696.55 | - | 2,160.00 | | 5,744.76 |
| 3/31/2020 | 2,708.33 | 23.34 | 125.45 | - | | | | | | 696.55 | - | 2,160.00 | | 5,713.67 |
| 4/30/2020 | 2,708.33 | - | 51.08 | - | | | 7,500.00 | | | 696.55 | - | 2,160.00 | | 13,115.96 |
| 5/31/2020 | 2,708.33 | - | 60.22 | - | | | 3,000.00 | | | 696.55 | - | 2,160.00 | | 8,625.10 |
| 6/30/2020 | 2,708.33 | - | 97.30 | - | | | 4,015.00 | | | 696.55 | - | 2,160.00 | | 9,677.18 |
| 7/31/2020 | 2,708.33 | - | 173.36 | - | | | | | | 696.55 | - | 2,160.00 | | 5,738.24 |
| 8/31/2020 | 2,708.33 | - | 0.24 | - | | | 9,246.42 | | | 696.55 | - | 2,160.00 | | 14,811.54 |
| 9/30/2020 | 2,708.33 | - | 30.23 | - | | | 5,960.18 | | | 696.55 | - | 2,160.00 | | 11,555.29 |
| 10/31/2020 | 2,708.33 | - | 128.26 | - | | | 1,807.00 | | | 696.55 | - | 2,160.00 | | 7,500.14 |
| 11/30/2020 | 2,708.33 | - | 66.85 | - | | | 3,856.34 | | | 696.55 | 753.13 | 2,160.00 | | 10,241.20 |
| 12/31/2020 | 5,208.33 | - | 66.51 | - | (497.50) | | 8,100.00 | | | 2,375.95 | 6,500.00 | 2,160.00 | | 23,913.29 |
| | 35,000.00 | 70.02 | 4,098.03 | - | 1,308.00 | - | 43,484.94 | - | - | 10,037.97 | 7,253.13 | 25,920.00 | - | **127,172.09** |

| Expense Paid | Audit Fees | Management Fees | BBVA Custody Fees | Prepaid Org Costs | Other Expense | Org Cost Payable | Legal Fees | Prepaid D&O Insurance | Tax Expense | D&O Insurance Payable | Tax Prep | Valuation Expense | Due to Affiliate | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/31/2020 | | | 3,141.99 | | 1,805.50 | | | | | | | 6,480.00 | | 11,427.49 |
| 2/29/2020 | | 70.02 | 156.54 | | | | | | | 8,358.57 | 841.26 | | | 9,426.39 |
| 3/31/2020 | | | 125.45 | | (497.50) | | | | | | | | | (372.05) |
| 4/30/2020 | | | 51.08 | | | | 7,500.00 | | | | | 6,480.00 | | 14,031.08 |
| 5/31/2020 | 17,500.00 | | 60.22 | | | | 3,000.00 | | | | | | | 20,560.22 |
| 6/30/2020 | 17,500.00 | | 97.30 | | | | 4,015.00 | | | | | 6,480.00 | (50,000.00) | (21,907.70) |
| 7/31/2020 | | | 173.36 | | | | | | | | | | | 173.36 |
| 8/31/2020 | | | 0.24 | | | | 9,246.42 | | | | | | | 9,246.66 |
| 9/30/2020 | | | 30.23 | | | | 5,960.18 | | | | | 6,480.00 | | 12,470.41 |
| 10/31/2020 | | | 128.26 | | | | 1,807.00 | | | | | | | 1,935.26 |
| 11/30/2020 | | | 66.85 | | | | 3,856.34 | | | | | | | 3,923.19 |
| 12/31/2020 | | | 66.51 | | | | 8,100.00 | | | | | | | 8,166.51 |
| | 35,000.00 | 70.02 | 4,098.03 | - | 1,308.00 | - | 43,484.94 | - | - | 8,358.57 | 841.26 | 25,920.00 | (50,000.00) | 69,080.82 |
| Plus: Prior Year | 30,656.25 | 0.00 | 324.51 | - | - | - | - | - | - | (1,679.40) | 88.13 | 12,960.00 | 36,480.00 | 78,829.49 |
| **2020 FYE Liabil** | **30,656.25** | **(0.00)** | **324.51** | **-** | **-** | **-** | **-** | **-** | **-** | **0.01** | **6,500.00** | **12,960.00** | **86,480.00** | **136,920.77** |

| | |
|---|---|
| Accrued Expenses | 50,440.76 |
| Prepaid Expenses | (0.01) |
| Due to Affiliate | 86,480.00 |
| | |
| Professional Fees | 78,484.94 |
| Custody | 4,098.03 |
| Other | 1,308.00 |
| Tax | 7,253.13 |

| 2020 Insurance Allocation | | | |
|---|---|---|---|
| | | | 47,950.00 |
| Rand PE NAV | 5,207,975.57 | 0.17 | 8,358.57 |
| Atlas NAV | 24,668,233.09 | 0.83 | 39,591.43 |
| | 29,876,208.66 | | |

| 2020 PwC Allocation | | | |
|---|---|---|---|
| | | | 4,826.00 |
| Rand PE NAV | 5,207,975.57 | 0.17 | 841.26 |
| Atlas NAV | 24,668,233.09 | 0.83 | 3,984.74 |
| | 29,876,208.66 | | |

**2021**

**Expenses Debited**

| | Audit Fees | Management Fees | BBVA Custody Fees | Prepaid Org Costs | Other Expense | Org Cost Payable | Legal Fees | Prepaid D&O Insurance | Tax Expense | D&O Insurance Payable | Tax Prep | Valuation Expense | Due to Affiliate | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 100.85 | | | | | | | | | | |
| 1/31/2021 | 2,916.67 | - | 65.99 | - | - | - | 2,220.00 | - | - | - | 541.67 | - | - | 5,744.32 |
| 2/28/2021 | 2,916.67 | - | 65.18 | - | - | - | - | - | - | - | 541.67 | - | - | 3,523.51 |
| 3/31/2021 | 2,916.67 | - | 35.01 | - | - | - | 19,065.98 | - | - | - | 541.67 | - | - | 22,559.32 |
| 4/30/2021 | 2,916.67 | - | 165.51 | - | - | - | 4,327.75 | - | - | - | 541.67 | - | - | 7,951.59 |
| 5/31/2021 | 2,916.67 | - | 60.29 | - | - | - | - | - | - | - | 541.67 | - | - | 3,518.62 |
| 6/30/2021 | 2,916.67 | - | 68.70 | - | 1,200.00 | - | 7,747.75 | - | - | - | 541.67 | - | - | 12,474.78 |
| 7/31/2021 | 2,916.67 | - | 187.39 | - | - | - | - | - | - | - | 541.67 | - | - | 3,645.72 |
| 8/31/2021 | 2,916.67 | - | 36.55 | - | - | - | - | - | - | - | 541.67 | - | - | 3,494.88 |
| 9/30/2021 | 2,916.67 | - | 36.53 | - | - | - | - | - | - | - | 541.67 | - | - | 3,494.86 |
| 10/31/2021 | 2,916.67 | - | 36.80 | - | - | - | - | - | - | - | 541.67 | - | - | 3,495.13 |
| 11/30/2021 | 2,916.67 | - | - | - | - | - | - | - | - | - | 541.67 | - | - | 3,458.33 |
| 12/31/2021 | 7,260.42 | - | (324.51) | - | 68.50 | - | 15,493.05 | - | - | - | 1,041.67 | - | - | 23,539.12 |
| | 39,343.75 | - | 433.44 | - | 1,268.50 | - | 48,854.53 | - | - | - | 7,000.00 | - | - | **96,900.22** |

| Expense Paid | Audit Fees | Management Fees | BBVA Custody Fees | Prepaid Org Costs | Other Expense | Org Cost Payable | Legal Fees | Prepaid D&O Insurance | Tax Expense | D&O Insurance Payable | Tax Prep | Valuation Expense | Due to Affiliate | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/31/2021 | - | - | 65.99 | - | - | - | 2,220.00 | - | - | - | - | - | - | 2,285.99 |
| 2/28/2021 | - | - | 65.18 | - | - | - | - | - | - | - | - | - | - | 65.18 |
| 3/31/2021 | 20,750.00 | - | 35.01 | - | - | - | 19,065.98 | - | - | - | - | 6,480.00 | - | 46,330.99 |
| 4/30/2021 | - | - | 165.51 | - | - | - | 4,327.75 | - | - | - | - | 6,480.00 | - | 10,973.26 |
| 5/31/2021 | 20,750.00 | - | 60.29 | - | - | - | - | - | - | - | - | - | - | 20,810.29 |
| 6/30/2021 | - | - | 68.70 | - | 1,200.00 | - | 7,747.75 | - | - | - | - | - | - | 9,016.45 |
| 7/31/2021 | - | - | 187.39 | - | - | - | - | - | - | - | - | - | - | 187.39 |
| 8/31/2021 | - | - | 36.55 | - | - | - | - | - | - | - | - | - | - | 36.55 |
| 9/30/2021 | - | - | 36.53 | - | - | - | - | - | - | - | - | - | - | 36.53 |
| 10/31/2021 | - | - | 36.80 | - | - | - | - | - | - | - | - | - | - | 36.80 |
| 11/30/2021 | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 12/31/2021 | (6,500.00) | - | - | - | 68.50 | - | 9,628.25 | - | - | - | 6,500.00 | - | - | 9,696.75 |
| | 35,000.00 | - | 757.95 | - | 1,268.50 | - | 42,989.73 | - | - | - | 6,500.00 | 12,960.00 | - | 99,476.18 |
| Plus: Prior Year | 30,656.25 | (0.00) | 324.51 | - | - | - | - | - | - | 0.00 | 6,500.00 | 12,960.00 | 86,480.00 | 136,920.76 |
| **2021 FYE Liabil** | **35,000.00** | **(0.00)** | **-** | **-** | **-** | **-** | **5,864.80** | **-** | **-** | **0.00** | **7,000.00** | **-** | **86,480.00** | **134,344.80** |

| | |
|---|---|
| Accrued Expenses | 47,864.80 |
| Prepaid Expenses | (0.00) |
| Due to Affiliate | 86,480.00 |
| | |
| Professional Fees | 88,198.28 |
| Custody | 433.44 |
| Other | 1,268.50 |
| Tax | 7,000.00 |

**Expenses Debited**

| | Audit Fees | Management Fees | PNC Custody Fees | Prepaid Org Costs | Other Expense | Org Cost Payable | Legal Fees | Prepaid D&O Insurance | Tax Expense | D&O Insurance Payable | Tax Prep | Valuation Expense | Due to Affiliate | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 100.85 | | | | | | | | | | |
| 1/31/2022 | 2,916.67 | - | 45.51 | - | - | - | - | - | - | - | 583.33 | - | - | 3,545.51 |
| 2/28/2022 | 2,916.67 | | 190.43 | | | | 5,864.80 | | | | 583.33 | | | 9,555.23 |
| 3/31/2022 | 2,916.67 | | | | 235.60 | | | | | | 583.33 | | | 3,735.60 |
| 4/30/2022 | 2,916.67 | | | | | | | | | | 583.33 | | | 3,500.00 |
| 5/31/2022 | 2,916.67 | | 100.27 | | 2,619.31 | | 25,655.75 | | | | 583.33 | | | 31,875.33 |
| 6/30/2022 | 2,916.67 | | 273.95 | | | | | | | | 583.33 | | | 3,773.95 |
| 7/31/2022 | | | 211.59 | | | | | | | | | | | 211.59 |
| 8/31/2022 | 5,833.33 | | 50.19 | | 966.46 | | 15,753.50 | | | | 1,166.67 | | | 23,770.15 |
| 9/30/2022 | 2,916.67 | | 62.90 | | | | | | | | 583.33 | | | 3,562.90 |
| 10/31/2022 | 2,916.67 | | 50.56 | | | | | | | | 583.33 | | | 3,550.56 |
| 11/30/2022 | 2,916.67 | | 61.74 | | 245.30 | | | | | | 583.33 | | | 3,807.04 |
| 12/31/2022 | 2,916.67 | | 62.37 | | 50.20 | | (5,864.80) | | | | 583.33 | | | (2,252.23) |
| | 35,000.00 | - | 1,109.51 | - | 4,116.87 | - | 41,409.25 | - | - | - | 7,000.00 | - | - | **88,635.63** |

| Expense Paid | Audit Fees | Management Fees | PNC Custody Fees | Prepaid Org Costs | Other Expense | Org Cost Payable | Legal Fees | Prepaid D&O Insurance | Tax Expense | D&O Insurance Payable | Tax Prep | Valuation Expense | Due to Affiliate | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/31/2022 | - | - | 45.51 | - | - | - | - | - | - | - | - | - | - | 45.51 |
| 2/28/2022 | 17,500.00 | | 190.43 | | | | 5,864.80 | | | | | | (120,400.00) | (96,844.77) |
| 3/31/2022 | | | | | 235.60 | | | | | | | | | 235.60 |
| 4/30/2022 | 17,500.00 | | | | 50.20 | | | | | | 3,500.00 | | | 21,050.20 |
| 5/31/2022 | | | 100.27 | | 2,619.31 | | 25,655.75 | | | | | | | 28,375.33 |
| 6/30/2022 | | | 273.95 | | | | | | | | | | | 273.95 |
| 7/31/2022 | | | 211.59 | | | | | | | | | | | 211.59 |
| 8/31/2022 | | | 50.19 | | 966.46 | | 15,753.50 | | | | | | | 16,770.15 |
| 9/30/2022 | | | 62.90 | | | | | | | | | | | 62.90 |
| 10/31/2022 | | | 50.56 | | | | | | | | | | 206,880.00 | 206,930.56 |

| | Audit Fees | Management Fees | PNC Custody Fees | Prepaid Org Costs | Other Expense | Org Cost Payable | Legal Fees | Prepaid D&O Insurance | Tax Expense | D&O Insurance Payable | Tax Prep | Valuation Expense | Due to Affiliate | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/30/2022 | | | 61.74 | | 245.30 | | | | | | | | | 307.04 |
| 12/31/2022 | | | 62.37 | | | | | | | | | | | 62.37 |
| | 35,000.00 | - | 1,109.51 | - | 4,116.87 | - | 47,274.05 | - | - | - | 3,500.00 | - | 86,480.00 | 177,480.43 |
| Plus: Prior Year | 35,000.00 | (0.00) | - | - | - | - | 5,864.80 | - | - | 0.00 | 7,000.00 | - | 86,480.00 | 134,344.80 |
| **2022 FYE Liabil** | **35,000.00** | **(0.00)** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **0.00** | **10,500.00** | **-** | **-** | **45,500.00** |

| | |
|---|---|
| Accrued Expenses | 45,500.00 |
| Prepaid Expenses | (0.00) |
| Due to Affiliate | - |
| Professional Fees | 76,409.25 |
| Custody | 1,109.51 |
| Other | 4,116.87 |
| Tax | 7,000.00 |

**2023**

**Expenses Debited**

| | Audit Fees | Management Fees | PNC Custody Fees | Prepaid Org Costs | Other Expense | Org Cost Payable | Legal Fees | Prepaid D&O Insurance | Tax Expense | D&O Insurance Payable | Tax Prep | Valuation Expense | Due to Affiliate | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | **100.85** | | | | | | | | | | |
| 1/31/2023 | 2,916.67 | | 49.61 | | 948.49 | | | | | | 583.33 | | | 4,498.10 |
| 2/28/2023 | 2,916.67 | | 122.04 | | - | | | | | | 583.33 | | | 3,622.04 |
| 3/31/2023 | 2,916.67 | | 60.48 | | - | | | | | | 583.33 | | | 3,560.48 |
| 4/30/2023 | 2,916.67 | | 59.66 | | | | | | | | | | | 2,976.33 |
| 5/31/2023 | 2,916.67 | | 72.54 | | 5,071.18 | | 10,000.00 | | | | | | | 18,060.39 |
| 6/30/2023 | 2,916.67 | | 197.56 | | | | | | | | 3,250.00 | | | 6,364.23 |
| 7/31/2023 | 2,916.67 | | 85.62 | | | | | | | | 600.00 | | | 3,602.29 |
| 8/31/2023 | 2,916.67 | | 218.95 | | | | | | | | 600.00 | | | 3,735.62 |
| 9/30/2023 | 2,916.67 | | 218.95 | | | | | | | | 600.00 | | | 3,735.62 |
| 10/31/2023 | 2,916.67 | | 218.80 | | | | | | | | 600.00 | | | 3,735.47 |
| 11/30/2023 | 2,916.67 | | 218.80 | | | | | | | | 600.00 | | | 3,735.47 |
| 12/31/2023 | 2,916.67 | | 218.80 | | | | (10,000.00) | | | | 11,000.00 | | | 4,135.47 |
| | 35,000.00 | - | 1,741.81 | - | 6,019.67 | - | - | - | - | - | 19,000.00 | - | - | **61,761.48** |

| Expense Paid | Audit Fees | Management Fees | PNC Custody Fees | Prepaid Org Costs | Other Expense | Org Cost Payable | Legal Fees | Prepaid D&O Insurance | Tax Expense | D&O Insurance Payable | Tax Prep | Valuation Expense | Due to Affiliate | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/31/2023 | | | 49.61 | | 948.49 | | | | | | | | | 998.10 |
| 2/28/2023 | | | 122.04 | | | | | | | | | | | 122.04 |
| 3/31/2023 | | | 60.48 | | | | | | | | | | | 60.48 |
| 4/30/2023 | 17,500.00 | | 59.66 | | | | | | | | | | | 17,559.66 |
| 5/31/2023 | | | 72.54 | | 5,071.18 | | 10,000.00 | | | | | | | 15,143.72 |
| 6/30/2023 | 17,500.00 | | 197.56 | | | | | | | | 15,500.00 | | | 33,197.56 |
| 7/31/2023 | | | 85.62 | | | | | | | | | | | 85.62 |
| 8/31/2023 | | | 218.95 | | | | | | | | | | | 218.95 |
| 9/30/2023 | | | 218.95 | | | | | | | | | | | 218.95 |
| 10/31/2023 | | | 218.80 | | | | | | | | | | | 218.80 |
| 11/30/2023 | | | 218.80 | | | | | | | | | | | 218.80 |
| 12/31/2023 | | | 218.80 | | | | (10,000.00) | | | | | | 10,000.00 | 218.80 |
| | 35,000.00 | - | 1,741.81 | - | 6,019.67 | - | - | - | - | - | 15,500.00 | - | 10,000.00 | 68,261.48 |
| Plus: Prior Year | 35,000.00 | (0.00) | - | - | - | - | - | - | - | 0.00 | 10,500.00 | - | - | 45,500.00 |
| **2023 FYE Liabil** | **35,000.00** | **(0.00)** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **0.00** | **14,000.00** | **-** | **(10,000.00)** | **39,000.00** |

| | |
|---|---|
| Accrued Expenses | 49,000.00 |
| Prepaid Expenses | (0.00) |
| Due to Affiliate | (10,000.00) |
| Professional Fees | 35,000.00 |
| Custody | 1,741.81 |
| Other | 6,019.67 |
| Tax | 19,000.00 |

**2024**

**Expenses Debited**

| | Audit Fees | Management Fees | PNC Custody Fees | Prepaid Org Costs | Other Expense | Org Cost Payable | Legal Fees | Prepaid D&O Insurance | Tax Expense | D&O Insurance Payable | Tax Prep | Valuation Expense | Due to Affiliate | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | **100.85** | | | | | | | | | | |
| 1/31/2024 | 2,916.67 | | 218.80 | | | | | | | | 583.33 | | | 3,718.80 |
| 2/29/2024 | 2,916.67 | | 218.80 | | | | | | | | 583.33 | | | 3,718.80 |
| 3/31/2024 | 2,916.67 | | 233.80 | | | | | | | | 583.33 | | | 3,733.80 |
| 4/30/2024 | 2,916.67 | | 220.08 | | | | | | | | 583.33 | | | 3,720.08 |
| 5/31/2024 | 2,916.67 | | 267.80 | | | | | | | | 583.33 | | | 3,767.80 |
| 6/30/2024 | 2,916.67 | | 213.12 | | | | | | | | 583.33 | | | 3,713.12 |
| 7/31/2024 | 2,916.67 | | 212.98 | | | | | | | | 583.33 | | | 3,712.98 |
| 8/31/2024 | 2,916.67 | | 212.98 | | | | | | | | 583.33 | | | 3,712.98 |
| 9/30/2024 | 2,916.67 | | 212.98 | | | | | | | | 583.33 | | | 3,712.98 |
| 10/31/2024 | 2,916.67 | | 212.98 | | | | | | | | 583.33 | | | 3,712.98 |
| 11/30/2024 | 2,916.67 | | 212.98 | | | | | | | | 583.33 | | | 3,712.98 |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/31/2024 | 4,416.67 | | 212.98 | | | | | | | | 983.33 | | | 5,612.98 |
| | 36,500.00 | - | 2,650.28 | - | - | - | - | - | - | - | 7,400.00 | - | - | **46,550.28** |

| Expense Paid | Audit Fees | Management Fees | PNC Custody Fees | Prepaid Org Costs | Other Expense | Org Cost Payable | Legal Fees | Prepaid D&O Insurance | Tax Expense | D&O Insurance Payable | Tax Prep | Valuation Expense | Due to Affiliate | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/31/2024 | | | 218.80 | | | | | | | | | | | 218.80 |
| 2/29/2024 | | | 218.80 | | | | | | | | | | (10,000.00) | (9,781.20) |
| 3/31/2024 | | | 233.80 | | | | | | | | | | | 233.80 |
| 4/30/2024 | 35,000.00 | | 220.08 | | | | | | | | 14,000.00 | | | 49,220.08 |
| 5/31/2024 | | | 267.80 | | | | | | | | | | | 267.80 |
| 6/30/2024 | | | 213.12 | | | | | | | | | | | 213.12 |
| 7/31/2024 | | | 212.98 | | | | | | | | | | | 212.98 |
| 8/31/2024 | | | 212.98 | | | | | | | | | | | 212.98 |
| 9/30/2024 | | | 212.98 | | | | | | | | | | | 212.98 |
| 10/31/2024 | | | 212.98 | | | | | | | | | | | 212.98 |
| 11/30/2024 | | | 212.98 | | | | | | | | | | | 212.98 |
| 12/31/2024 | | | 212.84 | | | | | | | | | | | 212.84 |
| | 35,000.00 | - | 2,650.14 | - | - | - | - | - | - | - | 14,000.00 | - | (10,000.00) | 41,650.14 |
| Plus: Prior Year | 35,000.00 | (0.00) | - | - | - | - | - | - | - | 0.00 | 14,000.00 | - | (10,000.00) | 39,000.00 |
| **2024 FYE Liabil** | **36,500.00** | **(0.00)** | **0.14** | **-** | **-** | **-** | **-** | **-** | **-** | **0.00** | **7,400.00** | **-** | **-** | **43,900.14** |

| | |
|---|---|
| Accrued Expenses | 43,900.14 |
| Prepaid Expenses | (0.00) |
| Due to Affiliate | - |
| | |
| Professional Fees | 36,500.00 |
| Custody | 2,650.28 |
| Other | - |
| Tax | 7,400.00 |

**Rand PE Fund I, LP**
**Capital Accounts Roll Forward**

| | | Net Assets | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | **Rand PE Fund I, LP** | **Atlas IDF, LP** | | **Dolomiti, LLC** | | **Hakusan, LLC** | |
| 12/17/2015 | Beginning Net Assets | 16,417,187 | 16,253,000 | | 123,140 | | 41,047 | |
| | Subscriptions | | | | | | | |
| | Redemptions | | | | | | | |
| 12/17/2015 | Adjusted Beginning Capital Balance | 16,417,186.67 | 16,253,000.00 | 99.00% | 123,140.00 | 0.75% | 41,046.67 | 0.25% |
| 14 | Gross Profit and Loss | (187,676.21) | (185,799.28) | | (1,407.70) | | (469.23) | |
| | Management Fees | (30.79) | | | (23.09) | | (7.70) | |
| 12/31/2015 | Ending Net Assets | 16,229,479.67 | 16,067,200.72 | | 121,709.21 | | 40,569.74 | |
| | Subscriptions | | | | | | | |
| | Redemptions | | | | | | | |
| 1/1/2016 | Adjusted Beginning Capital Balance | 16,229,479.67 | 16,067,200.72 | 99.00% | 121,709.21 | 0.75% | 40,569.74 | 0.25% |
| 366 | Gross Profit and Loss | 29,423,073.42 | 29,128,871.42 | | 220,651.50 | | 73,550.51 | |
| | Management Fees | (1,233.58) | | | (925.18) | | (308.39) | |
| 12/31/2016 | Ending Capital Balance | 45,651,319.51 | 45,196,072.14 | | 341,435.52 | | 113,811.85 | |
| | Subscriptions | | | | | | | |
| | Redemptions | | | | | | | |
| 1/1/2017 | Adjusted Beginning Capital Balance | 45,651,319.51 | 45,196,072.14 | 99.00% | 341,435.52 | 0.75% | 113,811.85 | 0.25% |
| 366 | Gross Profit and Loss | 57,538,814.90 | 56,965,022.19 | | 430,344.52 | | 143,448.19 | |
| | Management Fees | (3,446.09) | | | (2,584.57) | | (861.52) | |
| 12/31/2017 | Ending Capital Balance | 103,186,688.32 | 102,161,094.33 | | 769,195.48 | | 256,398.52 | |
| | Subscriptions | | | | | | | |
| | Redemptions | | | | | | | |
| 1/1/2018 | Adjusted Beginning Capital Balance | 103,186,688.32 | 102,161,094.33 | 99.01% | 769,195.48 | 0.75% | 256,398.52 | 0.25% |
| 366 | Gross Profit and Loss | (38,377,111.74) | (37,995,673.63) | | (286,078.58) | | (95,359.53) | |
| | Management Fees | (5,132.26) | | | (3,849.19) | | (1,283.06) | |
| 12/31/2018 | Ending Capital Balance | 64,804,444.32 | 64,165,420.69 | | 479,267.71 | | 159,755.92 | |
| | Subscriptions | | | | | | | |
| | Redemptions | | | | | | | |
| 1/1/2019 | Adjusted Beginning Capital Balance | 64,804,444.32 | 64,165,420.69 | 99.01% | 479,267.71 | 0.74% | 159,755.92 | 0.25% |
| 366 | Gross Profit and Loss | (59,601,191.85) | (59,013,476.45) | | (440,786.54) | | (146,928.86) | |
| | Management Fees | (3,722.15) | | | (2,791.61) | | (930.54) | |
| 12/31/2019 | Ending Capital Balance | 5,199,530.32 | 5,151,944.24 | | 35,689.56 | | 11,896.52 | |
| | Subscriptions | 50,000.00 | 50,000.00 | | | | | |
| | Redemptions | | | | | | | |
| 1/1/2020 | Adjusted Beginning Capital Balance | 5,249,530.32 | 5,201,944.24 | 99.09% | 35,689.56 | 0.68% | 11,896.52 | 0.23% |
| 366 | Gross Profit and Loss | (5,383,924.98) | (5,335,120.64) | | (36,603.25) | | (12,201.09) | |
| | Management Fees | (70.02) | | | (52.51) | | (17.50) | |
| 12/31/2020 | Ending Capital Balance | (134,464.68) | (133,176.40) | | (966.21) | | (322.07) | |
| | Subscriptions | 100,000.00 | 100,000.00 | | | | | |
| | Redemptions | | | | | | | |
| 1/1/2021 | Adjusted Beginning Capital Balance | (34,464.68) | (33,176.40) | 96.26% | (966.21) | 2.80% | (322.07) | 0.93% |
| 366 | Gross Profit and Loss | (96,900.00) | (93,277.90) | | (2,716.58) | | (905.53) | |
| | Management Fees | - | | | - | | - | |
| 12/31/2021 | Ending Capital Balance | (131,364.68) | (126,454.30) | | (3,682.79) | | (1,227.60) | |
| | Subscriptions | - | - | | | | | |
| | Redemptions | | | | | | | |
| 1/1/2022 | Adjusted Beginning Capital Balance | (131,364.68) | (126,454.30) | 96.26% | (3,682.79) | 2.80% | (1,227.60) | 0.93% |
| 366 | Gross Profit and Loss | 215,667.57 | 207,605.96 | | 6,046.21 | | 2,015.40 | |
| | Management Fees | - | | | - | | - | |
| 12/31/2022 | Ending Capital Balance | 84,302.89 | 81,151.67 | | 2,363.42 | | 787.81 | |
| | Subscriptions | - | - | | | | | |
| | Redemptions | | | | | | | |
| 1/1/2023 | Adjusted Beginning Capital Balance | 84,302.89 | 81,151.67 | 96.26% | 2,363.42 | 2.80% | 787.81 | 0.93% |
| 366 | Gross Profit and Loss | (9,520.00) | (9,164.14) | | (266.89) | | (88.96) | |
| | Management Fees | - | | | - | | - | |
| 12/31/2023 | Ending Capital Balance | 74,782.89 | 71,987.52 | | 2,096.53 | | 698.84 | |
| | Subscriptions | - | - | | | | | |
| | Redemptions | | | | | | | |
| 1/1/2024 | Adjusted Beginning Capital Balance | 74,782.89 | 71,987.52 | 96.26% | 2,096.53 | 2.80% | 698.84 | 0.93% |
| 366 | Gross Profit and Loss | 901,208.00 | 867,521.04 | | 25,265.22 | | 8,421.74 | |
| | Management Fees | - | | | - | | - | |
| 12/31/2024 | Ending Capital Balance | 975,990.89 | 939,508.56 | | 27,361.75 | | 9,120.58 | |
| | Subscriptions | - | - | | | | | |
| | Redemptions | - | - | | - | | - | |
| 1/1/2025 | Adjusted Beginning Capital Balance | 975,990.89 | 939,508.56 | 96.262% | 27,361.75 | 2.803% | 9,120.58 | 0.934% |
| 366 | Gross Profit and Loss | (26,278.00) | (25,295.73) | | (736.70) | | (245.57) | |
| | Management Fees | - | | | - | | - | |
| | Redemptions | (949,712.89) | (914,212.83) | | (26,625.05) | | (8,875.02) | |
| 12/31/2025 | Ending Capital Balance | 0.00 | - | | - | | - | |

| | Atlas IDF | | | | | | DOLOMITI, LLC | | | Hakusan, LLC | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Gross Return | YTD Gross | ITD Gross | Net Return | YTD Net | ITD Net | Net Return | YTD Net | ITD Net | Net Return | YTD Net | ITD Net |
| 12/31/2015 | -1.14% | -1.14% | -1.14% | -1.14% | -1.14% | -1.14% | -1.16% | -1.16% | -1.16% | -1.16% | -1.16% | -1.16% |
| 12/31/2016 | 181.29% | 181.29% | 178.08% | 181.29% | 181.29% | 178.07% | 180.53% | 180.53% | 177.27% | 180.53% | 180.53% | 177.27% |
| 12/31/2017 | 126.04% | 126.04% | 528.57% | 126.03% | 126.03% | 528.53% | 125.28% | 125.28% | 524.65% | 125.28% | 125.28% | 524.65% |
| 12/31/2018 | -37.19% | -37.19% | 294.79% | -37.20% | -37.20% | 294.74% | -37.69% | -37.69% | 289.21% | -37.69% | -37.69% | 289.21% |
| 12/31/2019 | -91.97% | -91.97% | -68.30% | -91.98% | -91.98% | -68.33% | -92.55% | -92.55% | -71.02% | -92.55% | -92.55% | -71.02% |
| 12/31/2020 | -102.56% | -102.56% | -100.81% | -102.56% | -102.56% | -100.81% | -102.71% | -102.71% | -100.78% | -102.71% | -102.71% | -100.78% |
| 12/31/2021 | 281.16% | 281.16% | -103.09% | 281.16% | 281.16% | -103.09% | 281.16% | 281.16% | -102.99% | 281.16% | 281.16% | -102.99% |
| 12/31/2022 | -164.17% | -164.17% | -98.01% | -164.17% | -164.17% | -98.02% | -164.17% | -164.17% | -98.08% | -164.17% | -164.17% | -98.08% |
| 12/31/2023 | -11.29% | -11.29% | -98.24% | -11.29% | -11.29% | -98.24% | -11.29% | -11.29% | -98.30% | -11.29% | -11.29% | -98.30% |
| 12/31/2024 | 1205.10% | 1205.10% | -77.02% | 1205.10% | 1205.10% | -77.03% | 1205.10% | 1205.10% | -77.78% | 1205.10% | 1205.10% | -77.78% |
| 12/31/2025 | -2.69% | -2.69% | -77.64% | -2.69% | -2.69% | -77.65% | -2.69% | -2.69% | -78.38% | -2.69% | -2.69% | -78.38% |

