**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| THE DUGABOY INVESTMENT TRUST,<br><br>Appellant,<br><br>v.<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P. et al.,<br><br>Appellees. | Case No. 3:26-cv-02315-X |

**APPELLANT THE DUGABOY INVESTMENT TRUST'S REPLY IN SUPPORT OF REQUEST TO CERTIFY PENDING APPEAL TO THE FIFTH CIRCUIT UNDER 28 U.S.C. § 158(D)(2)(A)**

Appellees Highland Capital Management, L.P. et al. ("Highland") resist asking the Fifth Circuit to answer a straightforward inquiry: Under what circumstances must a bankruptcy court address allegations of fraud and misconduct by a counterparty to a debtor in a settlement? This is a matter of public importance. Its resolution would materially advance this case.

In June 2025, the bankruptcy court approved a settlement between the bankruptcy professionals speaking for the debtor and entities associated with the Hunter Mountain Investment Trust ("HMIT") holding much of the equity in the debtor. Hunter Mountain's purported administrator, Mark Patrick, entered the settlement on its behalf. Dkt. 4297 at ¶ 10; Dkt. 4333 at 4.[1] After a May 2026

[1] Unless otherwise specified, references to "Dkt." refer to the main bankruptcy proceeding in this

evidentiary hearing on Dugaboy's Rule 60(b) motion revealed credible evidence of fraud by Mr. Patrick that, in Dugaboy's view, divested him of authority to enter the settlement on behalf of HMIT, the bankruptcy court declined to overturn the approval, reasoning the misconduct was not part of the approval inquiry because it was the counterparty's, not the debtor's, and therefore insufficiently "intertwined" with the estate or the settlement. In so holding, the bankruptcy court abdicated its responsibility as a court of equity to promote fairness and good-faith dealings—a responsibility demanding greater scrutiny of the settlement when the debtor's equity owners had been replaced by a court-appointed professional as a *de facto* trustee.

Dugaboy pressed for this scrutiny for the better part of a year and a half, repeatedly raising its concerns with the underlying misconduct and the court-appointed bankruptcy professional's lack of interest in addressing it. Dkt. 4513 at 5, 33–43; Dkt. 4607 at 1, 5, 24, 27; Dkt. 4684 at 18, 24. Contrary to Highland's contention (Opp. at 10–13), the questions for which Dugaboy seeks certification were preserved for appeal and squarely raised by the bankruptcy court's opinion denying Dugaboy's Rule 60(b) motion, warranting direct review by the Fifth Circuit. These matters transcend this case and present issues of public significance. Allowing the Fifth Circuit to address them will facilitate the ongoing review of the settlement under the correct standard.

---

case, No. 19-34054-sgj11.

## I. The Bankruptcy Court's Decision that a Settlement Counterparty's Misconduct is Not Relevant to Approving It Raises a Legal Question of Public Importance, Meriting Certification

While the bankruptcy court acknowledged the serious allegations about Mark Patrick's misconduct, the court ultimately held they fell into a category of misconduct—that of a counterparty to a debtor—that has no relevance to whether a settlement with the debtor should be approved. The court explained a counterparty's misconduct is "not sufficiently intertwined with the Highland bankruptcy estate (or the Settlement)." Dkt. 4678 at ¶ 24. This reflects the predecessor judge's view—expressed when allegations of this conduct were presented as a motion to stay the order previously approving the settlement—that "Mark Patrick is merely a signatory for a counterparty to a settlement agreement with the bankruptcy estate." Dkt. 4333 at 4 (quoting prior order denying stay of settlement approval order).

The bankruptcy court essentially restricted the "fraud and collusion" meriting rejection of a proposed bankruptcy settlement to the misconduct of the debtor. That is a novel and mistaken innovation. Circuit courts interpreting the standard for evaluating whether to approve a settlement have not held only debtor misconduct is relevant. *Northbay Wellness Grp., Inc. v. Beyries*, 789 F.3d 956 (9th Cir. 2015); *Matter of Garfinkle*, 672 F.2d 1340 (11th Cir. 1982); *In re New Valley Corp.*, 181 F.3d 517 (3d Cir. 1999). Rather, the standard calls for determining whether the settlement was produced by fraud or collusion. *In re Age Refining, Inc.*, 801 F.3d

530, 540 (5th Cir. 2015); *In re Foster Mortg. Corp.*, 68 F.3d 914, 918 (5th Cir. 1995). "Fraud or collusion" of a non-debtor party to a settlement plainly makes the settlement the "product" of such misconduct, no less than fraud or collusion committed by the debtor itself. Categorically disregarding non-debtor misconduct unless it is sufficiently "intertwined" with the settlement or the estate unnecessarily curtails the bankruptcy court's review.

