# Attachment B

BRENNA BIRD
ATTORNEY GENERAL

1305 E. WALNUT ST.
DES MOINES, IA 50319
515-281-5164
www.iowaattorneygeneral.gov

IOWA DEPARTMENT OF JUSTICE
OFFICE OF THE ATTORNEY GENERAL

The Honorable Brantley Starr
United States District Judge
Northern District of Texas
Earle Cabell Federal Building and U.S. Courthouse
1100 Commerce St., Room 1528
Dallas, TX 75242

**Re: *In re Highland Capital Management, L.P.*, Bankruptcy Case No. 19-34054-sgj11; District Court Case No. 3:26-cv-02315 – Certification of Direct Appeal Under 28 U.S.C. § 158(d)(2)**

Dear Judge Starr:

The State of Iowa respectfully submits this letter supporting certification of a direct appeal to the United States Court of Appeals for the Fifth Circuit from the Court's June 15, 2026 order denying relief under Rule 60. Dkt. 4678.

This letter will be submitted as an exhibit to the Motion for Certification of Direct Appeal filed by The Dugaboy Investment Trust, and Iowa seeks no relief independent of that motion. Iowa takes no position on the merits of the Rule 60 motion, on any disputed fact, or on the conduct of any party or fiduciary. Instead, the State weighs in because the order presents questions of law that satisfy the certification standards of 28 U.S.C. § 158(d)(2), and those questions' resolution by the court of appeals matters to States charged with protecting charitable assets.

Iowa's interest arises from the Attorney General's traditional police power role. By statute, the Attorney General prosecutes and defends actions and proceedings in any court or tribunal in which the state may be a party or interested, or when the interest of the state requires such action. Iowa Code § 13.2. Iowa's Trust Code makes that authority explicit as to charitable trusts: "The attorney general may investigate a charitable trust to determine whether the charitable trust is being administered in accordance with law and the terms and purposes of the trust," and "may apply to a district court for such orders that are reasonable and necessary to carry out the terms and purposes of the trust." Iowa Code § 633A.5108.

Like her counterparts nationwide, she bears responsibility for representing the public's interest in charitable assets. That responsibility exists because charitable beneficiaries are often indefinite and cannot enforce fiduciary duties themselves. Donor-advised funds now carry a substantial share of that public trust. The DAF Research Collaborative's Spring 2026 update reports around 3.59 million donor-advised-fund accounts holding $327.87 billion in assets, with $64.60 billion in grants in fiscal year 2024. *See* H. Daniel Heist et al., *The Annual DAF Report 2025: Updated Analysis Memo* (Donor Advised Fund Rsch. Collaborative Apr. 2026), https://bit.ly/4xSlfaK at 3. Because DAF sponsors, donors, and grantee charities routinely operate across state lines, the questions presented here reach Iowa's donors and charitable institutions no less than those of any other State.

The significance of those numbers and breadth of potential application satisfies the statute. On those grounds alone, certification is warranted. *See* 28 U.S.C. § 158(d)(2)(A)(i), (iii); *see* 28 U.S.C. § 158(d)(2)(B). Each independent statutory ground to justify certifying such an appeal is present.

*First,* there is no controlling decision. The Supreme Court recently reserved a similar question in *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 226–27 (2024). The Rule 60 proceedings here present a closely related and equally unresolved question: how a court should evaluate settlement authority and consent when later-developed evidence bears on claim ownership, signatory authority, and the alignment of the parties said to have consented. Neither the Fifth Circuit nor the Supreme Court has addressed how the materiality standard under Rule 60 applies where the challenged conduct also implicates a State's charitable-enforcement jurisdiction.

*Second,* the matter is one of public importance. The motion describes a layered, multistate charitable structure involving four established community foundations and entities alleged to have held more than $270 million. On July 9, 2025, the Texas Attorney General advised this Court that his office represents the public's interest in charity, that it had issued Civil Investigative Demands to people and entities involved in this proceeding, and that it sought a short pause to assess whether further action was necessary. That submission's significance is institutional too, a sovereign regulator alerted a federal court that public-law interests were under examination while the case moved toward settlement and release.

Whether, and how, such a sovereign submission bears on federal settlement review is a recurring question at the boundary of federal bankruptcy administration and state charity supervision, and it warrants an answer from the court of appeals.

*Third,* direct review may materially advance this long-running proceeding. The certified questions are purely legal. Their resolution does not depend on more factfinding, and controlling guidance from the Fifth Circuit will supply a definitive framework for this order and for any related proceedings, in whichever direction that guidance runs.

Certification will not resolve any factual dispute, disturb any finding of this Court, or confer any remedy, and the court of appeals will still retain full discretion whether to authorize the appeal. 28 U.S.C. § 158(d)(2)(A). But certifying the appeal will ensure that recurring legal questions affecting charitable assets in every State receive a controlling answer.

Iowa therefore respectfully supports certification under 28 U.S.C. § 158(d)(2).

Respectfully,

BRENNA BIRD
Attorney General of Iowa

*/s/ Eric H. Wessan*

Eric H. Wessan
Solicitor General
1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 823-9117
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov

*Counsel for State of Iowa*