# Attachment G

State of West Virginia

Office of the Attorney General
State Capitol, Bldg.1, Rm E-26
1900 Kanawha Blvd. E
Charleston, WV 25305

**John B. McCuskey**
**Attorney General**

(304) 558-2021
Fax (304) 558-0140
www.wvago.gov

September 17, 2026

The Honorable Brantley Starr
United States District Judge
Northern District of Texas
Earle Cabell Federal Building and U.S. Courthouse
1100 Commerce St., Room 1528
Dallas, TX 75242

**Re: In re Highland Capital Management, L.P., Case No. 19-34054-sgj11**
**Certification of Direct Appeal under 28 U.S.C. §158(d)(2)**

Dear Judge Starr:

The State of West Virginia respectfully submits this letter in support of certification of a direct appeal to the United States Court of Appeals for the Fifth Circuit from the Court's June 15, 2026, order denying relief under Rule 60. Dkt. No. 4678. West Virginia understands that this letter will be submitted as an exhibit to the Motion for Certification of Direct Appeal filed by the Dugaboy Investment Trust. West Virginia does not currently take a position on the merits of the Rule 60 motion, on any disputed fact, or on the conduct of any party or fiduciary. Its interest is narrower and institutional: the order presents questions of law that satisfy the certification standards of 28 U.S.C. §158(d)(2), and, in the absence of binding Supreme Court precedent, resolution of the legal questions presented matter to every State charged with protecting charitable assets.

West Virginia's interest arises from the Attorney General's traditional public role. The Attorney General is the chief legal officer of West Virginia and appears as counsel for West Virginia in all cases in which the state is interested. W.Va. Code §5-3-2. Like his counterparts nationwide, the Attorney General also represents the public's interest in charitable assets. Donor-advised funds now carry a substantial share of that public trust. The DAF Research Collaborative's Spring 2026 update reports approximately 3.59 million donor-advised-fund accounts holding $327.87 billion in assets, with $64.60 billion in grants in fiscal year 2024. Because DAF sponsors, donors, and grantee charities routinely operate across state lines, the question presented reach West Virginia donors and charitable institutions no less than those of any other State.

Certification is warranted-and, upon the requisite determination, required-where an order "involves a question of law as to which there is no controlling decision" of the court of appeals or Supreme Court, "involves a matter of public importance," or the immediate appeal "may materially advance the progress of the case or proceeding." 28 U.S.C. §158(d)(2)(A)(i), (iii); *see id.* §158(d)(2)(B)(court "shall make the certification" upon determining that a specified circumstance exists.) Each of these grounds is present.

First, there is no controlling decision. In *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 226-27 (2024) the Supreme Court expressly reserved the question of what qualifies as a consensual release. This matter presents a closely related and equally unresolved question: how a court should evaluate settlement authority and consent when later-developed evidence bears on claim ownership, signatory authority, and the alignment of the parties said to have consented. Neither the Fifth Circuit nor the Supreme Court has addressed how the materiality standard under Rule 60 applies where the challenged conduct also implicates a Stat's charitable-enforcement jurisdiction.

Second, the matter is one of public importance. The motion describes a layered, multistate charitable structure involving four established community foundations and entities alleged to have held more than $270 million. On July 9, 2025, the Texas Attorney General advised this Court that his office represents the public's interest in charity, that it had issued Civil Investigative Demands to persons and entities involved in this proceeding, and that it sought a short pause to assess

whether further action was necessary. Bankr. Dkt. 4308. West Virginia expresses no opinion on the subjects, merits, or outcome of that investigation. Rather, the submission's significance is institutional: a sovereign regulated alerted a federal court that public-law interest was under examination while the case moved toward settlement and release. Whether, and how, such a submission from the state official representing the public's interest bears on federal settlement review is a recurring question at the boundary of federal bankruptcy administration and state charity supervision, and is, therefore, of "public importance."

Third, direct review may materially advance the progress of this proceeding. The certified questions are purely legal. Their resolution does not depend on further fact finding, and controlling guidance from the Fifth Circuit in a single step would expedite the resolution of this longstanding proceeding.

Certification would not resolve any factual dispute, disturb any finding of this Court, or confer any remedy, and the court of appeals would retain full discretion to authorize the appeal. 28 U.S.C. §158(d)(2). It will allow the court of appeals to answer a recurring legal question affecting the interplay between federal bankruptcy administration and state supervision of charitable assets. West Virginia therefore supports certification under 28 U.S.C. §158(d)(2).

Sincerely,

John B. McCuskey
West Virginia Attorney General