**Case No. 3:26-cv-02315-K**

---

**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

---

**IN RE HIGHLAND CAPITAL MANAGEMENT, L.P.,**
***Debtor***

---

**THE DUGABOY INVESTMENT TRUST**

***Appellant***

**v.**

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

***Appellee***

---

On Appeal from the United States Bankruptcy Court for the Northern District of Texas, Case No. 19-34054-sgj11

---

# REPLY OF APPELLANT THE DUGABOY INVESTMENT TRUST

---

Michael J. Edney
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
T: (202) 739-3000
F: (202) 739-3001
michael.edney@morganlewis.com

Steven H. Stodghill
Geoffrey S. Harper
gharper@kslaw.com
John Michael Gaddis
mgaddis@kslaw.com
**KING & SPALDING LLP**
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

*Additional counsel listed on next page*

Martha B. Stolley (*pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Ave.
New York, NY 10178-0060
T: (212) 309-6000
F: (212) 309-6001
martha.stolley@morganlewis.com

Avery Joseph Welker
**MORGAN, LEWIS & BOCKIUS LLP**
1000 Louisiana Street, Suite 4000
Houston, TX 77002
T: (713) 890-5000
F: (713) 890-5001
avery.welker@morganlewis.com

Michael Burrage
**WHITTEN BURRAGE**
512 N. Broadway Ave., Ste. 300
Oklahoma City, OK 73102
T: (405) 516-7800
F: (405) 516-7859
mburrage@whittenbur-
ragelaw.com

Johnny Sutton
**ASHCROFT SUTTON**
P.O. Box 160368
Austin, Texas 78716
T: (512) 370-1800
F: (703) 247-5446
jsutton@ashcroftlawfirm.com

Alexey V. Tarasov (*pro hac vice*)
Texas Bar No. 24075140
**LAW OFFICE OF ALEXEY TARASOV**
5211 Reading Road
Rosenberg, TX 77471
T: (832) 623-6250
alexey@tarasovlaw.com

Joseph N. Mazzara
Texas Bar No. 24136521
**MAZZARA PLLC**
1704 N. Royal Ave.
Front Royal, VA 22630
T: (540) 660-2142
joseph@mazzara.law

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..... 1

ARGUMENT ..... 3

I. Categorical Rejection of Counterparty Fraud and Misconduct Was Error. ..... 3

II. The Court's Failure to Scrutinize the Settlement Was Error. ..... 9

III. Dugaboy Presented New, Previously Undiscoverable Evidence Warranting Rule 60(b)(2) Relief. ..... 12

A. Highland Grossly Misreads the Dondero Affidavit. ..... 14

B. The Supporting Organizations' Suspicions Do Not Translate into Knowledge by Dugaboy of Patrick's Wrongdoing. ..... 16

IV. Fraud and Discovery Misconduct Prevented Dugaboy from Fully and Fairly Presenting Its Case. ..... 17

V. The Bankruptcy Court Further Hindered Dugaboy's Ability to Discover Key Facts Through Its Evidentiary Errors. ..... 19

VI. The 9019 Settlement Should Be Vacated Because It Was Considered by a Judge Who Had a Duty to Recuse. ..... 21

A. Dugaboy Did Not Abandon the Recusal Issue. ..... 21

B. Judge Jernigan's Failure to Recuse Warranted Relief From Her Order Under Rule 60(b)(6) and the *Liljeberg* Factors. ..... 24

VII. This Court Is Empowered to Find Facts *De Novo*; No Finding Below Is Entitled to Deference. ..... 26

CONCLUSION ..... 27

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alpern v. UtiliCorp United, Inc.*,
84 F.3d 1525 (8th Cir. 1996) ....................20

*Bogan v. MTD Consumer Grp., Inc.*,
919 F.3d 332 (5th Cir. 2019) ....................6

*Carlson v. Bioremedi Therapeutic Sys., Inc.*,
822 F.3d 194 (5th Cir. 2016) ....................22

*Chilson v. Metro. Transit Auth.*,
796 F.2d 69 (5th Cir. 1986) ....................6, 13, 14

*Dondero v. Jernigan*,
No. 24-10287, 2025 WL 1122466 (5th Cir. Apr. 16, 2025)....................21

*Dondero v. Jernigan*,
No. 24-10287, Dkt. 149 (5th Cir. Apr. 30, 2025)....................22

*Dondero v. Jernigan*,
No. 25-355 (U.S. Jan. 12, 2026), *petition for reh'g filed* (U.S. Feb. 6, 2026) ...22

*Dugaboy Investment Trust v. Highland Capital Management, L.P.*,
No. 26-10012, ECF No. 124-1 (5th Cir. 2026)....................23

*FDIC v. Mijalis*,
15 F.3d 1314 (5th Cir. 1994) ....................9, 24

*Freytag v. Comm'r*,
501 U.S. 868 (1991)....................27

*Hopfmann v. Connolly*,
471 U.S. 459 (1985)....................23

*In re Age Refining, Inc.*,
801 F.3d 530 (5th Cir. 2015) ....................4, 5, 8, 11

*In re Foster Mortg. Corp.*,
68 F.3d 914 (5th Cir. 1995) ....................4

*In re McDermott Int'l, Inc.*,
No. 23-20436, 2024 WL 3875141 (5th Cir. Aug. 20, 2024) .............................. 12

*In re Mendoza*,
111 F.3d 1264 (5th Cir. 1997) .............................. 6

*In re Moore*,
608 F.3d 253 (5th Cir. 2010) .............................. 11

*In re Rose*,
156 F.4th 602 (5th Cir. 2025) .............................. 12

*In re SBMC Healthcare, LLC*,
547 B.R. 661 (S.D. Tex. 2016) .............................. 12

*In re United States*,
791 F.3d 945 (9th Cir. 2015) .............................. 26

*Jordan v. Morgan*,
154 S.W. 599 (Tex. Civ. App. 1913) .............................. 15

*Kmart Corp. v. Aronds*,
123 F.3d 297 (5th Cir. 1997) .............................. 25