*(U.S. dollars, in thousands)*

| | Level 1 | Level 2 | Level 3 | Total fair value at December 31, 2024 | |
|---|---|---|---|---|---|
| LLC interests | $ - | $ - | $ 1,000,000 | $ 1,000,000 * | - |

| | LLC interests | |
|---|---|---|
| Fair value as of December 31, 2023 | $ - | |
| Purchases | - | |
| Sales and maturities | - | |
| Transfers in | - | |
| Transfers out | - | |
| Net realized gains/(losses) | - | |
| Net change in unrealized gains/(losses) | 1,000,000 | - |
| Fair value as of December 31, 2024 | $ 1,000,000 | - |

| | LLC interests |
|---|---|
| Fair value as of December 31, 2024 | $ 1,000,000 |
| Purchases | - |
| Sales and maturities | (1,000,000) |
| Transfers in | - |
| Transfers out | - |
| Net realized gains/(losses) | (14,986,892) |
| Net change in unrealized gains/(losses) | 14,986,892 |
| Fair value as of February 24, 2025 (liquidation date) * | $ - |

| | Level 1 | Level 2 | Level 3 | Total fair value at February 24, 2025 (liquidation date) |
|---|---|---|---|---|
| LLC interests | $ - | $ - | $ 1,000,000 * | $ 1,000,000 |

| Category | Fair Value at December 31, 2024 | Valuation Technique | Unobservable Inputs | Input Value(s) |
|---|---|---|---|---|
| LLC interests | $ 1,000,000 | Transaction Indication of Value | Sales Price | $ 1,000,000 |

| | Year ended December 31, 2024 | Period ended February 24, 2025 (liquidation date) |
|---|---|---|
| | **Series I** | **Series I** |
| Total return [1] | 1205.10 % | (17.87)% |
| Ratios to average limited partners' capital [2] | | |
| Investment income | 0.0 % | 0.0 % |
| Operating expenses | (37.18)% | (17.87)% |
| Net investment loss | (37.18)% | (17.87)% |

Limited Partners

| Date | Beginning Balance | Contributions | Distributions | End Valuation | Ending Balance | | |
|---|---|---|---|---|---|---|---|
| 12/31/2023 | 74,783 | - | | 901,208 | 975,991 | - | 1205.10% |
| | | | | check: | - | | |
| | | | | | Average Net Assets | 525,386.89 | |

| | | Annualized | Ratios | | | | |
|---|---|---|---|---|---|---|---|
| Investment Income | - | | 0.00% | | | | |
| **Expenses** | 46,550 | | | 26,278.00 | 12/31/2024 | | |
| | 46,550 | 46,550 | -37.18% | -2.69% | 2/24/2025 | 55 | -17.87% |
| | - | | | | | | |

| Month | Book NAV | Adjustments | Adjusted NAV | | MTD PnL | MTD Total | YTD Total |
|---|---|---|---|---|---|---|---|
| 1/1/2024 | 22,541.07 | 52,242.00 | 74,783.07 | | - | - | - |
| 1/31/2024 | 71,064.27 | - | 71,064.27 | | (3,718.80) | -4.97% | -4.97% |
| 2/29/2024 | 67,345.47 | - | 67,345.47 | | (3,718.80) | -5.23% | -9.95% |
| 3/31/2024 | 63,611.67 | - | 63,611.67 | | (3,733.80) | -5.54% | -14.94% |
| 4/30/2024 | 59,892.87 | - | 59,892.87 | | (3,718.80) | -5.85% | -19.91% |
| 5/31/2024 | 56,124.07 | - | 56,124.07 | | (3,768.80) | -6.29% | -24.95% |
| 6/30/2024 | 52,410.95 | - | 52,410.95 | | (3,713.12) | -6.62% | -29.92% |
| 7/31/2024 | 48,697.97 | - | 48,697.97 | | (3,712.98) | -7.08% | -34.88% |
| 8/31/2024 | 44,984.99 | - | 44,984.99 | | (3,712.98) | -7.62% | -39.85% |
| 9/30/2024 | 41,272.01 | - | 41,272.01 | | (3,712.98) | -8.25% | -44.81% |
| 10/31/2024 | 37,559.03 | - | 37,559.03 | | (3,712.98) | -9.00% | -49.78% |
| 11/30/2024 | 33,846.05 | - | 33,846.05 | | (3,712.98) | -9.89% | -54.74% |
| 12/31/2024 | 1,028,233.07 | (52,242.00) | 975,991.07 | 0.18 | 942,145.02 | 2783.62% | 1205.10% |
| | | | 125,198.73 | Average net assets | | | |

| | |
|---|---|
| - | PY Adjustments (Org Costs) |
| 0 | Quarterly org cost accrual |

| **Adjusting Entry** | **DR** | **CR** |
|---|---|---|
| Tax expense true-up | 52,242.00 | |
| Taxes payable | | 52,242.00 |

# EXHIBIT 256

**DAF - Net Asset Value**

| | 2012 | 2013 | 2014 | 2015 | 12/31/2017 | 12/31/2018 | 12/31/2019 | 12/31/2020 | 3/31/2021 | 6/30/2021 | 9/30/2021 | 12/31/2021 | 3/31/2022 | 6/30/2022 | 9/30/2022 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Highland Kansas City - 908** | | | | | **195,000.00** | **164,500.00** | **168,250.00** | **120,250.00** | **-** | **-** | **-** | **176,250.00** | **-** | **-** | **-** |
| **Highland Dallas - 916** | | | | | **278,100.00** | **262,000.00** | **231,737.50** | **162,737.50** | **33,187.50** | **40,062.50** | **43,062.50** | **236,512.50** | **46,437.50** | **52,437.50** | **50,750.00** |
| **Highland Santa Barbara - 890** | | | | | **60,000.00** | **52,375.00** | **53,312.50** | **41,312.50** | **44,437.50** | **51,312.50** | **54,312.50** | **55,312.50** | **57,687.50** | **63,687.50** | **62,000.00** |
| **North Texas Community Foundation** | | | | | **100,000.00** | **100,000.00** | **100,000.00** | **100,000.00** | | | | **100,000.00** | | | |
| **Quarterly Fees** | | | | | **633,100** | **578,875** | **553,300** | **324,300** | **77,625** | **91,375** | **97,375** | **468,075** | **104,125** | **116,125** | **112,750** |
| | | | | | | | | | | | | | | | |
| **Charitable DAF Holdco Value** | | | | | | | | | | | | | | | |
| **Value per 100 Shares** | | | | | **78,000,000** | **65,800,000** | **67,300,000** | **48,100,000** | **53,100,000** | **64,100,000** | **68,900,000** | **70,500,000** | **74,300,000** | **83,900,000** | **81,200,000** |
| | | | | | | | | | | | | | | | |
| **Highland Kansas City (100 Shares)** | | | | | | | | | | | | | | | |
| NAV | | | | | 78,000,000 | 65,800,000 | 67,300,000 | 48,100,000 | | | | 70,500,000 | | | |
| Annual Fee % | | | | | 0.25% | 0.25% | 0.25% | 0.25% | | | | 0.25% | | | |
| **Total Kansas City Quarterly Fee** | | | | | **195,000** | **164,500** | **168,250** | **120,250** | | | | **176,250** | | | |
| | | | | | | | | | | | | | | | |
| **Highland Dallas (100 Shares)** | | | | | | | | | | | | | | | |
| NAV | | | | | 78,000,000 | 65,800,000 | 67,300,000 | 48,100,000 | 53,100,000 | 64,100,000 | 68,900,000 | 70,500,000 | 74,300,000 | 83,900,000 | 81,200,000 |
| Quarterly Fee % | | | | | 0.0625% | 0.0625% | 0.0625% | 0.0625% | 0.0625% | 0.0625% | 0.0625% | 0.0625% | 0.0625% | 0.0625% | 0.0625% |
| Quarterly Fee $ | | | | | 48,750 | 41,125 | 42,063 | 30,062.50 | 33,187.50 | 40,062.50 | 43,062.50 | 44,062.50 | 46,437.50 | 52,437.50 | 50,750.00 |
| | | | | | | | | | | | | | | | |
| NAV | | | | | 76,450,000 | 73,625,000 | 63,225,000 | 44,225,000 | | | | 64,150,000 | | | |
| Annual Unrestricted Gift % | | | | | 0.30% | 0.30% | 0.30% | 0.30% | | | | 0.30% | | | |
| Annual Unrestricted Gift $ | | | | | 229,350 | 220,875 | 189,675 | 132,675 | - | - | - | 192,450 | - | - | - |
| **Total Dallas Quarterly Fee** | | | | | **278,100** | **262,000** | **231,738** | **162,737.50** | **33,187.50** | **40,062.50** | **43,062.50** | **236,512.50** | **46,437.50** | **52,437.50** | **50,750.00** |
| | | | | | | | | | | | | | | | |
| **Highland Santa Barbara (100 Shares)** | | | | | | | | | | | | | | | |
| 1st Tier NAV | | | | | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 |
| 1st Tier Fee | | | | | 0.25% | 0.25% | 0.25% | 0.25% | 0.25% | 0.25% | 0.25% | 0.25% | 0.25% | 0.25% | 0.25% |
| Annual Fee 1st Tier | | | | | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 |
| | | | | | | | | | | | | | | | |
| 2nd Tier NAV | | | | | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 |
| 2nd Tier Fee | | | | | 0.19% | 0.19% | 0.19% | 0.19% | 0.19% | 0.19% | 0.19% | 0.19% | 0.19% | 0.19% | 0.19% |
| Annual Fee 2nd Tier | | | | | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 |
| | | | | | | | | | | | | | | | |
| 3rd Tier NAV | | | | | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 |
| 3rd Tier Fee | | | | | 0.13% | 0.13% | 0.13% | 0.13% | 0.13% | 0.13% | 0.13% | 0.13% | 0.13% | 0.13% | 0.13% |
| Annual Fee 3rd Tier | | | | | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 |
| | | | | | | | | | | | | | | | |
| 4th Tier NAV | | | | | 68,000,000 | 55,800,000 | 57,300,000 | 38,100,000 | 43,100,000 | 54,100,000 | 58,900,000 | 60,500,000 | 64,300,000 | 73,900,000 | 71,200,000 |
| 4th Tier Fee | | | | | 0.06% | 0.06% | 0.06% | 0.06% | 0.06% | 0.06% | 0.06% | 0.06% | 0.06% | 0.06% | 0.06% |
| Annual Fee 4th Tier | | | | | 42,500 | 34,875 | 35,813 | 23,813 | 26,938 | 33,813 | 36,813 | 37,813 | 40,188 | 46,188 | 44,500 |
| **Total Santa Barbara Quarterly Fee** | | | | | **60,000** | **52,375** | **53,313** | **41,312.50** | **44,437.50** | **51,312.50** | **54,312.50** | **55,312.50** | **57,687.50** | **63,687.50** | **62,000.00** |

Fees to Greater Kansas City Community Foundation:

Annual fees equal to the greater of $62,500 or .25% (25 basis points) of the underlying net asset value plus out of pocket expense. In addition, GKCCF expects Highland Kansas City Foundation, Inc. to make $1 million available each year, on average, for grant making.

Example: $100,000,000/3 equals the asset value or $33,333,333.33

$ 33,333,333.33 x 0.0025 **$ 83,333.33**

Payouts to date:

Fees to The Dallas Foundation

One-fourth of .25% (25 basis points annually) of underlying prior quarter end net asset value payable quarterly (6.25 basis points quarterly) in arrears plus .30% (30 basis points) unrestricted annual gift to the Dallas Foundation.
In addition, The Dallas Foundation expects Highland Dallas Foundation, Inc. to make $1M available each year, on average, for grant-making.

| | | | | | |
|---|---|---|---|---|---|
| Example: | $100,000,000/3 | = | $33,333,333.33 | Asset Value | |
| | $33,333,333 | x | 0.0025 | $83,333.33 | |
| | $33,333,334 | x | 0.0030 | $100,000.00 | |
| | | | | **$183,333.33** | |

Fees to Santa Barabara Foundation

The following percentage of the underlying prior queater end net asset value payable quarterly in arrears.
In addition, Santa Barbara Foundation expects Highland Santa Barbara Foundation, Inc. to make $1M available each year, on average, for grant-making.

1% (100 basis points) on the first $3M
.75% (75 basis points) on the next $2M
.50% (50 basis points) on the next $5M
.25% (25 basis points) on all amounts over $10 million

Example: $100,000,000/3 = $33,333,333.33 Asset Value

| | | |
|---|---|---|
| $ 3,000,000.00 | 0.0100 | $ 30,000.00 |
| $ 2,000,000.00 | 0.0075 | $ 15,000.00 |
| $ 5,000,000.00 | 0.0050 | $ 25,000.00 |
| $23,333,333.33 | 0.0025 | $ 58,333.33 |
| | | $ 128,333.33 |

100k per year, Paid in Q4

| Date | NAV | Rounded | Participation Shares | NAV/Share | Lack of Control Discount | Control Discounted NAV/Share | Lack of Marketability Discount | Discounted Valuation | Discounted NAV | Discounted NAV (Rounded) |
|---|---|---|---|---|---|---|---|---|---|---|
| 6/30/2017 | $ 270,713,527 | $ 270,700,000 | 305 | $ 887,541 | 5% | $ 843,164 | 10% | $ 758,848 | $ 75,884,754 | $ 75,900,000 |
| 9/30/2017 | $ 275,644,508 | $ 275,600,000 | 305 | $ 903,607 | 5% | $ 858,426 | 10% | $ 772,584 | $ 77,258,361 | $ 77,300,000 |
| 3/31/2018 | $ 279,892,720 | $ 279,900,000 | 305 | $ 917,705 | 5% | $ 871,820 | 10% | $ 784,638 | $ 78,463,770 | $ 78,500,000 |
| 6/30/2018 | $ 270,639,239 | $ 270,600,000 | 305 | $ 887,213 | 5% | $ 842,852 | 10% | $ 758,567 | $ 75,856,721 | $ 75,900,000 |
| 9/30/2018 | $ 265,046,251 | $ 265,000,000 | 305 | $ 868,852 | 5% | $ 825,410 | 10% | $ 742,869 | $ 74,286,885 | $ 74,300,000 |
| 12/31/2018 | $ 234,776,224 | $ 234,800,000 | 305 | $ 769,836 | 5% | $ 731,344 | 10% | $ 658,210 | $ 65,820,984 | $ 65,800,000 |
| 3/31/2019 | $ 226,930,067 | $ 226,900,000 | 305 | $ 743,934 | 5% | $ 706,738 | 10% | $ 636,064 | $ 63,606,393 | $ 63,600,000 |
| 6/30/2019 | $ 225,033,677 | $ 225,000,000 | 305 | $ 737,705 | 5% | $ 700,820 | 10% | $ 630,738 | $ 63,073,770 | $ 63,100,000 |
| 9/30/2019 | $ 210,013,508 | $ 210,000,000 | 305 | $ 688,525 | 5% | $ 654,098 | 10% | $ 588,689 | $ 58,868,852 | $ 58,900,000 |
| 12/31/2019 | $ 232,651,540 | $ 232,700,000 | 305 | $ 762,951 | 5% | $ 724,803 | 7% | $ 672,617 | $ 67,261,744 | $ 67,300,000 |
| 3/31/2020 | $ 154,476,837 | $ 154,500,000 | 305 | $ 506,557 | 8% | $ 466,033 | 12% | $ 412,439 | $ 41,243,902 | $ 41,200,000 |
| 6/30/2020 | $ 167,306,977 | $ 167,300,000 | 305 | $ 548,525 | 8% | $ 504,643 | 13% | $ 441,562 | $ 44,156,230 | $ 44,200,000 |
| 9/30/2020 | $ 161,125,205 | $ 161,100,000 | 305 | $ 528,197 | 8% | $ 485,941 | 11% | $ 434,431 | $ 43,443,124 | $ 43,400,000 |
| 12/31/2020 | $ 176,958,932 | $ 177,000,000 | 305 | $ 580,328 | 8% | $ 533,902 | 10% | $ 481,468 | $ 48,146,800 | $ 48,100,000 |
| 3/31/2021 | $ 191,901,974 | $ 191,900,000 | 305 | $ 629,180 | 8% | $ 578,846 | 8% | $ 530,807 | $ 53,080,700 | $ 53,100,000 |
| 6/30/2021 | $ 223,765,988 | $ 223,800,000 | 305 | $ 733,770 | 5% | $ 697,082 | 8% | $ 641,218 | $ 64,121,800 | $ 64,100,000 |
| 9/30/2021 | $ 238,028,108 | $ 238,000,000 | 305 | $ 780,328 | 5% | $ 741,311 | 7% | $ 688,760 | $ 68,876,000 | $ 68,900,000 |
| 12/31/2021 | $ 243,189,674 | $ 243,200,000 | 305 | $ 797,377 | 5% | $ 757,508 | 7% | $ 705,210 | $ 70,521,000 | $ 70,500,000 |
| 3/31/2022 | $ 262,539,795 | $ 262,500,000 | 305 | $ 860,656 | 7% | $ 797,828 | 7% | $ 742,890 | $ 74,289,000 | $ 74,300,000 |
| 6/30/2022 | $ 291,234,287 | $ 291,200,000 | 305 | $ 954,754 | 6% | $ 901,288 | 7% | $ 839,198 | $ 83,919,800 | $ 83,900,000 |
| 9/30/2022 | $ 289,502,301 | $ 289,500,000 | 305 | $ 949,180 | 8% | $ 873,246 | 7% | $ 812,125 | $ 81,212,500 | $ 81,200,000 |

# EXHIBIT 257

**DAF - Net Asset Value**

| | 2012 | 2013 | 2014 | 2015 | 12/31/2017 | 12/31/2018 | 12/31/2019 | 12/31/2020 | 3/31/2021 | 6/30/2021 | 9/30/2021 | 12/31/2021 | 3/31/2022 | 6/30/2022 | 9/30/2022 | 12/31/2022 | 3/31/2023 | 6/30/2023 | 9/30/2023 | 12/31/2023 | 3/31/2024 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Highland Kansas City - 908** | | | | | **195,000.00** | **164,500.00** | **168,250.00** | **120,250.00** | - | - | - | **176,250.00** | - | - | - | **191,750.00** | - | | | | |
| **Highland Dallas - 916** | | | | | **278,100.00** | **262,000.00** | **231,737.50** | **162,737.50** | **33,187.50** | **40,062.50** | **43,062.50** | **236,512.50** | **46,437.50** | **52,437.50** | **50,750.00** | **285,012.50** | **48,312.50** | **45,750.00** | | | |
| **Highland Santa Barbara - 890** | | | | | **60,000.00** | **52,375.00** | **53,312.50** | **41,312.50** | **44,437.50** | **51,312.50** | **54,312.50** | **55,312.50** | **57,687.50** | **63,687.50** | **62,000.00** | **59,187.50** | **59,562.50** | **57,000.00** | **58,937.50** | **60,177.95** | |
| **North Texas Community Foundation** | | | | | **100,000.00** | **100,000.00** | **100,000.00** | **100,000.00** | | | | **100,000.00** | | | | **100,000.00** | - | - | | | |
| **Quarterly Fees** | | | | | **633,100** | **578,875** | **553,300** | **324,300** | **77,625** | **91,375** | **97,375** | **468,075** | **104,125** | **116,125** | **112,750** | **535,950** | **107,875** | **102,750** | | | |
| | | | | | | | | | | | | | | | | | | | | | |
| **Charitable DAF Holdco Value** | | | | | | | | | | | | | | | | | | | | | |
| **Value per 100 Shares** | | | | | 78,000,000 | **65,800,000** | **67,300,000** | **48,100,000** | **53,100,000** | **64,100,000** | **68,900,000** | **70,500,000** | **74,300,000** | **83,900,000** | **81,200,000** | **76,700,000** | **77,300,000** | **73,200,000** | **76300000** | **78,284,712** | **76173502** |
| | | | | | | | | | | | | | | | | | | | | | |
| **Highland Kansas City (100 Shares)** | | | | | | | | | | | | | | | | | | | | | |
| NAV | | | | | 78,000,000 | 65,800,000 | 67,300,000 | 48,100,000 | | | | 70,500,000 | | | | 76,700,000 | | | | 78,284,712 | |
| Annual Fee % | | | | | 0.25% | 0.25% | 0.25% | 0.25% | | | | 0.25% | | | | 0.25% | | | | 0.25% | |
| **Total Kansas City Quarterly Fee** | | | | | **195,000** | **164,500** | **168,250** | **120,250** | | | | **176,250** | | | | **191,750** | | | | **195,712** | |
| | | | | | | | | | | | | | | | | | | | | | |
| **Highland Dallas (100 Shares)** | | | | | | | | | | | | | | | | | | | | | |
| NAV | | | | | 78,000,000 | 65,800,000 | 67,300,000 | 48,100,000 | 53,100,000 | 64,100,000 | 68,900,000 | 70,500,000 | 74,300,000 | 83,900,000 | 81,200,000 | 76,700,000 | 77,300,000 | 73,200,000 | 76,300,000 | 78,284,712 | 76,173,502 |
| Quarterly Fee % | | | | | 0.0625% | 0.0625% | 0.0625% | 0.0625% | 0.0625% | 0.0625% | 0.0625% | 0.0625% | 0.0625% | 0.0625% | 0.0625% | 0.0625% | 0.0625% | 0.0625% | 0.0625% | 0.0625% | 0.0625% |
| Quarterly Fee $ | | | | | 48,750 | 41,125 | 42,063 | 30,062.50 | 33,187.50 | 40,062.50 | 43,062.50 | 44,062.50 | 46,437.50 | 52,437.50 | 50,750.00 | 47,937.50 | 48,312.50 | 45,750.00 | 47,687.50 | 48,927.95 | 47,608.44 |
| | | | | | | | | | | | | | | | | | | | | | |
| NAV | | | | | 76,450,000 | 73,625,000 | 63,225,000 | 44,225,000 | | | | 64,150,000 | | | | 79,025,000 | | | | 76,271,178 | |
| Annual Unrestricted Gift % | | | | | 0.30% | 0.30% | 0.30% | 0.30% | | | | 0.30% | | | | 0.30% | | | | 0.30% | |
| Annual Unrestricted Gift $ | | | | | 229,350 | 220,875 | 189,675 | 132,675 | - | - | - | 192,450 | - | - | - | 237,075 | - | - | - | 228,814 | |
| **Total Dallas Quarterly Fee** | | | | | **278,100** | **262,000** | **231,738** | **162,737.50** | **33,187.50** | **40,062.50** | **43,062.50** | **236,512.50** | **46,437.50** | **52,437.50** | **50,750.00** | **285,012.50** | **48,312.50** | **45,750.00** | **47,687.50** | **277,741.48** | |
| | | | | | | | | | | | | | | | | | | | | | |
| **Highland Santa Barbara (100 Shares)** | | | | | | | | | | | | | | | | | | | | | |
| 1st Tier NAV | | | | | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 |
| 1st Tier Fee | | | | | 0.25% | 0.25% | 0.25% | 0.25% | 0.25% | 0.25% | 0.25% | 0.25% | 0.25% | 0.25% | 0.25% | 0.25% | 0.25% | 0.25% | 0.25% | 0.25% | 0.25% |
| Annual Fee 1st Tier | | | | | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 |
| | | | | | | | | | | | | | | | | | | | | | |
| 2nd Tier NAV | | | | | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 |
| 2nd Tier Fee | | | | | 0.19% | 0.19% | 0.19% | 0.19% | 0.19% | 0.19% | 0.19% | 0.19% | 0.19% | 0.19% | 0.19% | 0.19% | 0.19% | 0.19% | 0.19% | 0.19% | 0.19% |
| Annual Fee 2nd Tier | | | | | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 |
| | | | | | | | | | | | | | | | | | | | | | |
| 3rd Tier NAV | | | | | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 |
| 3rd Tier Fee | | | | | 0.13% | 0.13% | 0.13% | 0.13% | 0.13% | 0.13% | 0.13% | 0.13% | 0.13% | 0.13% | 0.13% | 0.13% | 0.13% | 0.13% | 0.13% | 0.13% | 0.13% |
| Annual Fee 3rd Tier | | | | | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 |
| | | | | | | | | | | | | | | | | | | | | | |
| 4th Tier NAV | | | | | 68,000,000 | 55,800,000 | 57,300,000 | 38,100,000 | 43,100,000 | 54,100,000 | 58,900,000 | 60,500,000 | 64,300,000 | 73,900,000 | 71,200,000 | 66,700,000 | 67,300,000 | 63,200,000 | 66,300,000 | 68,284,712 | 66,173,502 |
| 4th Tier Fee | | | | | 0.06% | 0.06% | 0.06% | 0.06% | 0.06% | 0.06% | 0.06% | 0.06% | 0.06% | 0.06% | 0.06% | 0.06% | 0.06% | 0.06% | 0.06% | 0.06% | 0.06% |
| Annual Fee 4th Tier | | | | | 42,500 | 34,875 | 35,813 | 23,813 | 26,938 | 33,813 | 36,813 | 37,813 | 40,188 | 46,188 | 44,500 | 41,688 | 42,063 | 39,500 | 41,438 | 42,678 | 41,358 |
| **Total Santa Barbara Quarterly Fee** | | | | | **60,000** | **52,375** | **53,313** | **41,312.50** | **44,437.50** | **51,312.50** | **54,312.50** | **55,312.50** | **57,687.50** | **63,687.50** | **62,000.00** | **59,187.50** | **59,562.50** | **57,000.00** | **58,937.50** | **60,177.95** | **58,858.44** |

Fees to Greater Kansas City Community Foundation:

Annual fees equal to the greater of $62,500 or .25% (25 basis points) of the underlying net asset value plus out of pocket expense. In addition, GKCCF expects Highland Kansas City Foundation, Inc. to make $1 million available each year, on average, for grant making.

| | | | | |
|---|---|---|---|---|
| Example: | $100,000,000/3 | | equals the asset value or $33,333,333.33 | |
| | $ 33,333,333.33 | x | 0.0025 | **$ 83,333.33** |

Payouts to date:

Fees to The Dallas Foundation

One-fourth of .25% (25 basis points annually) of underlying prior quarter end net asset value payable quarterly (6.25 basis points quarterly) in arrears plus .30% (30 basis points) unrestricted annual gift to the Dallas Foundation.
In addition, The Dallas Foundation expects Highland Dallas Foundation, Inc. to make $1M available each year, on average, for grant-making.

| | | | | | |
|---|---|---|---|---|---|
| Example: | $100,000,000/3 | = | $33,333,333.33 | Asset Value | |
| | $33,333,333 | x | 0.0025 | $83,333.33 | |
| | $33,333,334 | x | 0.0030 | $100,000.00 | |
| | | | | **$183,333.33** | |

Fees to Santa Barabara Foundation

The following percentage of the underlying prior queater end net asset value payable quarterly in arrears.
In addition, Santa Barbara Foundation expects Highland Santa Barbara Foundation, Inc. to make $1M available each year, on average, for grant-making.

1% (100 basis points) on the first $3M
.75% (75 basis points) on the next $2M
.50% (50 basis points) on the next $5M
.25% (25 basis points) on all amounts over $10 million

Example: $100,000,000/3 = $33,333,333.33 Asset Value

| | | |
|---|---|---|
| $ 3,000,000.00 | 0.0100 | $ 30,000.00 |
| $ 2,000,000.00 | 0.0075 | $ 15,000.00 |
| $ 5,000,000.00 | 0.0050 | $ 25,000.00 |
| $23,333,333.33 | 0.0025 | $ 58,333.33 |
| | | $ 128,333.33 |

100k per year, Paid in Q4

| Date | NAV | Rounded | Participation Shares | NAV/Share | Lack of Control Discount | Control Discounted NAV/Share | Lack of Marketability Discount | Discounted Valuation | Discounted NAV | Discounted NAV (Rounded) |
|---|---|---|---|---|---|---|---|---|---|---|
| 6/30/2017 | $ 270,713,527 | $ 270,700,000 | 305 | $ 887,541 | 5% | $ 843,164 | 10% | $ 758,848 | $ 75,884,754 | $ 75,900,000 |
| 9/30/2017 | $ 275,644,508 | $ 275,600,000 | 305 | $ 903,607 | 5% | $ 858,426 | 10% | $ 772,584 | $ 77,258,361 | $ 77,300,000 |
| 3/31/2018 | $ 279,892,720 | $ 279,900,000 | 305 | $ 917,705 | 5% | $ 871,820 | 10% | $ 784,638 | $ 78,463,770 | $ 78,500,000 |
| 6/30/2018 | $ 270,639,239 | $ 270,600,000 | 305 | $ 887,213 | 5% | $ 842,852 | 10% | $ 758,567 | $ 75,856,721 | $ 75,900,000 |
| 9/30/2018 | $ 265,046,251 | $ 265,000,000 | 305 | $ 868,852 | 5% | $ 825,410 | 10% | $ 742,869 | $ 74,286,885 | $ 74,300,000 |
| 12/31/2018 | $ 234,776,224 | $ 234,800,000 | 305 | $ 769,836 | 5% | $ 731,344 | 10% | $ 658,210 | $ 65,820,984 | $ 65,800,000 |
| 3/31/2019 | $ 226,930,067 | $ 226,900,000 | 305 | $ 743,934 | 5% | $ 706,738 | 10% | $ 636,064 | $ 63,606,393 | $ 63,600,000 |
| 6/30/2019 | $ 225,033,677 | $ 225,000,000 | 305 | $ 737,705 | 5% | $ 700,820 | 10% | $ 630,738 | $ 63,073,770 | $ 63,100,000 |
| 9/30/2019 | $ 210,013,508 | $ 210,000,000 | 305 | $ 688,525 | 5% | $ 654,098 | 10% | $ 588,689 | $ 58,868,852 | $ 58,900,000 |
| 12/31/2019 | $ 232,651,540 | $ 232,700,000 | 305 | $ 762,951 | 5% | $ 724,803 | 7% | $ 672,617 | $ 67,261,744 | $ 67,300,000 |
| 3/31/2020 | $ 154,476,837 | $ 154,500,000 | 305 | $ 506,557 | 8% | $ 466,033 | 12% | $ 412,439 | $ 41,243,902 | $ 41,200,000 |
| 6/30/2020 | $ 167,306,977 | $ 167,300,000 | 305 | $ 548,525 | 8% | $ 504,643 | 13% | $ 441,562 | $ 44,156,230 | $ 44,200,000 |
| 9/30/2020 | $ 161,125,205 | $ 161,100,000 | 305 | $ 528,197 | 8% | $ 485,941 | 11% | $ 434,431 | $ 43,443,124 | $ 43,400,000 |
| 12/31/2020 | $ 176,958,932 | $ 177,000,000 | 305 | $ 580,328 | 8% | $ 533,902 | 10% | $ 481,468 | $ 48,146,800 | $ 48,100,000 |
| 3/31/2021 | $ 191,901,974 | $ 191,900,000 | 305 | $ 629,180 | 8% | $ 578,846 | 8% | $ 530,807 | $ 53,080,700 | $ 53,100,000 |
| 6/30/2021 | $ 223,765,988 | $ 223,800,000 | 305 | $ 733,770 | 5% | $ 697,082 | 8% | $ 641,218 | $ 64,121,800 | $ 64,100,000 |
| 9/30/2021 | $ 238,028,108 | $ 238,000,000 | 305 | $ 780,328 | 5% | $ 741,311 | 7% | $ 688,760 | $ 68,876,000 | $ 68,900,000 |
| 12/31/2021 | $ 243,189,674 | $ 243,200,000 | 305 | $ 797,377 | 5% | $ 757,508 | 7% | $ 705,210 | $ 70,521,000 | $ 70,500,000 |
| 3/31/2022 | $ 262,539,795 | $ 262,500,000 | 305 | $ 860,656 | 7% | $ 797,828 | 7% | $ 742,890 | $ 74,289,000 | $ 74,300,000 |
| 6/30/2022 | $ 291,234,287 | $ 291,200,000 | 305 | $ 954,754 | 6% | $ 901,288 | 7% | $ 839,198 | $ 83,919,800 | $ 83,900,000 |
| 9/30/2022 | $ 289,502,301 | $ 289,500,000 | 305 | $ 949,180 | 8% | $ 873,246 | 7% | $ 812,125 | $ 81,212,500 | $ 81,200,000 |
| 12/31/2022 | $ 276,241,856 | $ 276,200,000 | 305 | $ 905,574 | 9% | $ 826,789 | 7% | $ 766,549 | $ 76,654,900 | $ 76,700,000 |
| 3/31/2023 | $ 275,227,938 | $ 275,200,000 | 305 | $ 902,295 | 8% | $ 831,916 | 7% | $ 772,928 | $ 77,292,800 | $ 77,300,000 |
| 6/30/2023 | $ 270,414,002 | $ 270,400,000 | 305 | $ 886,557 | 12% | $ 783,717 | 7% | $ 731,991 | $ 73,199,142 | $ 73,200,000 |
| 9/30/2023 | $ 288,884,011 | $ 288,900,000 | 305 | $ 947,213 | 14% | $ 815,550 | 6% | $ 763,355 | $ 76,335,526 | $ 76,300,000 |