The bankruptcy court misconceived the standard when it held non-debtor misconduct can never be considered in deciding whether to approve a settlement. That rule is incompatible with the bankruptcy court's role as a court of equity, which since time immemorial rejected the pleas of those coming to court with "unclean hands." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934); *Arenas v. U.S. Trustee*, 535 B.R. 845 (10th Cir. BAP 2015). The bankruptcy court's rule establishes institutional indifference to whether approving a settlement would advance a counterparty's misconduct. There was significant evidence of that risk here. Mot. at 9–10, 13–17.

Further, the bankruptcy court's rule ignores the consequences of a counterparty's fraud or misconduct on his authority to act for the settling corporate entities. Highland emphasizes the bankruptcy court's observation Mark Patrick had the authority to settle before his misconduct, which attempts to make his misconduct orthogonal to his present-day claims of authority. Opp. at ¶ 11(b); Dkt. 4678 at ¶

28. That is no reason to ignore the misconduct. Mr. Patrick came to court acting on behalf of a separate stack of companies, made relevant only because he stole Highland's equity from its established charitable owners. He also came to court acting as a different type of person, indifferent to his fiduciary duty to the charitable owners. The misconduct, at a minimum, tainted his authority to act. Indeed, the corporate documents protected the charitable owners of the asset by disempowering Mr. Patrick on account of his fraudulent restructurings. This shows the perils of categorically not considering the misconduct of a settlement counterparty.

The bankruptcy court's rule is a threshold matter for bankruptcy courts determining what to consider when approving proposed settlements, a common occurrence in bankruptcy courts throughout the circuit and nationally. It has implications for the integrity of the judicial system and the role of bankruptcy courts as courts of equity. If the Fifth Circuit agrees this is not a category of misconduct that should concern bankruptcy courts, that is another matter. But the parties here, other parties subject to the bankruptcy process, and the public need to know the answer.

Highland falsely asserts Dugaboy failed to argue or preserve this issue in the bankruptcy court. Opp. at ¶¶ 13–16. Whether a bankruptcy court can consider the misconduct of a settlement counterparty was not just a disputed legal issue below, but *the major issue* in the case. A brief perusal of the moving papers below so

demonstrates. Dkt. 4513 at 33–43; Dkt. 4607 at 24–32. As does closing argument at the supplemental evidentiary hearing. May 21, 2026 Hr'g Tr. at 207:19–208:6.

Astoundingly, Highland claims "***it is undisputed that Patrick . . . was expressly authorized to enter into the Rule 9019 Settlement***." Opp. at 2 (emphasis in original). But central to Dugaboy's arguments—from its objection to the Rule 9019 Settlement to the Rule 60(b) and Rule 59(e) briefing, and the Motion here—was its contention Mr. Patrick lacked authority to enter the Rule 9019 Settlement because his pre-settlement misconduct automatically removed him as administrator under the Highland Trust Agreement. Dkt. 4513 at 25; Dkt. 4607 at 25–27, 27 n.5; Dkt. 4684 at 17. The issue is preserved for review.

## II. Bankruptcy Courts Should Not Defer to Settlement Agreements Reached by Bankruptcy Professionals Courts Appointed to Act on Behalf of the Debtor

The second issue warranting certification is the deference to negotiations between debtor and counterparty when the bankruptcy court has supplanted the equity owners to the debtor and appointed bankruptcy professionals to run it. Those court-appointed bankruptcy professionals are effectively standing in the shoes of the court, requiring closer scrutiny and supervision of their judgments. The appointed professionals have hardly any interest in protecting the residual of the estate for the equity holders of it.

Under other circumstances, bankruptcy courts have held their obligation to review proposed settlements between a counterparty and the debtor involves a level of deference, as they both are likely acting in their own best interest. For the debtor, those best interests usually include resolving a claim as cheaply as possible *so as to maximize what remains for equity holders*. In these circumstances, there may be no need for bankruptcy courts to micromanage the review of a settlement.