*Liljeberg v. Health Services Acquisition Corp.*,
486 U.S. 847 (1988) .............................. 23, 24, 25

*Limon v. Double Eagle Marine, LLC*,
771 F. Supp. 2d 672 (S.D. Tex. 2011) .............................. 20

*Longden v. Sunderman*,
979 F.2d 1095 (5th Cir. 1992) .............................. 3, 6

*Matter of AWECO, Inc.*,
725 F.2d 293 (5th Cir. 1984) .............................. 5, 10

*Matter of Cajun Elec. Power Co-op., Inc.*,
119 F.3d 349 (5th Cir. 1997) .............................. 4

*Patterson v. Mobil Oil Corp.*,
335 F.3d 476 (5th Cir. 2003) .............................. 25

*Potashnick v. Port City Constr. Co.*,
609 F.2d 1101 (5th Cir. 1980) ........................................................................25

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*,
324 U.S. 806 (1945)..........................................................................................4

*Republic of Panama v. Am. Tobacco Co.*,
217 F.3d 343 (5th Cir. 2000) ..........................................................................22

*Rhodes v. Amarillo Hosp. Dist.*,
654 F.2d 1148 (5th Cir. 1981) ........................................................................15

*Shahrashoob v. Texas A&M Univ.*,
125 F.4th 641 (5th Cir. 2025) ..........................................................................9

*Stern v. Marshall*,
564 U.S. 462 (2011)........................................................................................27

*Streat v. Hammond*,
No. 3:07-CV-1882-P, 2009 WL 10678838 (N.D. Tex. Oct. 26, 2009)..............24

*TMT Trailer Ferry, Inc. v. Anderson*,
390 U.S. 414 (1968)....................................................................................5, 10

*Tramonte v. Chrysler Corp.*,
136 F.3d (5th Cir. 1998) ..................................................................22, 23, 25

*U.S. ex rel. Lam v. Tenet Healthcare Corp.*,
481 F. Supp. 2d 673 (W.D. Tex. 2006) ..........................................................24

*United States v. Rodriguez-Leos*,
953 F.3d 320 (5th Cir. 2020) ..........................................................................22

*Wellness Int'l Network, Ltd. v. Sharif*,
575 U.S. 665 (2015)........................................................................................26

**STATUTES**

18 U.S.C. § 2315 ..............................................................................................5

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 60(b).........................................................passim

## INTRODUCTION

The parties "violently" agree that a bankruptcy court must keep its proceedings "free of fraud and misconduct" and should "not permit a non-debtor to commit misconduct in a bankruptcy court." Opp. at 25. This is a clear, bright-line rule, rooted in the bankruptcy court's mandate to serve as a court of equity and to reach equitable outcomes.

Unfortunately, the bankruptcy court did not honor this sacred charge. Instead, the bankruptcy court made no findings about the fraud committed by Mark Patrick, holding that "[w]hatever Mr. Patrick did or did not do" was "not for this Court to decide," because he represented the counterparty to the debtor in the settlement, not the debtor itself. R.016471–72.

That was legal error: A court that declines to decide a question committed to its discretion has not exercised it. Because Patrick's secret theft was relevant to the bankruptcy court's approval of the settlement Patrick signed, because that evidence was newly discovered, and because Patrick and Highland's concealment prevented Dugaboy from fully and fairly litigating objections to that settlement, the bankruptcy court erred by denying relief under Federal Rule of Civil Procedure 60(b).

At every turn, Highland asks this court not to provide that relief because Dugaboy "had its day in court" and is merely "rehashing" old arguments. That framing cannot survive the bankruptcy court's own words. The court refused to address

whether questions about the predecessor judge's impartiality necessitated a redo of the bankruptcy court's consideration of the settlement. R.016463 n.6. And, in declining to address Patrick's fraud, the court made "no findings about whether [Patrick's] restructurings were well-intended, appropriate, or otherwise." R.016471–72. A party cannot have fully and fairly litigated a question the court expressly refused to answer. And Dugaboy could not have "rehashed" at the June 2025 hearing a scheme whose defining facts—the sham valuation, the diversion of charitable assets effectively to Patrick, and the astronomical compensation Patrick paid himself—were locked behind Cayman corporate confidentiality and (at the time) privileged communications. They surfaced only through the later filings of the Cayman Islands receiver-like entity—the Joint Official Liquidators—that stepped into the shoes of a key corporate vehicle and got access to its documents. Highland itself acknowledges that the liquidators "(arguably) learned later" about Patrick's compensation and the contents of his damning internal emails. Opp. at 40–41.

Highland, like the bankruptcy court, mischaracterizes Dugaboy's objections as an effort to "unwind" Patrick's restructuring. They are not. Other courts will decide whether to undo the restructuring. The relief Dugaboy seeks here is vacatur of an order a court of equity never should have entered. The bankruptcy court abdicated its duty to reject a bargain struck by a fiduciary who had looted the very assets he was trading. This Court should reverse.

## ARGUMENT

### I. Categorical Rejection of Counterparty Fraud and Misconduct Was Error.

Highland concedes that a bankruptcy court must keep its proceedings "free of fraud and misconduct" and should "not permit a non-debtor to commit misconduct in a bankruptcy court." Opp. at 25. But rather than confront the bankruptcy court's failure to uphold that categorical responsibility, Highland defends an opinion the bankruptcy court did not write. And, in doing so, concedes the error and insufficiency of the opinion that was written.

Highland recasts the bankruptcy court's categorical refusal to grapple with Mark Patrick's fraud as a faithful application of the Rule 60(b)(3) standard articulated in *Longden v. Sunderman*, 979 F.2d 1095, 1103 (5th Cir. 1992), that the fraud "complained of must be such as to prevent the losing party from fully and fairly presenting its case." Opp. at 23. But the bankruptcy court never applied that standard to Patrick's fraud or misconduct, and the ruling below cannot be affirmed on findings the court did not make.