# EXHIBIT 258

**DAF - Net Asset Value**

| | 2012 | 2013 | 2014 | 2015 | 12/31/2017 | 12/31/2018 | 12/31/2019 | 12/31/2020 | 3/31/2021 | 6/30/2021 | 9/30/2021 | 12/31/2021 | 3/31/2022 | 6/30/2022 | 9/30/2022 | 12/31/2022 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Highland Kansas City - 908** | | | | | **195,000.00** | **164,500.00** | **168,250.00** | **120,250.00** | **-** | **-** | **-** | **176,250.00** | **-** | **-** | **-** | **191,750.00** |
| **Highland Dallas - 916** | | | | | **278,100.00** | **262,000.00** | **231,737.50** | **162,737.50** | **33,187.50** | **40,062.50** | **43,062.50** | **236,512.50** | **46,437.50** | **52,437.50** | **50,750.00** | **285,012.50** |
| **Highland Santa Barbara - 890** | | | | | **60,000.00** | **52,375.00** | **53,312.50** | **41,312.50** | **44,437.50** | **51,312.50** | **54,312.50** | **55,312.50** | **57,687.50** | **63,687.50** | **62,000.00** | **59,187.50** |
| **North Texas Community Foundation** | | | | | **100,000.00** | **100,000.00** | **100,000.00** | **100,000.00** | | | | **100,000.00** | | | | **100,000.00** |
| **Quarterly Fees** | | | | | **633,100** | **578,875** | **553,300** | **324,300** | **77,625** | **91,375** | **97,375** | **468,075** | **104,125** | **116,125** | **112,750** | **535,950** |
| | | | | | | | | | | | | | | | | |
| **Charitable DAF Holdco Value** | | | | | | | | | | | | | | | | |
| **Value per 100 Shares** | | | | | 78,000,000 | **65,800,000** | **67,300,000** | **48,100,000** | **53,100,000** | **64,100,000** | **68,900,000** | **70,500,000** | **74,300,000** | **83,900,000** | **81,200,000** | **76,700,000** |
| | | | | | | | | | | | | | | | | |
| **Highland Kansas City (100 Shares)** | | | | | | | | | | | | | | | | |
| NAV | | | | | 78,000,000 | 65,800,000 | 67,300,000 | 48,100,000 | | | | 70,500,000 | | | | 76,700,000 |
| Annual Fee % | | | | | 0.25% | 0.25% | 0.25% | 0.25% | | | | 0.25% | | | | 0.25% |
| **Total Kansas City Quarterly Fee** | | | | | **195,000** | **164,500** | **168,250** | **120,250** | | | | **176,250** | | | | **191,750** |
| | | | | | | | | | | | | | | | | |
| **Highland Dallas (100 Shares)** | | | | | | | | | | | | | | | | |
| NAV | | | | | 78,000,000 | 65,800,000 | 67,300,000 | 48,100,000 | 53,100,000 | 64,100,000 | 68,900,000 | 70,500,000 | 74,300,000 | 83,900,000 | 81,200,000 | 76,700,000 |
| Quarterly Fee % | | | | | 0.0625% | 0.0625% | 0.0625% | 0.0625% | 0.0625% | 0.0625% | 0.0625% | 0.0625% | 0.0625% | 0.0625% | 0.0625% | 0.0625% |
| Quarterly Fee $ | | | | | 48,750 | 41,125 | 42,063 | 30,062.50 | 33,187.50 | 40,062.50 | 43,062.50 | 44,062.50 | 46,437.50 | 52,437.50 | 50,750.00 | 47,937.50 |
| | | | | | | | | | | | | | | | | |
| NAV | | | | | 76,450,000 | 73,625,000 | 63,225,000 | 44,225,000 | | | | 64,150,000 | | | | 79,025,000 |
| Annual Unrestricted Gift % | | | | | 0.30% | 0.30% | 0.30% | 0.30% | | | | 0.30% | | | | 0.30% |
| Annual Unrestricted Gift $ | | | | | 229,350 | 220,875 | 189,675 | 132,675 | - | - | - | 192,450 | - | - | - | 237,075 |
| **Total Dallas Quarterly Fee** | | | | | **278,100** | **262,000** | **231,738** | **162,737.50** | **33,187.50** | **40,062.50** | **43,062.50** | **236,512.50** | **46,437.50** | **52,437.50** | **50,750.00** | **285,012.50** |
| | | | | | | | | | | | | | | | | |
| **Highland Santa Barbara (100 Shares)** | | | | | | | | | | | | | | | | |
| 1st Tier NAV | | | | | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 |
| 1st Tier Fee | | | | | 0.25% | 0.25% | 0.25% | 0.25% | 0.25% | 0.25% | 0.25% | 0.25% | 0.25% | 0.25% | 0.25% | 0.25% |
| Annual Fee 1st Tier | | | | | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 |
| | | | | | | | | | | | | | | | | |
| 2nd Tier NAV | | | | | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 |
| 2nd Tier Fee | | | | | 0.19% | 0.19% | 0.19% | 0.19% | 0.19% | 0.19% | 0.19% | 0.19% | 0.19% | 0.19% | 0.19% | 0.19% |
| Annual Fee 2nd Tier | | | | | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 |
| | | | | | | | | | | | | | | | | |
| 3rd Tier NAV | | | | | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 |
| 3rd Tier Fee | | | | | 0.13% | 0.13% | 0.13% | 0.13% | 0.13% | 0.13% | 0.13% | 0.13% | 0.13% | 0.13% | 0.13% | 0.13% |
| Annual Fee 3rd Tier | | | | | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 |
| | | | | | | | | | | | | | | | | |
| 4th Tier NAV | | | | | 68,000,000 | 55,800,000 | 57,300,000 | 38,100,000 | 43,100,000 | 54,100,000 | 58,900,000 | 60,500,000 | 64,300,000 | 73,900,000 | 71,200,000 | 66,700,000 |
| 4th Tier Fee | | | | | 0.06% | 0.06% | 0.06% | 0.06% | 0.06% | 0.06% | 0.06% | 0.06% | 0.06% | 0.06% | 0.06% | 0.06% |
| Annual Fee 4th Tier | | | | | 42,500 | 34,875 | 35,813 | 23,813 | 26,938 | 33,813 | 36,813 | 37,813 | 40,188 | 46,188 | 44,500 | 41,688 |
| **Total Santa Barbara Quarterly Fee** | | | | | **60,000** | **52,375** | **53,313** | **41,312.50** | **44,437.50** | **51,312.50** | **54,312.50** | **55,312.50** | **57,687.50** | **63,687.50** | **62,000.00** | **59,187.50** |

Fees to Greater Kansas City Community Foundation:

Annual fees equal to the greater of $62,500 or .25% (25 basis points) of the underlying net asset value plus out of pocket expense. In addition, GKCCF expects Highland Kansas City Foundation, Inc. to make $1 million available each year, on average, for grant making.

Example: $100,000,000/3 equals the asset value or $33,333,333.33

$ 33,333,333.33 x 0.0025 **$ 83,333.33**

Payouts to date:

Fees to The Dallas Foundation

One-fourth of .25% (25 basis points annually) of underlying prior quarter end net asset value payable quarterly (6.25 basis points quarterly) in arrears plus .30% (30 basis points) unrestricted annual gift to the Dallas Foundation.
In addition, The Dallas Foundation expects Highland Dallas Foundation, Inc. to make $1M available each year, on average, for grant-making.

| | | | | | |
|---|---|---|---|---|---|
| Example: | $100,000,000/3 | = | | $33,333,333.33 | Asset Value |
| | $33,333,333 | x | 0.0025 | $83,333.33 | |
| | $33,333,334 | x | 0.0030 | $100,000.00 | |
| | | | | **$183,333.33** | |

Fees to Santa Barabara Foundation

The following percentage of the underlying prior queater end net asset value payable quarterly in arrears.
In addition, Santa Barbara Foundation expects Highland Santa Barbara Foundation, Inc. to make $1M available each year, on average, for grant-making.

1% (100 basis points) on the first $3M
.75% (75 basis points) on the next $2M
.50% (50 basis points) on the next $5M
.25% (25 basis points) on all amounts over $10 million

Example: $100,000,000/3 = $33,333,333.33 Asset Value

| | | |
|---|---|---|
| $ 3,000,000.00 | 0.0100 | $ 30,000.00 |
| $ 2,000,000.00 | 0.0075 | $ 15,000.00 |
| $ 5,000,000.00 | 0.0050 | $ 25,000.00 |
| $23,333,333.33 | 0.0025 | $ 58,333.33 |
| | | $ 128,333.33 |

100k per year, Paid in Q4

| Date | NAV | Rounded | Participation Shares | NAV/Share | Lack of Control Discount | Control Discounted NAV/Share | Lack of Marketability Discount | Discounted Valuation | Discounted NAV | Discounted NAV (Rounded) |
|---|---|---|---|---|---|---|---|---|---|---|
| 6/30/2017 | $ 270,713,527 | $ 270,700,000 | 305 | $ 887,541 | 5% | $ 843,164 | 10% | $ 758,848 | $ 75,884,754 | $ 75,900,000 |
| 9/30/2017 | $ 275,644,508 | $ 275,600,000 | 305 | $ 903,607 | 5% | $ 858,426 | 10% | $ 772,584 | $ 77,258,361 | $ 77,300,000 |
| 3/31/2018 | $ 279,892,720 | $ 279,900,000 | 305 | $ 917,705 | 5% | $ 871,820 | 10% | $ 784,638 | $ 78,463,770 | $ 78,500,000 |
| 6/30/2018 | $ 270,639,239 | $ 270,600,000 | 305 | $ 887,213 | 5% | $ 842,852 | 10% | $ 758,567 | $ 75,856,721 | $ 75,900,000 |
| 9/30/2018 | $ 265,046,251 | $ 265,000,000 | 305 | $ 868,852 | 5% | $ 825,410 | 10% | $ 742,869 | $ 74,286,885 | $ 74,300,000 |
| 12/31/2018 | $ 234,776,224 | $ 234,800,000 | 305 | $ 769,836 | 5% | $ 731,344 | 10% | $ 658,210 | $ 65,820,984 | $ 65,800,000 |
| 3/31/2019 | $ 226,930,067 | $ 226,900,000 | 305 | $ 743,934 | 5% | $ 706,738 | 10% | $ 636,064 | $ 63,606,393 | $ 63,600,000 |
| 6/30/2019 | $ 225,033,677 | $ 225,000,000 | 305 | $ 737,705 | 5% | $ 700,820 | 10% | $ 630,738 | $ 63,073,770 | $ 63,100,000 |
| 9/30/2019 | $ 210,013,508 | $ 210,000,000 | 305 | $ 688,525 | 5% | $ 654,098 | 10% | $ 588,689 | $ 58,868,852 | $ 58,900,000 |
| 12/31/2019 | $ 232,651,540 | $ 232,700,000 | 305 | $ 762,951 | 5% | $ 724,803 | 7% | $ 672,617 | $ 67,261,744 | $ 67,300,000 |
| 3/31/2020 | $ 154,476,837 | $ 154,500,000 | 305 | $ 506,557 | 8% | $ 466,033 | 12% | $ 412,439 | $ 41,243,902 | $ 41,200,000 |
| 6/30/2020 | $ 167,306,977 | $ 167,300,000 | 305 | $ 548,525 | 8% | $ 504,643 | 13% | $ 441,562 | $ 44,156,230 | $ 44,200,000 |
| 9/30/2020 | $ 161,125,205 | $ 161,100,000 | 305 | $ 528,197 | 8% | $ 485,941 | 11% | $ 434,431 | $ 43,443,124 | $ 43,400,000 |
| 12/31/2020 | $ 176,958,932 | $ 177,000,000 | 305 | $ 580,328 | 8% | $ 533,902 | 10% | $ 481,468 | $ 48,146,800 | $ 48,100,000 |
| 3/31/2021 | $ 191,901,974 | $ 191,900,000 | 305 | $ 629,180 | 8% | $ 578,846 | 8% | $ 530,807 | $ 53,080,700 | $ 53,100,000 |
| 6/30/2021 | $ 223,765,988 | $ 223,800,000 | 305 | $ 733,770 | 5% | $ 697,082 | 8% | $ 641,218 | $ 64,121,800 | $ 64,100,000 |
| 9/30/2021 | $ 238,028,108 | $ 238,000,000 | 305 | $ 780,328 | 5% | $ 741,311 | 7% | $ 688,760 | $ 68,876,000 | $ 68,900,000 |
| 12/31/2021 | $ 243,189,674 | $ 243,200,000 | 305 | $ 797,377 | 5% | $ 757,508 | 7% | $ 705,210 | $ 70,521,000 | $ 70,500,000 |
| 3/31/2022 | $ 262,539,795 | $ 262,500,000 | 305 | $ 860,656 | 7% | $ 797,828 | 7% | $ 742,890 | $ 74,289,000 | $ 74,300,000 |
| 6/30/2022 | $ 291,234,287 | $ 291,200,000 | 305 | $ 954,754 | 6% | $ 901,288 | 7% | $ 839,198 | $ 83,919,800 | $ 83,900,000 |
| 9/30/2022 | $ 289,502,301 | $ 289,500,000 | 305 | $ 949,180 | 8% | $ 873,246 | 7% | $ 812,125 | $ 81,212,500 | $ 81,200,000 |
| 12/31/2022 | $ 276,241,856 | $ 276,200,000 | 305 | $ 905,574 | 9% | $ 826,789 | 7% | $ 766,549 | $ 76,654,900 | $ 76,700,000 |

# EXHIBIT 259

**DAF - Net Asset Value**

| | 2012 | 2013 | 2014 | 2015 | 12/31/2017 | 12/31/2018 | 12/31/2019 | 12/31/2020 | 3/31/2021 | 6/30/2021 | 9/30/2021 | 12/31/2021 | 3/31/2022 | 6/30/2022 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Highland Kansas City - 908** | | | | | **195,000.00** | **164,500.00** | **168,250.00** | **120,250.00** | **-** | **-** | **-** | **176,250.00** | **-** | **-** |
| **Highland Dallas - 916** | | | | | **278,100.00** | **262,000.00** | **231,737.50** | **162,737.50** | **33,187.50** | **40,062.50** | **43,062.50** | **236,512.50** | **46,437.50** | **52,437.50** |
| **Highland Santa Barbara - 890** | | | | | **60,000.00** | **52,375.00** | **53,312.50** | **41,312.50** | **44,437.50** | **51,312.50** | **54,312.50** | **55,312.50** | **57,687.50** | **63,687.50** |
| **North Texas Community Foundation** | | | | | **100,000.00** | **100,000.00** | **100,000.00** | **100,000.00** | | | | **100,000.00** | | |
| **Quarterly Fees** | | | | | **633,100** | **578,875** | **553,300** | **324,300** | **77,625** | **91,375** | **97,375** | **468,075** | **104,125** | **116,125** |
| | | | | | | | | | | | | | | |
| **Charitable DAF Holdco Value** | | | | | | | | | | | | | | |
| **Value per 100 Shares** | | | | | **78,000,000** | **65,800,000** | **67,300,000** | **48,100,000** | **53,100,000** | **64,100,000** | **68,900,000** | **70,500,000** | **74,300,000** | **83,900,000** |
| | | | | | | | | | | | | | | |
| **Highland Kansas City (100 Shares)** | | | | | | | | | | | | | | |
| NAV | | | | | 78,000,000 | 65,800,000 | 67,300,000 | 48,100,000 | | | | 70,500,000 | | |
| Annual Fee % | | | | | 0.25% | 0.25% | 0.25% | 0.25% | | | | 0.25% | | |
| **Total Kansas City Quarterly Fee** | | | | | **195,000** | **164,500** | **168,250** | **120,250** | | | | **176,250** | | |
| | | | | | | | | | | | | | | |
| **Highland Dallas (100 Shares)** | | | | | | | | | | | | | | |
| NAV | | | | | 78,000,000 | 65,800,000 | 67,300,000 | 48,100,000 | 53,100,000 | 64,100,000 | 68,900,000 | 70,500,000 | 74,300,000 | 83,900,000 |
| Quarterly Fee % | | | | | 0.0625% | 0.0625% | 0.0625% | 0.0625% | 0.0625% | 0.0625% | 0.0625% | 0.0625% | 0.0625% | 0.0625% |
| Quarterly Fee $ | | | | | 48,750 | 41,125 | 42,063 | 30,062.50 | 33,187.50 | 40,062.50 | 43,062.50 | 44,062.50 | 46,437.50 | 52,437.50 |
| | | | | | | | | | | | | | | |
| NAV | | | | | 76,450,000 | 73,625,000 | 63,225,000 | 44,225,000 | | | | 64,150,000 | | |
| Annual Unrestricted Gift % | | | | | 0.30% | 0.30% | 0.30% | 0.30% | | | | 0.30% | | |
| Annual Unrestricted Gift $ | | | | | 229,350 | 220,875 | 189,675 | 132,675 | - | - | - | 192,450 | - | - |
| **Total Dallas Quarterly Fee** | | | | | **278,100** | **262,000** | **231,738** | **162,737.50** | **33,187.50** | **40,062.50** | **43,062.50** | **236,512.50** | **46,437.50** | **52,437.50** |
| | | | | | | | | | | | | | | |
| **Highland Santa Barbara (100 Shares)** | | | | | | | | | | | | | | |
| 1st Tier NAV | | | | | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 |
| 1st Tier Fee | | | | | 0.25% | 0.25% | 0.25% | 0.25% | 0.25% | 0.25% | 0.25% | 0.25% | 0.25% | 0.25% |
| Annual Fee 1st Tier | | | | | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 |
| | | | | | | | | | | | | | | |
| 2nd Tier NAV | | | | | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 |
| 2nd Tier Fee | | | | | 0.19% | 0.19% | 0.19% | 0.19% | 0.19% | 0.19% | 0.19% | 0.19% | 0.19% | 0.19% |
| Annual Fee 2nd Tier | | | | | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 |
| | | | | | | | | | | | | | | |
| 3rd Tier NAV | | | | | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 |
| 3rd Tier Fee | | | | | 0.13% | 0.13% | 0.13% | 0.13% | 0.13% | 0.13% | 0.13% | 0.13% | 0.13% | 0.13% |
| Annual Fee 3rd Tier | | | | | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 |
| | | | | | | | | | | | | | | |
| 4th Tier NAV | | | | | 68,000,000 | 55,800,000 | 57,300,000 | 38,100,000 | 43,100,000 | 54,100,000 | 58,900,000 | 60,500,000 | 64,300,000 | 73,900,000 |
| 4th Tier Fee | | | | | 0.06% | 0.06% | 0.06% | 0.06% | 0.06% | 0.06% | 0.06% | 0.06% | 0.06% | 0.06% |
| Annual Fee 4th Tier | | | | | 42,500 | 34,875 | 35,813 | 23,813 | 26,938 | 33,813 | 36,813 | 37,813 | 40,188 | 46,188 |
| **Total Santa Barbara Quarterly Fee** | | | | | **60,000** | **52,375** | **53,313** | **41,312.50** | **44,437.50** | **51,312.50** | **54,312.50** | **55,312.50** | **57,687.50** | **63,687.50** |

Fees to Greater Kansas City Community Foundation:

Annual fees equal to the greater of $62,500 or .25% (25 basis points) of the underlying net asset value plus out of pocket expense. In addition, GKCCF expects Highland Kansas City Foundation, Inc. to make $1 million available each year, on average, for grant making.

| | | | | |
|---|---|---|---|---|
| Example: | $100,000,000/3 | | equals the asset value or $33,333,333.33 | |
| | $ 33,333,333.33 | x | 0.0025 | **$ 83,333.33** |

Payouts to date:

Fees to The Dallas Foundation

One-fourth of .25% (25 basis points annually) of underlying prior quarter end net asset value payable quarterly (6.25 basis points quarterly) in arrears plus .30% (30 basis points) unrestricted annual gift to the Dallas Foundation.
In addition, The Dallas Foundation expects Highland Dallas Foundation, Inc. to make $1M available each year, on average, for grant-making.

| | | | | |
|---|---|---|---|---|
| Example: $100,000,000/3 | = | $33,333,333.33 | Asset Value | |
| $33,333,333 | x | 0.0025 | $83,333.33 | |
| $33,333,334 | x | 0.0030 | $100,000.00 | |
| | | | **$183,333.33** | |

Fees to Santa Barabara Foundation

The following percentage of the underlying prior queater end net asset value payable quarterly in arrears.
In addition, Santa Barbara Foundation expects Highland Santa Barbara Foundation, Inc. to make $1M available each year, on average, for grant-making.

1% (100 basis points) on the first $3M
.75% (75 basis points) on the next $2M
.50% (50 basis points) on the next $5M
.25% (25 basis points) on all amounts over $10 million

| | | | | |
|---|---|---|---|---|
| Example: | $100,000,000/3 | = | $33,333,333.33 | Asset Value |
| | $ 3,000,000.00 | 0.0100 | $ 30,000.00 | |
| | $ 2,000,000.00 | 0.0075 | $ 15,000.00 | |
| | $ 5,000,000.00 | 0.0050 | $ 25,000.00 | |
| | $23,333,333.33 | 0.0025 | $ 58,333.33 | |
| | | | $ 128,333.33 | |

100k per year, Paid in Q4

| Date | NAV | Rounded | Participation Shares | NAV/Share | Lack of Control Discount | Control Discounted NAV/Share | Lack of Marketability Discount | Discounted Valuation | Discounted NAV | Discounted NAV (Rounded) |
|---|---|---|---|---|---|---|---|---|---|---|
| 6/30/2017 | $ 270,713,527 | $ 270,700,000 | 305 | $ 887,541 | 5% | $ 843,164 | 10% | $ 758,848 | $ 75,884,754 | $ 75,900,000 |
| 9/30/2017 | $ 275,644,508 | $ 275,600,000 | 305 | $ 903,607 | 5% | $ 858,426 | 10% | $ 772,584 | $ 77,258,361 | $ 77,300,000 |
| 3/31/2018 | $ 279,892,720 | $ 279,900,000 | 305 | $ 917,705 | 5% | $ 871,820 | 10% | $ 784,638 | $ 78,463,770 | $ 78,500,000 |
| 6/30/2018 | $ 270,639,239 | $ 270,600,000 | 305 | $ 887,213 | 5% | $ 842,852 | 10% | $ 758,567 | $ 75,856,721 | $ 75,900,000 |
| 9/30/2018 | $ 265,046,251 | $ 265,000,000 | 305 | $ 868,852 | 5% | $ 825,410 | 10% | $ 742,869 | $ 74,286,885 | $ 74,300,000 |
| 12/31/2018 | $ 234,776,224 | $ 234,800,000 | 305 | $ 769,836 | 5% | $ 731,344 | 10% | $ 658,210 | $ 65,820,984 | $ 65,800,000 |
| 3/31/2019 | $ 226,930,067 | $ 226,900,000 | 305 | $ 743,934 | 5% | $ 706,738 | 10% | $ 636,064 | $ 63,606,393 | $ 63,600,000 |
| 6/30/2019 | $ 225,033,677 | $ 225,000,000 | 305 | $ 737,705 | 5% | $ 700,820 | 10% | $ 630,738 | $ 63,073,770 | $ 63,100,000 |
| 9/30/2019 | $ 210,013,508 | $ 210,000,000 | 305 | $ 688,525 | 5% | $ 654,098 | 10% | $ 588,689 | $ 58,868,852 | $ 58,900,000 |
| 12/31/2019 | $ 232,651,540 | $ 232,700,000 | 305 | $ 762,951 | 5% | $ 724,803 | 7% | $ 672,617 | $ 67,261,744 | $ 67,300,000 |
| 3/31/2020 | $ 154,476,837 | $ 154,500,000 | 305 | $ 506,557 | 8% | $ 466,033 | 12% | $ 412,439 | $ 41,243,902 | $ 41,200,000 |
| 6/30/2020 | $ 167,306,977 | $ 167,300,000 | 305 | $ 548,525 | 8% | $ 504,643 | 13% | $ 441,562 | $ 44,156,230 | $ 44,200,000 |
| 9/30/2020 | $ 161,125,205 | $ 161,100,000 | 305 | $ 528,197 | 8% | $ 485,941 | 11% | $ 434,431 | $ 43,443,124 | $ 43,400,000 |
| 12/31/2020 | $ 176,958,932 | $ 177,000,000 | 305 | $ 580,328 | 8% | $ 533,902 | 10% | $ 481,468 | $ 48,146,800 | $ 48,100,000 |
| 3/31/2021 | $ 191,901,974 | $ 191,900,000 | 305 | $ 629,180 | 8% | $ 578,846 | 8% | $ 530,807 | $ 53,080,700 | $ 53,100,000 |
| 6/30/2021 | $ 223,765,988 | $ 223,800,000 | 305 | $ 733,770 | 5% | $ 697,082 | 8% | $ 641,218 | $ 64,121,800 | $ 64,100,000 |
| 9/30/2021 | $ 238,028,108 | $ 238,000,000 | 305 | $ 780,328 | 5% | $ 741,311 | 7% | $ 688,760 | $ 68,876,000 | $ 68,900,000 |
| 12/31/2021 | $ 243,189,674 | $ 243,200,000 | 305 | $ 797,377 | 5% | $ 757,508 | 7% | $ 705,210 | $ 70,521,000 | $ 70,500,000 |
| 3/31/2022 | $ 262,539,795 | $ 262,500,000 | 305 | $ 860,656 | 7% | $ 797,828 | 7% | $ 742,890 | $ 74,289,000 | $ 74,300,000 |
| 6/30/2022 | $ 291,234,287 | $ 291,200,000 | 305 | $ 954,754 | 6% | $ 901,288 | 7% | $ 839,198 | $ 83,919,800 | $ 83,900,000 |

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed May 19, 2026**

**United States Bankruptcy Judge**

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.<br><br>Debtor. | Chapter 11<br><br>Case No. 19-34054-sjg11 |

**ORDER GRANTING MOTION FOR ENTRY OF AN ORDER AUTHORIZING FILING OF CONFIDEDNTIAL INFORMATION UNDER SEAL PURSUANT TO SECTION 107 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 9018**

Upon the Motion of The Dugaboy Investment Trust to File Confidential Information Under Seal Pursuant to Section 107 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9018 (the "Motion") filed by The Dugaboy Investment Trust ("Dugaboy") seeking entry of an order (this "Order") authorizing Dugaboy to file Exhibits 267-270 under seal; and this Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. § 157; and this Court having found venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and this Court having found that Dugaboy's notice of the Motion was appropriate under the circumstances and no other notice need be provided; and after due deliberation and sufficient cause appearing therefor, it is ORDERED THAT:

1. The Motion is granted as set forth herein.

2. Dugaboy is authorized to file Exhibits 267-270 under seal pursuant to sections 105(a) and 107(b) of the Bankruptcy Code, Bankruptcy Rule 9018, and Local Rule 9077-1.

3. The only entities permitted to review Exhibit 267-270 are those entities specified herein: (a) the judge presiding over this case; (b) the judge's law clerk(s); (c) the Courtroom Deputy responsible for this case; (d) the Office of the United States Trustee; (e) counsel for Highland Capital Management, L.P.; (f) counsel for the Highland Claimant Trust and the Highland Litigation Sub-Trust; (g) counsel for The Dugaboy Investment Trust; (h) counsel for the HMIT Entities; and (i) any other party to whom Dugaboy has provided or will provide Exhibits 267-270 pursuant to any applicable confidentiality agreement or protective order.

4. Exhibits 267-270 shall remain sealed until the date that is the earlier of (a) two years from the date of entry of this Order or (b) the closing of the above-captioned case. However, any party

in interest may file a motion asking this Court to extend or modify the time period for during which Exhibits 267-270 will remain sealed.

5. This Order does not limit the use of Exhibits 267-270 in connection with any party's obligation to refer criminal or ethical violations or otherwise required by law.

6. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

7. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

# # # END OF ORDER # # #

# DKT. 4664-1
# "Exhibit 268"
# FILED UNDER SEAL

# DKT. 4664-2
# "Exhibit 269"
# FILED UNDER SEAL

# DKT. 4664-3
# "Exhibit 270"
# FILED UNDER SEAL

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Jordan A. Kroop (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760

WILLKIE FARR & GALLAGHER LLP
Mark T. Stancil (admitted *pro hac vice*)
Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
mstancil@willkie.com
jlevy@willkie.com

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy., Ste. 106
Dallas, TX 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P. and the Highland Claimant Trust*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | |
| | § | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | § | |
| | § | |

## HIGHLAND CAPITAL MANAGEMENT, L.P. AND THE HIGHLAND CLAIMANT TRUST'S FOURTH AMENDED WITNESS AND EXHIBIT LIST WITH RESPECT TO HEARING TO BE HELD ON MAY 11, 2026

[1] The Reorganized Debtor's last four digits of its taxpayer identification number are (8357). The service address for the Reorganized Debtor is 6333 Mockingbird Ln., Ste 147 #5045, Dallas, Texas 75214.

Highland Capital Management, L.P., the reorganized debtor in the above-captioned chapter 11 case (the "Bankruptcy Case"), and the Highland Claimant Trust (together, "Highland"), by and through its undersigned counsel, submits the following fourth amended witness and exhibit list with respect to the *Motion for Relief from Order and Motion to Vacate* [Docket No. 4513] ("Motion for Relief") filed by The Dugaboy Investment Trust ("Dugaboy") which the Court has set for hearing on May 11, 2026 at 9:00 a.m. (Central Time) (the "Hearing") at the George Mahon Federal Building, 1205 Texas Avenue, Room 314, Lubbock, Texas 79401.

**A. Witnesses:**

1. James Dondero;
2. James P. Seery, Jr.;
3. Nancy Dondero, as Trustee to The Dugaboy Investment Trust;
4. Mark Patrick;
5. Any witness identified by or called by any other party; and
6. Any witness necessary for rebuttal.

**B. Amended Exhibits:**[2]

| Number | Exhibit | HCMLP Prior W&E Ref.[3] | Offered | Admitted |
|---|---|---|---|---|
| **A.** | **Patrick Authority** | | | |

[2] The amendments to *Highland Capital Management, L.P. and the Highland Claimant Trust's Third Amended Witness and Exhibit List with Respect to Hearing to Be Held on May 11, 2026* [Docket No. 4614] include the additions in bold font below.