But this is not a run-of-the-mill bankruptcy case. Here, the bankruptcy court appointed a bankruptcy professional to act on behalf of the estate—a professional that does not view himself as owing fiduciary duties to protect equity and does not have ongoing, operational incentives to ensure the settlement counterparty has clean hands. In these circumstances, a bankruptcy court cannot simply trust the settlement negotiation process to work itself out. It has a special duty of supervision to ensure the appointed bankruptcy professional's decisions protect what remains for the equity holders. This is particularly so where, as here, the plan puts equity holders in the position of creditors. The debtor, which is supposed to maximize what remains for itself, is negotiating against the residual holder of value. The bankruptcy court should have no confidence the settlement negotiation process would just work itself out, or light-touch review in approving the outcome is warranted.

But this is exactly what the bankruptcy court did, despite the allegations of fraud and misconduct by the settlement counterparty. According to the court, "With

this in mind, there is no reason, as a Court of equity, to reassess whether the settlement was the product of arm's-length, good faith negotiations. Whatever Mr. Patrick did or did not do with his authority over HMIT assets and the charitable beneficiaries' structure, is not for this Court to decide." Dkt. 4678 at ¶ 28.

Contrary to Highland's assertions (Opp. at ¶ 17), this is not a new point. Dugaboy raised this issue multiple times in its opening and closing arguments at the Rule 60(b) hearing, as well as in related briefing, thereby preserving the issue. May 11, 2026 Hr'g Tr. at 24:10–23; May 21, 2026 Hr'g Tr. at 206:23–207:2; Dkt. 4513 at 5.

## III. The Court's Ruling Regarding Whether the Rule 60(b) Motion Brought Forward Newly Discovered Evidence Will Be an Issue on Appeal and Is Not a Reason to Decline Certification

The two issues above are squarely presented by the bankruptcy court's opinion and Dugaboy's arguments below. They are issues of public importance that will recur in other bankruptcy cases. The first issue—regarding the role of bankruptcy courts in evaluating the misconduct of non-debtor parties to a settlement—is one, if not promptly corrected, has implications for the integrity of the judicial system and the role of bankruptcy courts as courts of equity.

As Dugaboy advised this Court, another issue in the appeal will be the bankruptcy court's ruling the Rule 60(b) motion does not present newly discovered evidence. Mot. at 10. That is just one of the grounds under Rule 60(b) on which

the bankruptcy court could have granted relief. Dkt. 4513 at 41. Contrary to Highland's arguments (Opp. at ¶ 10), the newly discovered evidence issue was fronted in Dugaboy's request for certification and is not a reason to decline sending the appeal directly to the circuit court. The bankruptcy court's ruling with respect to newly discovered evidence is based on a single document—an April 2025 affidavit—asserting Mr. Patrick had a history of compliance lapses. Those lapses are distinct in type and severity from the later-discovered massive restructuring that stole the equity stake in Highland Capital Management and more than a quarter billion dollars in assets from their established charitable owners. Mot. at 10. According to the court, Dugaboy should have acted on those lesser deviations to remove Mr. Patrick from his position as Administrator of the Hunter Mountain Investment Trust and from any say in the disposition of the Highland equity asset. Dkt. 4678 at ¶¶ 21–24.

The bankruptcy court was wrong. Abstaining from action against venial transgressions neither waives the right to prosecute later cardinal sins such as Mr. Patrick's theft of hundreds of millions of dollars from two charitable structures nor renders the evidence of that theft somehow not newly discovered. *Rhodes v. Amarillo Hosp. Dist.*, 654 F.2d 1148, 1152 (5th Cir. 1981). What Highland omits is the affidavit recounted Mr. Patrick having directed $10,000 to a charity run by his daughter and violated internal guidelines regarding the sharing of firm information

when he worked within a firm run by Mr. Dondero. Dkt. 4607 at 23. If Dugaboy did not pull the fire alarm on those, it is not barred from doing so when evidence comes to light of a nine-figure heist of charitable assets.

Highland spends much of its brief trying to build another opinion the court did not write on this point. Opp. at ¶¶ 10–11. Its effort to seek affirmance on other grounds is something Highland should take up on the merits; it is not a reason to deny certification.