The argument also addresses only one part of the problem. Patrick's fraud requires vacatur not only because Rule 60(b)(3) focuses on fraud, but also because the underlying judicial inquiry—of whether the settlement with a debtor counterparty is fair, equitable, and ought to be facilitated by the bankruptcy court—makes the misconduct and fraud of a counterparty relevant. The bankruptcy court explicitly

"ma[de] no findings about whether [Patrick's] restructurings were well-intended, appropriate, or otherwise." R.016471. The court concluded that the fraud was not "sufficiently intertwined" with the proceedings, applying a standard that does not exist in the law. Highland's effort to paper over that abdication by rebranding the "[in]sufficiently intertwined" test as a stray quotation cannot save the order below.

A. The Bankruptcy Court Abdicated Its Duty to Consider Fraud and Misconduct Before the Court.

A bankruptcy court may approve a Rule 9019 compromise "only when the settlement is fair and equitable and in the best interest of the estate." *In re Foster Mortg. Corp.*, 68 F.3d 914, 917 (5th Cir. 1995). In making that determination, the court must weigh the *Foster Mortgage* factors, whose catch-all provision expressly mandates consideration of "the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *In re Age Refining, Inc.*, 801 F.3d 530, 540 (5th Cir. 2015). That factor is stated without limitation to the identity of the wrongdoer or their relation to the bankruptcy estate. *Id. See also Matter of Cajun Elec. Power Co-op., Inc.*, 119 F.3d 349, 356 (5th Cir. 1997); *In re Foster Mortg. Corp.*, 68 F.3d at 918. Highland concedes as much. Opp. at 25.

Patrick came to the bankruptcy court seeking approval of a bargain in which he dealt away assets he had looted. The court's duty not to become "the abetter of iniquity" attached regardless of whether Patrick wore the label of "debtor" or "counterparty." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806,

814–815 (1945). And inquiry into his fraud was mandatory, not optional. The court must "apprise [itself] of the relevant facts and law so that [it] can make an informed and intelligent decision." *Age Refining*, 801 F.3d at 541. The court may not "reach for his stamp marked 'approved'" without a sufficient factual foundation, and an approval lacking one "inherently constitutes an abuse of discretion." *Matter of AWECO, Inc.*, 725 F.2d 293, 299–300 (5th Cir. 1984). Such rubber-stamp approval, "unsupported by evaluation of the facts or analysis of the law," is reversible error. *TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 434–35 (1968).

The sole reason the court gave for declining to consider the fraud, and thereby "reassess whether the settlement was the product of arm's-length, good faith negotiations" was that vacating the 9019 Order "will not restore the prior [Hunter Mountain] structure or the charitable beneficiaries' structure." R.016471. But that misses the point. Dugaboy has never argued that vacatur would unwind Patrick's restructuring. It argues that a court of equity may not bless or facilitate a settlement that is the product of fraud or, worse, actually deals in assets that were misappropriated through fraud and misconduct. After all, not dealing in or receiving stolen goods is a duty of every citizen, enforced by criminal statute. *See*, *e.g.* 18 U.S.C. § 2315. It is certainly a duty of a court dedicated to equity.

The bankruptcy court's holding reflected both a legal error about the scope of the court's own duty and a refusal to engage with the specific facts and evidence of

Patrick's fraud and misconduct. By abdicating its authority, the bankruptcy court "failed to understand the full bounds of its discretion." *In re Mendoza*, 111 F.3d 1264, 1266 (5th Cir. 1997). A bankruptcy court that holds it lacks the power to consider a category of fraud squarely before it has abused its discretion as a matter of law. *Id.* at 1268; *Chilson v. Metro. Transit Auth.*, 796 F.2d 69, 72 (5th Cir. 1986); *Bogan v. MTD Consumer Grp., Inc.*, 919 F.3d 332, 335, 349–40 (5th Cir. 2019).

B. <u>The Bankruptcy Court Never Considered Whether Patrick's Fraud Prevented Dugaboy from Fully and Fairly Presenting its Case.</u>

The bankruptcy court erred by applying the "fully and fairly" test to Highland alone. It found "no evidence ... that Highland Capital withheld evidence from Dugaboy that prevented it from fully and fairly litigating its case prior to entry of the 9019 Order," and then stopped. R.016471. It never asked whether Patrick's fraud and concealment prevented Dugaboy from fully and fairly challenging the settlement. For Patrick, the court applied a wholly different and invented legal standard: that his misconduct was "not sufficiently intertwined with the Highland bankruptcy estate (or the Settlement Agreement)" because he was "merely a signatory for a counterparty." R.016469.

Tellingly, Highland does not defend that "[in]sufficiently intertwined" standard on the merits. Nor could Highland, as the standard has no footing in Rule 9019, in Rule 60(b), or in *Longden*. Contrary to Highland's claims, Judge Odell was not "merely quoting" it from the prior judge's rulings (Opp. at 24); he adopted the

standard as his *own* holding, stating that "[t]his characterization [of challenges related to Patrick's authority] is equally true here." R.016469. That error improperly shut the door on Rule 60(b)(2), (3), and (6) relief and should be reversed.

C. The Bankruptcy Court Did Not Consider Patrick's Lack of Authority to Enter into the Settlement.

Highland contends that Judge Odell considered and rejected Dugaboy's argument that Patrick's fraud stripped him of authority to bind Hunter Mountain, and that the argument is in any event "forfeited twice over." Opp. at 21. Neither is true.

First, the bankruptcy court never addressed whether Patrick's fraud stripped him of authority over the Hunter Mountain entities. Instead, it expressly *declined* to do so, holding that "[w]hatever Mr. Patrick did or did not do with his authority over [Hunter Mountain's] assets and the charitable beneficiaries' structure, is not for this Court to decide." R.016472.

To protect both the original donors and the charitable owner, the agreement automatically removed its administrator upon any breach of fiduciary duty, dishonesty, or other misconduct, rendering his subsequent acts void. R.008484, R.008489. And removal occurs "without any action by [its trustee] or any other party." R.006079. Patrick had triggered such automatic removal by no later than March 2025, when he completed the fraudulent restructurings. The May 19, 2025, settlement was signed by someone without power to bind Hunter Mountain—a defect squarely within the scope of a court's duty to assure itself that a settlement is the

product of arms-length bargaining and "not of fraud or collusion." *Age Refining*, 801 F.3d at 540.