[3] Highland's Witness and Exhibit List for the June 25, 2025 hearing (the "9019 Hearing") on the *Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement with HMIT Entities and Authorizing Actions Consistent Therewith* [Docket No. 4216] can be found at Docket No. 4255 and as further amended at Docket Nos. 4277 and 4280. Exhibit reference is to the exhibit list (and copies of the exhibits themselves) found at Docket No. 4255 unless otherwise noted.

| Number | Exhibit | HCMLP Prior W&E Ref.[3] | Offered | Admitted |
|---|---|---|---|---|
| 1. | Trust Agreement of Hunter Mountain dated December 17, 2015 [HCMLPHMIT00004103-HCMLPHMIT00004114] | 70 | | |
| 2. | HMIT Appointment of Successor Administrator dated 8/12/2022 [HCMLPHMIT00003872] | 75 | | |
| 3. | Amended and Restated Limited Liability Company Agreement of Beacon Mountain LLC dated September 24, 2015 [HCMLPHMIT00004115-HCMLPHMIT00004123] | 94 | | |
| 4. | Second Amended and Restated Limited Liability Company Agreement of Beacon Mountain LLC dated February 12, 2025 | 95 | | |
| 5. | Membership Interest Purchase Agreement, dated February 12, 2025, between Rand PE Fund I, L.P. and CLO Holdco, LLC | | | |
| 6. | Membership Interest Purchase Agreement Rand Advisors dated August 1, 2022 [HCMLPHMIT00004202-HCMLPHMIT00004215] | 86 | | |
| 7. | Limited Liability Company Agreement of Atlas IDF GP, LLC dated October 29, 2015 [HCMLPHMIT00003511-HCMLPHMIT00003517] | 73 | | |
| 8. | Amended and Restated Company Agreement of Atlas IDF GP, LLC dated August 8, 2022 [HCMLPHMIT00004127-HCMLPHMIT00004151] | 83 | | |
| 9. | Member and Manager Consent of Atlas IDF GP, LLC dated October 13, 2022 [HCMLPHMIT00004124-HCMLPHMIT00004126] | 82 | | |
| 10. | Limited Liability Company Agreement of Rand PE Fund Management, LLC dated October 29, 2015 [HCMLPHMIT00003873-HCMLPHMIT00003879] | 76 | | |
| 11. | Amended and Restated Company Agreement of Rand PE Fund Management, LLC dated August 1, 2022 [HCMLPHMIT00004177-HCMLPHMIT00004201] | 85 | | |
| 12. | Member and Manager Consent of Rand PE Fund Management, LLC dated October 13, 2022 [HCMLPHMIT00004219-HCMLPHMIT00004221] | 88 | | |

| Number | Exhibit | HCMLP Prior W&E Ref.[3] | Offered | Admitted |
|---|---|---|---|---|
| 13. | Limited Liability Company Agreement of Rand Advisors, LLC dated August 28, 2013 [HCMLPHMIT00003880-HCMLPHMIT00003886] | 77 | | |
| 14. | Amended and Restated Company Agreement of Rand Advisors, LLC dated August 1, 2022 [HCMLPHMIT00004152-HCMLPHMIT00004176] | 84 | | |
| 15. | Member and Manager Consent of Rand Advisors, LLC dated October 13, 2022 [HCMLPHMIT00004216-HCMLPHMIT00004218] | 87 | | |
| 16. | 3/17/2025 Rand Advisors Form ADV [HCMLPHMIT00003465-HCMLPHMIT00003493] | 89 | | |
| 17. | Agreement of Limited Partnership of Rand PE Fund I, L.P. dated October 29, 2015 [HCMLPHMIT00003887-HCMLPHMIT00003893] | 78 | | |
| 18. | Rand PE Fund I, LP Offering Series 1 Limited Partnership Interests dated November 30, 2015 [HCMLPHMIT00004024-HCMLPHMIT00004095] | 81 | | |
| 19. | Rand PE Fund I, L.P. SEC Form D dated February 24, 2025 [HCMLPHMIT00004096-HCMLPHMIT00004100] | 93 | | |
| 20. | Amended and Restated Limited Partnership Agreement of Atlas IDF, LP dated November 30, 2015 [HCMLPHMIT00003894-HCMLPHMIT00003928] | 79 | | |
| 21. | Atlas IDF, LP Offering of Series 1 Limited Partnership Interests dated November 30, 2015 [HCMLPHMIT00003929-HCMLPHMIT00004023] | 80 | | |
| 22. | Atlas IDF LP SEC Form D dated February 24, 2025 [HCMLPHMIT00003518-HCMLPHMIT00003522] | 92 | | |
| 23. | Atlas IDF, LP Subscription 12/21/2015 (signature pages only) | 90 | | |
| 24. | Atlas IDF, LP Subscription 12/23/2015 (signature page only) | 91 | | |
| 25. | Crown Global Rand Participation Agreement (Executed) | 102 | | |

| Number | Exhibit | HCMLP Prior W&E Ref.[3] | Offered | Admitted |
|---|---|---|---|---|
| 26. | Crown Global DVA Policy 30218 (signed) | 98 | | |
| 27. | Crown Global DVA Termsheet 30218 | 99 | | |
| 28. | Crown Global DVA Policy 30219 (signed) | 100 | | |
| 29. | Crown Global DVA Termsheet 30219 | 101 | | |
| 30. | Bylaws of The Okada Family Foundation, Inc. (final version) | 96 | | |
| 31. | Bylaws of Empower Dallas Foundation, Inc. | 97 | | |
| 32. | S&G HMIT Opinion Rep Letter dated January 29, 2016 | 103 | | |
| 33. | S&G HMIT Opinion dated January 29, 2016 | 104 | | |
| 34. | HOLDCO Responses and Disclosures Related to the Court's Order Requiring Disclosures [Docket No. 2547] HCMLPHMIT00003523-HCMLPHMIT00003828] | 74 | | |
| 35. | Show Cause Hearing Transcript June 8, 2021 [HCMLPHMIT00002716-HCMLPHMIT00003013] | 71 | | |
| 36. | HMIT Hearing Transcript June 8, 2023 [HCMLPHMIT00003014-HCMLPHMIT00003402] | 72 | | |
| **B.** | **<u>Validation of Patrick's Authority</u>** | | | |
| 37. | *Remittance Agreement* between the NexPoint Small Bay and Charitable DAF and Liberty CLO Holdco, Ltd. (as those terms are defined), dated January 10, 2025 [Docket No. 4536-E] | 22 | | |

| Number | Exhibit | HCMLP Prior W&E Ref.[3] | Offered | Admitted |
|---|---|---|---|---|
| 38. | Intercreditor and Participation Agreement with HCLOM dated January 10, 2025 [HCMLPHMIT00003868-HCMLPHMIT00003871] | 13 | | |
| 39. | *Stipulation Withdrawing Objection of the Dallas Foundation and Crown Global Life Insurance, Ltd. to Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement With the HMIT Entities and Authorizing Actions Consistent Therewith* dated June 27, 2025 [Docket No. 4291] | | | |
| 40. | The Rule 11 Agreement filed in the TX Business Court on July 13, 2025 [Docket No. 4356-F] | | | |
| 41. | *Consent Order in In re Charitable DAF Holdco, Ltd.*, entered by the Grand Court of the Cayman Islands Financial Services Division on July 31, 2025 [Docket No. 4556-20] | | | |
| 42. | *Order* in *The Highland Dallas Foundation, Inc., et al. v. Patrick, et al.*, No. 25-BC01B-0027, filed in the Texas Business Court, 1st Division on September 18, 2025 [Docket No. 4534-16] | | | |
| 43. | An amendment to a loan agreement executed by, among others, certain Dondero-controlled entities and CLO Holdco, Ltd., dated September 30, 2025 [Docket No. 4536-G] | | | |
| 44. | *Stipulation [Proposed] Order of Dismissal With Prejudice* between Liberty CLO HoldCo, Ltd. and Dugaboy and others aligned with or controlled by Dondero, dated December 3, 2025 [Docket No. 4536-H] | | | |
| 45. | *Agreed Final Judgment* between Atlas IDF, LP (an HMIT affiliate) and certain Dondero-controlled entities, dated December 8, 2025 [Docket No. 4536-I] | | | |
| **C.** | **Dugaboy's Knowledge of the Principal Allegations Against Patrick** | | | |
| 46. | Excerpts of Returns of Organizations Exempt from Income Tax filed on IRS Form 990, dated 2024, for the Highland Dallas Foundation Inc., the Highland Kansas City Foundation Inc., and the Highland Santa Barbara Foundation Inc. [Docket No. 4556-21] | | | |

| Number | Exhibit | HCMLP Prior W&E Ref.[3] | Offered | Admitted |
|---|---|---|---|---|
| 47. | The *Winding Up Petition in In re Charitable DAF Holdco, Ltd.*, filed in the Grand Court of the Cayman Islands Financial Services Division on April 16, 2025 [Docket No. 4534-6] | | | |
| 48. | The *Affidavit of James David Dondero*, notarized on April 9, 2025 and filed in support of the *Winding Up Petition in In re Charitable DAF Holdco, Ltd.*, filed in the Grand Court of the Cayman Islands Financial Services Division on April 16, 2025 [Docket No. 4534-7] | 119 | | |
| 49. | *Petition for Court Supervision of a Voluntary Liquidation in In re Charitable DAF Holdco, Ltd.*, filed in the Grand Court of the Cayman Islands Financial Services Division on May 2, 2025 [Docket No. 4534-13] | | | |
| 50. | *Order Granting Petition for Court Supervision of a Voluntary Liquidation in In re Charitable DAF Holdco, Ltd.*, entered in the Grand Court of the Cayman Islands Financial Services Division on May 6, 2025 [Docket No. 4534-14] | | | |
| 51. | The *Affidavit of Mark Eric Patrick*, notarized on June 4, 2025, in *In re Charitable DAF Holdco, Ltd.* and filed in the Grand Court of the Cayman Islands Financial Services Division on June 4, 2025 [Docket No. 4534-10] | | | |
| 52. | *Objection of The Dallas Foundation and Crown Global Life Insurance, Ltd to Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith* [Docket No. 4231], filed in the United States Bankruptcy Court for the Northern District of Texas on June 9, 2025 [Docket No. 4534-18] | | | |
| 53. | *Dugaboy Investment Trust's Discovery Related to Rule 9019 Motion* in the above-captioned bankruptcy case, dated June 10, 2025 [Docket No. 4534-19] | | | |
| 54. | *Highland Capital Management, L.P., the Highland Claimant Trust, and the Highland Litigation Sub-Trust's Responses and Objections to Dugaboy's Discovery Related to Rule 9019* Motion, dated June 13, 2025 [Docket No. 4534-12] | | | |

| Number | Exhibit | HCMLP Prior W&E Ref.[3] | Offered | Admitted |
|---|---|---|---|---|
| 55. | Deposition transcript of Shawn Raver dated June 20, 2025 | | | |
| 56. | Deposition transcript of Julie Diaz dated June 22, 2025 | 124 (at Dkt. 4277) | | |
| 57. | Deposition transcript of Torrey Littleton dated June 22, 2025 | 125 (at Dkt. 4277) | | |
| 58. | Deposition Transcript of Mark Patrick dated June 23, 2025 | | | |
| 59. | The transcript of the June 25, 2025 hearing in the United States Bankruptcy Court for the Northern District of Texas on the *Motion for an Order Further Extending Duration of Trusts* [Docket No. 4213] and *Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith [Docket No. 4216]* [Docket No. 4534-11] | | | |
| 60. | Highland Rule 9019 Presentation dated June 25, 2025 [Docket No. 4536-L] | L (at Dkt. 4536)[4] | | |
| 61. | *Declaration of James David Dondero* filed in the Texas Business Court, Dallas, Texas and dated July 1, 2025 [Case No. 19-34054, [Docket No. 4521-H-6] | | | |
| 62. | *Plaintiffs' Original Petition, Application for Temporary Restraining Order and Temporary Injunction, and Emergency Request for Appointment of Receiver in The Highland Dallas Foundation, Inc., et al. v. Patrick, et al.*, No. 25-BC01B-0027, filed in the Texas Business Court, 1st Division on July 1, 2025 [Docket No. 4534-15] | | | |
| 63. | *JOL Writ of Summons and Statement of Claim*, filed in the Cayman Proceeding on July 15, 2025 [Docket No. 4536-B] | | | |

[4] This demonstrative was used at the 9019 Hearing on June 25, 2025 and admitted into evidence at the request of Mr. Lang, Dugaboy's attorney. *See* June 25, 2025 transcript (Exhibit 62) at 171:15-25.

| Number | Exhibit | HCMLP Prior W&E Ref.[3] | Offered | Admitted |
|---|---|---|---|---|
| 64. | *The Dugaboy Investment Trust's Motion to Stay 9019 Order* [Docket No. 4326] and accompanying exhibits, filed in the United States Bankruptcy Court for the Northern District of Texas on July 17, 2025 [Docket No. 4326] | | | |
| 65. | *Memorandum Opinion and Order Regarding Stay Requests [Addressing DE ##4326 & 4308]* (Denying Stay) dated July 21, 2025 [Docket No. 4333] | | | |
| 66. | Charitable DAF Holdco, Ltd. Guidance Notes for Members of the Liquidation Committee (not dated) [Docket No. 4534-9] | | | |
| 67. | CWR Form No. 15, Liquidator's Certificate (Composition of Liquidation Committee) (O. 9, r. 1) in the Grand Court of the Cayman Islands Financial Services Division, dated July 21, 2025 [Docket No. 4534-17] | | | |
| 68. | *Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representatives, and (III) Related Relief Under Chapter 15 of the Bankruptcy Court, filed in the United States District Court for the District of* Delaware, dated July 21, 2025 [Docket No. 4536-J] | | | |
| 69. | *Declaration of Margot MacInnis*, sworn to on July 21, 2025, and filed in the United States Bankruptcy Court for the District of Delaware in connection with the Ch. 15 Recognition Petition [Docket 4521-6 (Exhibit G)] | | | |
| 70. | *Third Affidavit of Margot MacInnis* filed in Grand Court of the Cayman Islands November 2025 (Under Seal) | | | |
| **D.** | **<u>The Cayman Court Rejects the Dondero Foundation's Fraud Claims</u>** | | | |
| 71. | Letter from Maples and Calder (Cayman) LLP to Karen Hoskins, Personal Assistant to the Hon. Justice Raj Parker of the Grand Court of the Cayman Islands Financial Services Division, dated February 3, 2026 [Docket No. 4556-22] | | | |
| 72. | *Judgment in In re Charitable DAF Holdco, Ltd.*, filed in the Grand Court of the Cayman Islands Financial Services Division on February 10, 2026 [Docket No. 4534-4] | | | |

| Number | Exhibit | HCMLP Prior W&E Ref.[3] | Offered | Admitted |
|---|---|---|---|---|
| E. | <u>**Other**</u> | | | |
| 73. | Settlement Agreement and General Release dated May 19, 2025 [Docket No. 4217-7] | 1 | | |
| 74. | *Notice of Appeal of Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith* dated July 15, 2025 [Docket No. 4311] | | | |
| 75. | Dugaboy's Index (compiled from all documents Dugaboy filed at Docket Nos. 4513 and 4521), a document prepared by professionals employed by my firm at my direction dated April 3, 2026 [Docket No. 4536-A] | | | |
| 76. | Executed Withdrawal Letters – Dolomiti and Hakusan dated February 6, 2025 | | | |
| 77. | Deposition Transcript of James Dondero dated May 8, 2026 | | | |
| 78. | *Highland Capital Management, L.P.'s Requests for the Production of Documents Directed to the Dugaboy Investment Trust* dated February 2026 [Dkt 4551-8] | | | |
| 79. | Membership Interest Purchase Agreement, dated August 1, 2022 by and among John Honis, as seller, DAF Holdings Corp., as buyer, and CLO Holdco, Ltd., as guarantor | | | |
| 80. | Amended and Restated Limited Partnership Agreement of Rand PE Fund, dated as of November 30, 2015 | | | |
| 81. | Investment Management Agreement, dated as of November 30, 2015, by and among Rand Advisors and Atlas IDF | | | |
| 82. | Investment Management Agreement, dated as of November 30, 2015, by and among Rand Advisors and Rand PE Fund | | | |
| 83. | Assignment and Assumption of Membership Interest Agreement, dated March 24, 2021, between Grant J. Scott and Mark E. Patrick | | | |

| Number | Exhibit | HCMLP Prior W&E Ref.[3] | Offered | Admitted |
|---|---|---|---|---|
| 84. | Amended and Restated Limited Liability Company Agreement of DAF GP, dated as of January 1, 2012 | | | |
| 85. | Second Amended and Restated Exempted Limited Partnership Agreement of DAF Fund, dated March 11, 2024 | | | |
| 86. | Contribution and Assignment Agreement, dated April 27, 2023, by and among DAF Fund, CLO Holdco, Ltd, Liberty CLO Holdco, Ltd., and DAF Holdings Corp. | | | |
| 87. | Highland Demonstrative Exhibit: Highland's Slide Deck for Hearing on Motion for Relief from Order and Motion to Vacate | | | |
| 88. | *Summons* filed March 3, 2026 in CICA Civil Appeal No. 3 of 2026 pending in the Cayman Islands Court of Appeal | | | |
| 89. | March 27, 2026 Hearing Transcript from proceedings in CICA Civil Appeal No. 3 of 2026 pending in the Cayman Islands Court of Appeal | | | |
| 90. | Highland Santa Barbara Foundation Inc.'s 2024 Form 990 | | | |
| 91. | Highland Kansas City Foundation Inc.'s 2024 Form 990 | | | |
| 92. | Highland Dallas Foundation Inc.'s 2024 Form 990 | | | |
| 93. | Certificate of the Order of the Court of Appeal dated April 22, 2026 in CICA Civil Appeal No. 3 of 2026 pending in the Cayman Islands Court of Appeal | | | |
| 94. | Highland Demonstrative Exhibit: Highland's Opening Slide Deck for Hearing on Motion for Relief from Order and Motion to Vacate | | | |
| 95. | May 9, 2025 Notice Letter from Skyview Group to Charitable DAF Fund, L.P. | | | |
| 96. | May 9, 2025 Notice Letter from Skyview Group to Rand Advisors | | | |
| 97. | May 12, 2025 Letter from Margot MacInnis to Shawn Raver re: Notice of Liquidation and Appointment of Official Liquidators for Charitable DAF HoldCo, Ltd | | | |

| Number | Exhibit | HCMLP Prior W&E Ref.[3] | Offered | Admitted |
|---|---|---|---|---|
| 98. | **Highland Demonstrative Exhibit: Highland's Closing Slide Deck for Hearing on Motion for Relief from Order and Motion to Vacate** | | | |
| 99. | **Highland Demonstrative Exhibit: Rebuttal to Dugaboy's Reply in Support of Motion to Vacate (Dkt 4607)** | | | |
| 100. | Any document entered or filed in Highland Capital Management, L.P.'s chapter 11 Bankruptcy Case or any associated contested matter or adversary proceeding, including any exhibits thereto | | | |
| 101. | All exhibits necessary for impeachment and/or rebuttal purposes | | | |
| 102. | All exhibits identified by or offered by any other party at the Hearing | | | |
| 300. | **Screen Clip from Ex. I_Macinnis Third Affidavit – November 2025 p.2 (showing metadata)** | | | |

[*Remainder of Page Intentionally Blank*]

Dated: May 21, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Jordan A. Kroop (admitted *pro hac vice*)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760
Email: jpomerantz@pszjlaw.com
jmorris@pszjlaw.com
gdemo@pszjlaw.com
jkroop@pszjlaw.com

**WILLKIE FARR & GALLAGHER LLP**

Mark T. Stancil (admitted *pro hac vice*)
Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
mstancil@willkie.com
jlevy@willkie.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy., Ste. 106
Dallas, TX 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P. and the Highland Claimant Trust*

**EXHIBIT 98**

HIGHLAND CAPITAL
MANAGEMENT

# Highland Capital Management, L.P.

## Dugaboy's Motion to Vacate Must Be Denied

[Docket No. 4513]

May 21, 2026

PSZJ PACHULSKI STANG ZIEHL & JONES

# Dugaboy's Heavy Burden Under Rule 60

**A. The Standard Under Rule 60(b)(2)**

- Dugaboy must come forward with "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)."
- Dugaboy cannot show that there is any newly discovered evidence and that the cumulative evidence it presents is "material and controlling and clearly would have produced a different result If present before the original judgment." [1]
- The evidence cannot be cumulative and "must be in existence at the time of [the final judgment] and not discovered until after the final judgment." [1]

**B. The Standard Under Rule 60(b)(3)**

- Under Fed. R. Civ. P. 60(b)(3), made applicable by Bankruptcy Rule 9024, Dugaboy must prove by clear and convincing evidence that (a) an adverse party engaged in misconduct that (b) prevented the moving party from fully and fairly presenting [its] case." [2]

1. Highland Objection to Dugaboy's Motion to Vacate [Docket No. 4535] ¶ 58.
2. *Id.* ¶ 68 (citing and quoting cases).

# Undisputed Facts Mandating Denial of Dugaboy's Motion to Vacate

- Dugaboy previously designated Dondero as its agent for "all purposes relating to the Relevant Litigation and Dugaboy's Motion to Vacate." *See* Docket No. 4615 ¶ 1.
- Highland incorporates by reference the facts set forth in the demonstrative exhibit filed at Docket No. __.
- Patrick had authority to act on behalf of HMIT at the time of the 9019 hearing. Highland Ex. 1 ¶ 7.
- No evidence was presented showing that anyone anywhere has ever sought Patrick's removal as the Control Person of the HMIT Entities, let alone that he was removed from such position.
- As reflected in Highland Exhibits 47-52, 55-62, Dugaboy knew or should have known by July 14, 2025, of Patrick's allegedly wrongful conduct concerning the sale of Beacon Mountain, the restructuring of the DAF Entities, and the compensation and expense issues complained of as far back as April 2025.
- Dugaboy availed itself of all discovery rights under Bankruptcy Rule 9014(c) by serving document requests and interrogatories and taking four agreed-upon depositions (including Patrick and Raver). Highland Ex. 53.
- In response, Highland produced over 4,000 documents, including all communications between the Highland and HMIT Entities leading up to the execution of the Settlement Agreement and all documents Highland relied upon to satisfy itself that Patrick was authorized to enter into the Settlement Agreement on the HMIT Entities' behalf. *See* Highland Ex. 59 at 90:22–91:23; 99:13–100:13; Highland Ex. 54.
- The Dallas Foundation pressed its objection that Patrick lacked authority and then withdrew it; Dugaboy was fully aware of the facts and allegations yet chose not to press the same theory until the hearing.

# Undisputed Facts Mandating Denial of Dugaboy's Motion to Vacate (cont.)

- No evidence was presented that Dugaboy requested any documents from HMIT or any documents concerning any of the issued raised in the Cayman Proceeding, of which Dugaboy was fully aware. *See* Highland Exs. 47-51.
- No evidence was presented demonstrating that Dugaboy (or any other party) objected to any aspect of the discovery provided, including Patrick's responses to questions during his deposition and at trial.
- The only parties to formally object to proposed settlement on the ground that Patrick lacked authority—the Dallas Foundation and Crown Global—withdrew their objection with prejudice and entered a Binding Term Sheet that recognized Patrick's continuing control of the HMIT Entities. Docket No. 4291.
- Just days after the hearing, the Dondero Foundations believed they had sufficient facts to seek the appointment of a receiver in the Texas State Business Court, and specifically laid out each and every transaction step that Dondero now relies on. Highland Exs. 61-62.
- Dugaboy relies heavily on the Writ filed on July 15, but the facts laid out in that document were either previously known (see Demonstrative Exhibit) or are cumulative of facts known before the filing.
- For the reasons stated below, the evidence adduced on Dugaboy's case-in-chief validated this Court's prior finding that the Cayman Proceeding is irrelevant to the Highland bankruptcy case and consideration of the Settlement Agreement under Rule 9019.
- In 2025, Dondero personally, and through entities controlled by him, validated Patrick's authority to act on behalf of the HMIT and DAF Entities as evidenced by the nine (9) separate agreements admitted into evidence. Highland Exs. 37-45.

# Undisputed Facts Mandating Denial of Dugaboy's Motion to Vacate (cont.)

- MacInnis' testimony was irrelevant and otherwise does not come close to meeting the Rule 60 standard even if taken at face value. But the Court has good cause to question MacInnis' credibility because she admitted that (a) she voluntarily travelled to Texas on her firm's expense, (b) despite being more than $3 million in arrears (not including a judgment entered in Patrick's favor in excess of $1.2 million that remains unpaid) (c) to testify on behalf of an entity (Dugaboy) that has no connection to Holdco (the only entity MacInnis oversees), (d) in a matter that seeks to set aside the Settlement Agreement, an agreement MacInnis has not determined (a year later) is good or bad for her entity.
- Bannon's testimony was irrelevant and otherwise does not come close to meeting the Rule 60 standard even if taken at face value. But the Court has good cause to question Bannon's credibility because she admitted that (a) her primary responsibilities at NexPoint concern communications and charitable giving, not corporate affairs, (b) she was not responsible for investigating the allegations lodged against Patrick, (c) despite being an officer of the Dondero Foundations, Bannon did not fully inform those entities of the allegations presented by Dugaboy in this proceeding, and (d) while she claimed to learn of certain facts after the 9019 hearing, Bannon was forced to admit on cross that Dondero or the Dondero Foundations were aware of such facts before the 9019 hearing.
- For the reasons set forth below, Dugaboy's new argument that Patrick "automatically" lost his authority to act on behalf of HMIT the moment he (allegedly) breached his fiduciary duty in matters unrelated to HMIT is rejected as a matter of fact and on the grounds that Dugaboy waived such argument by (a) failing to raise it during the 9019 proceedings, and (b) acting inconsistently with such argument by entering into the agreements with Patrick throughout 2025, and also because the text of the HMIT trust agreement and the testimony do not support the argument. *See* Highland Exs. 37-45.

# Based on Information Available as of July 14, Nothing Dugaboy Learned Thereafter Could Have Changed the Outcome of the 9019 Order

**2025**

**February 2025**
Dugaboy learns that:
a) Its interest (through Dolomiti) in Rand is redeemed, [1]
b) Atlas was being dissolved, and
c) The HMIT position was sold for $1 million.[2]

**April 16, 2025**
The Dondero Foundations file a Winding Up Petition in the Cayman Islands for Charitable DAF Holdco Ltd. based on Dondero's Affidavit in which he details Patrick's control of DAF and accuses Patrick of fraud and self-dealing. [3]

**May 2, 2025**
The Dondero Foundations' petition for Court supervision of the liquidation and the appointment of the JOLs details DAF restructuring steps. [4]

**June 4, 2025**
Patrick files a 64-page Affidavit in which he rebuts the charges against him in excruciating detail, including his concerns that Dondero was jeopardizing the DAF's tax status by exercising effective control. [5]

**June 9, 2025**
The Dallas Foundation (on behalf of Empower Dallas and the Okada Family Foundation) and Crown Global object to the 9019 Motion contending that Patrick lacked authority to bind the HMIT Entities because of self-dealing and breaches of fiduciary duty. [5]

**July 1, 2025**
The Dondero Foundations' detailed petition the Texas Business Court for injunctive relief and the appointment of a receiver based on all of the core allegations on which Dugaboy now relies. [6]

**July 9, 2025**
The Dondero Foundations (including Julie Diaz) are appointed to the Liquidation Committee in the Cayman Proceeding. [7]

FEB | MAR | APR | MAY | JUN | JUL

1. Highland Ex. 76.
2. Highland Ex. 48 ¶ 38-41.
3. Highland Exs. 47-48.
4. Highland Ex. 49-50.
5. Highland Ex. 52.
6. Highland Ex. 61.
7. Highland Ex. 66 at 5; *see also* Ex. 67.

# The Evidence Validated This Court's Determination That the Cayman Proceeding Is Irrelevant

- Neither HMIT, Highland, nor the Settlement Agreement are mentioned in any substantive way in (a) the JOLs' Writ (H. Ex. 63), (b) the JOLs' Chapter 15 Recognition Petition (H. Ex. 68), or (c) the Cayman Court Decision. H. Ex. 72.
- MacInnis did not mention HMIT, or Highland, or the Settlement Agreement at any point during her direct testimony. Tr. (5/11) at 158:7-12.
- MacInnis did not attend the June 25 hearing or make any attempt to obtain the evidence adduced at that hearing because it was of no interest to her. Tr. (5/11) at 194:21-195:17.
- A year after the Motion was filed, MacInnis has not formed any view as to whether the 9019 Settlement is good or bad. Tr. (5/11) 199:18-201:9.
- There is no evidence that MacInnis has done any investigation into the Beacon Mountain sale – a sale that, ironically, gave Holdco an indirect, non-controlling interest in HMIT.

# No Evidence Was Discovered After July 14 That Could Not Have Been Discovered With "Reasonable Diligence" Before That Time

- Dondero was designated as Dugaboy's agent for all purposes with respect to all the Relevant Litigation and this Motion to Vacate.[1] Therefore, knowledge acquired by Dondero in the course of his duties is imputed to Dugaboy, his principal.[2]
- With Dondero acting as Dugaboy's agent, Dugaboy objected to the 9019 Motion; the Dallas Foundation and Crown Global also objected, an objection which Dondero paid for.[3]
- The objections created a "contested matter" granting Dugaboy and the Dallas Foundation all rights of discovery under Bankruptcy Rule 9014(c).
- Dugaboy and the Dallas Foundation exercised those rights.[4]
- Highland answered Dugaboy's interrogatories and produced over 4,000 pages of documents, including all communications between Highland and HMIT before the Settlement Agreement was signed.[5]
- Dugaboy and the Dallas Foundation deposed Mark Patrick and his associate, Shawn Raver as well as James Seery and David Klos.[6]
- No limits of any kind were placed on the scope of discovery.

1. Docket No. 4615.
2. *In re Black Elk Energy Offshore Operations, LLC*, No. 23-20386 (5th Cir. 2024) at 12.
3. Docket No. 4230; Highland Ex. 52.
4. *See*, *e.g.*, Highland Ex. 53.
5. Highland Ex. 54 (Highland's written responses and objections to Dugaboy's document requests and interrogatories); Docket No. 4255, Exs. 2-57.
6. Highland Exs. 55 and 58; Docket Nos. 4243-45, 4259-60.

# Dugaboy's Contrived Argument That Patrick Magically Lost His Powers When He Purportedly Breached His Fiduciary Duties Was Waived and Is Wrong

1

According to Dondero, Patrick was suspected of breaching his fiduciary duties as early as June 2023.

2

Yet, Dugaboy failed to make this argument at any time until Dondero's deposition on May 8, 2026; it was not made during the 9019 proceeding (even thought the HMIT Trust Agreement was produced in discovery), or even in Dugaboy's Motion to Vacate.

3

The best evidence that Dugaboy conjured up this argument at the last minute are the nine agreements Dondero and entities he controls entered into in 2025 with Patrick and entities he controls. Dondero also pushed Patrick controlled HMIT to continue litigating against Highland through 2024

# Context Is Everything: Dugaboy's Motion to Vacate Must Be Denied

- Dondero's goal is to regain control of the HMIT Entities so he can re-start litigation against Highland—because unless the 9019 Order is overturned, Dugaboy is hopelessly out of the money.
- Rule 60 is not an opportunity for a do-over, but that's exactly what Dugaboy is attempting to do here.
- Dugaboy does not contend that the 9019 Settlement was not in Highland's best interests; or that the 9019 Settlement was not the product of arm's length, good faith negotiations. Instead, Dugaboy relies on evidence developed by the JOLs in a foreign proceeding that—as Judge Jernigan found—have nothing to do with Highland or the Settlement. Indeed, Dugaboy did not bother calling a Highland Representative on its case-in-chief.
- Dugaboy and its agent, Dondero, knew all they needed by July to object to Patrick's authority, yet they failed to do so.
- This a dispute between and among former equity holders of Highland that should be resolved in the Cayman Islands or the Texas Business Court, but not here.

# Legal Conclusions Supporting Denial of Dugaboy's Motion to Vacate

- As of June 25, 2025, the date of the 9019 Hearing, Mark Patrick was authorized to enter into the Settlement Agreement on behalf of HMIT Entities as the sole "control" person of each such entity.
- Dugaboy failed to prove by clear and convincing evidence that it learned of facts for the first time after July 14, 2025, that were not cumulative of facts known to it prior to that time.
- Even if Dugaboy had identified such evidence (which it hasn't), Dugaboy failed to prove that any such evidence could not have been obtained with reasonable diligence—particularly since Dugaboy had all discovery rights under Bankruptcy Rule 9016 but failed to seek any discovery pertaining to Patrick's authority to enter into the Settlement Agreement on behalf of the HMIT Entities.
- Even if Dugaboy had identified evidence for the first time after July 14, 2025, and even if it could meet its burden of proving that such evidence could not have been identified with "reasonable diligence," it failed to meet its burden of proving such evidence would have changed the outcome of the 9019 proceeding.
- Dugaboy failed to prove by clear and convincing evidence that the Highland Entities—the only "opposing parties" for purposes of Rule 60(b)(3) since they were the only movants of the 9019 Motion [Docket No. 4216]—engaged in fraud, misrepresentation, or misconduct in connection with the 9019 Proceeding.
- While not an "opposing party" for purposes of Rule 60(b)(3), Dugaboy also failed to prove by clear and convincing evidence that the HMIT Entities engaged in fraud, misrepresentation, or misconduct in connection with the 9019 Proceeding.