## IV. Direct Appeal to the Fifth Circuit—and Not Highland's Late Breaking Effort to Consolidate Many Disparate Appeals—Will Materially Advance Progress of the Case

Highland attempts to shoehorn another irrelevant and last-minute concept into the certification inquiry and, in doing so, reverses its own prior course. Highland now claims "[a]ll of these procedural issues could (and should) be resolved by consolidating the appeals arising from the same Rule 9019 Settlement." *Compare* Opp. at 20. *with* No. 3:25-cv-01876-K, Dkt. 39 at 1–2. Perhaps consolidating appeals arising out of settlement-related orders in 2025 made sense back then, prior to their briefing. But now those appeals of the 9019 decision and other roughly contemporaneous orders, after Highland opposed consolidation, have run their course.

Consolidating the appeal of the Rule 60(b) ruling, coming nearly a year after the original order approving the settlement, makes little sense. The Rule 60(b) ruling

is based on an entirely separate evidentiary record, based on evidence arising after the original order approving the bankruptcy settlement. The orders were entered by two separate judges, after the Fifth Circuit arranged for the prior bankruptcy judge's recusal through the judicial discipline process. In the Rule 60(b) process, and indeed in the opposition to the instant certification request, Highland has championed that the Rule 60(b) process cannot be a "do-over" of the settlement approval proceedings and should be separately decided based on their "vastly different" records. *Id.*, Dkt. 43 at 2. Yet Highland repeatedly conflates the record on which the first bankruptcy judge approved the Rule 9019 settlement with the record upon which the second bankruptcy judge denied the Rule 60(b) motion. Opp. 17-18. Highland is taking inconsistent positions. On the one hand, Highland wants consolidation because it contends these appeals are the same. On the other, it argues the Rule 60(b) ruling must rise or fall based on a hermetically sealed universe of newly discovered evidence.

Highland's epiphany on consolidation is no reason to decline certification. Issues of paramount importance—with broad-reaching implications throughout bankruptcy proceedings—are presented by the instant appeal. And the Fifth Circuit resolving them sooner will advance the culmination of this bankruptcy more quickly. The 9019 appeal is fully briefed before another district judge, and the time for either party to seek direct Fifth Circuit review of that appeal came and went in August

2025. The appeals will never be meaningfully consolidated, as a new briefing process for the 60(b) order could at most be layered on top of another already-completed briefing process based on an entirely separate evidentiary record.

Dated: September 4, 2026

Respectfully submitted,

/s/ *Michael J. Edney*
Michael J. Edney
D.C. Bar No. 492024
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
T. (202) 739-3000
F. (202) 739-3001
michael.edney@morganlewis.com

Martha B. Stolley (*pro hac vice*)
New York Bar No. 2965374
MORGAN, LEWIS & BOCKIUS LLP
101 Park Ave.
New York, NY 10178-0060
T. (212) 309-6000
F. (212) 309-6001
martha.stolley@morganlewis.com

Avery Joseph Welker
Texas Bar No. 24137706
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002
T. (713) 890-5000
F. (713) 890-5001
avery.welker@morganlewis.com

/s/ *John Michael Gaddis*
Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@kslaw.com
King & Spalding LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

/s/ *Johnny Sutton*
Johnny Sutton
ASHCROFT SUTTON
P.O. Box 160368
Austin, Texas 78716
T. (512) 370-1800
F. (703) 247-5446
jsutton@ashcroftlawfirm.com

/s/ *Michael Burrage*
Michael Burrage, OBA No. 1350
WHITTEN BURRAGE
512 N. Broadway Ave., Ste. 300
Oklahoma City, OK 73102
T. (405) 516-7800
F. (405) 516-7859
mburrage@whittenburragelaw.com

***Counsel for The Dugaboy Investment Trust***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 4, 2026, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

/s/ *Michael J. Edney*
Michael J. Edney

## CERTIFICATE OF COMPLIANCE

1. This document complies with the word limit of Fed. R. Bankr. P. 8013(f)(3)(A) because, excluding the portions excluded by Fed. R. Bankr. P. 8015(g), this document contains 2,594 words.

2. This document complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word, typeface Times New Roman, 14-point type (12-point type of footnotes).

/s/ *Michael J. Edney*
Michael J. Edney