Highland's venture into contract interpretation is completely wrongheaded. Opp. at 27–28. The bankruptcy court never interpreted the agreement—and so once again Highland is defending an opinion the bankruptcy court did not write. And Highland's invocation of Dugaboy's purported "ratifications" of Patrick's authority as waiver (Opp.at 28) is nonsense; without deciding the issue, the bankruptcy court questioned whether waiver even is possible when removal is "a legal effect by the document." Suppl. R.000774–75 (May 21, 26 Hr'g Tr. at 240:22–241:3). Not objecting to his authority to sign agreements in September and December 2025 reflected recognition of *de facto* control, which does not waive a challenge to *de jure* authority. See R.007967; R.007987; R.007991.[1]

Nor was the argument forfeited. The issue was briefed and argued at length throughout the Rule 60(b) proceedings. *See, e.g.*, R.000674, R.000676, R.004745–49; R.005968–73. An argument is preserved where it "fairly appears in the record as

---

[1] Nor was Highland somehow empowered to both settle with Hunter Mountain and determine whether it was being adequately led. Opp. at 27. Removal is self-executing "without any action" by any party, the trust agreement defines Highland as "the limited partnership," and the limited partnership has no role in removing the trustee. R. 006079 at §§ 1, 16. And it would be precisely the type of collusive bargain—with one self-interested party on all sides of the transaction—that bankruptcy courts must reject.

having been raised or decided" and was pressed to a degree sufficient for the court to rule. *Shahrashoob v. Texas A&M Univ.*, 125 F.4th 641, 649 (5th Cir. 2025); *FDIC v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994). The authority argument plainly was.

## II. The Court's Failure to Scrutinize the Settlement Was Error.

The settlement the bankruptcy court approved was negotiated on one side by court-appointed bankruptcy professionals with no stake in the debtor's residual equity, and on the other by a trust administrator who was looting the very interest he purported to represent. In those circumstances, the structural assurances that ordinarily justify a measure of deference to a settlement were absent, and the court's duty to scrutinize—rather than defer—was at its height.

The argument was preserved, contrary to Highland's arguments. Opp. at 21, 30. The content of the Rule 9019 standard—and whether the court wrongly believed its scrutiny was confined—is a question of law the court necessarily confronted when it approved, and then refused to revisit, the settlement. Dugaboy squarely challenged the court's deferential posture and its refusal to reassess whether the settlement was the product of arm's-length, good faith negotiations, including raising concerns about Highland's diligence in assessing the settlement. R.001427–28, R.000651, R.000654, R.000662, R.000672–74, R.005943. *See also* R.009378–80 at 97:12-17; 98:6-99:1.

Highland says the court-appointed professionals owed and honored duties to maximize estate value, pointing to the Claimant Trust Agreement. Opp. at 30. But the record shows that James Seery, installed as Chief Restructuring Officer at the creditors' insistence, had every incentive to prolong a liquidation from which a cadre of professionals drew hundreds of millions of dollars in fees—long after all creditors had been paid in full. R.000660. The ordinary assurance that a debtor-in-possession or trustee negotiates to preserve value for residual equity simply did not exist here. That is precisely the circumstance in which the court was obliged to bring its "informed, independent judgment" to bear, not to defer. *TMT Trailer Ferry*, 390 U.S. at 424–25; *AWECO*, 725 F.2d at 299.

While the Highland Entities claimed they performed due diligence with respect to the transactions at issue in the 9019 Order, including Patrick's authority to agree to the settlement agreement, they either did not know of or consciously chose to ignore the alleged improprieties raised throughout this saga. R.009378 at 97:12-17. Instead, they elected to look only at historical organizational documents and ignored the Cayman proceeding: Seery was "hesitant" to even say he was "generally" aware of the Cayman proceeding. R.009379–80 at 98:6-99:1. Those organizational documents reflected only Hunter Mountain's historical structure—not the post-restructuring ownership through which Patrick's sham charity had become the ultimate beneficiary.

Second, Highland says the equity interest was adequately represented because its counterparty, Hunter Mountain, "was the holder of 99.5% of Highland's prepetition equity." Opp. at 30. That is the very heart of the problem: the settlement was the product of Patrick's self-dealing. The 99.5% equity position was an asset Patrick had looted; he administered Hunter Mountain for himself, and not its charitable owners. He converted charitable assets into more than $18 million in compensation for himself and his associates, stealing roughly $270 million rightly belonging to the charitable entities. And he used the settlement to transfer the Kirschner claims, which could be used to bargain away scrutiny, to an entity he controlled, while trading the roughly $24 million Dugaboy Note without a competitive process. The bankruptcy court should have policed this. *See In re Moore*, 608 F.3d 253, 265–266 (5th Cir. 2010).

A compromise negotiated by professionals indifferent to residual equity, with a signatory feathering his own nest, is the antithesis of a good faith, arms-length bargain. Rule 9019 called for heightened scrutiny here, not deference. *Age Refining*, 801 F.3d at 540. In that posture, the court could not substitute the parties' say-so for its own judgment.

## III. Dugaboy Presented New, Previously Undiscoverable Evidence Warranting Rule 60(b)(2) Relief.

Contrary to Highland's arguments, the evidence of Patrick's theft of the Charitable DAF's assets, which we now know included the equity stake in Hunter Mountain, was newly discovered for purposes of Rule 60(b)(2) Opp. at 35–36.

First, the bankruptcy court relied solely on Dondero's April 2025 affidavit—and not on any of the materials Highland now uses to stand up an opinion the bankruptcy court did not write.[2] Highland gestures at the principle that a reviewing court may affirm a lower court on any ground supported by the record. Opp. at 33. But affirming in such a manner is inappropriate where, as here, the issue "requires exercise of discretion or fact-finding." *In re SBMC Healthcare, LLC*, 547 B.R. 661, 683 (S.D. Tex. 2016); *see also In re Rose*, 156 F.4th 602, 621 (5th Cir. 2025); *In re McDermott Int'l, Inc.*, No. 23-20436, 2024 WL 3875141, at *4 (5th Cir. Aug. 20, 2024).