# Legal Conclusions Supporting Denial of Dugaboy's Motion to Vacate

- Dugaboy failed to meet its burden that the 9019 Order approving the Settlement Agreement should be vacated in the interests of justice because (a) no evidence was adduced showing the Court's bias or prejudice with any aspect of the 9019 proceeding, (b) the Fifth Circuit rejected Dugaboy's recusal arguments three times, (c) Highland's stakeholders—like all litigants—justifiably expect finality in court rulings and an end to frivolous litigation, and (d) Dugaboy's motives in pursuing this Motion are highly questionable given that (i) (following the withdrawal of Dugaboy's indirect interest (through Dolomiti) in Rand (see Highland Ex. 76), Dugaboy has no direct or indirect interest in the HMIT (or DAF) Entities, (ii) its lifetime beneficiary and "agent" (Dondero) is the driving force behind all of the litigation concerning the 9019 Motion, the Cayman Proceeding, the Recognition Proceeding, and the Texas Business Court Litigation through his funding, his service as Dugaboy's agent and the Dondero Foundations' principal officer, funder, and President, and through the submission of multiple Affidavits in multiple forums, and (iii) at the heart of this all is an apparently personal and bitter dispute between Dondero and Patrick that does not concern the Highland Entities, the Highland bankruptcy case, or the Settlement Agreement.

- Dugaboy waived any argument that Patrick "automatically" lost his authority to act on behalf of HMIT the moment he (allegedly) breached his fiduciary duties by (b) failing to raise it during the 9019 proceedings, and (c) acting inconsistently with such argument by entering into the agreements with Patrick throughout 2025. *See* Highland Exs. 37-45.

**EXHIBIT 99**

**REBUTTAL TO DUGABOY'S REPLY IN SUPPORT OF MOTION TO VACATE (DKT 4607)**

**CHART ON PG. 19 OF REPLY BRIEF**

| **Dugaboy: "Highland's Alleged 'Old' Information"** | **Dugaboy: "Highland's Cited Sources of Prior Knowledge"** | **Dugaboy: "Why This Does Not Refute Rule 60(b)(2)"** | **Highland Rebuttal** |
|---|---|---|---|
| "Patrick has controlled DAF Entities since 2021." | Dondero Affidavit (Apr. 16, 2025); Winding Up Petition (Apr. 23, 2025); Dallas Foundation Objection (June 9, 2025); Foundations Action (July 1, 2025). | "The Dondero Affidavit and Winding Up Petition raised concerns about Patrick's control but did not contain the transactional documentation (share transfers, resolutions, assignments) that would be necessary at an evidentiary hearing to prove the scope and method of control. Ex. 3, Affidavit of Jim Dondero; Dkt. 4315-E (Winding Up Petition).<br><br>The Dallas Foundation Objection (Dkt. 4231) expressed suspicion but explicitly stated it lacked sufficient information to make detailed allegations and requested further investigation. | **False**.<br><br>One does not need "transactional documentation" to know that something happened, and the acknowledged "concerns" and "suspicions" were enough to file sworn affidavits, declarations, and petitions seeking affirmative relief in both the Cayman Court and the Texas Business Court. *See* Highland Exs. 47-49, 61-62.<br><br>Moreover, having admitted to having "concerns about Patrick's control," Dugaboy could have exercised reasonable diligence to seek discovery on these very issues as part of the 9019 Proceeding. But while Dugaboy served document requests and interrogatories (Highland Ex. 53), and took depositions (Highland Exs. 55-58), neither Dugaboy nor the Dallas Foundation served *any* written discovery on Highland or HMIT concerning the purported "concerns about Patrick's control." |

| **Dugaboy: "Highland's Alleged 'Old' Information"** | **Dugaboy: "Highland's Cited Sources of Prior Knowledge"** | **Dugaboy: "Why This Does Not Refute Rule 60(b)(2)"** | **Highland Rebuttal** |
|---|---|---|---|
| | | None of these documents contained the actual April 2, 2021, CLOH shareholder resolutions or the March 21, 2021, DAF GP Assignment & DAF Holdco Share Transfer. Those documents first appeared in connection with the MacInnis Affidavit. *See* Ex. 2 First MacInnis Aff., (2021 CLOH Shareholder Resolution, MM-1, 1439 n.13); (DAF GP Assignment & DAF Holdco Share Transfer, MM-1, 1439 n.1).<br><br>Suspicion of control is not the same as possession of authenticated evidence proving, how, when, and through what mechanism control was obtained."<br><br>Reply at 19. | Also, the April 2, 2021 CLOH SH resolutions and the March 21, 2021 DAF GP Assignment did not "first appear" in the MacInnis Affidavit--***they were filed by Holdco and the Supporting Organizations in this Court almost five years ago, on July 9, 2021*** (Dkt. 2547, Exs. 15 and 29)<br><br>Finally, Dondero and the Charitable Organizations repeatedly acknowledged Patrick's control, including, for example:<br><br>- Highland Ex. 47 (Cayman Winding Up Pet.) 4/16/25 ¶¶ 11, 16<br>- Highland Ex. 48 (Dondero Aff. 4/16/25) ¶¶ 12, 20-21, 23<br>- Highland Ex. 52 (Dallas Foundation Obj.) 6/9/25 ¶¶ 11—12<br>- Highland Ex. 61 (Dondero Decl. 7/1/25) ¶¶ 8, 9, 17—18, 20<br>- Highland Ex. 62 (Tex. Bus. Ct. Orig. Pet. 7/1/25) ¶¶ 1.2, 3.5, 4.1, 5.8—11, 5.18—20, 5.56, 6.3, 6.16, 7.14, 7.17—18, 8.13—14 |
| "Patrick has controlled HMIT | (April 16, 2025); Dallas Foundation | "Highland cites the Membership Interest Purchase Agreement, Atlas GP Consents, and HMIT Appointment documents with Bates references (Dkt. 4255, Exs. 75, 82, | **False**.<br><br>Something learned at trial cannot constitute "newly discovered" evidence under 60(b)(2)—but |

| **Dugaboy: "Highland's Alleged 'Old' Information"** | **Dugaboy: "Highland's Cited Sources of Prior Knowledge"** | **Dugaboy: "Why This Does Not Refute Rule 60(b)(2)"** | **Highland Rebuttal** |
|---|---|---|---|
| Entities since 2022" | Objection (June 9, 2025); MIPA (Aug. 1, 2022); Atlas GP Consents (Oct. 13, 2022); HMIT Appointment (Aug. 12, 2022). | 86–88), but these are Highland's own trial exhibits that it introduced at the 9019 Hearing.<br><br>Critically, at his June 23, 2025 deposition, Patrick could not identify who owned CDMCFAD, stating he would need to "revisit the actual organizational documents." 4315-49, 6/23/2025 Patrick Deposition, 7:22–25. Two days later at the 9019 Hearing, Patrick readily confirmed that CDMCFAD owned Charitable DAF Fund, LP and that DFW Charitable Foundation was the "ultimate beneficial owner." 4315-23, 6/25/25 Hearing Transcript, 174:8–14.<br><br>Yet when pressed on the December 2024 transaction (in which Patrick caused Charitable DAF Holdco to transfer its entire $270 million interest in the Fund to CDMCFAD), Patrick repeatedly claimed not to recognize "Charitable DAF Holdco," demanding corporate documents and asserting "there could be a lot of entities called that." *Id.* at 177:21–24. The | Dugaboy's assertion that it "learned of Patrick's ownership in these entities" for the first time at the 9019 Hearing is false in any event; ownership of all entities was disclosed before and during discovery.<br><br>In fact, Dugaboy and the Supporting Organizations knew well before the 9019 Hearing that (a) Patrick formed DFW Foundation and was its sole member,[1] (b) DFW is based out of Patrick' home and (c) Patrick caused DAF Holdco to issue 318 new Participating Interests to DFW that diluted the Participation Interests of the Charitable Entities:<br><br>- Highland Ex. 49 (Pet. for Ct. Supervision 5/2/25) ¶¶ 10(a) – (d)<br>- Highland Ex. 52 (Dallas Foundation Obj. 6/9/25) ¶¶ 27—28<br><br>Moreover, while Highland included Exhibits 75, 82, and 86—88 on its W&E List, ***those documents were produced in discovery*** (that is why they are Bates Stamped with the prefix "HCMLPHMIT"; *see* Dkt. 4255). |

[1] For clarification, Patrick does not "own" DFW Foundation—it is a 501(c)(3) private foundation without economic stockholders.

| **Dugaboy: "Highland's Alleged 'Old' Information"** | **Dugaboy: "Highland's Cited Sources of Prior Knowledge"** | **Dugaboy: "Why This Does Not Refute Rule 60(b)(2)"** | **Highland Rebuttal** |
|---|---|---|---|
| | | Court "fe[lt] like [Patrick was] feigning confusion." *Id.* at 182:4–15.<br><br>Immediately thereafter, Patrick confirmed he was involved in the transaction and that CDMCFAD obtained its interest "from an entity called Charitable DAF Holdco, Ltd." *Id.* At 187:7–12. **This was the first time Dugaboy learned of Patrick's ownership in these entities."**<br><br>Reply 19-20. | Moreover, during their respective depositions, (a) Raver unambiguously testified (with Dugaboy's counsel participating) regarding the share issuance and that the DFW Charitable Foundation owns CDMCFAD (Highland Ex. 55 at 22:7—13; 23:1—2), and (b) Patrick testified that he was the "control person" for CDMCFAD LLC. Highland Ex.58, 14:1-3.<br><br>Finally, the JOLs' 6/24/25 letter requesting an adjournment of the 9019 Hearing—offered into evidence by Dugaboy—described the 12/24 transfer of DAF Holdco's 100% interest in DAF Fund to CDMCFAD and the subsequent redemption of that interest. Doc. 4294 (Dugaboy Ex. 3). |
| "CDH GP replaced DAF GP as general partner of DAF Fund" | Winding Up Petition (Apr. 23, 2025); Dallas Foundation Objection (June 9, 2025); Raver Deposition (June 20, 2025); JOL | "Highland's own chart concedes that the JOL Writ (July 15, 2025) and Chapter 15 Petition (July 21, 2025) are among the sources both of which post-date July 14, 2025. The earlier sources (Dkt. 4315-E, ¶¶ 38–40, Winding Up Petition, Dkt. 4231, 10, Dallas Foundation Objection) mentioned that CDF GP had replaced DAF GP but did not contain the underlying GP Assignment document or explain that CDH GP was a newly formed shell entity, | **False**.<br><br>The GP change was known and every filing relating to the DAF restructuring describes how the GP controls the DAF Fund—so of course a change of the GP "wrests control" from the prior GP entity to the new GP entity. The one thing it does NOT do, however, is wrest control from Patrick as he was the sole owner and director of BOTH GP entities. |

| **Dugaboy: "Highland's Alleged 'Old' Information"** | **Dugaboy: "Highland's Cited Sources of Prior Knowledge"** | **Dugaboy: "Why This Does Not Refute Rule 60(b)(2)"** | **Highland Rebuttal** |
|---|---|---|---|
| | Writ (July 15, 2025); Ch. 15 Petition (July 21, 2025). | incorporated February 27, 2024, with Patrick as sole director, created specifically to wrest control from the existing governance structure.<br><br>The replacement's significance, as part of a broader scheme to funnel $270 million away from the charities, was not evident from the bare fact of the GP change."<br><br>Reply at 20. | In their 4/16/25 Winding Up Petition, the Supporting Organizations expressly stated that their counsel learned in "February 2025" that on "27 February 2024", Patrick "had redomiciled and replaced the General Partner of the Fund, without notice to the Charities." They also stated that the new GP was a Cayman Islands entity called CDH GP, Ltd., and that Patrick was "the sole director of the New GP." Highland Ex. 47 (Winding Up Pet. 4/16/24) ¶¶ 38—40). *See also*:<br><br>- Highland Ex. 49 (Pet. for Ct. Supervision 5/2/25) ¶¶ 10(a) – (d)<br>- Highland Ex. 52 (Dallas Foundation Obj. 6/9/25) ¶ 24<br>- Highland Ex. 55 (Raver Dep. 4/20/25) at 23:21 –25:6.<br>- Highland Ex. 62 (Tex. Bus. Ct. Orig. Pet. 7/1/25) ¶¶ 1.2, 3.2, 5.41 – 50. |
| "DFW Foundation was formed by | Supervision Application (May 2, 2025); Dallas | "The Supervision Application (filed May 2, 2025) was filed in the Cayman Court; it is a protective filing requesting court oversight of the liquidation. Dkt. 4521-G, | **False.** [2]<br><br>Highland Ex. 49 (Pet. for Ct. Supervision 5/2/25) ¶¶ 10(a) – (d) details DFW's role in the share |

[2] Again, Patrick is not the ultimate beneficial owner of DFW Foundation or the DAF—DFW is a 501(c)(3) private foundation—there is no economic equity owner.

| **Dugaboy: "Highland's Alleged 'Old' Information"** | **Dugaboy: "Highland's Cited Sources of Prior Knowledge"** | **Dugaboy: "Why This Does Not Refute Rule 60(b)(2)"** | **Highland Rebuttal** |
|---|---|---|---|
| Patrick with Patrick as its sole member." | Foundation Objection (June 9, 2025); Foundations Action (July 1, 2025); JOL Writ (July 15, 2025); Ch. 15 Petition (July 21, 2025). | Ex. 67. It did not detail DFW Foundation's role as the vehicle through which Patrick would become the ultimate beneficial owner of $270 million in charitable assets.<br><br>The Dallas Foundation Objection raised "suspicions" about Patrick and referenced the existence of DFW Foundation but expressly noted it lacked discovery to make full allegations. Dkt 4315-3, 3.<br><br>Notably, at his June 23 deposition, Patrick himself refused to confirm whether DFW Foundation was the ultimate owner, testifying he "just [didn't] want to go beyond what [he had] a hundred percent knowledge of." Dkt. 4513-49 at 8:1-6. The full picture that DFW Foundation was created in December 2024 specifically to receive participating shares and become the sole remaining member of CDM after Redemption, came from the July 15, 2025 MacInnis Affidavit and its internal communications. *See* Ex. 2 First MacInnis Aff, ¶38."<br><br>Reply at 20-21. | issuance and redemption transactions the left DAF Holdco with no interest in DAF Fund, and, after the redemption, "no assets."<br><br>DFW Foundation is shown as the ultimate beneficial owner of the structure on Highland's demonstrative structure chart admitted into evidence at the 9019 Hearing (Highland Ex. 60).<br><br>The Dallas Foundation's Objection and Raver's deposition testimony also revealed that HMIT is owned by Beacon Mountain, which is owned by CLO Holdco, LLC, which is owned by CLO Holdco, Ltd., which is owned by DAF Fund, which is owned by CDMCFAD, which is owned by DFW Charitable Foundation. Highland Ex. 52 (Dallas Foundation Obj. 6/9/25) ¶¶ 2, 3, 9, 24, 27 – 29, 34; Highland Ex. 55 (Raver Dep. 4/20/25) at 7:5 – 10, 11:6 – 13:5, 17:10 – 15, 22:7 – 24, 23:3 – 10, 24:4 – 16, 25:14 – 28:17. *See also* Highland Ex. 59 (Patrick testimony at trial) at 173:22 – 174:14). |

| **Dugaboy: "Highland's Alleged 'Old' Information"** | **Dugaboy: "Highland's Cited Sources of Prior Knowledge"** | **Dugaboy: "Why This Does Not Refute Rule 60(b)(2)"** | **Highland Rebuttal** |
|---|---|---|---|
| "DAF HoldCo Issued participating shares to DFW Foundation, diluting supporting organizations." | Supervision Application (May 2, 2025); Dallas Foundation Objection (June 9, 2025); Raver Deposition (June 20, 2025); JOL Writ (July 15, 2025); Ch. 15 Petition (July 21, 2025). | "Again, Highland's own chart concedes the JOL Writ and Chapter 15 Petition as sources, both post-dating July 14. The Supervision Application did not attach or describe the share issuance resolution, the amended Memorandum and Articles (filed February 21, 2025), or quantify the dilution (from 100% to 48.96%).<br><br>The Raver Deposition (June 20, 2025) was taken only five days before the 9019 Hearing and ten days before the Settlement Order. At the hearing itself, the Court was not presented with the full transactional chain. The first document to lay out the complete dilution mechanism, with attached resolutions, valuations and the FTI/ValueScope analyses showing the shares were issued at approximately a 95% discount, was the July 15, 2025 MacInnis Affidavit. *See* Ex. 2 First MacInnis Aff., TDIT005636.<br><br>The attachments to that affidavit revealed for the first time privileged communications showing the dilution was not to issue additional shares to a charitable | **False**.<br><br>The Supporting Organization's 5/2/25 Supervision Petition and the Dallas Foundation's 6/9/25 Objection details (i) the 318 share issuance to the DFW Foundation and the resulting dilution with precise percentages, (ii) Patrick caused the formation of DFW Foundation and CDMCFAD, (iii) the transfer of DAF Holdco's interest in DAF Fund to CDMCFAD, (iv) the redemption of DAF Holdco's interest in CDMCFAD for $1,612,192.00 (Highland Ex. 49 (Supervision Petition) ¶ 10; Highland Ex. 52 (DF Objection) ¶¶ 27 – 29).<br><br>Raver also laid out the full transactional chain. Highland Ex. 55 (Raver Deposition) at 11:6-14:6. Something learned prior to the 9019 Hearing cannot constitute newly discovered evidence for purposes of Rule 60(b)(2).<br><br>Thus the documents Dugaboy cites in connection with the DAF restructuring are just cumulative evidence of facts already known and would not have changed the outcome of the 9019 proceeding. |

| **Dugaboy: "Highland's Alleged 'Old' Information"** | **Dugaboy: "Highland's Cited Sources of Prior Knowledge"** | **Dugaboy: "Why This Does Not Refute Rule 60(b)(2)"** | **Highland Rebuttal** |
|---|---|---|---|
| | | beneficiary as provided by the documents, but rather to better position Patrick and his coconspirators in future litigation against the Charities. *Id.* At TDIT005481–005486."<br><br>Reply at 21. | |
| "DAF HoldCo transferred DAF Fund to CDM, DCM redeemed DAF HoldCo, supporting organizations left with no remaining interest in DAF Fund." | Supervision Application (May 2, 2025); Dallas Foundation Objection (June 9, 2025); Patrick Deposition (June 23, 2025); Raver Deposition (June 20, 2025); 9019 Hearing Transcript; JOL Writ (July 15, 2025); Ch. 15 Petition (July 21, 2025). | "This is the heart of the scheme: the exchange of an approximately $270 million limited partnership interest for a $1.6 million CDM membership interest. The pre-July 14 sources Highland identifies did not contain the underlying transactional documents and did not establish that the $270 million interest was exchanged for a $1.6 million CDM membership interest as part of a coordinated scheme. Patrick himself actively obstructed inquiry into the transaction at his June 23, 2025 deposition and at the 9019 Hearing. Dkt. 4513-23 at 173:13–177:22.<br><br>Dugaboy was not aware of full picture with supporting documentation until the First MacInnis Affidavit was released on July 15, 2025. *See* Ex. 2 First MacInnis Aff., at ¶40. | **False**.<br><br>Again, cumulative evidence of something already known cannot constitute newly discovered evidence under Rule 60(b)(2), nor can Dugaboy explain how such cumulative evidence could not have been obtained through reasonable diligence (*i.e.*, through discovery).<br><br>Relying on the citations above, it is indisputable that Dondero and the Supporting Organizations knew the following:<br><br>- Dugaboy knew prior to the 9019 Hearing that Patrick formed DFW Foundation and CDMCFAD.<br>- Dugaboy knew prior to the 9019 Hearing that Patrick caused DAF Holdco to issue shares to DFW Foundation, which diluted the Supporting Organzations. |

| **Dugaboy: "Highland's Alleged 'Old' Information"** | **Dugaboy: "Highland's Cited Sources of Prior Knowledge"** | **Dugaboy: "Why This Does Not Refute Rule 60(b)(2)"** | **Highland Rebuttal** |
|---|---|---|---|
| | | In particular, the ValueScope March 25, 2025 valuation used to justify Patrick's actions was not available until it was filed by MacInnis on July 21, 2025. *See* 4315-G, at Ex. 50. Finally, it was not known until Dugaboy obtained the First Affidavit of MacInnis that these actions were taken because Patrick was leaked information about the Charities intent to file DAF Holdco for liquidation, and the actions were taken with the intention of relocating the assets before that filing. *See* Ex. 2, First MacInnis Aff. at MM-1, p. 1058. The 9019 Hearing Transcript thus demonstrates the *absence* of available evidence: objectors raised concerns but lacked the underlying documents to prove the scheme."<br><br>Reply at 21-22. | - Dugaboy knew prior to the 9019 Hearing that Patrick caused DAF Holdco to transfer its interest in DAF Fund to CDMCFAD.<br>- The Supporting Organizations received $1,612,192 and Dugaboy knew prior to the 9019 Hearing that it was for the redemption of DAF Holdco out of CDMCFAD.<br>Highland Ex. 49 (Pet. for Ct. Supervision 5/2/25) ¶¶ 10(a) – (d).<br>Highland Ex. 52 (Dallas Foundation Obj. 6/9/25) ¶¶ 23—29. |
| "Beacon Mountain (and HMIT indirectly) was sold to CLOH, Patrick controlled | Dondero Affidavit (Apr. 16, 2025); Winding Up Petition (Apr. 23, 2025); Dallas | "The depositions were taken only days before the hearing, June 20 and 23, 2025, and Patrick evaded questions about the ultimate ownership of the entities. He testified that Beacon Mountain was the ultimate owner of Hunter Mountain when in fact DFW Foundation sat above it. | **False**. |

| **Dugaboy: "Highland's Alleged 'Old' Information"** | **Dugaboy: "Highland's Cited Sources of Prior Knowledge"** | **Dugaboy: "Why This Does Not Refute Rule 60(b)(2)"** | **Highland Rebuttal** |
|---|---|---|---|
| CLOH, DFW Foundation is ultimate owner." | Foundation Objection (June 9, 2025); Raver Dep. (June 20, 2025); Patrick Dep. (June 23, 2025); Littleton Dep. (June 23, 2025); Highland Ex. 95; 9019 Hearing Transcript; Email (Mar. 12, 2025); Beacon Mountain LLC Agreement (Feb. 12, 2025). | Highland's Exhibit 95 at the 9019 Hearing did not disclose that fact. Dkt. 4255–95.<br><br>The truth was not exposed until the July 15, 2025 JOL filings. The Beacon Mountain LLC Agreement (February 12, 2025) was a Patrick controlled document that Dugaboy did not possess until it was produced as an exhibit to the JOL pleadings."<br><br>Reply at 22. | First, Dugaboy knew from an earlier proceeding,[3] and from Patrick's deposition, that Beacon Mountain is the sole beneficiary of Hunter Mountain and Patrick is the sole Administrator. Dugaboy also knew that the ultimate indirect beneficial owner of Hunter Mountain—whether it be DFW Foundation (which was likewise disclosed), the Dondero Foundations, or anyone else—has no control or approval rights whatsoever with respect to the HMIT Settlement. Highland Ex. 36 (6/8/23 hearing transcript), 173:22-174:21; 185:18-25; 186:18-20; Highland Ex. 58 (Patrick deposition), 11:10-13, 12:8-14.<br><br>During his deposition, Raver also disclosed ownership of Hunter Mountain all the way up to DFW Foundation with precision. Highland Ex. 55 (Raver transcript) at 11:6-14:6; 22:5–28:17.<br><br>Dugaboy's contention that it did not possess the February 12, 2025 Beacon Mountain LLC Agreement until July 15, 2025 is, once again, false: it was on Highland's 9019 W&E List (Dkt. 4255-95), and it specifically references the transfer |

[3] HMIT was the movant in the earlier proceeding, represented by the Stinson Law Firm. When asked during his recent deposition to identify any law firms that worked for Dugaboy, Dondero could only name Stinson. Highland Ex. 77 at 15:5-16. The docket in the case reflects that Stinson represented both Dugaboy and HMIT at various times and in various matters in the Highland bankruptcy.

| **Dugaboy: "Highland's Alleged 'Old' Information"** | **Dugaboy: "Highland's Cited Sources of Prior Knowledge"** | **Dugaboy: "Why This Does Not Refute Rule 60(b)(2)"** | **Highland Rebuttal** |
|---|---|---|---|
| | | | of Beacon Mountain from Rand PE Fund to CLOH, LLC, shows CLOH, LLC as the new sole member of Beacon Mountain, and has Patrick signing on behalf of CLOH, LLC as its Manager (Highland Ex. 4).<br><br>Finally, Highland's structure chart admitted into evidence at the 9019 Hearing shows DFW Foundation as the ultimate beneficial owner at least six entity layers above HMIT, and CLO Holdco, LLC (which is shown as owned by CLO Holdco Ltd.) as the new owner of Beacon Mountain. Highland Ex. 60.<br><br>Again, information learned days before, or even at, the 9019 Hearing cannot constitute newly discovered evidence for purposes of Rule 60(b)(2).<br><br>. |
| "Atlas IDF placed into dissolution" | Dondero Affidavit (Apr. 16, 2025); Winding Up Petition (Apr. 23, 2025); Dallas Foundation | "Here, Highland is wrong. Atlas IDF, L.P. never was in dissolution, rather it was its subsidiary Rand PE Fund I, L.P. That Dondero did not even know which entity was dissolving demonstrates the lack of information available at that time. | Like all of the discussion of the DAF restructuring, ultimately irrelevant, but also **False**:<br><br>¶ 19 of the Dallas Foundation Objection states, "On February 20, 2025, Mr. Patrick in his capacity as the general partner of Atlas GP, sent a letter to Crown advising of the intention to dissolve Atlas IDF in accordance with the partnership agreement |

| **Dugaboy: "Highland's Alleged 'Old' Information"** | **Dugaboy: "Highland's Cited Sources of Prior Knowledge"** | **Dugaboy: "Why This Does Not Refute Rule 60(b)(2)"** | **Highland Rebuttal** |
|---|---|---|---|
| | Objection (June 9, 2025). | Moreover, the Rand Fund 2024-2025 Liquidating Audit, which confirmed that Rand Fund's sole asset (Beacon Mountain) had been disposed of on February 12, 2025, was not issued until June 26, 2025, only one day after the 9019 Hearing and four days before the Settlement Order was entered, and was not provided to Rand Fund's limited partners until months later. Dkt. 4513-48."<br><br>Reply at 22-23. | dated November 30, 2015 . . ." Highland Ex. 52 ¶19.<br><br>In any event, Dondero knew Beacon Mountain had been sold for $1 million (Highland Ex. 48 (Dondero 4/16/25 Affidavit) ¶ 39) and that Beacon was Rand PE Fund's sole asset (as had been reflected in Rand PE Fund's audits for several years, which Dugaboy's subsidiary, Dolimiti, had access to). The fact that a later audit also confirms that Beacon Mountain was Rand PE Fund's sole asset or that it had been disposed of is cumulative and irrelevant.<br><br>Dondero knew that Dolimiti and Hakusan were withdrawn from Rand PE Fund from the Feb. 2025 Withdrawal Notices, and Dolimiti (wholly-owned by Dugaboy) received the withdrawal payments. Tr. (5/11/26) at 258:6-260:3; Highland Ex. 76 (2/6/25 withdrawal letters). |
| "Allegations regarding DAF directors' fees, expenses and remuneration" | Dondero Affidavit (Apr. 16, 2025); Winding Up Petition (Apr. 23, 2025); Dallas | "Highland labels these "allegations" that were precisely known, but the pre-hearing documents contained only general references to "increased expenses." At the time, Dugaboy had no admissible evidence of expenses or specific amounts. | **False** – the specificity with which increased director fees and expenses is repeatedly cited is obvious:<br><br>- "My team produced an annual expense summary (the "Expense Summary") of that information…(a) directors' fees increased from |



016092

| **Dugaboy: "Highland's Alleged 'Old' Information"** | **Dugaboy: "Highland's Cited Sources of Prior Knowledge"** | **Dugaboy: "Why This Does Not Refute Rule 60(b)(2)"** | **Highland Rebuttal** |
|---|---|---|---|
| | Foundation Objection (June 9, 2025); Foundations Action (July 1, 2025); JOL Writ (July 15, 2025); Ch. 15 Petition (July 21, 2025). | The actual quantum, $10,548,778 paid to Patrick in 2024, including $850,000 base salary, $4,759,000 LTI (backdated to 2021), $975,000 additional LTI, and a 2.5x base salary bonus, was first documented in the July 2025. Ex. 2, First MacInnis Affidavit (MM-1, 694–722).<br><br>Moreover, the Third MacInnis Affidavit (November 2025) revealed that total directors' fees across three entities were $11.6 million for 2024 alone, information that was not disclosed until September 12, 2025, when Defendants first produced income statements to the JOLs. The Dallas Foundation Objection and Winding Up Petition mentioned "concerns" about expenses but did not have access to those numbers. (Winding Up Petition - Dkt. 4315-E, Dallas Foundation Objection – Dkt. 4231)<br><br>Reply at 23. | around US$40,000 in 2022 to almost US $600,000 in 2023- and increased to around US $2.25 million in the first half of 2024 . . . (b) expenses overall for the first half of 2024 were around US$18.3 million-roughly the same amount spent over the entire course of 2023 (i.e. US$18.6 million)" Highland Ex. 48 (Dondero Aff. 04/25/25 Affidavit) ¶ 31.<br>- "legal expenses had increased to $6 million in the first six-months of 2024… (a 300% increase if annualized) and director fees skyrocketed…(a 12,400% increase, if annualized)." Highland Ex. 47 (Winding Up Petition 4/16/25) ¶ 35. *See also*:<br>- Highland Ex. 52 (Dallas Foundation Obj. 6/9/25) ¶ 22 and n.3<br>- Highland Ex. 62 (Tex. Bus. Ct. Orig. Pet. 7/1/25) ¶¶ 5.31 – 5.33. |
| "Allegations regarding Creative HEARTS TX donation." | Dondero Affidavit (Apr. 16, 2025); Winding Up Petition | The Creative HEARTS TX donation of $10,000 to Patrick's family-run nonprofit was a well known, if small example of his fraudulent intent. | Irrelevant – the full mechanics and results of the DAF restructuring transactions was known. Moreover, Dugaboy admits that the facts concerning HEARTS TX were known to it months before the 9019 Hearing. |

| **Dugaboy: "Highland's Alleged 'Old' Information"** | **Dugaboy: "Highland's Cited Sources of Prior Knowledge"** | **Dugaboy: "Why This Does Not Refute Rule 60(b)(2)"** | **Highland Rebuttal** |
|---|---|---|---|
| | (Apr. 23, 2025); Dallas Foundation Objection (June 9, 2025); Foundations Action (July 1, 2025). | This was provided as evidence of Patrick's pattern and practice of self-dealing with DAF assets, but the CREATIVE HEARTS transaction was not part of the series of transactions that composed Patrick's later $270 million fraudulent scheme. Under *Chilson*, what matters is whether the *full evidentiary picture* was available, not whether one fragment was. 796 F.2d at 70–71.<br><br>Reply at 23. | |
| "Allegations regarding proposed fee split With Cronin/Fortaris Capital Advisors" | "Allegations regarding proposed fee split with Cronin/Fortaris Capital Advisors" | Same analysis as Creative HEARTS TX. Patrick's proposed (and rejected) kickback scheme from September 2023 is another example of his pattern and practice of self dealing with DAF assets, but the inchoate Fortaris transaction was not part of the series of transactions that composed Patrick's later $270 million fraudulent scheme. *See* 796 F.2d at 70–71.<br><br>Reply at 24. | Irrelevant – the full mechanics and results of the DAF restructuring transactions was known. Moreover, Dugaboy admits that the facts concerning Cronin/Fortaria were known to it months before the 9019 Hearing. |