Second, instead of considering whether the *evidence* Dugaboy presented was "not discovered until after" the settlement approval (and could not reasonably have been discovered), the bankruptcy court and Highland ask a different question:

---

[2] Highland misleadingly cites to a separate portion of the bankruptcy court's opinion cataloguing the volume of discovery tendered to Dugaboy, suggesting that these materials were part of the bankruptcy court's reasoning. Opp. at 19; R. 016471. But the bankruptcy court never referenced those materials in its assessment of whether Dugaboy's evidence was newly discovered.

whether the "information" Dugaboy presented was new. R.004763–68, R.016468–69. But that is not what the law requires. *Chilson*, 796 F.2d at 71–72. And Dugaboy cannot be faulted for failing to completely catch up to Mark Patrick's fraud when he had deliberately concealed it for months. Nor could Dugaboy have learned the full scope of Patrick's conduct and its implications for his authority to enter the settlement during the accelerated discovery process before the 9019 hearing. Only after the Cayman Liquidators released the evidence of their investigation beginning in late July and continuing through December 2025 was it possible for Dugaboy to obtain the actual evidence of Patrick's scheme. By that time, the settlement order had been entered and the time to seek relief from it under Rule 59 had lapsed.

Third, Dugaboy's inability to obtain the evidence was not for lack of diligence but lack of access. Patrick's internal emails—including his email seeking to establish a new general partner entity for the Charitable DAF that would be "hard to find or track, or trace, [o]r find owners etc." (R.016129), as well as his solicitation of the bogus ValueScope valuation (R.002654–002664) to support the fraudulent redemption of the charitable owners' interests—were privileged company records. They could not have been obtained in discovery, and became available only after the liquidators took over a relevant Cayman entity, stepped into "the shoes of the company," and could obtain its lawyers' records. Suppl. R.000335–36, 000340 (May 11, 2026 Tr. 76:21–77:19, 81:9–18). Indeed, Highland acknowledged that Dugaboy

could not have obtained those privileged communications prior to the 9019 hearing and now concedes that the liquidators "(arguably) learned later" Patrick's precise compensation and the contents of his internal emails. Opp. at 40–41; Suppl. R.000490–91 (May 21, 2026 Tr. 231:24–232:7).

Later-produced evidence can qualify for relief under Rule 60(b)(2) even though its underlying facts were ascertainable earlier. *Chilson*, 796 F.2d at 71–72. Equating the suspicions in an affidavit with later documentary proof is the error *Chilson* forbids.

**A. Highland Grossly Misreads the Dondero Affidavit.**

The suspicions regarding Patrick that Dondero outlined in his April 2025 affidavit supporting the appointment of the Cayman Liquidators were different in kind and magnitude than what was subsequently uncovered by the Cayman Liquidators. Highland asserts that the affidavit demonstrates that Dondero knew all the information Dugaboy needed to argue at the 9019 hearing that Patrick had been stripped of power to enter the settlement. But review of the affidavit shows this to be false.

First, while Dondero described awareness that there had been a sale of Hunter Mountain, and that it may have been sold for less than it was worth, he did not know who the parties to that transaction were. R.008049. And thus the affidavit did not show the sale was into a restructured version of the Charitable DAF. Transferring Hunter Mountain and its Highland equity stake into a Charitable DAF that continued

to have the Dallas Foundation and the other established charities might have been a process foul that otherwise maintained the overall charitable purpose. Transferring that asset into a Charitable DAF and then restructuring it to steal that asset and all other Charitable DAF assets from the established charities—all for the purposes of paying Patrick and his confederates tens of millions—is a substantive, grave, cardinal sin that shocks the conscience and hurdles over the bar for Rule 60(b) relief.

Second, had Dondero used the compliance lapses detailed in the affidavit to try to unseat Patrick from his Hunter Mountain position, Highland would be here arguing that they were not germane to Hunter Mountain and ticky tack. With the newly discovered evidence, Patrick's theft of the Charitable DAF, thereby acquiring for his own benefit the buyer of Hunter Mountain, directly affects the Court's decision.

And, in any event, refraining from taking action from lesser breaches does not in any way waive or forfeit the right to deploy a contractual remedy against grave violations. *Rhodes v. Amarillo Hosp. Dist.*, 654 F.2d 1148, 1152 (5th Cir. 1981); *Jordan v. Morgan*, 154 S.W. 599, 601 (Tex. Civ. App. 1913). Highland does not, and indeed cannot, provide a reason for departing from that bedrock legal and equitable principle here. The common law would never tolerate a rule that incentivizes wrongdoers to progressively ratchet up their misconduct, so that they could cite lack of action on smaller transgressions as a license to commit grave crimes.

### B. The Supporting Organizations' Suspicions Do Not Translate into Knowledge by Dugaboy of Patrick's Wrongdoing.

Highland reaches for yet other evidence on which the bankruptcy court did not rely, specifically a May 2025 petition filed by the charities in the Cayman Islands. Opp. at 32–34. This argument also fails for two reasons.

First, crucial pieces of Patrick's scheme still were missing even from that filing—namely, his fraudulent valuation of the Charitable DAF, his eight-figure compensation, that the charities had been completely divorced from the assets, and that the equity stake in Highland—the topic most relevant to the 9019 settlement approval hearing—was also stolen through this restructuring. The petition Highland now urges on this Court, and not relied on by the bankruptcy court, recounted only two suspicions: that another charitable foundation had been created and that there was some kind of redemption event affecting the established charities' interests for $1.6 million. Even that application did not reveal that the redemption was to a new structure in which the established charities did not have a role. The petition did not reveal the mechanisms or frankly the effects of Patrick's misconduct that are now known, including the sham valuation by ValueScope, that the monkey business at the Charitable DAF was also stealing the Highland equity stake from Hunter Mountain, and that the purpose of all this was to provide air cover for Patrick skimming $18 million into the pockets of himself and his co-conspirators. These and other key evidence came from the Cayman liquidators once they stepped into the shoes of a

key corporate entity. *See* R.008737, Bankr. Dkt. 4655, 5/11/26 Hr'g Tr. 117:2–118:7.