**CHART ON PG. 12 OF REPLY BRIEF**

| **Dugaboy: "DATE"** | **Dugaboy: "EVENT"** | **Dugaboy: "SOURCE"** | **Highland Rebuttal** |
|---|---|---|---|
| June 26, 2025 | Cohen & Co issued the Rand PE Fund I, L.P. 2024 Audit dated as of February 24, 2025. Revealed<br>• Beacon Mountain was sold on February 12, 2025,<br>• The $1 million sale value was set solely on the transaction price,<br>• The auditors were not informed of the subsequent $23.5 million value of Beacon/HMIT,<br>• Auditors did not know Patrick dealt Beacon/HMIT to himself;<br>• Patrick redeemed out the investors of Rand PE Fund before he sold Beacon/HMIT, and<br>• First admissible evidence of $1 million sale price.<br><br>The audit was issued one day after the 9019 Hearing and only four days before the Settlement Order was entered on June 30, 2025, leaving Dugaboy without a meaningful opportunity to obtain, analyze, and present it before the Court approved the Settlement.<br><br>Reply at 12-13. | Dkt. 4513-48, Rand Fund 2024 Audit (dated June 26, 2025). | - Dugaboy learned the exact date of the Beacon Mountain sale no later than June 20, 2025, when Highland filed its W&E list in advance of the 9019 hearing. Dkt. 4255-95 (Second A&R LLC Agreement of Beacon Mountain).<br>- Dondero knew of the $1 million sale price no later than April 9, 2025 when he executed an Affidavit. Highland Ex. 48 (Dondero Aff.) ¶39.<br>- Dugaboy knew Dolimiti and Hakusan were withdrawn from the Rand PE Fund pursuant to written notices delivered to NexPoint's office on 2/6/25. Highland Ex. 76 (withdrawal notices). |
| July 14, 2025 | Cayman Court grants sanction to JOLs to commence litigation against Patrick and other | Dkt. 4513-G, MacInnis | Irrelevant, and to this day, there has been no finding of breach of fiduciary duty, unlawful |

| **Dugaboy: "DATE"** | **Dugaboy: "EVENT"** | **Dugaboy: "SOURCE"** | **Highland Rebuttal** |
|---|---|---|---|
| | defendants for breaches of fiduciary duty, unlawful means conspiracy, unjust enrichment, and equitable relief. This occurred on the final day of the Rule 9023 window—too late for Dugaboy to incorporate into a same-day motion.<br><br>Reply at 13. | Decl. ¶ 72 (Dkt. 4-60, Case 25-11376-BLS, Filed 07/21/25). | means conspiracy, or unjust enrichment as a result of such litigation. In fact, the JOLs presented all evidence to the Cayman Court that Dugaboy urges this Court to consider and denied the JOLs' request for a proprietary injunction and rejected all claims except for a claim for breach of fiduciary duty arising from the DAF restructuring. *See generally* Highland Ex. 72 (Cayman decision). |
| July 15, 2025 | JOLs file the sealed Writ and Statement of Claim in the Cayman Court, commencing litigation against Patrick, Murphy, CDMCFAD ("CDM"), DFW Charitable Foundation, CDF GP, and CLO HoldCo. The Statement<br>of claim, for the first time, revealed<br>• The extent of Patrick's compensation take,<br>• The self-dealing by which he took such compensation,<br>• The internal, otherwise privileged communications of Charitable DAF Holdco, Ltd. that demonstrated the intent and planning to commit fraud and breach of fiduciary duty, and<br>• The exact timing and mechanics of how Patrick<br>restructured the DAF.<br><br>However, these only were allegations and Dugaboy had to wait for publicly filed evidence in support of these allegations. | Dkt. 4513-B, Statement of Claim (FSD 201 of 2025 (RPJ) (Filed 07/15/25)); First MacInnis Aff., TDIT004967–TDIT006484. | Highland incorporates its prior responses to the issues raised in Dugaboy's first chart on pages 12-15 of its Reply. Moreover,<br>- Dugaboy contends the Writ and Statement of Claim was sealed, but that did not stop Dugaboy from obtaining a copy of it or attaching it to its Stay Motion just 36 hours later on July 17, 2025.<br>- MacInnis admitted that the Dondero Foundations were provided with a draft of the writ and statement of claim "in advance" of the July 14, 2025 sanction hearing. Tr. (5/11/26) 173:24-174:7.<br>- Specific compensation numbers were already known—anything additional is cumulative and non-outcome determinative.<br>- Again, Timing and mechanics of the restructuring were laid out in the Supervision Application, Dallas Foundation Objection, and TX Business Court Action. Highland Exs. 49, 52, and 62. |

| Dugaboy: "DATE" | Dugaboy: "EVENT" | Dugaboy: "SOURCE" | Highland Rebuttal |
|---|---|---|---|
| | Reply at 13. | | |
| July 15, 2025 | First application of Margot MacInnis sworn and filed in Cayman Court in support of the Statement of Claim. This was not obtained by Dugaboy or its affiliates until at the earliest October 2025. The Affidavit presents, for the first time, the JOLs' investigation findings with 94 supporting exhibits, including:<br>• Internal Patrick emails directing creation of untraceable entities (Ex. 2, First MacInnis Aff., TDIT005476);<br>• The November 26, 2024 email laying out Patrick's DFW Foundation scheme (Ex. 2, First MacInnis Aff., TDIT005481);<br>• Director resolutions awarding Patrick $975,000 LTI and 2.5x base salary bonus (Ex. 2, First MacInnis Aff. TDIT005735-38);<br>• Employment agreement backdated to March 2021 with $4,759,000 LTI (Ex. 2, First MacInnis Aff., TDIT005743); and<br>• Documents showing the CDM Assignment and Redemption that left CLO HoldCo with only $1.6 million from a $270 million interest. (Ex. 2, First MacInnis Aff., TDIT005903-77).<br><br>Reply at 13. | Ex. 2, First MacInnis Aff.. | Highland incorporates its prior responses to the issues raised in Dugaboy's first chart on pages 12-15 of its Reply. Moreover,<br><br>- Specific compensation numbers were already known—anything additional is cumulative and non-outcome determinative.<br>- Timing and mechanics of the restructuring were laid out in the Supervision Application, Dallas Foundation Objection, and TX Business Court Action. Highland Exs. 49, 52, and 62. |
| July 15, 2025 | JOLs file application for proprietary injunction to prevent defendants from dealing | Dkt. 4513-G, MacInnis | Irrelevant. Moreover, the JOLs presented the same evidence Dugaboy asks this Court to |

| **Dugaboy: "DATE"** | **Dugaboy: "EVENT"** | **Dugaboy: "SOURCE"** | **Highland Rebuttal** |
|---|---|---|---|
| | with HoldCo's assets, together with disclosure orders and leave to serve U.S.-based defendants.<br><br>Reply at 14. | Decl. ¶ 73, Exs. 59, 82–83 (Case 25-11376- BLS, Dkt. 4, Filed 07/21/25) | consider in the Cayman Proceeding, but the Cayman Court rejected the JOLs' petition for a proprietary injunction. |
| July 17, 2025 | Dugaboy files its Motion to Stay 9019 Order (Dkt. 4326), promptly alerting the Court to the JOL petition and requesting 90 days to investigate allegations of fraud. This confirms Dugaboy's diligence. It moved within two days of receiving the JOL materials, but after the Rule 9023 window had already expired.<br><br>Reply at 14. | Dkt. 4513-30, Motion to Stay 9019 Order (Dkt. 4326, Filed 07/17/25). | And this Court fully considered the Stay Motion together all of the "evidence" laid out in the JOL materials and denied the Motion. |
| July 21, 2025 | Declaration of Margot MacInnis is filed in Chapter 15 Petition for Recognition of Foreign Main Proceeding in the U.S. Bankruptcy Court for the District of Delaware (Case No. 25-11376-BLS). The MacInnis Declaration provides a comprehensive account of<br>• Patrick's elimination of his fiduciary duties through insertion of CDMCFAD (¶104),<br>• The DAF restructuring documents (¶¶ 26-39),<br>• ValueScope's fraudulent March 25, 2025 valuation disclosed(¶35); | Dkt. 4513-G, 3-46, MacInnis Decl. in Support of Delaware Chapter 15 Petition (Case 25-11376-BLS, Dkt. 4, Filed 07/21/25). | Ch. 15 petition is indeed comprehensive, but substantially all relevant facts had already been laid out elsewhere. Highland incorporates its prior responses to the issues raised in Dugaboy's first chart on pages 12-15 of its Reply. |

| **Dugaboy: "DATE"** | **Dugaboy: "EVENT"** | **Dugaboy: "SOURCE"** | **Highland Rebuttal** |
|---|---|---|---|
| | • The lack of transparency (¶¶ 43-61), and<br>• The Cayman litigation (¶¶ 62-76).<br><b>This filing provided the first comprehensive,<br>U.S.-court-of-record account synthesizing the JOLs'<br>findings into a single narrative for Dugaboy's use.</b><br><br>Replay at 14. | | |
| July 31, 2025 | Cayman Court enters Consent Order imposing undertakings on Named Defendants and CDM Entities to prevent asset dissipation and provide transparency/disclosure to JOLs. | Ex. 1, MacInnis Supplemental Decl. ¶¶ 8–10 (Case 25-11376-BLS, Dkt. 22, Filed 08/27/25). | Consented to by Patrick as control person of such entities. |
| August 27, 2025 | JOLs file Supplemental Declaration of Margot MacInnis and Motion for Provisional Relief (turnover of books and records) in the Chapter 15 case, revealing that service providers Carrington Coleman internal memoranda; ValueScope, Hunton, and Seyfarth Shaw refused to produce records in connection with their engagement by HoldCo. | Ex. 1, MacInnis Supplemental Decl. ¶15 (Case 25-11376-BLS, Dkt. 22, Filed 08/27/25). | Irrelevant. |
| September 12, 2025 | Defendants provide income statements as the first substantive financial disclosure to JOLs, showing directors' fees of approximately | Dkt. 4315-I, Third Affidavit of | Highland incorporates its prior responses to the issues raised in Dugaboy's first chart on pages 12-15 of its Reply. Moreover, specific compensation |

| **Dugaboy: "DATE"** | **Dugaboy: "EVENT"** | **Dugaboy: "SOURCE"** | **Highland Rebuttal** |
|---|---|---|---|
| | $11.6 million for 2024 alone across three entities controlled by Patrick. This far exceeds what was known at the time of the 9019 Hearing on June 25, 2025. This also provides the first admissible evidence of such payments. | Margot MacInnis (Filed Under Seal, November 2025) ¶¶ 63–64. | numbers were already known – anything additional is cumulative and non-outcome determinative. |
| November 2025 | Third Affidavit of Margot MacInnis filed under seal,<br>detailing:<br>• Total payments to Patrick of $10,548,778 in salary bonuses, and LTI in 2024 (¶65);<br>• Patrick's transfer of his family home to a trust and discharge of mortgage in January 2025 (¶53);<br>• Ongoing breaches of the Interim Undertakings (¶106); and<br>• Discovery that the Defendants transferred $2.68 million to law firms and ValueScope before the July 31 injunction hearing (¶106). | Dkt. 4315-I, MacInnis Affidavit 3 (Filed Under Seal, November 2025) | Highland incorporates its prior responses to the issues raised in Dugaboy's first chart on pages 12-15 of its Reply. Moreover, specific compensation numbers were already known – anything additional is cumulative and non-outcome determinative. |
| December 15–16, 2025 | Two-day injunction hearing in the Cayman Court | Dkt. 4315-I, Third Affidavit of Margot MacInnis (Filed Under Seal, November 2025) ¶ 150. | Denied JOLs requested relief and cannot constitute newly discovered evidence under 60(b)(2) |

**EXHIBIT 300**

**Screen Clip from Ex. I_Macinnis Third Affidavit - November 2025 p. 2**

**"Properties" (right-click on highlighted section; select "Properties"; select the "General" tab in the pop-up window)**



BTXN 208 (rev. 04/26)

IN RE: Highland Capital Management, L.P. ***COURT ADMITTED EXHIBITS*** Case # 19−34054−sgj11

DEBTOR

| | |
|---|---|
| 5/21/2026 | Brad W. Odell |
| ***HEARING DATE*** | ***JUDGE PRESIDING*** |
| Motion to reconsider filed by Dugaboy Investment Trust [Doc #4513] | Nicholas Noble |
| ***HEARING TYPE*** | ***REPORTED BY*** |

| MOVANT/RESPONDENT | ATTORNEY INFORMATION | EXHIBITS |
|---|---|---|
| Highland Capital Management, L.P. | John Morris | Exs. 80−86, 88, 90−93, 95−97 admitted |
| | | Ex. 77 admitted, but not for truth of matter asserted |
| | | Admission of Ex. 300 under advisement |
| | | Exs. 55−A, 56−A, & 57−A (see stipulation Doc #4673) |
| Dugaboy Investment Trust | Michael Edney | Ex. 300 admitted |

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@kslaw.com
Sydney Rose
Texas Bar No. 24150011
srose@kslaw.com
KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

Michael J. Edney*
D.C. Bar No. 492024
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
T. (202) 739-3000
F. (202) 739-3001
michael.edney@morganlewis.com

Martha B. Stolley (*pro hac vice*)
New York Bar No. 2965374
MORGAN, LEWIS & BOCKIUS LLP
101 Park Ave.
New York, NY 10178-0060
T. (212) 309-6000
F. (212) 309-6001
martha.stolley@morganlewis.com

Avery Joseph Welker
Texas Bar No. 24137706
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002
T. (713) 890-5000
F. (713) 890-5001
avery.welker@morganlewis.com

**Admitted to the bar of this Court*

*Counsel for The Dugaboy Investment Trust*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.<br><br>Debtor. | Chapter 11<br><br>Case No. 19-34054 (SGJ) |

**THE DUGABOY INVESTMENT TRUST'S SEVENTH AMENDED**
**EXHIBIT LIST FOR THE MAY 11, 2026 HEARING**

COMES NOW, The Dugaboy Investment Trust ("Dugaboy") and files this Seventh Amended Exhibit List for the May 11, 2026 Hearing in the Bankruptcy Case.

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 1 | 12/17/2015 Beacon Mountain / HMIT Trust Agreement | HCM-D10000002-HCM-D10000013 |
| 2 | Settlement Agreement and General Release | 000813-000836 |
| 3 | 6/4/2024 First Affidavit of Mark Patrick | Dkt. 401-2 (21-03076-sgj) |
| 4 | 7/21/2025 [4-33] Original DAF Org Chart | Dkt. 4-33 (25-11376-BLS) |
| 5 | 7/11/2011 Amended and Restated Exempted Limited Partnership Agreement of Charitable DAF Fund, LP | Dkt. 4-36 (25-11376-BLS) |
| 6 | 2/20/2025 Amended and Restated Memorandum and Articles of Association of Charitable DAF HoldCo, Ltd. | Dkt. 4-06 (25-11376-BLS) |
| 7 | 11/9/2023 Shields Work Plan Memorandum | |
| 8 | 12/9/2024 Certificate of Incorporation of DFW Charitable Foundation | Dkt. 4-50 (25-11376-BLS) |
| 9 | 12/12/2024 Certificate of Formation of CDFMCAD, LLC | Dkt. 4-48 (25-11376-BLS) |
| 10 | 12/18/2024 Charitable DAF HoldCo, Ltd. Unanimous Written Resolutions of all of the Directors of the Company | Dkt. 4-45 (25-11376-BLS) |
| 11 | 9/30/2024 Valuation Analysis of 100 Participation Shares of Charitable DAF HoldCo, Ltd. | Dkt. 4-52 (25-11376-BLS) |
| 12 | 3/25/2025 Valuation Analysis of Certain Participation Shares of Charitable DAF HoldCo, Ltd. | Dkt. 4-51 (25-11376-BLS) |
| 13 | 3/27/2025 CDMCFAD, LLC Redemption and Amendment No. 2 Agreement | Dkt. 4-55 (25-11376-BLS) |
| 14 | 8/12/2022 HMIT Appointment of Successor Administrator | HCM-D100000330 |
| 15 | 2/12/2025 Membership Interest Purchase Agreement | HCM-D10000021-HCM-D10000036 |
| 16 | 2/12/2025 Member Consent of Beacon Mountain | HCM-D10000019-HCM-D10000020 |
| 17 | 11/30/2015 Amended and Restated Limited Partnership Agreement of Atlas IDF, LP | |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 18 | 6/26/2025 Audit of RAND PE Fund I, LP | HMIT_Entities_000022-HMIT_Entities_000039 |
| 19 | 3/6/2024 DAF Structure Chart in 2024 and 2025 | |
| 20 | 12/17/2015 Beacon Mountain / HMIT Trust Agreement | |
| 21 | 12/2015-8/2022 Rand Structure Chart | |
| 22 | 2/12/2025 Feb. and May 2025 Rand Structure Chart | |
| 23 | 10/15/2019 Empower Dallas Foundation, Inc. Partial Surrender Request | |
| 24 | 2/22/2021 Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Related Relief | Dkt. 1943 (19-34054-sgj11) |
| 25 | 4/8/2025 Email regarding Settlement Agreement | HCMLPHMIT00000656-HCMLPHMIT00000661 |
| 26 | 12/16/2015 Crown Global Deferred Variable Annuity Policy for Empower Dallas Foundation, Inc. | |
| 27 | 11/30/2015 Participation Agreement between Crown Global Life Insurance Ltd. and Other Entities | |
| 28 | 9/12/2025 First Affidavit of Mark Eric Patrick | |
| 29 | 10/21/2025 Post-Confirmation Report Reorganized Debtor – Quarter Ending Date 9/30/2025 | Dkt. 4438 (19-34054-sgj11) |
| 30 | 10/21/2025 Post-Confirmation Report for Highland Claimant Trust – Quarter Ending 9/30/2025 | Dkt. 4439 (19-34054-sgj11) |
| 31 | 1/21/2026 Post-Confirmation Report Reorganized Debtor – Quarter Ending Date 12/31/2025 | Dkt. 4503 (19-34054-sgj11) |
| 32 | 1/21/2026 Post-Confirmation Report for Highland Claimant Trust – Quarter Ending 12/31/2025 | Dkt. 4504 (19-34054-sgj11) |
| 33 | 4/20/2026 Post-Confirmation Report Reorganized Debtor – Quarter Ending Date 3/31/2026 | Dkt. 4552 (19-34054-sgj11) |
| 34 | 4/20/2026 Post-Confirmation Report for Highland Claimant Trust – Quarter Ending 3/31/2026 | Dkt. 4553 (19-34054-sgj11) |
| 35 | 6/25/2025 Hearing Transcript for Case No. 19-34054-sgj-11 | |
| 36 | 4/16/2025 Affidavit of James David Dondero | Dkt. 4534-7 (19-34054-sgj11) |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 37 | 6/9/2025 Preliminary Objection of the Dugaboy Investment Trust to the Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 USC § 363 Approving Settlement with the HMIT Entities | Dkt. 4230 (19-34054-sgj11) |
| 38 | HMIT Structure as of 8/12/2022 – 2/12/2025 | |
| 39 | 2/6/2025 Letter to Dolomiti LLC re Notice of Your Withdrawal from Rand PE Fund I, L.P. | |
| 40 | 2024 Tax Form 990 – Highland Dallas Foundation Inc. | Dkt. 4556-2 (19-34054-sgj11) |
| 41 | 3/27/2025 Admission and Amendment to No. 1 Agreement | Dkt. 4-54 (25-11376-BLS) |
| 42 | 12/12/2024 Certificate of Formation of CDMCFAD, LLC | Dkt. 4-48 (25-11376-BLS) |
| 43 | 2/7/2015 Unanimous Written Resolutions of the Board of Directors of the Company for Charitable DAF HoldCo, Ltd. | Dkt. 4-22 (25-11376-BLS) |
| 44 | 12/18/2024 Unanimous Written Resolutions of all of the Directors of the Company passed on 18 December 2024 in accordance with the Articles of Association of the Company for Charitable DAF HoldCo, Ltd. | Dkt. 4-45 (25-11376-BLS) |
| 45 | 4/2/2025 Written Resolutions of the Directors of the Company for Charitable DAF HoldCo, Ltd. | Dkt. 4-47 (25-11376-BLS) |
| 46 | 12/9/2024 Certificate of Incorporation of DFW Charitable Foundation | Dkt. 4-50 (25-11376-BLS) |
| 47 | 7/21/2025 Defendants' Motion to Dismiss and Plea to the Jurisdiction filed in Cause No. 25-BC-01B-0027, The Highland Foundation, Inc. et al. v. Mark Patrick, et al., The Business Court of Texas, First Division | Dkt. 4-91 (25-11376-BLS) |
| 48 | 3/27/2025 Redemption and Amendment No. 2 Agreement | Dkt. 4-55 (25-11376-BLS) |
| 49 | 3/25/2025 Valuation Analysis of Certain Participation Shares of Charitable DAF HoldCo, Ltd. | Dkt. 4-51 (25-11376-BLS) |
| 50 | 9/30/2024 Valuation Analysis of 100 Participation Shars of Charitable DAF HoldCo, Ltd. | Dkt. 4-52 (25-11376-BLS) |
| 51 | 3/7/2024 Written Consent of the Managing Member of Charitable DAF GP, LLC | Dkt. 4-38 (25-11376-BLS) |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 52 | 6/9/2025 Email from David Klos of Highland Capital Management to Jim Seery | HCM-D10000001-HCM-D10000001 |
| 53 | Trust Agreement establishes Hunter Mountain Investment Trust (HMIT) on December 17, 2015 | HCM-D10000002-HCM-D10000013 |
| 54 | Email chain regarding the sale of Class C limited partnership interests from Highland Capital Management, L.P. to Hunter Mountain Investment Trust. Mark Patrick | HCM-D10000014-HCM-D10000015 |
| 55 | Email from Highland Capital Management requests corporate formation documents for Charitable DAF Holdings Corp. from Wolters Kluwer. | HCM-D10000016-HCM-D10000016 |
| 56 | Email chain from Highland Capital Management requests corporate formation documents for Charitable DAF Holdings Corp. from Wolters Kluwer | HCM-D10000017-HCM-D10000018 |
| 57 | CLO Holdco, LLC's purchase of all membership interests in Beacon Mountain, LLC from Rand PE Fund I, L.P. | HCM-D10000019-HCM-D10000020 |
| 58 | Membership Interest Purchase Agreement - | HCM-D10000021-HCM-D10000036 |
| 59 | Organizational structure of HMIT entities before and after February 12, 2025. | HCM-D10000037-HCM-D10000038 |
| 60 | Investment Management Agreement -establishes Rand Advisors, LLC as the investment manager for Atlas IDF, LP. | HCM-D10000039-HCM-D10000045 |
| 61 | Investment Management Agreement - establishes Rand Advisors, LLC as the investment manager for Rand PE Fund I, L.P. | HCM-D10000046-HCM-D10000052 |
| 62 | Register of Members for CLO Holdco, Ltd. | HCM-D10000053-HCM-D10000055 |
| 63 | Unanimous Written Consent - executed by Mark Patrick as sole director of Rand Advisors Holding Corp. | HCM-D10000056-HCM-D10000069 |
| 64 | Charitable DAF Fund, LP transferred DAF Holdings stock to CLO HoldCo, Ltd | HCM-D10000070-HCM-D10000072 |
| 65 | Register of Members for Liberty CLO Holdco, Ltd. CLO Holdco, Ltd. | HCM-D10000073-HCM-D10000073 |
| 66 | Limited Liability Company Agreement - establishing Liberty CLO Holdco, LLC as a Delaware limited liability company. | HCM-D10000074-HCM-D10000090 |
| 67 | Register for CDH GP, Ltd. | HCM-D10000091-HCM-D10000091 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 68 | Register of Members for CDH GP, Ltd. | HCM-D10000092- HCM-D10000092 |
| 69 | Register for CLO HoldCo, Ltd. | HCM-D10000093- HCM-D10000094 |
| 70 | Register of General Partners for Charitable DAF Fund, LP. | HCM-D10000095- HCM-D10000095 |
| 71 | Register of Limited Partners for Charitable DAF Fund, LP | HCM-D10000096- HCM-D10000096 |
| 72 | Limited Liability Company Agreement for CDMCFAD, LLC. | HCM-D10000097- HCM-D10000124 |
| 73 | Collation of various documents including resolutions from CDMCFAD, LLC, and a March 2025 letter from Seyfarth Shaw LLP to the IRS reporting potential tax violations by Highland Dallas Foundation, Inc. (Jim Dondero). | HCM-D10000125- HCM-D10000251 |
| 74 | Letter from three Highland foundations to Paul Murphy | HCM-D10000264- HCM-D10000265 |
| 75 | Email exchange concerning a $500,000 wire transfer payment made pursuant to a settlement agreement. David Klos, representing Highland Capital Management, sent the payment reference to Hunter Mountain. | HCM-D10000266- HCM-D10000267 |
| 76 | Email exchange concerning a $500,000 wire transfer payment made pursuant to a settlement agreement. David Klos, representing Highland Capital Management, sent the payment reference to Hunter Mountain. | HCM-D10000268- HCM-D10000269 |
| 77 | Email chain between K. Hendrix and J. Seery, et al. | HCM-D10000270- HCM-D10000271 |
| 78 | Email chain James Seery to Mark Patrick and Shawn Raver | HCM-D10000272- HCM-D10000272 |
| 79 | Email chain from Shawn Raver to J. Seery, et al. | HCM-D10000273- HCM-D10000273 |
| 80 | Email chain from M. Tax to S. Raver, et al. | HCM-D10000274- HCM-D10000274 |
| 81 | Email chain from K. Hendrix to S. Raver, et al. | HCM-D10000275- HCM-D10000276 |
| 82 | Email chain from S. Raver to K. Hendrix, et al. | HCM-D10000277- HCM-D10000278 |
| 83 | Email chain from S. Raver to M. Tax, et al. | HCM-D10000279- HCM-D10000280 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 84 | Note Elevation and Assignment Agreement | HCM-D10000281-HCM-D10000301 |
| 85 | Email from A. Hurt to T. Cournoyer, et al. | HCM-D10000302-HCM-D10000303 |
| 86 | Letter to Dugaboy Investment Trust | HCM-D10000304-HCM-D10000308 |
| 87 | Claims Assignment Agreement | HCM-D10000309-HCM-D10000315 |
| 88 | Email from David Klos at Highland Capital Management to James Seery | HCM-D10000316-HCM-D10000316 |
| 89 | Trust Agreement establishes the Hunter Mountain Investment Trust on December 17, 2015 | HCM-D10000317-HCM-D10000328 |
| 90 | Email from David Klos of Highland Capital Management to Jim Seery | HCM-D10000329-HCM-D10000329 |
| 91 | 8/12/2022 HMIT Appointment of Successor Administrator | HCM-D10000330-HCM-D10000330 |
| 92 | Email from K. Hendrix to A. Gunther, et al. | HCM-D10000331-HCM-D10000332 |
| 93 | Email from K. Hendrix to D. Klos, et al. | HCM-D10000333-HCM-D10000334 |
| 94 | Letter from Campbells LLP to James Seery (CEO of Highland Capital Management, L.P.) and Marc Kirschner | HCM-D10000335-HCM-D10000338 |
| 95 | Email chain from A. Kapuria to S. Raver, et al. | HMIT_Entities_000001-HMIT_Entities_000006 |
| 96 | Email chain from K. Jackson to S. Raver, et al. | HMIT_Entities_000007-HMIT_Entities_000010 |
| 97 | Email chain from S. Reynolds to S. Raver, et al. | HMIT_Entities_000011-HMIT_Entities_000015 |
| 98 | Email from Chris Rice to K. Jackson, et al. | HMIT_Entities_000016-HMIT_Entities_000020 |
| 99 | Email from Chris Rice to S. Raver, et al. | HMIT Entities 000021-HMIT Entities 000021 |
| 100 | Audited financial statements for Rand PE Fund I, L.P. | HMIT_Entities_000022-HMIT_Entities_000039 |
| 101 | Email chain from K. Jackson to S. Raver | HMIT_Entities_000040-HMIT_Entities_000043 |
| 102 | Email chain between Crown Global Insurance and Rand Advisors. | HMIT_Entities_000044-HMIT_Entities_000047 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 103 | Email chain between Crown Global Insurance and Rand Advisors | HMIT Entities_000048-HMIT Entities 000051 |
| 104 | Email chain between Crown Global Insurance and Rand Advisors. | HMIT_Entities_000052-HMIT_Entities_000054 |
| 105 | Email chain between Crown Global Insurance and Rand Advisors. | HMIT Entities 000055-HMIT Entities 000057 |
| 106 | Email chain between Crown Global Insurance and Rand Advisors | HMIT Entities 000058-HMIT Entities 000058 |
| 107 | Email chain between Crown Global Insurance and Rand Advisors. | HMIT Entities 000059-HMIT Entities 000059 |
| 108 | Email chain between Crown Global Insurance and Rand Advisors. | HMIT_Entities_000060-HMIT_Entities_000060 |
| 109 | Email chain between Crown Global Insurance and Rand Advisors | HMIT Entities 000061-HMIT Entities 000061 |
| 110 | Email chain between Crown Global Insurance and Rand Advisors | HMIT Entities 000062-HMIT Entities 000063 |
| 111 | Email chain between Crown Global Insurance and Rand Advisors | HMIT_Entities_000064-HMIT_Entities_000065 |
| 112 | Email from Robert Kipp to M. Patrick, et al. | HMIT Entities 000066-HMIT Entities 000066 |
| 113 | Email chain from A. Gunther to S. Raver, et al. | HMIT Entities 000067-HMIT Entities 000070 |
| 114 | Email chain from S. Raver to A. Gunther, et al. | HMIT_Entities_000071-HMIT_Entities_000074 |
| 115 | Email chain from S. Raver to K. Hendrix, et al. | HMIT_Entities_000075-HMIT_Entities_000076 |
| 116 | Email chain from S. Raver to J. Seery, et al. | HMIT Entities 000077-HMIT Entities 000078 |
| 117 | Email from C. Rice to S. Raver, et al. | HMIT Entities_000079-HMIT Entities_000079 |
| 118 | Bloomberg invoice | HMIT Entities 000080-HMIT Entities 000080 |
| 119 | Email thread with S&P Global | HMIT_Entities_000081-HMIT_Entities_000083 |
| 120 | S&P Global invoice | HMIT Entities_000084-HMIT Entities_000084 |
| 121 | Email exchange between auditors Chris Rice (NexPoint Services) and Patrick Casale (Cohen & Co) | HMIT Entities_000085-HMIT Entities_000086 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 122 | Financial statement audit | HMIT_Entities_000087-HMIT_Entities_000103 |
| 123 | Email chain C. Rice to S. Raver | HMIT_Entities_000104-HMIT_Entities_000114 |
| 124 | Email chain from S. Raver to C. Rice | HMIT_Entities_000115-HMIT_Entities_000124 |
| 125 | Email from K. Longwell to M. Tax, et al. | HMIT Entities_000125-HMIT Entities_000125 |
| 126 | Civil Investigative Demand issued by the Texas Attorney General's Office to Hunter Mountain Investment Trust (HMIT) on July 14, 2025 | HMIT_Entities_000126-HMIT_Entities_000133 |
| 127 | Email from K. Longwell to M. Tax, et al. | HMIT Entities 000134-HMIT Entities 000134 |
| 128 | Dkt. 23, Notice of Hearing dated 8/27/2025 | HMIT_Entities_000135-HMIT_Entities_000254 |
| 129 | Email chain from S. Raver to K. Hendrix, et al. | HMIT_Entities_000260-HMIT_Entities_000261 |
| 130 | Email chain from D. Klos to K. Hendrix, et al. | HMIT_Entities_000262-HMIT_Entities_000263 |
| 131 | Email chain from M. Tax to J. Seery, et al. | HMIT_Entities_000264-HMIT_Entities_000264 |
| 132 | Email chain from K. Hendrix to S. Raver, et al. | HMIT_Entities_000265-HMIT_Entities_000266 |
| 133 | Email chain from K. Hendrix to A. Gunther, et al. | HMIT_Entities_000267-HMIT_Entities_000268 |
| 134 | DAF entity structure | VALUESCOPE 000001-VALUESCOPE 000001 |
| 135 | DAF/Rand entity structure | VALUESCOPE_000002-VALUESCOPE_000002 |
| 136 | Law firm forwards legal filing to Mark Patrick (DAF HoldCo) re Chapter 15 filing | VALUESCOPE_000003-VALUESCOPE_000007 |
| 137 | Chapter 15 Petition filing | VALUESCOPE_000008-VALUESCOPE_000026 |
| 138 | Charitable DAF Org structure | VALUESCOPE_000027-VALUESCOPE_000027 |
| 139 | Letter from Reed Smith LLP | VALUESCOPE_000028-VALUESCOPE_000029 |
| 140 | ValueScope, LLC Response | VALUESCOPE_000030-VALUESCOPE_000030 |
| 141 | Certificate of Incorporation, Charitable DAF HoldCo, Ltd. | TDIT004698 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 142 | Legal Relationship Agreement, Highland Kansas City Foundation | TDIT003396–TDIT003398 |
| 143 | Supporting Organization Operating Agreement - Highland Dallas Foundation, Inc. | TDIT003399–TDIT003406 |
| 144 | Supporting Organization Operating Agreement - Highland Santa Barbara Foundation, Inc. | TDIT003407–TDIT003413 |
| 145 | Letter - Highland Dallas Foundation, Inc. | TDIT003389–TDIT003390 |
| 146 | Letter - Highland Santa Barbara Foundation, Inc. | TDIT003391–TDIT003393 |
| 147 | Letter - Highland Kansas City Foundation, Inc. | TDIT003394–TDIT003395 |
| 148 | Employment Agreement - Mark Patrick | TDIT003971–TDIT003988 |
| 149 | Director Services Agreement - Charitable DAF HoldCo, Ltd. | TDIT011256–TDIT011268 |
| 150 | Memo - Harneys (H&B) | TDIT004274–TDIT004278 |
| 151 | Invoice - G.K. Management Limited | TDIT011038–TDIT011039 |
| 152 | Invoice - G.K. Management Limited | TDIT011040 |
| 153 | Invoice - G.K. Management Limited | TDIT011041 |
| 154 | Director Services Agreement - Charitable DAF HoldCo, Ltd. | TDIT011058–TDIT011062 |
| 155 | Certificate of Incorporation - Highland Kansas City Foundation, Inc. | TDIT003304–TDIT003306 |
| 156 | Certificate of Incorporation - Highland Dallas Foundation, Inc. | TDIT003326–TDIT003328 |
| 157 | Certificate of Incorporation - Highland Santa Barbara Foundation, Inc. | TDIT003344–TDIT003346 |
| 158 | Invoice - G.K. Management Limited | TDIT011042–TDIT011043 |
| 159 | Invoice - G.K. Management Limited | TDIT011044–TDIT011045 |
| 160 | Invoice - G.K. Management Limited | TDIT011046–TDIT011047 |
| 161 | Invoice - G.K. Management Limited | TDIT011048–TDIT011049 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 162 | Invoice - G.K. Management Limited | TDIT011050–TDIT011051 |
| 163 | Invoice - G.K. Management Limited | TDIT011052–TDIT011053 |
| 164 | Invoice - G.K. Management Limited | TDIT011054–TDIT011055 |
| 165 | Expense Reimbursement - G.K. Management Limited | TDIT011056–TDIT011057 |
| 166 | Director Services Agreement - Charitable DAF HoldCo, Ltd. | TDIT011088–TDIT011092 |
| 167 | Memorandum – Work Plan - Shields Legal Group | TDIT004699–TDIT004706 |
| 168 | Articles of Association - Charitable DAF HoldCo, Ltd. | TDIT011093–TDIT011128 |
| 169 | Email - Shields Legal Group | TDIT003704 |
| 170 | Limited Partnership Agreement - Charitable DAF Fund, LP | TDIT003414–TDIT003431 |
| 171 | ValueScope Report - ValueScope, Inc. | TDIT004017–TDIT004075 |
| 172 | Expense Report - CLO HoldCo, Ltd. | TDIT003432–TDIT003435 |
| 173 | Audited Financial Statements - Highland Santa Barbara Foundation, Inc. | TDIT003989–TDIT004016 |
| 174 | Resolution of the Directors - Mark Patrick | TDIT003961–TDIT003962 |
| 175 | Resolution of the Directors - Mark Patrick | TDIT003963–TDIT003970 |
| 176 | Written Resolution - Charitable DAF HoldCo, Ltd. | TDIT011129–TDIT011136 |
| 177 | Director Services Agreement - Charitable DAF HoldCo, Ltd. | TDIT011137–TDIT011150 |
| 178 | Letter - Highland Dallas Foundation, Inc. | TDIT003707–TDIT003708 |
| 179 | Email - Paul Murphy | TDIT003709–TDIT003713 |
| 180 | Email - Walkers | TDIT003714–TDIT003719 |
| 181 | Certificate of Incorporation - DFW Charitable Foundation | TDIT003701–TDIT003703 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 182 | Director Services Agreement - Charitable DAF HoldCo, Ltd. | TDIT011151–TDIT011164 |
| 183 | Written Resolution - Charitable DAF HoldCo, Ltd. | TDIT011165–TDIT011170 |
| 184 | Resolution - Charitable DAF HoldCo, Ltd. | TDIT003720–TDIT003726 |
| 185 | Assignment - Charitable DAF HoldCo, Ltd. | TDIT003727–TDIT003732 |
| 186 | Agreement - CDMCFAD, LLC | TDIT003733–TDIT003760 |
| 187 | Email - David N. Corkern | TDIT003791–TDIT003792 |
| 188 | ValueScope Report - ValueScope, LLC | TDIT004076–TDIT004130 |
| 189 | Draft Legal Advice - Walkers | TDIT003761–TDIT003765 |
| 190 | Share Issuance Resolution - Charitable DAF HoldCo, Ltd. | TDIT003766–TDIT003790 |
| 191 | Email - PricewaterhouseCoopers (PwC) | TDIT004305–TDIT004323 |
| 192 | Memorandum and Articles of Association - Charitable DAF HoldCo, Ltd. | TDIT003267–TDIT003303 |
| 193 | Form ADV - Rand Advisors, LLC | TDIT003646–TDIT003674 |
| 194 | Brochure - Rand Advisors, LLC | TDIT003675–TDIT003700 |
| 195 | Email - Mark Patrick | TDIT004324–TDIT004340 |
| 196 | ValueScope Report - ValueScope, LLC | TDIT004131–TDIT004205 |
| 197 | Email - FTI Consulting | TDIT004341–TDIT004358 |
| 198 | Director Services Agreement - CDMCFAD, LLC | TDIT011171–TDIT011185 |
| 199 | Resolution of the Directors - Charitable DAF HoldCo, Ltd. | TDIT003955–TDIT003957 |
| 200 | Resolution of the Directors - Charitable DAF HoldCo, Ltd. | TDIT003958–TDIT003959 |
| 201 | Prospectus - NexPoint Real Estate Strategies Fund | TDIT003463–TDIT003599 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 202 | Proxy Statement - NexPoint Capital, Inc. | TDIT003440–TDIT003462 |
| 203 | Written Resolution - CLO HoldCo, Ltd. | TDIT011196–TDIT011197 |
| 204 | Texas Petition - Highland Dallas Foundation, Inc. | TDIT004443–TDIT004688 |
| 205 | Rule 11 Agreement - Highland Dallas Foundation, Inc. | TDIT004693–TDIT004695 |
| 206 | Exhibit Index to Affidavit - Margot MacInnis | TDIT003261-TDIT004712 |
| 207 | Affidavit - Jim Dondero Dugaboy Investment Trust | TDIT004713-TDIT004778 |
| 208 | Texas Petition (Amended) - Highland Dallas Foundation, Inc. | TDIT006527–TDIT006580 |
| 209 | Liquidator's Certificate - Margot MacInnis (JOL) | TDIT006492 |
| 210 | Form ADV - Mark Patrick, Rand PE Fund | TDIT006581-TDIT006609 |
| 211 | Affidavit & Exhibit Index - Margot MacInnis | TDIT004967-TDIT006484 |
| 212 | Affidavit & Exhibit Index | TDIT006485-TDIT006580 |
| 213 | Post-Confirmation Quarterly Report - Highland Capital Management L.P. | TDIT011394-TDIT011405 |
| 214 | Post-Confirmation Quarterly Report - Highland Capital Management L.P. | TDIT011382-TDIT011393 |
| 215 | Objection filed by James D. Dondero, Dugaboy Investment Trust | TDIT011425-TDIT011443 |
| 216 | Objection filed by Highland Dallas Foundation, Inc. Grant James Scott III | TDIT011444-TDIT011475 |
| 217 | Objection filed by James D. Dondero, Dugaboy Investment Trust | TDIT011476-TDIT011509 |
| 218 | Supplemental Declaration - DFW Charitable Foundation CDMCFAD LLC | TDIT004869-TDIT004945 |
| 219 | Trust Agreement establishes Hunter Mountain Investment Trust (HMIT) | TDIT006664-TDIT006675 |
| 220 | Affirmation by Mark Patrick | TDIT010529-TDIT010532 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 221 | Operating agreement between Highland Dallas Foundation, Inc. and The Dallas Foundation. | TDIT011406-TDIT011406 |
| 222 | Email exchange between Michael Stockham and Paul Murphy | TDIT010831-TDIT010840 |
| 223 | Form ADV Instructions - None | TDIT006628-TDIT006663 |
| 224 | Declaration by Caroline Maron | TDIT004846-TDIT004868 |
| 225 | Email from Louis M. Phillips requesting execution of two letters with attached documents | TDIT011318-TDIT011323 |
| 226 | Auditor's Report - Highland Capital Management L.P. | TDIT006610-TDIT006627 |
| 227 | Email chain from March 2025 | TDIT011407-TDIT011424 |
| 228 | Amended and Restated Limited Partnership Agreement - Atlas IDF LP | TDIT004779-TDIT004812 |
| 229 | Participation Agreement establishes the framework for Crown Global Life Insurance Ltd to purchase | TDIT004813-TDIT004845 |
| 230 | Investment Management Agreement - Rand PE Fund I | TDIT004946-TDIT004952 |
| 231 | Investment Management Agreement - Rand PE Fund I, L.P. | TDIT004953-TDIT004959 |
| 232 | Limited Partnership Agreement - Rand PE Fund | TDIT004960-TDIT004966 |
| 233 | By-Laws - Highland Kansas City Foundation, Inc. | TDIT003307–TDIT003325 |
| 234 | By-Laws - Highland Dallas Foundation, Inc. | TDIT003329–TDIT003343 |
| 235 | By-Laws - Highland Santa Barbara Foundation, Inc. | TDIT003347–TDIT003361 |
| 236 | Organizational Procedures - Greater Kansas City Community Foundation | TDIT003362–TDIT003388 |
| 237 | Structure Chart - Charitable DAF HoldCo, Ltd. | TDIT003705 |
| 238 | Structure Chart - Charitable DAF HoldCo, Ltd. | TDIT003706 |
| 239 | Expenses Table - Charitable DAF HoldCo, Ltd. | TDIT003960 |
| 240 | Delaware Division of Corporations Search Results - DFW Charitable Foundation | TDIT004696 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 241 | Delaware Division of Corporations Search Results - CDMCFAD, LLC | TDIT004697 |
| 242 | Demonstrative: DAF-Rand Structure Chart | |
| 243 | Certificate of Incorporation of CDH GP, Ltd. | Dkt. 4-95 (25-11376-BLS) |
| 244 | April 27, 2025 Email Exchange Between Mark Patrick and Geoffrey Sykes | |
| 245 | 2024.12.04 - Murphy Presentation re Shareholders Rights | Dkt. 4-87 (25-11376-BLS) |
| 246 | Affirmation of Patrick ISO Motion to Dismiss | NYSCEF DOC. NO. 278 |
| 247 | 12.31.24 Rand PE Fund I Audit Schedules | |
| 248 | 2023 Annual Certification and Conflicts of Interest Disclosure | |
| 249 | 2023 Annual Compliance Training -Skyview Group Excerpt | |
| 250 | 2023.12.12 Skyview In Person | |
| 251 | 2024.10.2 DAF Termination of Skyview Services Agreement | |
| 252 | 2024.10.2 Patrick Resignation Letter | |
| 253 | Empower Dallas Foundation Director Consent 11.25.2025 | |
| 254 | Compliance Manual Excerpt - Insider Trading Policy | |
| 255 | DAF Structure Chart | |
| 256 | DAF Trustee Fees (1) | |
| 257 | DAF Trustee Fees (2) (1) | |
| 258 | DAF Trustee Fees (2) | |
| 259 | DAF Trustee Fees | |
| 260 | Dkt. 4 - MacInnis Dec - Ex. 57 | Dkt. 4-58 (25-11376-BLS) |
| 261 | Dkt. 4 - MacInnis Dec - Ex. 58 | Dkt. 4-59 (25-11376-BLS) |
| 262 | EDF Second Amended and Restated Bylaws 12.31.2024 (executed) | |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 263 | Fwd EXTERNAL-Q3 2024 Charitable DAF Holdco Valuation | |
| 264 | HCM Dkt. 167 | 3:21-cv-00881-X Dkt. 167 |
| 265 | Highland 2547 (select exhibits) | Dkt. 2547 (19-34054-sgj11) |
| 266 | Letter from Atlas IDF GP, LLC - March 31, 2026 | |
| 267 | Mark Patrick 2021 W-2 | |
| 268 | Mark Patrick 2022 W-2 | |
| 269 | Mark Patrick 2023 W-2 Skyview Group | |
| 270 | Mark Patrick 2024 W-2 Skyview Group | |
| 271 | Mark Patrick Manager Evaluation 2022.pdf | |
| 272 | NHT (1) | |
| 273 | NHT Embedded Put Option Letter 06.29.2020 | |
| 274 | NHT on RL as of October 11, 2024 | |
| 275 | NHT | |
| 276 | Q1 2024 - Questionnaire and Transactions Certification | |
| 277 | Q2 2024 - Questionnaire and Transactions Certification | |
| 278 | Q4 2023 - Questionnaire and Transactions Certification | |
| 279 | Email regarding 2024 Foundation information request | |
| 280 | Email regarding DAF Trustee Fees | |
| 281 | Email regarding DAF Quarterly 3.31.22 | |
| 282 | Email regarding DAF Quarterly 3.31.22 | |
| 283 | Email regarding Management Agreements | |
| 284 | Email regarding NDA | |
| 285 | Email regarding Q1 2023 Trustee Fees | |
| 286 | Email regarding Q2 Valuation & Trustee Fees | |
| 287 | Email regarding Q2 Valuation & Trustee Fees | |
| 288 | Email regarding Q3 2021 Trustee Fees | |
| 289 | Email regarding Q4 2021 DAF Valuation Report & Trustee Fees | |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 290 | Charitable DAF Fund, L.P. letter to SEC | |
| 291 | The Dallas Foundation and Affiliates Consolidated Financial Report Year Ended December 31, 2023 | |
| 292 | Dugaboy Investment Trust Demonstrative Exhibit: Dugaboy's Closing Slide Deck for Hearing on Motion for Relief from Order and Motion to Vacate | |