Second, these materials were not part of the bankruptcy court's reasoning, and they cannot stand it up. The charities' knowledge is not Dondero's or Dugaboy's. Indeed, Dondero was recused and shielded from information the charities were discovering, at Patrick's insistence. Suppl. R.000679–80 (May 21, 2026 Hr'g Tr. at 145:20–146:4).

**IV. Fraud and Discovery Misconduct Prevented Dugaboy from Fully and Fairly Presenting Its Case.**

Patrick's responses in his deposition and elsewhere were deceptive. Among other things, Patrick "forgot" who bought Hunter Mountain in a transaction he personally signed a month before. The bankruptcy court erred by declining to consider his discovery misconduct because only Highland's counted. Opening Br. at 41–42.

And, contrary to Highland's arguments (Opp. at 36, 43–44), Highland behaved deceptively as well. Highland implicitly suggested at the 9019 hearing and beforehand that the Hunter Mountain structure remained intact. R.009378–80 at 97:12-17; 98:6-99:1.

Highland relies heavily on its Exhibit 95 presented at the 9019 hearing to clean its hands. *See* Opp. at 36, 44. Exhibit 95 merely states that Beacon Mountain LLC (the owner of Hunter Mountain) had been sold by Rand PE Fund I, L.P., to CLO Holdco, LLC as of February 12, 2025. R.006132. But this was but one piece—and

an insignificant part at that—of Patrick's fraudulent restructuring. Instead, the heart of Patrick's theft (and genesis for his dispossession of power to enter the 9019 settlement) was that Patrick's sham charity has taken all the established charities' assets—including Hunter Mountain and its equity stake in Highland—for pennies on the dollar under a sham valuation. None of this was revealed by Exhibit 95 or Seery's testimony that referenced it. *See* Opp. 44.

Highland also points to a demonstrative slide that it briefly displayed at the 9019 hearing which purported to show the fraudulently restructured Hunter Mountain entities. Opp. at 39. The slide was not admitted as an exhibit at the 9019 hearing. Apparently, Highland believes that Dugaboy should have taken the demonstrative as gospel despite Highland's repeated presentation (and implicit endorsement of the veracity of) the historical Hunter Mountain structure prior to, and throughout, the 9019 hearing. *See* Dugaboy Opening Brief at 42–43. After all, when Highland's court-appointed chief testified, he said he had reviewed all organizational documents of Hunter Mountain and its upstream owners to assure himself Patrick had authority to act. Suppl. R.000581 (May 21, 26 Hr'g Tr. at 47:14-24); *See also* R.009378–80 at 97:12-99:1. He identified them in open court. And all of them were about the old structure, leading up to Atlas and Crown Global Insurance company and ultimately to the Dallas Foundation. Suppl. R.000580–87; 000607–08 (May 21, 26 Hr'g Tr. at 46:17-53:6; 73:19-74:7). None of them was about its new home, where Patrick

had been preparing it for complete dispossession from the charities, that Highland wished to bury in a footnote. *Id.*

Highland also shut down a key deposition when it approached an uncomfortable topic. When Raver was asked about the economic ownership as a result of the Charitable DAF restructuring, Highland's counsel said to Hunter Mountain's counsel, "I really don't want to do this all day." R.005171 at 31:12–18. Hunter Mountain's counsel responded, "Yeah, I think we're done." *Id.* at 31:19. Questioning counsel objected that there was still an hour left for the deposition, but, after a lengthy argument, Highland's counsel ended it. *Id.* at 31:20–21, R.005173 at 33:12–17, 33:19–20.

Raver was in the process of being asked about the Charitable DAF restructuring. Raver could have answered questions about Patrick and Raver's compensation and the charities being cut off. Highland shut down his testimony, all on the now disproven thesis that the Charitable DAF had nothing to do with the Highland equity stake, to prevent the truth from coming out until it was too late.

## V. The Bankruptcy Court Further Hindered Dugaboy's Ability to Discover Key Facts Through Its Evidentiary Errors.

The bankruptcy court compounded Dugaboy's inability to investigate Patrick's fraud through its numerous erroneous evidentiary rulings. Highland endorses the bankruptcy court's conclusion that discovery in the Rule 60(b) proceedings should have been limited to events after the 9019 hearing because Dugaboy "had a

full opportunity to explore the authority issue" prior to the 9019 hearing. Opp. at 53. But Highland fails to square that assertion with the later discovery and Dugaboy being fed false information by Patrick and incomplete information by Highland. A bare opportunity to investigate is not the same thing as a full or meaningful opportunity to investigate. *See Limon v. Double Eagle Marine, LLC*, 771 F. Supp. 2d 672, 676–77 (S.D. Tex. 2011); *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1536–37 (8th Cir. 1996). To properly prosecute its Rule 60(b) motion, Dugaboy sorely needed what it has been denied all along (and was denied again by the bankruptcy court): full, complete, and accurate discovery into Patrick's fraud and lack of authority to enter the 9019 settlement.

And the bankruptcy court compounded these errors by not allowing Dugaboy to offer Dondero's testimony. Counsel explained that Patrick's testimony made Dondero's testimony necessary. Suppl. R.000546–47 (May 21, 2026 Tr. 12:12–24, 13:14–17). Dugaboy's amended witness list named him with ample notice, and Highland had itself designated and deposed him, so there was no surprise and there would have been no prejudice to Highland in allowing his testimony. R.016054–55; Suppl. R.000545 (May 21, 2026 Tr. 11:7–11).