Dugaboy also reserves the right to introduce any exhibit designated by any other party, to supplement and/or amend its Exhibit List, to introduce any rebuttal exhibits, and to not use any such exhibits during the evidentiary hearing in response to the circumstances of the hearing.

Dated: May 23, 2026

Respectfully submitted,

/s/ *Avery Joseph Welker*

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@winston.com
Sydney Rose
Texas Bar No. 24150011
srose@kslaw.com
KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

Michael J. Edney*
D.C. Bar No. 492024
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
T. (202) 739-3000
F. (202) 739-3001
michael.edney@morganlewis.com

Martha B. Stolley (*pro hac vice*)
New York Bar No. 2965374
MORGAN, LEWIS & BOCKIUS LLP
101 Park Ave.
New York, NY 10178-0060
T. (212) 309-6000
F. (212) 309-6001
martha.stolley@morganlewis.com

Avery Joseph Welker
Texas Bar No. 24137706
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002
T. (713) 890-5000
F. (713) 890-5001
avery.welker@morganlewis.com

**Admitted to the bar of this Court*

*Counsel for The Dugaboy Investment Trust*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 23, 2026, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

*_/s/ Avery Joseph Welker_*
Avery Joseph Welker

# The Court Should Vacate the Hunter Mountain Settlement

Morgan Lewis

# Summary

| | |
|---|---|
| Mark Patrick's misconduct prohibited him from approving the 9019 Settlement. | • He used his position to steal assets devoted to charities for one purpose: to line his own pockets.<br>• His theft and breach of fiduciary duties disqualified him from acting on HMIT's behalf. |
| This Court has both the authority and mandate to vacate the Rule 9019 Settlement under Rule 60(b)(2), (b)(3), and its inherent equitable powers. | • Patrick and Highland are abusing the bankruptcy process to facilitate theft of charities and their donors.<br>• Highland must renegotiate any future settlement with an independent actor authorized with control, acting as a fiduciary, and not compromised by their own self-interest. |
| Highland's vehement defense of Patrick's blatant misconduct raises conflict-of-interest concerns. | • Highland has abandoned its role as a faithful steward of the Debtor's assets and exposed a clear pursuit of alignment with Mark Patrick for self-interest. |

# Mark Patrick diverted $270 million in charity assets from the DAF structure to his own control.

Morgan Lewis

# Before Mark Patrick's misconduct, the DAF structure was designed to provide contributions to four selected charities.




*DAF – Rand Structure Chart*, Dugaboy Ex. 242 at 2.

- Before Mr. Patrick assumed control, the DAF grew to ~$270 million in assets and distributed $55 million+ to charity

- Economic beneficiaries of the DAF were **charitable organizations**:
- The Dallas Foundation
- Greater Kansas City Community Foundation
- Santa Barbara Foundation
- The Community Foundation of North Texas

# Then, in November 2023 – Patrick secretly engages legal counsel to plan his scheme.

I. **LEGAL RESEARCH/ POTENTIAL LITIGATION ISSUES**[2]

a. Transfer of 100% of Management Shares in Charitable DAF Holdco, Ltd., and 100% ownership interest in Charitable DAF GP, LLC, by Grant Scott to Mark Patrick.

1. Confirm each of these transfers is valid and enforceable under Cayman law?
2. Is consideration a requirement under Cayman law?

5. Analyze whether holders of the participation shares in org chart have legal standing to challenge the validity of these transfers and bring any other claims against Charitable DAF Holdco, LTD., Charitable DAF Fund LP, and CLO Holdco, LTD.?
6. Analyze whether Donor has legal standing to challenge the validity of these transfers and bring any other claims against Charitable DAF Holdco, LTD., Charitable DAF Fund LP, and CLO Holdco, LTD.

*Shields Group Memorandum – November 9, 2023*, Dugaboy Ex. 7 at 8–9.

# Patrick's goal was to create a new general partner for the DAF.

Following discovery of some of Patrick's activities, including allegations of attempted embezzlement, Dondero demanded greater transparency into the DAF structure.

Patrick then activated his secret scheme to divorce the charitable entities from any ownership in the underlying assets, removing the assets to his control.

# February 2024 – Patrick seeks to conceal his restructuring from objectors.

**From:** Mark Tax <mpatricktax1040@gmail.com>
**Sent:** Monday, February 5, 2024 12:18 PM
**To:** Brandon R. Schaller <bschaller@shieldslegal.com>
**Cc:** Shawn Raver <sraver@hotmail.com>; Bart Higgins <bhiggins@shieldslegal.com>
**Subject:** Re: Cayman GP

CAUTION: This email originated from outside of the organization.

Doesn't matter to me. Whatever from a strategic point of view - hard to find or track, or trace. Or find owners etc. Generic name. Strong litigation protection.

On Mon, Feb 5, 2024, 11:43 AM Brandon R. Schaller <bschaller@shieldslegal.com> wrote:

> Mark,
>
> Question from Walkers. Do you want the new Cayman GP to be a Cayman LLC or an exempted company?

*Email – Shields Law Group*, Dugaboy Ex. 169 at 1.

# This direction resulted in the generically named CDH GP, Ltd. to serve as general partner of the DAF.




*DAF – Rand Structure Chart*, Dugaboy Ex. 242 at 4.

# Patrick formed the DFW Charitable Foundation

- Patrick incorporated a new charitable foundation, the DFW Foundation, of which he is the sole director, president, and member.
  - The entity is run out of Patrick's home.
  - The DFW Foundation has almost no known activities.
- DFW has given less than $1 million to charitable endeavors, while paying Patrick nearly $20 million.

***Examination of Mark Patrick*, May 12, 2026 Hr'g Tr. at 16:5–17.**

Q And the DFW Charitable Foundation's place of business is at your home residence in Dallas; is that right?
A Yes.
Q Since the DFW Charitable Foundation was formed, it has given away less than a million dollars to charity; isn't that right?
A I think it's closer to a million. We did -- and I know in our deposition -- I have done a one off grant to a church in Fort Worth, which was a couple hundred thousand dollars. So close to a million.
Q But less than a million dollars; is that right, Mr. Patrick?
A I think that's fair, yes.

# Patrick then formed an "alphabet-soup" CDMCFAD, LLC as a new entity to transfer assets from the charities.




*DAF – Rand Structure Chart*, Dugaboy Ex. 242 at 5.

# He then added his home-operated charity as an indirect beneficiary, diluting the charitable foundations' ownership.




Morgan Lewis *DAF – Rand Structure Chart*, Dugaboy Ex. 242 at 6.

# Shopping around for valuations, Patrick is refused *first* by PwC…

**From:** Jamie Lawlor (KY) <jamie.lawlor@pwc.com>
**Sent:** 11 February 2025 4:43 PM
**To:** Geoffrey Sykes; Dakshina Vyas (KY)
**Cc:** Barnaby Gowrie; Philip Aubry; Simon Conway (KY); Christian Begg (KY)
**Subject:** Re: Conflict Check and Estimate - Potential Valuation [WALKERS-AMER_DOCS.FID2294181]

**[this message is from an external sender]**

Hi Geoffrey - thanks for arranging the call today.

Having discussed again on our side, our view is that the new Delaware entity (CDMCFAD, LLC) effectively has full economic interest *and* control over the Fund, so we don't really see a basis for applying any discounts to the underlying Fund NAV for that entity.

As it relates to the participating shareholders' interest in Charitable DAF Holdco, Ltd, we don't think we can reliably estimate the value / discount given the current fact pattern. While we could make hypothetical assumptions about how the articles may be interpreted, and/or how future cash flows may or may not be distributed, the impact on value is so substantial that we don't think it would be a meaningful exercise (i.e. we'd end up with the discount being 100% in one scenario, but 0% in another).

On that basis, I don't think there is a fee / scope that can work for us currently. If you think we've misunderstood something, or can provide more clarity on the legal position in the future, then we could perhaps revisit this. It sounds like the situation is evolving daily so let us know if anything changes and we can be of assistance elsewhere in the case.

*Email – PWC-Walkers*, Dugaboy Ex. 191 at 1.

# … and then by FTI Consulting.

**From:** Anaman, Alexis <Alexis.Anaman@fticonsulting.com>
**Sent:** 27 March 2025 2:11 AM
**To:** Geoffrey Sykes; Shek, Chun Yin
**Cc:** Barnaby Gowrie; Philip Aubry; Chris Beck
**Subject:** RE: [EXTERNAL] Re: Charitable DAF HoldCo Ltd and CDMCFAD LCC - Valuations [WALKERS-AMER_DOCS.FID2294181]
**Attachments:** Non reliance letter (Template).docx

**[this message is from an external sender]**

Hi Geoffrey,

Thanks for the comments. A few questions

- You have asked for us to include language which notes: "We understand that the Directors acting in the best interests of the company is generally regarded as the interests of the members as a whole, which includes future members ..." The underlined language is new. Can you confirm reference to a member relates to participating shareholders? What is the intention of adding that directors should act in the interests of future members? I am struggling conceptually to understand how a director could act in a manner which is beneficial for future shareholders which is not also helpful for existing shareholders. Therefore the addition seems unnecessary.
- I am surprised that distributions were made. This seems inconsistent with a phone call we had. But perhaps I misheard. Can you provide more detail as to the nature of the distributions. The proposed language is as follows: "From 2019, DAF became involved in a legal dispute, and whilst DAF has still made distributions to allow the Participating Shareholders to make unrestricted grants to the supported community foundations, it has curtailed additional discretionary distributions". What is an unrestricted grant? What falls in the category of additional discretionary distributions?
- The limitations in our note will remain. To do a valuation which can support a transaction, we will need to do significantly more detailed work. This is an unusual/complicated situation. We are open to doing a fairness opinion on the transaction. However, this will require *inter alia* approval from our risk committee to proceed and more information on the proposed transaction and situation.

# Patrick ultimately found Valuscope, which valued the charities stake at $1.6 million.

| Fair Market Value Summary | | | |
|---|---|---|---|
| | | Value | Reference |
| **Income Approach** | | | |
| Value of Subject Interest, Minority, Marketable | | $2,045,531 | *Schedule B.1* |
| Less: Discount for Lack of Marketability | *20.0%* | ($408,339) | *Schedule C.4* |
| Value of Subject Interest, Minority, Non-Marketable | | $1,637,192 | |
| Total Subject Interest Shares | | 305 | |
| **Fair Market Value per Share** | | **$5,368** | |

| Subject Interest Valuation Breakout | | |
|---|---|---|
| | Shares | Fair Market Value |
| Highland Dallas Foundation, Inc. | 100 | $536,784 |
| Highland Kansas City Foundation, Inc. | 100 | $536,784 |
| Highland Santa Barbara Foundation, Inc. | 100 | $536,784 |
| The Community Foundation of North Texas | 5 | $26,839 |
| Total Subject Interest | 305 | $1,637,192 |

*March 2025 Valuscope Valuation*, Dugaboy Ex. 12 at 4.

# This is despite the same firm valuing the same assets at nearly $250 million months earlier.

| FMV Summary | | | |
|---|---|---|---|
| Company Net Asset Value (NAV) | | $269,052,808 | *Schedule A.2* |
| Shares Outstanding | | 305 | |
| **NAV Per Share** | | **$882,140** | |
| **Applicable Discounts** | | | |
| Discount for Lack of Control | 8.1% | | *Schedule B.3* |
| Discount for Lack of Marketability | 6.3% | | *Schedule C.5* |
| Combined Discount | 13.9% | ($122,527) | |
| **FMV Per Share** | | **$759,614** | |
| Subject Shares | | 100 | |
| **FMV of Subject Interest** | | **$75,961,370** | |

*September 2024 ValuScope Valuation*, Dugaboy Ex. 11 at 3.

# Patrick extracted $270 million in assets by exchanging the charities' DAF HoldCo interests for a mere $1.6 million.




Morga

*The Charitable Foundations received $1.61 m in cash based on a 99.4% discount on their $270 million in assets

*DAF – Rand Structure Chart*, Dugaboy Ex. 242 at 7.

# Patrick then diverts the assets to a charity run from his Dallas home.




*DAF – Rand Structure Chart*, Dugaboy Ex. 242 at 8.

# The purpose of the scheme is clear: to steal charitable assets for his personal enrichment.

- Evidence following the 9019 Settlement hearing and the predecessor judge's approval of the settlement show Patrick's vastly increased compensation.
  - Patrick was paid $40,000 for his services in the whole of 2022.
  - In 2024/2025, Patrick and Paul Murphy were paid over $18 million.

set out in our statement of claim. But it was substantial increases in remuneration were paid out to Mr. Murphy and Mr. Patrick from the end of 2024 through 2/2025.
Q And was that amount in excess of $10 million?
A Yes.
Q Was it in excess of $13 million?
A Yes. I believe the total was 18, 18 million and change. But I don't recall the exact figure.

*Examination of Margot MacInnis*, May 11, 2026 Hr'g Tr. at 131:16–23.

# Patrick repeated his scheme and diverted HMIT's assets from another group of charitable entities.

Morgan Lewis

# HMIT was similarly organized to fund charitable work.




*DAF – Rand Structure Chart*, Dugaboy Ex. 242 at 12.

- Jim Dondero and Mark Okada transferred their ownership of Highland Capital Management to Hunter Mountain for a charitable purpose.
- Dondero and Okada created a structure with the Dallas Foundation at the top.
- Rand PE Fund was the sole member of Beacon Mountain, LLC, which in turn owned HMIT.
- HMIT owned a 99.5% interest in Highland Capital Management, L.P.

# Patrick abused his position to sell HMIT's assets to himself.

- Patrick sold off Rand PE Fund I, L.P.'s assets for $1MM.
- Patrick's $1MM sale price lacked any basis or valuation.




*DAF – Rand Structure Chart*, Dugaboy Ex. 242 at 16.

# On February 12, 2025, Patrick caused Rand PE Fund to sell Beacon Mountain LLC into the DAF structure.

This Membership Interest Purchase Agreement (this "**Agreement**"), dated as of February 12, 2025, is entered into between RAND PE FUND I, L.P., a Delaware limited partnership ("**Seller**") and CLO HOLDCO, LLC, a Delaware limited liability company ("**Buyer**").

**RECITALS**

(A) WHEREAS, Seller owns all of the issued and outstanding membership interests (the "**Membership Interests**"), of BEACON MOUNTAIN, LLC, a Delaware limited liability company (the "**Company**"); and

**Section 1.01 Purchase and Sale.** Subject to the terms and conditions set forth herein, at the Closing (as defined herein), Seller shall sell to Buyer, and Buyer shall purchase from Seller, all of Seller's right, title, and interest in and to the Membership Interests, free and clear of any mortgage, pledge, lien, charge, security interest, claim, or other encumbrance ("**Encumbrance**"), for the consideration specified in Section 1.02.

**Section 1.02 Purchase Price.** The aggregate purchase price for the Membership Interests shall be $1,000,000.00 (the "**Purchase Price**"). The Buyer shall pay the Purchase Price to Seller at the Closing (as defined herein) in cash, by wire transfer of immediately available funds in accordance with the wire transfer instructions set forth on Schedule 1.02 hereto.

*Membership Interest Purchase Agreement*, Dugaboy Ex. 15 at 1.

# Patrick affirmed he had received all consents on behalf of Rand PE Fund prior to the sale.

**Section 3.02 No Conflicts; Consents.** The execution, delivery and performance by Buyer of this Agreement and the documents to be delivered hereunder, and the consummation of the transactions contemplated hereby, do not and will not: (a) violate or conflict with the certificate of formation, LLC agreement or other organizational documents of Buyer; or (b) violate or conflict with any judgment, order, decree, statute, law, ordinance, rule, or regulation applicable to Buyer, except where the violation or conflict would not, individually or in the aggregate, have a material adverse effect on Buyer's ability to consummate the transactions contemplated hereby on a timely basis. No consent, approval, waiver, or authorization is required to be obtained by Buyer from any person or entity (including any governmental authority) in connection with the execution, delivery, and performance by Buyer of this Agreement and the consummation of the transactions contemplated hereby, except such consents, approvals, waivers, or authorizations which would not, in the aggregate, have a material adverse effect on the Buyer's ability to consummate the transactions contemplated hereby on a timely basis.

*Membership Interest Purchase Agreement*, Dugaboy Ex. 15 at 4.

# Acting on both sides of the transaction without a supporting valuation makes this a voidable fraudulent transfer.

Q So the sale from Rand PE Fund I, LP to CLO Holdco was from a company that you controlled, right?
A Yes.
Q To a company that you controlled. Isn't that right?
A Yes.

*Examination of Mark Patrick*, May 12, 2026 Hr'g Tr. at 70:4–8.

# The Hunter Mountain Sale Required Prior Investor Consent



PROHIBITED TRANSACTIONS BY REGISTERED INVESTMENT ADVISERS

SEC. 206. [80b–6] It shall be unlawful for any investment adviser, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud any client or prospective client;

(2) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client;

(3) acting as principal for his own account, knowingly to sell any security to or purchase any security from a client, or acting as broker for a person other than such client, knowingly to effect any sale or purchase of any security for the account of such client, without disclosing to such client in writing before the completion of such transaction the capacity in which he is acting and obtaining the consent of the client to such transaction. The prohibitions of this paragraph (3) shall not apply to any transaction with a customer of a broker or dealer if such broker or dealer is not acting as an investment adviser in relation to such transaction; or

## *An Advisor cannot "Self-Cleanse"*

- An otherwise conflicted principal may not, in their capacity as general partner or otherwise, provide the "client" consent under Section 206(3).

  Paradigm Capital Mgmt., Inc., Administrative Proceeding File No. 3-15930, Exchange Act Release No. 72393, 2014 WL 2704311 (June 16, 2014)

  *In the Matter of Lone Star Value Mgmt. LLC and Jeffrey Eberwein*, Administrative Proceeding File No. 3-19706, Release No. 5448, 2020 WL 916772 (Feb. 24, 2020)

- A transaction made in violation of the Investment Advisors Act of 1940 is be rendered null and void.

  15 U.S.C. §80b-15(b).

# *SEC Decision: In the Matter of Paradigm Capital Mgmt., Inc. (2014)*

14. Because *Weir controlled both Paradigm and C.L. King*, all of the transactions between the Fund and Trading Account 1 were principal transactions that *required* Paradigm (i) *to provide the Fund with written disclosure* of the transactions prior to the transactions' completion, and (ii) *to obtain the Fund's consent* to engage in the transactions.

15. *Weir, however, owned and controlled the Fund's general partner*, PCM Ventures II LLC ("the General Partner"). She also shared in the trading profits and losses resulting from the principal transactions through her ownership in C.L. King. *Accordingly, any written disclosure to her as the owner of the General Partner was insufficient, and for the same reason she also could not provide effective consent to the principal transactions.*

# The Hunter Mountain Sale Required Prior Investor Consent

Registered Investment Advisor

Giving consent to yourself does not cleanse a conflict




*DAF – Rand Structure Chart*, Dugaboy Ex. 242 at 13.