## VI. The 9019 Settlement Should Be Vacated Because It Was Considered by a Judge Who Had a Duty to Recuse.

### A. Dugaboy Did Not Abandon the Recusal Issue.

Long before the settlement approval in June 2025, Dugaboy had filed a motion to recuse and multiple supplements before Judge Jernigan and had litigated the recusal issue up to the United States Court of Appeals for the Fifth Circuit, which on panel rehearing issued an opinion in April 2025 stating that "a strong argument could be made that [Judge Jernigan] had a duty to recuse" due to the similarities between the characters in her books and the participants in this case. *Dondero v. Jernigan*, No. 24-10287, 2025 WL 1122466, at *7 (5th Cir. Apr. 16, 2025). The Fifth Circuit nevertheless declined to intervene through mandamus relief, in the middle of the case and in the absence of a final appealable order entered by the ethically compromised judge, because of the demanding standard for such relief. While acknowledging the "possible error," the court explained that it was "not certain" that Judge Jernigan had "*clearly and indisputably* erred" in failing to recuse herself. *Id.* (emphasis in original).

Following issuance of that opinion, Dugaboy pursued *en banc* review and a petition for certiorari to the Supreme Court, and a petition for rehearing. After the Fifth Circuit's mandate issued, and after the bankruptcy court did not take the strong suggestion to recuse therein, the Fifth Circuit Judicial Council arranged for a corrective action resolution to a long-pending judicial misconduct complaint, which was

dated December 31, 2025 and became known in January 2026. R.001429–30; *Dondero v. Jernigan*, No. 24-10287, Dkt. 149 (5th Cir. Apr. 30, 2025); *Dondero v. Jernigan*, No. 25-355 (U.S. Jan. 12, 2026) (denying certiorari), *petition for reh'g filed* (U.S. Feb. 6, 2026).

Highland's suggestion that Dugaboy somehow abandoned the argument by not re-raising it during every contested proceeding before Judge Jernigan rings hollow against this procedural history. Opp. at 45–49. To preserve the ability to reverse rulings on grounds that a judge should have recused, a party need move for recusal on those grounds only once. *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016) ("A party need not repeatedly object to preserve an issue where the district court has already denied the initial objection"); *United States v. Rodriguez-Leos*, 953 F.3d 320, 326 (5th Cir. 2020) ("[O]nce a party raises an objection in writing . . . the error is nevertheless preserved for appeal . . . the central inquiry . . . is not the [party's] persistence in seeking relief"). Later orders entered after a declination to recuse are error and may be reviewed in connection with a final order. *Republic of Panama v. Am. Tobacco Co.*, 217 F.3d 343, 347 (5th Cir. 2000); *Tramonte v. Chrysler Corp.*, 136 F.3d at 1028 (5th Cir. 1998). And Judge Jernigan had a constant duty to "police her disqualification status," which includes her

responsibility to review the Fifth Circuit's mandate explaining the strong argument that she had a duty to recuse. *Tramonte*, 136 F.3d at 1031 .[3]

Nor did Dugaboy abandon the issue after Judge Jernigan, at long last, was recused from the case through the Fifth Circuit's Judicial Council's "corrective action." First, the Supreme Court has held that a Rule 60(b) motion is precisely the mechanism to address intervening events, following an order, that provide new grounds for or reinforce the need for historical recusal. *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863–64 (1988). Second, Dugaboy fully briefed the issue. Indeed, a central argument in Dugaboy's Rule 60(b) motion and reply brief was that those intervening events should have consequences now. R.000692–99; R.005973–81. Dugaboy lodged full-text copies of Judge Jernigan's books (R.001827; R.001828; *see* Dkt. 62), described specific quotations from the books that were derogatory toward the hedge fund industry, and highlighted parallels between Judge Jernigan and the protagonist of her books and Dondero and the books'

[3] The Fifth Circuit's November 13, 2026, opinion does not change the law on this point. *Dugaboy Investment Trust v. Highland Capital Management, L.P.*, No. 26-10012, ECF No. 124-1 (5th Cir. 2026) at 4. That appeal concerned whether a later July 2025 request for the bankruptcy judge to reckon with the Fifth Circuit's mandate merged *backwards* into prior final orders, such that the appellate courts had jurisdiction to consider it on its own. The Fifth Circuit declined, finding that asking Judge Jernigan again to recuse earlier was another option. *Id.* In any event, an appellate court ruling declining jurisdiction does not govern further proceedings on the merits, such as this one. *See Hopfmann v. Connolly*, 471 U.S. 459, 460–61 (1985); *Tramonte*, 136 F.3d at 1028.

hedge-fund-manager villain. R.000693–99. A fully briefed issue is anything but abandoned, and here it plainly was "raised to such a degree that the [] court ha[d] an opportunity to rule on it." *FDIC*, 15 F.3d at 1327.

Highland tries to fault Dugaboy for "minimally arguing" it at the evidentiary hearing and/or not introducing testimony about the novels. Opp. at 48. But Highland itself fully joined the issue in briefing below. R.0046773–78. And a court may take judicial notice of the existence of published works and their contents. *U.S. ex rel. Lam v. Tenet Healthcare Corp.*, 481 F. Supp. 2d 673, 680 (W.D. Tex. 2006). The content of published works "speaks for itself" for the court's consideration. *Streat v. Hammond*, No. 3:07-CV-1882-P, 2009 WL 10678838, at *4 (N.D. Tex. Oct. 26, 2009). Yet the bankruptcy court later stated it had not read the novels to assess the merits of Dugaboy's argument. Dkt. 4758 at 9. This was an abdication.

Further, who would have been the right witness to bring additional color on these books? Should Dugaboy have served Judge Jernigan with a subpoena to testify? She clearly would have been immune from such process. The basis for recusal was the contents of the novels, understood by an objective observer—not any witnesses' subjective characterization of them.

### B. Judge Jernigan's Failure to Recuse Warranted Relief From Her Order Under Rule 60(b)(6) and the *Liljeberg* Factors.

In assessing the need for recusal, judges must ask how their participation in a given case "looks to the average person on the street," leaning in favor of

disqualification if there is "*any* question about the propriety of [the judge] sitting in a particular case." *Potashnick v. Port City Constr. Co.*, 609 F.2d 1101, 1111–12 (5th Cir. 1980) (emphasis added). Once the circumstances giving rise to reasonable questions about a judge's partiality are known, recusal is required and subsequent orders may be void. *Tramonte*, 136 F.3d at 1031.