Patrick was legally required to obtain prior investor consent




**Patrick added HMIT to his new improper charitable DAF structure, stealing even more assets originally donated for charitable purposes.**

Morgan Lewis

*DAF – Rand Structure Chart*, Dugaboy Ex. 242 at 18.

016150

# Bringing Hunter Mountain into the DAF structure connects Patrick's misconduct to the 9019 Settlement.

- Patrick centralized the assets of the DAF structure into the same string of entities as Hunter Mountain following the February 12, 2025 purchase.
- By doing so, the misconduct underlying the restructuring of the DAF became part and parcel to Patrick's dealings with HMIT.
- The decision to redeem the charitable entities' interests in the DAF on March 27, 2025 improperly eliminated the charities' interest in not only the DAF assets, but in Hunter Mountain as well.

# Patrick's justifications for his misconduct fail.

Morgan Lewis

# "Discretionary charitable beneficiaries" is a made-up term with no basis in the funds' governing documents.

Now, Mr. Patrick, we've heard a term a few times today from you. I think it was discretionary charitable beneficiary. Do you remember that?

A Yes.

Q Why don't you tell me what you mean by that term, discretionary charitable beneficiaries.

A I think it distills the overall purpose of this, what many can see is a complex structure. You know, at its heart, it was formed to have discretionary beneficiaries that would receive distributions from time to time, and those beneficiaries would be nonprofit organizations. And so, despite the complexity of all these legal entities, at its heart that's what it is.

*Examination of Mark Patrick*, May 12, 2026 Hr'g Tr. at 52:19–53:6.

# The Charitable DAF Fund's assets are for the benefit of the indirect charitable owners, not the general partner.

1.3 Purpose and Powers. The purpose of the Partnership shall be to invest and trade, directly or indirectly, in securities of all types and other investment vehicles and instruments. At least initially, a majority of the Partnership's assets shall be invested in shares of CLO HoldCo, Ltd., a Cayman Islands exempted company ("**CLO HoldCo**"), but the Partnership may make investments in other types of securities, investment vehicles and instruments in the sole discretion of the General Partner for the purpose of benefitting, directly or indirectly, the Indirect Charitable Owners.

*7/11/2011 Amended and Restated Exempted Limited Partnership Agreement of Charitable DAF Fund, LP.*, Dugaboy Ex. 5 at 2.

# Patrick falsely asserts that a risk to the entities' tax-exempt status justified his self-serving restructuring.

- Patrick testified that Dondero's actions put the funds' tax-exempt status at risk.
- Patrick's "solution" was to steal the assets from the original charities, centralizing them under his own sham "charity" and paying himself handsomely to do it.

detail, is it was first the concern that they're -- through the actions of Mr. Dondero with respect to the supporting orgs and the supporting orgs' actions, that they were jeopardizing, potentially jeopardizing their tax-exempt status, which the Charitable DAF Fund, LP, its overall mission is charitable. And so, you know, therefore it causes a concern with respect to that mission.

*Examination of Mark Patrick*, May 12, 2026
Hr'g Tr. at 110:6–12.

# It was long the course of activity for Dondero to have a say in the ultimate destination of the charitable gifts.

- Look to Dondero's rebuttal testimony on this long course of dealing between the parties.

- These donations led to:
  - The Bush Center's construction in Dallas
  - Numerous veterans' initiatives.
  - Cristo Rey Dallas College Preparatory

# The "cocktail napkin" request (never produced) is the basis of Patrick's decision to relieve the charities of $270 million of assets.

A Yes. I received a request to wire for no consideration over $1 million to an offshore entity that my understanding was owned and controlled by Mr. Dondero.
Q Was that request in writing?
A Yes, it was.
Q How was it written?
A It was written on a napkin in what I understood to be Mr. Dondero's handwriting.

*Examination of Mark Patrick*, May 12, 2026 Hr'g Tr. at 115:13–20.

# Adequate remedies were available to Patrick.

Patrick had a host of adequate and lawful remedies available to fix the purported threats to the DAF and HMIT he claimed to perceive.

| | | |
|---|---|---|
| Patrick could have resigned from his positions of authority. | Patrick could have informed the charitable foundations or the charities themselves about the purported risks. | Patrick could have used his position of authority to demand cure of the purported deficiencies. |

Instead, Patrick chose to divert more than $270 million to an entity structure for which he was the only manager and beneficiary, paying himself $14 million for the trouble.

# The supporting charitable organizations own the indirect interests in the assets.

- Lucy Bannon testified that the indirect charitable owners of the limited partner are the intended beneficiaries from the investments of the DAF fund.
- The general partner has discretion over the management of the investments, not the identity of the indirect charitable owners as beneficiaries of the fund.
- The division of powers and benefits between the general partner and limited partners in the fund structure is reflected in the fund organizational documents.

# Patrick is incorrect that the general partner owns the DAF assets and he owns the general partner.

Q So you own all the assets of the DAF, the $270 million?
A I do not own those assets.
Q The general partner does?
A The general partner does.
Q Which you -- which you own, correct?
A I own the general partner. That is correct.

*Examination of Mark Patrick*, May 12, 2026 Hr'g Tr. at 47:11–21.

# The Memorandum and Articles of Association of Charitable DAF HoldCo, Ltd. prevent the general partner from possessing an ownership interest in the fund.

## MANAGEMENT SHARES

11. The Management Shares shall be issued at par value and shall carry the right to receive notice of and to attend, to speak at and to vote at any general meeting of the Company. In the event of a winding up or dissolution of the Company, whether voluntary or involuntary or for the purposes of a reorganisation or otherwise or upon any distribution of capital, the entitlement of the holders of Management Shares shall be determined in accordance with these Articles. Management Shares confer no other right to participate in the profits or assets of the Company.

*2/20/2025 Amended and Restated Memorandum and Articles of Association of Charitable DAF HoldCo, Ltd.*, Dugaboy Ex. 6 at 6.

Morgan Lewis

# MARK PATRICK'S MISCONDUCT DEPRIVED HIM OF AUTHORITY TO ENTER INTO THE SETTLEMENT

This Misconduct Disqualified and ***Automatically*** Removed Patrick from Control of HMIT, Thus Leaving HMIT Leaderless and Unable to Validly Enter the Settlement

*See HMIT Trust Agreement*, Dugaboy Exhibit 1.

© 2026 Morgan, Lewis & Bockius LLP

# Under HMIT's Trust Agreement, Patrick's misconduct disqualified him from *any* authority over the trust.

- In an effort to prevent misconduct, fraud, and wrongdoing by the administrator of the trust, provisions in the trust agreement subject a self-dealing administrator to automatic removal upon any such wrongful conduct.
- Patrick triggered this provision by attempting to engage in a fraudulent transfer that violated his fiduciary duties to the ultimate beneficiaries of the trust.
- Thus, he was automatically disqualified from entering into the settlement.

# The HMIT Administrator is *automatically* removed from authority when he commits misconduct. This applies to Mark Patrick exactly as it did to John Honis.

16. Removal of Administrator. Upon any Honis Trigger Event, the Administrator shall immediately be removed without any action by the Delaware Trustee or any other party.

*HMIT Trust Agreement*, Dugaboy Ex. 1 at 6.

"Honis Trigger Event" means, with respect to Honis or any of his Affiliates, (i) the Bankruptcy of Honis; (ii) the death of Honis; (iii) the Disability of Honis; (iv) any conduct by Honis amounting to Honis Cause; (v) the termination of Honis's employment with, or the failure of Honis to be actively engaged in the management of, Rand Advisors; (vi) a change in the ownership of Rand Advisors, such that Honis fails to retain, directly or indirectly, majority voting control of Rand Advisors; (vii) a sale of all or substantially all of the assets of Rand Advisors; or (viii) the termination of this Agreement pursuant to Section 16. Honis agrees to give the Partnership ten (10) days' written notice of his Bankruptcy. "Limited Partnership" means Highland Capital Management, L.P., a Delaware limited partnership.

*HMIT Trust Agreement*, Dugaboy Ex. 1 at 1.

# *Any* misconduct by Patrick is sufficient cause to trigger automatic removal.

"Honis Cause" means conduct by Honis, in any capacity, amounting to (i) Honis's conviction or plea of nolo contendere for any criminal offense; (ii) dishonesty, fraud, willful misconduct, unlawful discrimination, bad faith or theft on the part of Honis that is injurious to any of the Applicable Entities; (iii) Honis's using for his own benefit any confidential or proprietary information of any of the Applicable Entities, or willfully or negligently divulging any such information to third parties without the prior written consent of the Partnership, in each case, other than as provided herein; (iv) a breach or violation of the terms of this Agreement or other agreement to which Honis or any of his Affiliates and any of the Applicable Entities are party in any manner that adversely affects any of the Applicable Entities; or (v) a breach of fiduciary duties. Any determination of whether conduct constitutes Honis Cause pursuant to this Agreement shall be made in the reasonable discretion of the Partnership, shall be made in good faith and shall be binding upon all parties affected thereby.

*HMIT Trust Agreement*, Dugaboy Ex. 1 at 1.

# Patrick believes provisions of the trust agreement do not apply to the successor administrator.

Q All right. I want to draw your attention to Page 6, Paragraph 16, please. Do you agree that upon the occurrence of any Honis trigger event, the administrator shall be immediately removed, without any action by the Delaware Trustee or any other party?
A That does not apply to a successor administrator.

*Examination of Mark Patrick*, May 12, 2026 Hr'g Tr. at 89:20–25.

# This belief stems from Patrick's assertion that because he is not John Honis, it does not apply.

Q Okay. Do you agree that whenever the trust agreement refers to the Administrator, such reference shall include any Successor Administrator appointed under this paragraph?
A Yes, but my statement for 16 not applying, it says a Honis Trigger Event. And a Honis Trigger Event, in the definitional section, applies only to the human being John Honis and no others.

*Examination of Mark Patrick*, May 12, 2026 Hr'g Tr. at 90:1–7.

# Patrick's explanation that "Honis Trigger Events" do not apply to him is incorrect.

17. Successor Administrator. The Administrator may resign as Administrator hereunder, without leave of court, at any time, and, in such event, the Adminstrator shall appoint a successor Administrator unless, prior to the effective date of his resignation, the Administrator dissolves the Trust in accordance with paragraph 15 above. Any appointment of a successor Administrator shall be in writing signed by the appointing Administrator, or by a duly authorized officer or officers of the appointing Administrator, if an entity. Whenever this Trust Agreement refers to the Administrator, such reference shall include any successor Administrator appointed under this paragraph. All powers hereby granted to the Administrator shall be exercisable by any successor Administrator, and each successor Administrator shall be deemed to have assumed the duties hereby undertaken by the Administrator.

*HMIT Trust Agreement*, Dugaboy Ex. 1 at 6.

# Even if Patrick were automatically removed for fraud or misconduct, he would simply reappoint himself.

Q If you were removed as administrator of HMIT under Section 16 based on a Honis Trigger Event, who would you appoint as successor, as successor administrator at HMIT?
A Myself.

*Examination of Mark Patrick*, May 12, 2026 Hr'g Tr. at 103:3–6.

# The Funds' owners could have prevented Patrick's misconduct or sought judicial relief had he not concealed it.

- The charitable beneficiaries of the DAF had the right to call for liquidation of the fund at any time.

- Owners of HMIT similarly had the right to redeem their interest in the fund.

- Had these groups known Patrick was shopping for a concocted valuation slashing 99% of the value of the Funds' assets in order to cash out their interests for pennies on the dollar, they would have exercised their redemption rights to preempt his scheme and preserve a much higher value for the assets.

- To prevent this, Patrick simply did not tell the affected entities about the transactions he was undertaking to restructure the assets under his direct control.

# The DAF entitities and Hunter Mountain as part of the DAF structure are subject to the Texas Business Court agreement.

(1) The "Covered Entities" as referred to herein is defined to include collectively Charitable DAF Fund, LP and/or any of its subsidiaries, the DFW Charitable Foundation and/or any of its subsidiaries, CDMCFAD, LLC and/or any of its subsidiaries, and/or any of its subsidiaries, and CDH GP, Ltd. and/or any of its subsidiaries.

*Rule 11 Agreement*, Dugaboy Ex. 205 at 1.

# The Texas Business Court temporarily would have prevented the transfers if entered a mere two months earlier.

(7) Pending the Court's decision on the Temporary Injunction or grant of the Plea relating to the Temporary Injunction or Plea), the Covered Entities and their respective agents, servants, employees, representatives, and all other persons acting under the aegis of, in concert with, or for any Covered Entity, agree:

a. not to transfer, conceal, withdraw, alienate, redeem, expend, encumber, disperse, or otherwise dispose of any and all funds, assets, receivables, or shares outside of the ordinary course of business;

b. not take any action to increase the compensation paid to any employee of the Covered Entities;

c. not to take any action to dissolve, winddown, liquidate, or otherwise alter the corporate standing of Covered Entities;

*Rule 11 Agreement*, Dugaboy Ex. 205 at 2.

d. not to take any action to modify or alter the corporate governance of the Covered Entities, including but not limited to any amendment to their respective bylaws or organizational documents;

e. not to take any action to sell, exchange, or dispossess any asset of one of the Covered Entities unless (i) the sale is to a bona third party purchaser for reasonably equivalent value, (ii) except in the case of marketable securities, the bona fide purchaser is made aware of this Rule 11 Agreement, and (iii) the proceeds from that sale, exchange, or disposition remain owned by the Covered Entities;

f. not to alter, conceal, or destroy any business records concerning the Defendants, including any transfers of funds, assets, receivables, or shares to the Defendants;

*Rule 11 Agreement*, Dugaboy Ex. 205 at 2–3.

# The Cayman Island Grand Court also entered an injunction covering the DAF entities.

**Schedule 1**

(i) CDH GP, Ltd. (Cayman Islands)
(ii) CDMCFAD, LLC (Delaware)
(iii) Charitable DAF Fund 2, LP (Cayman Islands)
(iv) Charitable DAF Fund, LP (Cayman Islands)
(v) CLO HoldCo, Ltd. (Cayman Islands)
(vi) Liberty CLO HoldCo, Ltd. (Cayman Islands)
(vii) HCT Holdco 2, Ltd. (Cayman Islands)
(viii) MGM Studios Holdco, Ltd. (Cayman Islands)
(ix) Liberty CLO HoldCo, LLC (Delaware)
(x) Liberty Sub, Ltd. (Delaware)
(xi) Charitable DAF Holdings Corp. (Delaware)
(xii) DST Investco, LLC (Delaware)
(xiii) Allanon Capital Management LLC (Texas)
(xiv) DFW Charitable Foundation (Delaware)
(xv) CLO HoldCo LLC (Delaware)
(xvi) Rand Advisors LLC (Delaware)
(xvii) CDHC Royse City Land LLC (Texas)
(xviii) Royse City Land Company LLC (Texas)
(xix) CDHC Assets LLC (Texas)
(xx) CDHC Fort Worth Land LLC (Texas)
(xxi) CDHC Stewart Creek LLC (Texas)
(xxii) BVP Property LLC (Delaware with CA registration)
(xxiii) Hunter Mountain Investment Trust
(xxiv) Rand PE Fund Management, LLC
(xxv) Atlas IDF GP, LLC
(xxvi) CDHC Apache Trail, LLC
(xxvii) 41915 Leaseco, LLC

 *Certificate of the Order of the Court of Appeal*, Dkt. 4567-1 at 5.

# The Cayman Island Court of Appeals adopts a nearly identical injunction to prevent similar transactions.

1 From the date of this Order to the date of the determination of the Appeal, but subject to paragraphs 2 and 3, the Respondents and the related entities listed in Schedule 1 hereto (the "**Fund Entities**"), and their respective agents, servants, employees, and representatives, shall:

1.1 not transfer, conceal, withdraw, alienate, redeem, expend, encumber, disperse, or otherwise dispose of any and all funds, assets, receivables, or shares of the Fund Entities outside of the ordinary course of business;

1.2 not take any action to increase the remuneration paid to any employee, manager or director of the Fund Entities;

1.3 not take any action to dissolve, wind-down, liquidate, or otherwise alter the corporate standing of the Fund Entities;

*Certificate of the Order of the Court of Appeal*, Dkt. 4567-1 at 2.

1.4 not take any action to modify or alter the corporate governance of the Fund Entities, including but not limited to any amendment to their respective bylaws or organisational documents;

1.5 not take any action to sell, exchange, or dispossess any asset of one of the Fund Entities unless (i) the sale is to a *bona fide* third party purchaser for reasonably equivalent value, (ii) except in the case of marketable securities, the *bona fide* purchaser is made aware of this undertaking; and (iii) the proceeds from that sale, exchange, or disposition remain owned by the Fund Entities;

1.6 not alter, conceal, or destroy any business records concerning the Respondents or the Fund Entities, including any transfers of funds, assets, receivables, or shares to or from the Respondents or Fund Entities.

*Certificate of the Order of the Court of Appeal*, Dkt. 4567-1 at 2–3.

# Mark Patrick managed to take Hunter Mountain from The Dallas Foundation *twice.*

- First on February 12, 2025 when he transferred the valuable assets under his “alphabet soup” entity CDMCFAD, LLC.
- Second on March 27, 2025 when Patrick redeemed the DAF HoldCo’s interest in CDMCFAD, LLC for pennies on the dollar, removing the charitable foundations from ownership over HMIT and the DAF assets.

# Patrick chose not to inform the charities about the restructuring.

Q And during that deposition, did you tell the court reporter that your lawyers told you that you had no obligation to inform the charities of their dilution?
A Yes.
Q All right. And aside from not having an obligation to inform them, you chose not to inform them anyway. Isn't that right?
A Correct.

*Examination of Mark Patrick*, May 11, 2026 Hr'g Tr. at 29:17–24

# Patrick's efforts to conceal his misconduct only further disqualified him from authority over HMIT.

**From:** Mark Tax <mpatricktax1040@gmail.com>
**Sent:** Monday, February 5, 2024 12:18 PM
**To:** Brandon R. Schaller <bschaller@shieldslegal.com>
**Cc:** Shawn Raver <sraver@hotmail.com>; Bart Higgins <bhiggins@shieldslegal.com>
**Subject:** Re: Cayman GP

CAUTION: This email originated from outside of the organization.

Doesn't matter to me. Whatever from a strategic point of view - hard to find or track, or trace. Or find owners etc.
Generic name. Strong litigation protection.

On Mon, Feb 5, 2024, 11:43 AM Brandon R. Schaller <bschaller@shieldslegal.com> wrote:

> Mark,
>
> Question from Walkers. Do you want the new Cayman GP to be a Cayman LLC or an exempted company?

*Email – Shields Law Group*, Dugaboy Ex. 169 at 1.

# Patrick acting in his own self-interest has caused significant harm.

- The theft of millions of dollars of assets out from under the charities' noses has removed steady sources of donations meant to sustain their important work for decades to come.
- The assets now support a "charity" run from Patrick's home with almost no charitable activities which spends 95 percent of its distributions compensating Patrick.
- Dondero's donative intent is fully frustrated by his donations serving only to line Patrick's pockets.

Morgan Lewis

# PATRICK'S MISCONDUCT MANIFESTED IN THE 9019 SETTLEMENT

© 2026 Morgan, Lewis & Bockius LLP

# 9019 Settlement Agreements require good-faith and a lack of fraud or collusion.

- Bankruptcy courts must scrutinize whether Rule 9019 settlement agreements presented to them are **"truly the product of arms-length bargaining, and not of fraud or collusion"** *and* in the best interest of the estate.
  - *In re Age Refining, Inc.*, 801 F.3d 530, 540 (5th Cir. 2015).

# Patrick failed to liberate millions owned by HMIT but held by Highland in indemnity trusts.

Q Okay. Did you, in those settle negotiations, inform yourself of what the Highland estate was holding in various trusts?
A Yes.
Q And what was the understanding you came to?
A The number in my mind is $70 million.
Q Okay. And who told you that?
A I'm just going from a general memory of what the residual cash was left in the overall estate.
Q Okay. Did that include the various indemnity trusts that the estate held?
A Yeah. I think -- I mean, I'm just trying to go from my

*Examination of Mark Patrick*, May 12, 2026 Hr'g Tr. at 79:9–20.

# Patrick forewent pursuing money stranded in the indemnity trusts for the *Kirschner* litigation claims to deter further investigation into his misconduct.

Q Did you sacrifice the opportunity for getting more cash to the equity owners more quickly in order to obtain the Kirschner personal litigation asset?
A No, I wouldn't characterize that at all. I disagree with that.
Q But you negotiated to obtain the Kirschner litigation asset, didn't you?
A Yes.

*Examination of Mark Patrick*, May 12, 2026 Hr'g Tr. at 80:25–81:7.

# To deflect suspicion, Patrick included several related entities in the 9019 Settlement.

**HUNTER MOUNTAIN INVESTMENT TRUST**

By ____/s/ Mark Patrick__________________
Name: Mark Patrick
Title: Administrator
Date: May 19, 2025

**BEACON MOUNTAIN LLC**

By ____/s/ Mark Patrick__________________
Name: Mark Patrick
Title: President
Date: May 19, 2025

**RAND ADVISORS, LLC**

By ____/s/ Mark Patrick__________________
Name: Mark Patrick
Title: President
Date: May 19, 2025

**RAND PE FUND I, LP**
By: Rand PE Fund Management, LLC, its General Partner

By ____/s/ Mark Patrick__________________
Name: Mark Patrick
Title: President
Date: May 19, 2025

**RAND PE FUND MANAGEMENT, LLC**

By ____/s/ Mark Patrick__________________
Name: Mark Patrick
Title: President
Date: May 19, 2025

**ATLAS IDF, LP**
By: Atlas IDF GP, LLC, its General Partner

By ____/s/ Mark Patrick__________________
Name: Mark Patrick
Title: President
Date: May 19, 2025

**ATLAS IDF GP, LLC**

By ____/s/ Mark Patrick__________________
Name: Mark Patrick
Title: President
Date: May 19, 2025

*9019 Settlement Agreement*, Dugaboy Ex. 2 at 22–23.

# In reviewing the transaction, Seery's review was limited only to documents prior to Patrick's restructuring.

| | |
|---|---|
| 76. | Limited Liability Company Agreement of Rand PE Fund Management, LLC dated October 29, 2015 [HCMLPHMIT00003873-HCMLPHMIT00003879] |
| 77. | Limited Liability Company Agreement of Rand Advisors, LLC dated August 28, 2013 [HCMLPHMIT00003880-HCMLPHMIT00003886] |
| 78. | Agreement of Limited Partnership of Rand PE Fund I, L.P. dated October 29, 2015 [HCMLPHMIT00003887-HCMLPHMIT00003893] |
| 79. | Amended and Restated Limited Partnership Agreement of Atlas IDF, LP dated November 30, 2015 [HCMLPHMIT00003894-HCMLPHMIT00003928] |
| 80. | Atlas IDF, LP Offering of Series 1 Limited Partnership Interests dated November 30, 2015 [HCMLPHMIT00003929-HCMLPHMIT00004023] |
| 81. | Rand PE Fund I, LP Offering Series 1 Limited Partnership Interests dated November 30, 2015 [HCMLPHMIT00004024-HCMLPHMIT00004095] |
| 82. | Member and Manager Consent of Atlas IDF GP, LLC dated October 13, 2022 [HCMLPHMIT00004124-HCMLPHMIT00004126] |
| 83. | Amended and Restated Company Agreement of Atlas IDF GP, LLC dated August 8, 2022 [HCMLPHMIT00004127-HCMLPHMIT00004151] |
| 84. | Amended and Restated Company Agreement of Rand Advisors, LLC dated August 1, 2022 [HCMLPHMIT00004152-HCMLPHMIT00004176] |

| | |
|---|---|
| 86. | Membership Interest Purchase Agreement Rand Advisors dated August 1, 2022 [HCMLPHMIT00004202-HCMLPHMIT00004215] |
| 87. | Member and Manager Consent of Rand Advisors, LLC dated October 13, 2022 [HCMLPHMIT00004216-HCMLPHMIT00004218] |
| 88. | Member and Manager Consent of Rand PE Fund Management, LLC dated October 13, 2022 [HCMLPHMIT00004219-HCMLPHMIT00004221] |
| 89. | 3/17/2025 Rand Advisors Form ADV [HCMLPHMIT00003465-HCMLPHMIT00003493] |
| 90. | Atlas IDF, LP Subscription 12/21/2015 (signature pages only) |
| 91. | Atlas IDF, LP Subscription 12/23/2015 (signature page only) |
| 92. | Atlas IDF LP SEC Form D dated February 24, 2025 [HCMLPHMIT00003518-HCMLPHMIT00003522] |
| 93. | Rand PE Fund I, L.P. SEC Form D dated February 24, 2025 [HCMLPHMIT00004096-HCMLPHMIT00004100] |
| 94. | Amended and Restated Limited Liability Company Agreement of Beacon Mountain LLC dated September 24, 2015 [HCMLPHMIT00004115-HCMLPHMIT00004123] |

*Highland Capital Management, L.P. Second Amended Exhibit List*, Dkt. 4280 at 9–10 (Dugaboy Ex. 300).

# Seery's review of the transaction was limited to the DAF structure as it stood prior to Patrick's restructuring.




*DAF – Rand Structure Chart*, Dugaboy Ex. 242 at 12.

- Seery reviewed organizational documents related to the pre-Patrick DAF structure.
- There was no review by Seery of the DAF structure following Patrick's misconduct removing the assets from the indirect charitable beneficiaries.
- Seery asserts the Cayman proceedings are irrelevant, but Hunter Mountain was transferred into the new DAF structure that is the subject of those proceedings.

# Claims before the Cayman Islands Grand Court and the Texas Business Court were allegations, evidence for which was in the possession of the JOLs.

- The JOLs' July 15, 2025 Statement of Claim was precisely that: a statement of their claims, without the supporting evidence.
- Claims in the Texas Business Court, filed on July 21, lacked the evidence to request a new trial, as they remained only allegations absent further discovery.
- These claims without evidence are not sufficient to justify a new trial, and Highland would have rightfully raised as much had Dugaboy brought them within the statutory period under Rule 9023.

# Discovery of Patricks' fraudulent and deceptive conduct was further hampered by Patrick's obfuscation of the HMIT reorganization in his June 23, 2025 deposition.

Q. What's your role at Charitable DAF Fund LP?
A. Yeah, I'm the control person for the general partner of that limited partnership.
Q. And who's the general partner of the limited partnership?
A. Yeah, and then this is where my memory is -- is -- I'd have to kind of revisit the actual organizational documents to give you a confident a hundred percent answer.

*Deposition of Mark Patrick*, June 23, 2025, at 13:11–18.

# Patrick feigned confusion at the June 25, 2025 settlement hearing.

Q And were you involved in the transaction between -- in which CDMC FAD, LLC obtained a hundred percent interest in Charitable DAF Fund, LP?
A What do you mean by involved? How?
THE COURT: Okay. I can see what's happening here or I have an impression of what's happening here. I feel like you're slowing down this process where I've given 30 minutes to this lawyer. Okay? And I feel like you're feigning confusion. I don't mean to be insulting, but that's how it comes across. Okay? So I need you to speed up your answers and not be confused about things you shouldn't be confused about. Okay?
THE WITNESS: Okay.

*Examination of Mark Patrick*, June 25, 2025 Hr'g Tr. at 182:4–16.

# Evidence in the Cayman Islands was confidential and outside the reach of Dugaboy absent lengthy foreign discovery proceedings.

Q Now, are filings in your Cayman proceedings, are they public when made?
A No.
Q Are some of them public when made?
A What would be public is whether it's something that's being heard in kind of open court. But in proceedings like liquidation proceedings, those are just going to be between the judge and the parties that are of interest in the proceedings.
Q And when was your first hearing in open court in the Cayman proceedings?
A That would have been December 14, 15, 16 for the injunction hearing.

*Examination of Margot MacInnis*, May 11, 2026 Hr'g Tr. at 185:25–186:11.

# Dugaboy requested a stay for the arrival of evidence to back up the allegations of misconduct.

- On July 17, 2025, following revelation of the JOLs' Statement of Claim in the Cayman Islands, Duagboy moved to stay the settlement until further investigation into the misconduct was possible.

- The Attorney General of Texas agreed with Dugaboy, filing his own request for a stay.

- On July 21, 2025, Judge Jernigan denied Dugaboy's request, explicitly stating other avenues were available to address newly-found evidence of Patrick's misconduct.

Importantly, it would appear that the parties have other avenues to address any malfeasance of Mark Patrick *vis-à-vis* the liquidation proceedings involving the Cayman Islands Charitable Foundation Structure.

*Order Denying Motion to Stay*, **Dkt. 4334-1, at 3.**

# Judge Jernigan may have reasoned a Rule 60(b) motion was the appropriate vehicle to challenge the 9019 Settlement following discovery of evidence of Patrick's misconduct.



Morgan Lewis

# THE BANKRUPTCY COURT SHOULD VACATE THE 9019 SETTLEMENT TO REMEDY PATRICK'S MISCONDUCT

Rule 60(b) and this Court's Equitable Powers Exist for Exactly this Reason

© 2026 Morgan, Lewis & Bockius LLP

# This Court should vacate its order approving the 9019 Settlement [Dkt. 4297].

(1) **"[N]ewly discovered evidence" came to light only after the Court approved the Settlement.** Federal Rule of Civil Procedure 60(b)(2).

(2) **Patrick's misconduct constitutes a fraud on the court.** *Id.* 60(b)(3).

(3) Highland spends very little time disputing that Patrick's conduct was wrongful. Instead, it argues that Dugaboy should have discovered Patrick's deception quicker. **In cases of alleged misconduct, rarely do courts—much less courts of equity—fault parties for failing to detect concealed conduct immediately.**

# "Newly discovered evidence" under Rule 60(b)(2) turns on the availability of the evidence to Dugaboy.

- "Newly discovered" does not mean the same thing as "new." **What matters is when Dugaboy learned (or reasonably should have learned) of the evidence, not when it actually occurred.** *Harrison v. Byrd*, 765 F.2d 501, 503 (5th Cir. 2985); *Chilson v. Metropolitan Transit Authority*, 796 F.2d 69, 72–73 (5th Cir. 1986).

- Before July 14, 2025, **Dugaboy had only pieces of the puzzle, not the whole picture.**

# Mark Patrick's compensation levels remained unknown until at least November 2025.

The Joint Official Liquidators' investigation uncovered that Patrick received $10.5MM and $3.2MM in compensation from the Funds in 2024 and 2025, respectively.

Income statements attached to the Third Affidavit of Margot MacInnis revealed the exorbitant fees collected by Patrick.

This information was not available until after it was made public in open court in the Cayman Islands in **November 2025**.

# The JOL Statement of Claim previewed evidence Dugaboy did not yet possess.

- July 14, 2025: the Cayman Court authorized the JOL litigation – **the final day of the Bankruptcy Rule 9023 window.**

- July 15, 2025: the JOL Statement of Claim was filed – **the day *after* the expiration of the Bankruptcy Rule 9023 window**.

- The Statement of Claim revealed **for the first time**
  - The extent of Patrick's grossly inflated compensation;
  - Patrick's self-dealing;
  - The internal communications demonstrating Patrick's intent and plan to commit fraud; and
  - The exact timing and mechanics of the DAF restructuring.

- But these were only allegations. **Dugaboy still had to wait for evidence.**

# The admissible evidence arrived in subsequent filings over the following months.

- No documents supporting the JOLs' allegations were revealed until late July.
- Other attachments to MacInnis affidavits were accessible only when shared in open court in November and December 2025.

# The new evidence emerged only in the months after the Settlement was approved.

- The Third Affidavit of Margot MacInnis which included income statements showing nearly $14MM in directors' fees dispersed to Patrick in 2024 and 2025, **only became available to Dugaboy in late 2025.**

- This Affidavit also provided **the first admissible evidence of such payments.**

- These documents were located in the Cayman Islands, and Dugaboy could not invoke the Hague Convention process to obtain them in the 11 days provided for discovery before the 9019 Settlement hearing.

# A wrongdoer cannot argue that his concealed misconduct should have been found sooner.

- Partial suspicion is not the same as possession of material, admissible, court-authorized evidence sufficient to support a post-judgment motion.
- Patrick systematically concealed his misconduct, and the evidence exposing it was not revealed until more than 14 days after the prior judge's ruling approval of the 9019 Settlement. Therefore, it is "newly discovered" under Rule 60(b)(2).
- Rule 60 and this Court's equitable powers exist precisely to address concealed misconduct revealed after judgment. **This Court cannot allow Patrick's misconduct to stand simply because he was good at hiding it.**