Each of the three factors identified by the Supreme Court favor vacating orders issued after the basis for Judge Jernigan's recusal arose. *Liljeberg*, 486 U.S. at 864; *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 485 (5th Cir. 2003).

Here, the risk of injustice—in this and other cases—is plain. *Liljeberg*, 486 U.S. at 862-864. At issue was the bias against Dondero, whose family trust, Dugaboy, had objected to the settlement. Her order approving the settlement substantially affected Dugaboy's rights—both its residual equity interest in Highland, and its interests as a donor to the charitable structures from which Patrick stole. And allowing an order entered in those circumstances to stand "undermin[es] the public's confidence in the judicial process," *id.* raising concerns that a judge had preconceived notions about the parties and an overriding interest to sell books.

Last, contrary to Highland's assertions, the Fifth Circuit's denial of mandamus did not resolve the recusal question. Opp. at 49–51. Mandamus required a "clear and indisputable" right to relief, a standard more demanding than ordinary appellate review. *Kmart Corp. v. Aronds*, 123 F.3d 297, 300–01 (5th Cir. 1997).

Likewise, the Judicial Council's statement that it expressed "no … opinion … on the merits of the judge's prior decision not to recuse" was not a ratification of Judge Jernigan's prior orders. The Council has no authority to reverse or vacate orders in pending or historical cases. *In re United States*, 791 F.3d 945, 959 (9th Cir. 2015). The misconduct orders noted that Judge Jernigan had expressed remorse, agreed to take three hours of ethics training, and voluntarily recused herself from the proceeding, which was deemed sufficient corrective action. R.001430. The Council appropriately left the retrospective effect of Judge Jernigan's rulings to the courts reviewing final orders—including this Court. The settlement has never been reviewed *de novo* by a judge whose impartiality cannot reasonably be questioned, and that is a "reason that justifies relief" under Rule 60(b)(6).

## VII. This Court Is Empowered to Find Facts *De Novo*; No Finding Below Is Entitled to Deference.

Highland resists *de novo* review on two grounds; neither withstands scrutiny. First, Highland says Dugaboy "forfeited" the argument by litigating for years without objection. Opp. at 51. But the case relied upon by Highland answered a different question: Whether a litigant may consent to a bankruptcy court's entry of final judgment on a claim that Article III otherwise would reserve to a district court. *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 669 (2015). Consent of that kind waives only the "personal right" to an Article III adjudicator; it cannot cure the structural separation-of-powers interest, which "the parties cannot by consent cure." *Id.* at

675–76. Instead, structural constitutional objections are not subject to ordinary forfeiture. *See Freytag v. Comm'r*, 501 U.S. 868, 878–80 (1991).

Second, contrary to Highland's argument (Opp. at 52), the Supreme Court's *Trump v. Slaughter* decision has bearing on the relationship between Article I and Article III courts. Opp. at 52. The principle that an official exercising the Government's power must remain subject to plenary supervision by a constitutionally accountable superior is not peculiar to Article II. Rather, it is the same structural logic that forbids an Article I bankruptcy judge from entering final, deferentially reviewed judgment on private rights. *See Stern v. Marshall*, 564 U.S. 462, 482, 484 (2011).

## CONCLUSION

The bankruptcy court's order denying Dugaboy's Rule 60(b) motion should be reversed. The order approving the settlement should be vacated.

Dated: November 16, 2026

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

By: */s/ Michael J. Edney*

Michael J. Edney
D.C. Bar No. 492024
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
T: (202) 739-3000
F: (202) 739-3001
michael.edney@morganlewis.com

Martha B. Stolley (*pro hac vice*)
New York Bar No. 2965374
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Ave.
New York, NY 10178-0060
T: (212) 309-6000
F: (212) 309-6001
martha.stolley@morganlewis.com

Steven H. Stodghill
Texas Bar No. 19261100
sstodghill@kslaw.com
Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@kslaw.com
**KING & SPALDING LLP**
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

Michael Burrage, OBA No. 1350
**WHITTEN BURRAGE**
512 N. Broadway Ave., Ste. 300

Oklahoma City, OK 73102
T: (405) 516-7800
F: (405) 516-7859
mburrage@whittenburragelaw.com

Johnny Sutton
Texas Bar No. 19534250
**ASHCROFT SUTTON**
P.O. Box 160368
Austin, Texas 78716
T: (512) 370-1800
F: (703) 247-5446
jsutton@ashcroftlawfirm.com

Alexey V. Tarasov (*pro hac vice*)
Texas Bar No. 24075140
**LAW OFFICE OF ALEXEY TARASOV**
5211 Reading Road
Rosenberg, TX 77471
T: (832) 623-6250
alexey@tarasovlaw.com

Joseph N. Mazzara (*pro hac vice*)
Texas Bar No. 24136521
**MAZZARA PLLC**
1704 N. Royal Ave.
Front Royal, VA 22630
T: (540) 660-2142
joseph@mazzara.law

Avery Joseph Welker
Texas Bar No. 24137706
**MORGAN, LEWIS & BOCKIUS LLP**
1000 Louisiana Street, Suite 4000
Houston, TX 77002
T: (713) 890-5000
avery.welker@morganlewis.com

***Attorneys for Appellant The Dugaboy Investment Trust***

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the type-volume limitations of Federal Rule of Bankruptcy Procedure 8015(a)(7)(B)(ii), as it contains 6,497 words, excluding the portions of the document exempted by 8015(g).

I further certify that this document complies with the typeface requirements of Rule 8015(a)(5) and the type-style requirements of Rule 8015(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14- point Times New Roman (12-point in footnotes).

*/s/ Michael J. Edney*
Michael J. Edney

***Attorney for Appellant***
***The Dugaboy Investment Trust***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 16, 2026, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

/s/ *Michael J. Edney*
Michael J. Edney